1

**LIEFF CABRASER HEIMANN &**
   **BERNSTEIN, LLP**

2
Richard M. Heimann (Cal. Bar No. 063607)
275 Battery Street, 29th Floor

3
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000

4
Facsimile:  (415) 956-1008
Email: rheimann@lchb.com

5

6
*Proposed Liaison Counsel for the Class*

7
**SPECTOR ROSEMAN KODROFF &**
   **WILLIS, P.C.**

8
Robert M. Roseman
1818 Market Street, Suite 2500

9
Philadelphia, PA 19103
Telephone: (215) 496-0300

10
Facsimile:  (215) 496-6611
Email: rroseman@srkw-law.com

11
*Counsel for the Northern Ireland Local Government*

12
*Officers' Superannuation Committee and Proposed Lead*
*Counsel for the Class*

13
[Additional counsel on signature page]

14

15
UNITED STATES DISTRICT COURT

16
NORTHERN DISTRICT OF CALIFORNIA

17

18

19
STEEVE EVELLARD, Individually and
on Behalf of All Others Similarly Situated,

20
           Plaintiff,

21
           vs.

22
LENDINGCLUB CORPORATION,
RENAUD LAPLANCHE, and CARRIE L.

23
DOLAN,

24
           Defendants.

25

26

27

28

Case No. 3:16-cv-02627-WHA

**NOTICE OF MOTION OF THE NORTHERN
IRELAND LOCAL GOVERNMENT
OFFICERS' SUPERANNUATION
COMMITTEE FOR CONSOLIDATION OF
RELATED ACTIONS, APPOINTMENT AS
LEAD PLAINTIFF, AND APPROVAL OF ITS
SELECTION OF COUNSEL;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**

CLASS ACTION

DATE:  August 15, 2016
TIME: 10:00 a.m.
CTRM:  8, 19th Floor
JUDGE:  Hon. William H. Alsup

1

2

NICOLE WERTZ, Individually and on
Behalf of All Others Similarly Situated,

Case No. 3:16-cv-02670-WHA

3

Plaintiff,

4

vs.

5

6

RENAUD LAPLANCHE, CARRIE
DOLAN, and LENDINGCLUB
CORPORATION,

7

Defendants.

8

9

## NOTICE OF MOTION AND MOTION

10

**TO:    ALL PARTIES AND THEIR COUNSEL OF RECORD**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Putative class member the Northern Ireland Local Government Officers' Superannuation Committee ("NILGOSC") hereby provides notice that, pursuant to the Court's Order dated June 15, 2016 [Dkt. No. 16], NILGOSC will, and hereby does, move this Court at 10:00 a.m. on August 15, 2016, in Courtroom 8 on the 19th floor of the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, pursuant to Section 27(a)(3)(B) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B) and Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order:  (i) consolidating the above-captioned related actions; (ii) appointing NILGOSC as Lead Plaintiff for the putative class; (iii) approving NILGOSC's selection of Spector Roseman Kodroff & Willis, P.C. as Lead Counsel and Lieff Cabraser Heimann & Bernstein, LLP as Liaison Counsel for the putative class; and (iv) granting such other relief as the Court may deem just and proper.   In support of its Motion, NILGOSC relies upon the accompanying Memorandum of Points and Authorities and the Declaration of Richard M. Heimann, dated July 15, 2016.

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    STATEMENT OF THE ISSUES

3     The above-captioned actions (the "Actions") are putative class actions alleging violations

4   of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15

5   U.S.C. §§ 78j(b) and 78t(a), Securities Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R.

6   § 240.10b-5, and Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15

7   U.S.C.  §§ 77k and 77o, on behalf of all purchasers of the securities of LendingClub Corporation

8   ("LendingClub" or the "Company") pursuant or traceable to the Company's December 11, 2014

9   initial public offering of common stock (the "IPO") and/or during the period between December

10   11, 2014 and May 9, 2016 (the "Class Period").[1]

11     NILGOSC respectfully submits this Memorandum of Law in support of its Motion

12   seeking an Order:  (i) consolidating the above-captioned related actions under Rule 42 of the

13   Federal Rules of Civil Procedure ("Rule 42"); (ii) appointing NILGOSC as Lead Plaintiff

14   pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C.

15   § 78u-4(a)(3)(B);[2] (iii) approving, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), NILGOSC's

16   selection of the law firm of Spector Roseman Kodroff & Willis, P.C. ("Spector Roseman") as

17   Lead Counsel and Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser") as Liaison

18   Counsel for the proposed class; and (iv) granting such other relief as the Court may deem just and

19   proper.

20     Rule 42 provides that actions may be consolidated whenever they present a "common

21   [1]     The *Evellard* action is brought on behalf of purchasers of LendingClub securities in the
IPO and during the period December 11, 2014 through May 6, 2016 and asserts claims arising
22   under Sections 11 and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act
and Rule 10b-5; the *Wertz* action is brought on behalf of purchasers of LendingClub common
23   stock between December 11, 2014 and May 9, 2016 and asserts claims arising under Sections
10(b) and 20(a) of the Exchange Act and Rule 10b-5.  For purposes of this Motion, NILGOSC
24   applies the most inclusive class period pled in the Actions.  *See, e.g., In re BP, PLC Sec. Litig.*,
758 F. Supp. 2d 428, 433-34 (S.D. Tex. 2010) (collecting cases wherein numerous courts applied
25   the longest-pled class period).

26   [2]     Separate but functionally identical provisions of the PSLRA apply to lead plaintiff and
lead counsel selection in claims brought under the Exchange Act and the Securities Act.
27   *Compare* 15 U.S.C. § 78u-4 (applying to claims under the Exchange Act) *with* 15 U.S.C. § 77z-1
(applying to claims under the Securities Act).  References herein to provisions within 15 U.S.C.
28   § 78u-4 are intended to also refer to the corresponding provisions within 15 U.S.C. § 77z-1.

1   question of law or fact."  Consolidation is appropriate here because the Actions assert overlapping

2   causes of action against the same defendants for virtually the same conduct.  *See Knox v. Yingli*

3   *Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1162 (C.D. Cal. 2015) ("Consolidation of

4   private securities fraud class actions arising from the same alleged misconduct is generally

5   appropriate.").

6           The PSLRA provides that, upon consolidation, the Court shall appoint as Lead Plaintiff

7   the timely movant who asserts the largest financial interest and who otherwise satisfies the

8   applicable requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  15

9   U.S.C. § 78u-4(a)(3)(B)(iii); *see also In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405,

10  407-09 (N.D. Cal. 2012) (Alsup, J.) (discussing the requirements for appointment as Lead

11  Plaintiff).  Here, NILGOSC incurred a substantial loss of $8.3 million on its Class Period

12  transactions in LendingClub common stock, and to the best of its knowledge, there is no other

13  movant asserting a larger financial interest in the Actions.  *See* Heimann Decl., Ex. A & B.[3]

14  Moreover, NILGOSC satisfies the applicable requirements of Rule 23 of the Federal Rules of

15  Civil Procedure in that its claims are typical of the claims of the putative class and it will fairly

16  and adequately represent the interests of the class.  As such, NILGOSC respectfully submits that

17  the Court should appoint NILGOSC as Lead Plaintiff.

18          In addition to satisfying the requirements for appointment as Lead Plaintiff, NILGOSC is

19  precisely the type of investor that Congress sought to summon and empower when it enacted the

20  PSLRA.  *See In re Cavanaugh*, 306 F.3d 726, 738 (9th Cir. 2002) (observing that the PSLRA was

21  enacted with the "goal of attracting institutional investors" to private securities litigation).

22  Indeed, as an institutional investor, NILGOSC is accustomed to acting as a fiduciary, and its

23  experience in legal and financial matters will substantially benefit the class.

24          Finally, NILGOSC has selected Spector Roseman as its proposed Lead Counsel.  As a

25  firm with significant experience in successfully litigating under the securities laws in courts

26  throughout the country, the appointment of Spector Roseman as Lead Counsel in the Actions is

27
[3]       References to the "Heimann Decl., Ex. _" are to the exhibits attached to the accompanying
28  Declaration of Richard M. Heimann, dated July 15, 2016, and submitted herewith.

appropriate.  *Cohen v. U.S. Dist. Court for N. Dist. of California*, 586 F.3d 703, 712 (9th Cir. 2009) ("if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice").  Lieff Cabraser is similarly experienced in complex litigation and is well qualified to serve as Liaison Counsel for the class.  Thus, NILGOSC respectfully requests that its selection of Lead Counsel and Liaison Counsel be approved.

## II.   FACTUAL BACKGROUND

LendingClub, a Delaware corporation headquartered in San Francisco, California, operates an online marketplace that is designed to facilitate personal and small-business loans by connecting lenders and borrowers.  The Company uses a proprietary technology platform that automates certain aspects of the lending process, including the borrower application process, data gathering, credit scoring, loan funding, investing and servicing, regulatory compliance, and fraud detection.  The Actions commonly allege that, during the Class Period, Defendants misleadingly boasted to investors that: (1) the Company's "transparent" lending procedures were a key factor in attracting new lenders and borrowers to its marketplace; (2) the Company maintained effective internal auditing and oversight procedures; and (3) the Company did not assume credit risk in the loans on its marketplace.

Defendants' statements were called into question beginning on May 9, 2016, when the Company revealed that it had fired Defendant Renaud Laplanche ("Laplanche"), the Company's Chairman and Chief Executive Officer ("CEO"), for what it said was an "unacceptable" violation of the Company's business practices and for his failure to fully disclose certain matters to the Board.  As investors gradually came to learn, certain of the Company's "senior managers" had knowingly sold $22 million in loans to Jefferies Group on the Company's marketplace even though those loans did not conform to Jefferies' investment criteria.  In addition, Defendant Laplanche had caused the Company to invest in a third party fund—Cirrix Capital ("Cirrix"), which invests in online marketplace loans including those on LendingClub's marketplace— without disclosing to the Company that Laplanche holds a personal interest in that fund.  The Company has conceded that these discoveries led it to conclude that there were "material

weaknesses in [its] internal control over financial reporting," which were in part caused by the "tone at the top" set by senior management.

On news of Laplanche's firing, the systemic oversight problems within the Company, and the Company's apparent abandonment of its no-credit-risk business model through its investment in Cirrix, the price of Company stock declined $3.00 per share, or more than 42% over two days of trading, from a close of $7.10 per share on May 6, 2016, to close at $4.10 per share on May 10, 2016.

## III.   ARGUMENT

### A.   The Actions Should be Consolidated

Rule 42(a) of the Federal Rules of Civil Procedure allows the Court to consolidate actions that involve "a common question of law or fact."  *See* FED. R. CIV. P. 42(a).  Moreover, it is "generally appropriate" to consolidate securities class actions arising from the same misconduct. *Yingli Green Energy*, 136 F. Supp. 3d at 1162.

The Actions here present substantially similar factual and legal issues and arise out of the same alleged scheme by Defendants.  In addition, both Actions allege claims pursuant to Sections 10(b) and 20(a) of the Exchange Act against the same Defendants over virtually the same Class Period.  Because these Actions are based on the same facts and involve the same subject matter, discovery obtained in one lawsuit will undoubtedly be relevant to the other, and resolution of legal issues in one of the Actions will similarly bear upon (or be dispositive of) the legal issues in the other.  Consolidation of the Actions therefore is appropriate under Rule 42(a).

### B.   NILGOSC Should Be Appointed as Lead Plaintiff

#### 1.   The Procedure Required by the PSLRA

The PSLRA establishes a procedure that governs the appointment of a lead plaintiff in "each private action arising under [the Exchange Act or the Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(1).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice informing class members of their right to file a motion for appointment as lead plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  Within 60 days after publication of the notice, any

1  person or group of persons who are members of the proposed class may apply to the Court to be

2  appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.

3  *See* 15 U.S.C. § 78u-4(a)(3)(A) and (B).

4       Second, the PSLRA provides that, within 90 days after publication of the notice, the Court

5  shall consider any motion made by a class member and shall appoint as lead plaintiff the member

6  (or members) of the class who the Court determines to be "most capable of adequately

7  representing the interests of class members."  *See* 15 U.S.C. § 78u-4(a)(3)(B).  In determining the

8  "most adequate plaintiff" under the PSLRA, the Court shall adopt a presumption that the most

9  adequate plaintiff is the person or group of persons that:

10          (aa) has either filed the complaint or made a motion in response to a
                 notice . . . ;
11          (bb) in the determination of the court, has the largest financial interest in
                 the relief sought by the class; and
12          (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules
                 of Civil Procedure.
13

14  15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also In re Diamond*, 281 F.R.D. at 407-09 (describing the

15  lead plaintiff selection process).  As set forth herein, NILGOSC abundantly satisfies these

16  requirements and should be appointed as Lead Plaintiff.

17          **2.      NILGOSC Satisfies the "Lead Plaintiff" Requirements of the PSLRA**

18              **a.      NILGOSC's Motion is Timely and Contains the Requisite
                          Certification**
19

20       The first of the Actions was filed on May 16, 2016, and the relevant notice was published

21  that day on *Globe Newswire*, a national, business-oriented newswire service.  *See* Heimann Decl.,

22  Ex. C.  Therefore, the deadline for filing motions for appointment as Lead Plaintiff in these

23  Actions is July 15, 2016.  NILGOSC's motion for appointment as Lead Plaintiff is therefore

24  timely.

25       As additionally required by the PSLRA, 15 U.S.C. § 78u-4(a)(2), NILGOSC has duly

26  signed and filed herewith a certification stating that it is willing to serve as a representative party

27  on behalf of the class.  *See* Heimann Decl., Ex. A.  Accordingly, NILGOSC has satisfied the

28  individual requirements of the PSLRA and is entitled to have its application for appointment as

1    Lead Plaintiff and approval of its selection of Lead Counsel, as set forth herein, considered and

2    approved by the Court.

3              **b.    NILGOSC Has the Requisite Financial Interest in the Relief**
               **Sought by the Class**
4

5         The PSLRA requires that the lead plaintiff have "the largest financial interest in the relief

6    sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  In making that determination, Courts

7    typically consider "(1) the number of shares purchased during the class period; (2) the number of

8    net shares purchased during the class period; (3) the total net funds expended during the class

9    period; and (4) the approximate losses suffered during the class period."  *In re Diamond*, 281

10   F.R.D. at 408 (citation omitted).  Of those considerations, the movant's losses on its class period

11   purchases of the relevant securities is "generally considered the most important factor."  *Id.*  Here,

12   NILGOSC incurred a substantial ***$8.3 million*** loss on its Class Period purchases of LendingClub

13   common stock.  *See* Heimann Decl., Exs. A and B.  NILGOSC thus has a significant financial

14   interest in this case, and to the best of its knowledge there is no other movant asserting a larger

15   financial interest in the relief sought by the class.

16             **c.    NILGOSC Satisfies the Requirements of Rule 23**

17        In addition to possessing the largest financial interest in the outcome of the litigation, the

18   lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil

19   Procedure."  15 U.S.C. § 78u-4(a)(3)(B).  Rule 23(a) provides that a party may serve as a class

20   representative if the following requirements are satisfied:  (1) the class is so numerous that joinder

21   of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

22   claims or defenses of the representative parties are typical of the claims or defenses of the class;

23   and (4) the representative parties will fairly and adequately protect the interests of the class.

24   However, at the lead plaintiff stage of the litigation, the "inquiry focuses on the 'typicality' and

25   'adequacy' requirements."  *In re Diamond*, 281 F.R.D. at 408.  NILGOSC satisfies both the

26   typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead

27   Plaintiff.

28        The typicality requirement is satisfied "when the putative lead plaintiff has suffered the

same injuries as absent class members, as a result of the same conduct by the defendants." *Id.*
This requirement is satisfied here because, as with all the other members of the putative class,
NILGOSC:  (i) purchased LendingClub common stock during the Class Period (including 52,500
shares purchased in the IPO); (ii) was adversely affected by Defendants' false and misleading
statements; and (iii) suffered damages as a result thereof.  Thus, NILGOSC's claims are typical of
those of other class members.

Separately, the adequacy requirement mandates examination of "whether the class
representative and his counsel have any conflicts of interest with other class members and
whether the class representative and its counsel will prosecute the action vigorously on behalf of
the class." *Id.* at 409 (internal quotation marks and citation omitted).  Here, NILGOSC is an
adequate class representative.  As evidenced by its substantial losses, NILGOSC is highly
motivated to vigorously pursue this litigation for the benefit of the class.  In addition, as shown
below, NILGOSC's proposed Lead Counsel and Liaison Counsel are highly qualified,
experienced, and able to conduct this complex litigation in an effective and professional manner.
Moreover, neither NILGOSC nor its chosen counsel have any conflicts of interest with other
members of the putative class.  Thus, NILGOSC is adequate.

NILGOSC's ability to vigorously pursue the class's interest is further made clear by its
prior experience in similar actions.  For instance, NILGOSC served as one of the lead plaintiffs in
*In re Lehman Brothers Equity/Debt Securities Litigation*, No. 08-CV-5523-LAK (S.D.N.Y.), an
action that resulted in class-wide settlements totaling more than $615 million.  As part of its
duties as a lead plaintiff in that case, NILGOSC reviewed filings and other actions taken by
counsel, received regular reports from counsel regarding developments in the action, participated
in telephonic and email communications, submitted declarations when needed, and oversaw and
approved the terms of the settlement of the litigation.  Similarly, as part of its efforts to obtain
lead plaintiff status in *In re Bank of America AIG Disclosure Securities Litigation*, No. 11 Civ.
6678 (JGK) (S.D.N.Y.), a representative from NILGOSC traveled to the United States and
provided oral testimony concerning NILGOSC's adequacy as a class representative.  Although
NILGOSC was ultimately not appointed as lead plaintiff in that action because another movant

had a larger financial interest, NILGOSC's efforts in these two cases demonstrate its understanding of its responsibilities and fiduciary obligations to the class and its ability to fulfill its duties as Lead Plaintiff here.

Accordingly, NILGOSC fulfills the typicality and adequacy requirements of Rule 23 and should be appointed as Lead Plaintiff.

**3.**   **NILGOSC Is Precisely the Type of Lead Plaintiff Congress Envisioned When it Passed the PSLRA**

The Congressional objective in enacting the lead plaintiff provisions of the PSLRA was to encourage large, organized institutional investors to play a more prominent role in securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").   Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation.  *See id.* at 34-35, 1995 U.S.C.C.A.N. at 733-34; *see also Cavanaugh*, 306 F.3d at 738 (observing that the PSLRA was enacted with the "goal of attracting institutional investors" to private securities litigation).

NILGOSC, as a sizeable institutional investor with experience in securities litigation and sufficient resources to devote to its obligations as Lead Plaintiff, is precisely the type of Lead Plaintiff that Congress envisioned when it passed the PSLRA.  Thus, appointment of NILGOSC as Lead Plaintiff will further that critical legislative goal.  *See id.*

**C.**   **The Court Should Approve NILGOSC's Choice of Counsel**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the proposed lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class."  *See also Cohen*, 586 F.3d at 712 ("if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice").  Here, NILGOSC has selected the law firm of Spector Roseman as Lead Counsel and Lieff Cabraser as Liaison Counsel for the class.

1    As detailed in its firm résumé, Spector Roseman has extensive expertise and experience in

2    the field of securities litigation.  *See* Heimann Decl., Ex. D (attaching firm biography).  In this

3    regard, Spector Roseman has successfully prosecuted numerous securities fraud class actions as

4    lead and co-lead counsel, recovered billions of dollars on behalf of defrauded investors, and

5    negotiated and implemented significant corporate governance measures.  For example, Spector

6    Roseman represented a number of large institutions in the landmark action, *In re Parmalat*

7    *Securities Litigation*, No. 04 Civ. 0030 (LAK) (S.D.N.Y.), which has been referred to as the

8    "Enron of Europe."  In that case, Spector Roseman and its co-counsel not only secured a $96.5

9    million settlement against the defendants, but also devised a unique legal theory against the

10   bankrupt Parmalat entity that used Italian bankruptcy law to secure funds not normally available

11   to investors.  The Court acknowledged the efforts of Spector Roseman and its co-counsel by

12   stating:

13           [Class Counsel] did a wonderful job here for the class and were in all respects
             totally professional and totally prepared.  I wish I had counsel this good in front of
14           me in every case.

15   *In re Parmalat Sec. Litig.*, No. 04 Civ. 0030 (LAK) (S.D.N.Y. Mar. 2, 2009).

16           Similarly, in *In re SCOR Holding (Switzerland) AG Litigation*, No. 04 Civ. 07897 (DLC)

17   (S.D.N.Y.), Spector Roseman obtained a $145 million recovery for a global class of investors,

18   which involved settling the action on two continents—the first trans-Atlantic resolution of a

19   securities class action.  These cases, and others like them noted in its firm résumé, serve to

20   confirm that Spector Roseman is amply qualified to represent the class in this litigation.

21           Finally, Lieff Cabraser is experienced in litigating complex actions and is well qualified to

22   serve as Liaison Counsel for the class.  Lieff Cabraser is one of the nation's largest plaintiffs' law

23   firms and has prosecuted scores of securities and financial fraud lawsuits on behalf of public and

24   private institutional investors and other investors.  *See* Heimann Decl., Ex. E (attaching firm

25   resume).  For example, Lieff Cabraser served as lead counsel in *In re Broadcom Corp. Derivative*

26   *Litigation*, No. C-06-3252 R (CWx) (C.D. Cal.), a shareholder derivative action which was the

27   largest stock options backdating case (based on the dollar value of the affected stock options) in

28   the country, in which plaintiffs achieved settlements totaling $197 million.  Mr. Heimann also

1    brings successful trial experience to this case, having recently secured a $203 million judgment at

2    trial in this Court against Wells Fargo Bank.  *Gutierrez v. Wells Fargo Bank*, No. C 07-05923

3    WHA (N.D. Cal.).  *See* Heimann Decl., Ex. E.

4         Accordingly, the Court should approve NILGOSC's selection of Spector Roseman as

5    Lead Counsel and Lieff Cabraser as Liaison Counsel for the proposed class.

6    **IV.    CONCLUSION**

7         For the foregoing reasons, NILGOSC respectfully requests that the Court:  (i) consolidate

8    the above-captioned Actions; (ii) appoint NILGOSC as Lead Plaintiff; (iii) approve its selection

9    of Spector Roseman as Lead Counsel and Lieff Cabraser as Liaison Counsel for the class; and

10   (iv) grant such other relief as the Court may deem just and proper.

11   DATED:  July 15, 2016                    **LIEFF CABRASER HEIMANN &**
                                              **BERNSTEIN, LLP**
12
                                  By:    */s/ Richard M. Heimann*
13                                       Richard M. Heimann (Cal. Bar No. 063607)
                                         275 Battery Street, 29th Floor
14                                       San Francisco, CA  94111-3339
                                         Telephone:    (415) 956-1000
15                                       Facsimile:     (415) 956-1008
                                         Email: rheimann@lchb.com
16
                                         *Proposed Liaison Counsel for the Class*
17
                                         **SPECTOR ROSEMAN KODROFF &**
18                                       **WILLIS, P.C.**
                                         Robert M. Roseman
19                                       Andrew D. Abramowitz
                                         Andrew N. Dodemaide
20                                       1818 Market Street, Suite 2500
                                         Philadelphia, PA 19103
21                                       Telephone:    (215) 496-0300
                                         Facsimile:     (215) 496-6611
22                                       Email: rroseman@srkw-law.com
                                                aabramowitz@srkw-law.com
23                                              adodemaide@srkw-law.com

24                                       -and-

25                                       Mark S. Willis
                                         1101 Pennsylvania Avenue, N.W.
26                                       Suite 600
                                         Washington, D.C. 20004
27                                       Telephone:    (202) 756-3600
                                         Facsimile:     (202) 756-3602
28                                       Email: mwillis@srkw-law.com

1

2          *Counsel for the Northern Ireland Local*
          *Government Officers' Superannuation Committee*
3          *and Proposed Lead Counsel for the Class*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>CERTIFICATE OF SERVICE</u>**

2

      I hereby certify that on July 15, 2016, I caused the foregoing to be filed with the Clerk of

3

the Court using the Court's CM/ECF system.  Notice of this filing will be sent to all counsel of

4

record through the Court's CM/ECF system.

5

Dated:  July 15, 2016                        /s/ *Richard M. Heimann*

                                           Richard M. Heimann

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28