United States District Court
For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10   STEEVE EVELLARD, Individually and on
     Behalf of All Others Similarly Situated,           No. C 16-02627 WHA
11
                    Plaintiff,
12
          v.
13
     LENDINGCLUB CORPORATION, RENAUD
14   LAPLANCHE, and CARRIE L. DOLAN,

15                  Defendants.
                                                  /
16

17   NICOLE WERTZ, Individually and on Behalf of All   No. C 16-02670 WHA
     Others Similarly Situated,
18                                                     **ORDER (1) CONSOLIDATING
                    Plaintiff,                         CASES; (2) APPOINTING LEAD
19                                                     PLAINTIFF; AND (3) INVITING
          v.                                           APPLICATIONS FOR LEAD
20                                                     COUNSEL**
     LENDINGCLUB CORPORATION, RENAUD
21   LAPLANCHE, and CARRIE L. DOLAN,

22                  Defendants.
                                                  /
23

24                            **INTRODUCTION**

25         Pursuant to the Private Securities Litigation Reform Act, this order appoints Water and

26   Power Employees' Retirement, Disability and Death Plan of the City of Los Angeles as lead

27   plaintiff.  All other candidates have either withdrawn or do not oppose WPERP's motion.

28   Accordingly, this order **DENIES** the motions of other parties for appointment as lead plaintiff.

1   This order also **GRANTS** the motion to consolidate cases and sets forth the procedure to be used

2   for the selection and approval of class counsel.

3                                                   **STATEMENT**

4           Before the Court are two putative class actions that arise from allegations of false and

5   misleading statements in violation of federal securities laws.  A previous order related these two

6   actions to each other and a third individual action, *Wertz v. LaPlanche*, No. 16-cv-02670-WHA.

7   Plaintiffs in the class actions are individual investors.  Defendants are the LendingClub

8   Corporation, Renaud LaPlanche, the company's former Chief Executive Officer, and Carrie L.

9   Dolan, the company's Chief Financial Officer.

10          LendingClub is a so-called "peer-to-peer" lender.  It operates an online marketplace to

11  connect borrowers to investors.  The loan products facilitated by LendingClub include

12  consumer loans, personal loans, education loans, patient-finance loans, and small business

13  loans.

14          On December 11, 2014, LendingClub completed its IPO, selling 58 millions shares at

15  $15.00 a share.  On May 9, 2016, LendingClub disclosed in an SEC filing that defendant

16  Renaud Laplanche had resigned as CEO.  The SEC filing also disclosed that:  (1) Laplanche had

17  previously failed to inform the board's Risk Committee of his personal interest in a third-party

18  fund called Cirrix Capital while LendingClub was contemplating investing in the fund; and (2)

19  an internal review found that the company had sold $22 million in loans to a loan investor in

20  violation of that investor's "express instructions" (*Evellard* Compl. ¶¶ 5–8).  Soon thereafter,

21  news outlets reported that LendingClub itself actually invested in Cirrix and that Cirrix had

22  reportedly invested over $175 million in notes sold on LendingClub's platform (*Wertz* Compl.

23  ¶¶ 33–34).  The stock price tumbled on the news.

24          On May 16, 2016, investor Steeve Evellard was the first to file a lawsuit in this district.

25  That same day, his counsel published a notice over the *Globe Newswire* informing investors that

26  a class action lawsuit had been filed against LendingClub Corporation and two individual

27  defendants and that investors had until July 15, 2106, to seek appointment as lead plaintiff.  The

28  notice also described the general allegations against defendants (Dkt. No. 14).

**United States District Court**
For the Northern District of California

2

United States District Court
For the Northern District of California

1    Several lead plaintiff candidates filed motions for appointment:  Water and Power

2    Employees' Retirement System, Disability and Death Plan of the City of Los Angeles

3    ("WPERP"); U.S. Equity Fund; the Boston Retirement System; the Northern Ireland Local

4    Government Officers' Superannuation Committee; Lyle Hanson; and Ignacio Canals, Robert

5    Stelly, and Jin Chen.  All of these candidates except for WPERP either withdrew or did not

6    oppose the motion of WPERP.  Therefore, WPERP is the only remaining candidate.

7    The Court requested that each lead plaintiff candidate individually file responses to a

8    questionnaire about its qualifications, experience in managing litigation, transactions in the

9    shares at issue, and any potential conflicts related to the instant securities litigation.  The

10   remaining candidate, WPERP, has submitted answers to the lead plaintiff questionnaire.  A

11   hearing on the appointment of lead plaintiff was held.  WPERP was questioned on its

12   qualifications.

13   WPERP is an institutional investor that purchased LendingClub securities during the

14   alleged class periods.  It alleges a loss of $12.9 million.

**ANALYSIS**

15

16   **1.    CONSOLIDATION.**

17   Under Federal Rule of Civil Procedure 42(a), the district court may consolidate actions

18   where the actions involve a "common question of law or fact."  The "district court has broad

19   discretion under this rule to consolidate cases pending in the same district."  *Investors Research*

20   *Co. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989).

21   Here, the complaints involve common questions of fact and law.  Both actions allege

22   that defendants issued materially inaccurate public statements that artificially inflated the price

23   of LendingClub's common stock.  Both class periods start on the same day and end three days

24   apart (the *Evellard* class period ends on May 6, 2016, while the *Wertz* class period ends on May

25   9, 2016).  Both complaints allege claims under Section 10, Rule 10(b)(5), and Section 20(a) and

26   include allegations concerning the failure to disclose investments in a third-party fund called

27   Cirrix Capital.  The *Evellard* complaint also asserts claims under Section 11 and Section 15 and

28   includes allegations that LendingClub sold $22 million in loans to an investor in violation of

United States District Court

For the Northern District of California

1   that investor's instructions.  Rule 42(a), however, does not require the complaints to be identical

2   for purposes of consolidation.  Here, because the complaints involve common questions of fact

3   and law, the motion to consolidate is **GRANTED**.

4        In the event that a subsequent plaintiff files a complaint against LendingClub and/or its

5   officers that involves common questions of fact and law, **COUNSEL ON BOTH SIDES SHALL**

6   **IMMEDIATELY NOTIFY THE COURT OF THE RELATED CASE**.  Any such complaint shall be

7   automatically consolidated unless the consolidation is opposed within one week of such notice.

8        **2.    APPOINTMENT OF LEAD PLAINTIFF.**

9        Under the PSLRA, the Court "shall appoint as lead plaintiff the member or members of

10  the purported plaintiff class that the court determines to be most capable of adequately

11  representing the interests of the class members . . . in accordance with this subparagraph."  15

12  U.S.C. 78u-4(a)(3)(B)(i); 15 U.S.C.A. 77z-1(a)(3)(B)(i).  The PSLRA creates a rebuttable

13  presumption that the most adequate plaintiff should be the plaintiff who:  (1) has filed the

14  complaint or brought the motion for appointment of lead counsel in response to the publication

15  of notice; (2) has the "largest financial interest" in the relief sought by the class; and (3)

16  otherwise satisfies the requirements of FRCP 23.  15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(aa)–(cc); 15

17  U.S.C.A. 77z-1(a)(3)(B)(iii)(I)(aa)–(cc).  The above presumption may be rebutted only upon

18  proof that the presumptive lead plaintiff:  (1) will not fairly and adequately protect the interests

19  of the class or (2) is subject to "unique defenses" that render such plaintiff incapable of

20  adequately representing the class.  15 U.S.C. 78u-4(a)(3)(B)(iii)(II)(aa)–(bb); 15 U.S.C.A.

21  77z-1(a)(3)(B)(iii)(II)(aa)–(bb).

22       The PSLRA establishes a three-step inquiry for appointing a lead plaintiff.  *First*, a

23  plaintiff files the action and posts notice, allowing other lead plaintiff candidates to file motions.

24  *Second*, the district court considers which of those plaintiffs has the largest financial interest in

25  the action, and whether that plaintiff meets the requirements of FRCP 23.  *Third*, other

26  candidates have the opportunity to rebut the presumption that the putative lead plaintiff can

27  adequately represent the class.  *In re Cavanaugh*, 306 F.3d 726, 729–30 (9th Cir. 2002).

28

**United States District Court**
For the Northern District of California

### A.    Largest Financial Interest.

The PSLRA does not indicate a specific method for calculating which plaintiff has the "largest financial interest." *See* 15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(bb).  Our court of appeals also has not prescribed a particular method for calculating a plaintiff's financial interest but has directed that courts "the court may select accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d at 730 n.4.

Court often calculate financial interest based on net losses suffered.  Under this test, courts consider:  "(1) the number of shares purchased during the class period; (2) the number of *net* shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405, 408 (N.D. Cal. 2012) (emphasis added).  The fourth factor, the net "approximate loss," is generally considered the most important factor. *Ibid.*  Absent proof that the lead plaintiff candidate with the largest financial interest does not satisfy the requirements of FRCP 23, said candidate is "entitled to lead plaintiff status." *In re Cavanaugh*, 306 F.3d at 732.

WPERP's financial interest is as follows:  (1) WPERP purchased 2,790,085 million shares during the class period; (2) WPERP purchased 1,930,770 million *net* shares during the class period; (3) WPERP expended $21.7 million net funds; (4) WPERP suffered an estimated net loss of $12.9 million dollars.

U.S. Equity initially opposed the appointment of WPERP as the lead plaintiff.  U.S. Equity has since withdrawn its motion for lead plaintiff, however, and conceded that WPERP has asserted the largest financial interest (Dkt. No. 87).  All other candidates have either withdrawn or do not oppose WPERP's motion.

As there is only one remaining candidate, this order need not make a determination as to the adequacy of the calculations of WPERP's financial losses.  This order recognizes that a good argument can be made that the proper test for losses for purposes of identifying the plaintiff with the largest financial interest is a test based on the *Dura* decision.  But that issue is

United States District Court

For the Northern District of California

1  not presented for decision here as all candidates have either withdrawn or conceded that, even

2  under *Dura,* WPERP has the largest financial interest (*see* Dkt. No. 79).

3      This order further recognizes that an important consideration in selecting the lead

4  plaintiff is to estimate the class period.  Lead plaintiff candidates will typically stretch or shrink

5  the class period in order to jockey for position so as to wind up with the largest loss.  Once

6  again, this important consideration has fallen away in this case because only one applicant is

7  left standing.

8      Because all other candidates have either withdrawn or do not oppose WPERP's motion,

9  WPERP is presumptively the most adequate lead plaintiff.

10          **2.     Requirements of Typicality and Adequacy Under FRCP 23.**

11     Once the court determines which plaintiff has the largest financial interest, "the court

12  must appoint that plaintiff as lead, unless it finds that [that plaintiff] does not satisfy the

13  typicality or adequacy requirements" *In re Cavanaugh*, 306 F.3d at 732.  The district court

14  must inquire whether the putative lead plaintiff satisfies the requirements of FRCP 23(a).  *Id.* at

15  730.  The inquiry focuses on the "typicality" and "adequacy" requirements, as the other

16  requirements in FRCP 23 of numerosity and commonality would preclude class certification by

17  themselves.  *Id.* at 730 n.5.

18     The typicality requirement is satisfied when the putative lead plaintiff has suffered the

19  same injuries as absent class members, as a result of the same conduct by the defendants.

20  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  In the instant action, the

21  alleged artificial inflation and consequent market corrections of the price of LendingClub's

22  stock caused by defendants' allegedly false and misleading disclosures during the class period

23  caused WPERP and absent class members, alike, to suffer financial loss, all subject to the *Dura*

24  requirement.  As a result, WPERP's claims are based on the same legal theories as other class

25  members.

26     The adequacy requirement of Rule 23(a)(4) permits certification only if "the

27  representative parties will fairly and adequately protect the interests of the class."  The two key

28  inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiff and

United States District Court

For the Northern District of California

1   counsel will vigorously fulfill their duties to the class.  *Ellis v. Costco Wholesale Corp.*, 657

2   F.3d 970, 985 (9th Cir. 2011).

3         In its response to the lead plaintiff questionnaire, WPERP identified Jeremy Wolfson,

4   WPERPs Chief Investment Officer, as being the individual in charge of managing litigation

5   responsibilities.  In addition, two attorneys from the Los Angeles City Attorney's Office will be

6   advising Mr. Wolfson.  The City Attorney's Office has assisted in three other class actions in

7   which two other retirement plans of the City of Los Angeles have been the lead plaintiff.

8         This order concludes that WPERP has made an initial showing of typicality and

9   adequacy, subject to a final determination of these requirements at the time of a Rule 23 motion.

10  Because this order does not appoint plaintiffs' counsel at this time, the adequacy of counsel will

11  be determined at a later time.

12              **3.      Attempts to Rebut Presumption.**

13        Other plaintiffs may rebut the presumption that the putative lead plaintiff has satisfied

14  the requirements of typicality and adequacy.  *In re Cavanaugh*, 306 F.3d at 730.

15        U.S. Equity has withdrawn its motion for lead plaintiff but it initially opposed the

16  appointment of WPERP as the lead plaintiff, arguing that WPERP is inadequate to serve as lead

17  plaintiff "because it has selected conflicted counsel that cannot zealously advocate on behalf of

18  the Class" (Dkt. No. 79, 87).  U.S. Equity asserted that WPERP's counsel, Robbins Geller

19  Rudman & Dowd LLP, is serving as lead counsel in a parallel state court action.  WPERP has

20  not asked the Court for appointment of lead counsel at this time, however.  Moreover, Robbins

21  Geller is no longer lead counsel in the state action (Dkt. No. 86).

22        WPERP has the largest financial interest in the relief sought by the classes and

23  otherwise satisfies the typicality and adequacy requirements of FRCP 23.  WPERP is therefore

24  the most adequate lead plaintiff.

25                    **INSTRUCTIONS TO WPERP**

26        WPERP is appointed lead plaintiff.  The following sets forth the procedure for selecting

27  and approving class counsel.  Under the PSLRA, "[t]he most adequate plaintiff shall, subject to

28  the approval of the court, select and retain counsel to represent the class."  15 U.S.C. 78u-

4(a)(3)(B)(v).  Selection and approval require an assessment of the strengths, weaknesses, and experience of counsel as well as the financial burden — in terms of fees and costs — on the class.  *Wenderhold v. Cylink Corp.*, 191 F.R.D. 600, 602–03 (N.D. Cal. February 4, 2000) (Judge Vaughn R. Walker).

Any important decision made by a fiduciary should be preceded by due diligence.  A lead plaintiff is a fiduciary for the investor class.  No decision by the lead plaintiff is more important than the selection of class counsel.  Consequently, the lead plaintiff should precede its choice with due diligence.  The extent of such due diligence is a matter of judgment and reasonableness based on the facts and circumstances.

The lead plaintiff may consider its current counsel along with all other candidates but it may not give them special preference.  Considerations should include their fee proposal, their track record, the particular lawyers assigned to the case, their ability and willingness to finance the case, and their proposals for the prosecution of the case, or the factors set forth in the questionnaire.

The lead plaintiff should immediately proceed to perform its due diligence in the selection of class counsel, and to interview appropriate candidates.  Counsel wishing to apply to be considered for the role of lead counsel should promptly contact Jeremy Wolfson at:

> Water and Power Employees' Retirement Plan
> 111 North Hope Street
> Los Angeles, CA 90012
> 213-367-1692

WPERP shall promptly advertise for applicants and leave open the application period for class counsel until **SEPTEMBER 2, 2016**, and shall make a final decision as to the selection of counsel by **SEPTEMBER 16, 2016**.  Through counsel, WPERP shall move for the appointment and approval of their selected counsel no later than **September 29, 2016**.  The motion should be accompanied by declarations from the lead plaintiff explaining the due diligence undertaken by each with respect to the selection of class counsel.  The declarations should also explain why the counsel selected was favored over other potential candidates.  The declarations should be filed under seal and not served on defendants.  The motion for approval of lead plaintiff's

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   choice of counsel, however, should be served on defense counsel.  No hearing will be held on

2   the motion unless the Court determines that it would be beneficial.

3       Once class counsel is approved, the first order of business will be to file a consolidated

4   complaint within **42 CALENDAR DAYS** of the order appointing lead counsel.  Defendants may

5   then file a motion to dismiss (or answer) within **42 CALENDAR DAYS**.  Any such motion shall be

6   noticed on the normal 35-day track.

7       This appointment is conditioned on lead plaintiff submitting certification in writing,

8   within seven calendar days, that it has read this order and the questionnaire and is willing and

9   able to meet the schedule and its fiduciary obligations.  This should be signed both by the City

10  Attorney's Office and by Jeremy Wolfson, WPERP's Chief Investment Officer.

11

12      **IT IS SO ORDERED.**

13

14  Dated:  August 15, 2016.

15                                              WILLIAM ALSUP
                                                UNITED STATES DISTRICT JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28