Robert J. Liubicic (Bar No. 271465)
RLiubicic@milbank.com
MILBANK, TWEED, HADLEY & McCLOY LLP
2029 Century Park East, 33rd Floor
Los Angeles, California 90067
Telephone: 424.386.4000
Facsimile: 213.892.4725

*Attorneys for Defendant Renaud Laplanche*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re LENDINGCLUB SECURITIES LITIGATION | Case No. 3:16-cv-02627-WHA |
| | CLASS ACTION |
| This Document Relates To: | **DEFENDANT RENAUD LAPLANCHE'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| ALL ACTIONS. | |
| | Judge: Hon. William H. Alsup |
| | Courtroom: 8, 19th Floor |
| | Date: March 2, 2017 |
| | Time: 8:00 a.m. |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO DISMISS ....................................................................1

ISSUES TO BE DECIDED .........................................................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................2

PRELIMINARY STATEMENT ..................................................................................................2

BACKGROUND .........................................................................................................................3

LEGAL STANDARDS ...............................................................................................................4

ARGUMENT ..............................................................................................................................4

I.      PLAINTIFF'S SECTION 10(B) AND SECTION 11 CLAIMS FAIL BECAUSE THE COMPLAINT DOES NOT PLEAD A MATERIAL MISREPRESENTATION OR OMISSION ..........................................................................4

      A.    Plaintiff Engages In Improper "Puzzle Pleading" ...............................................5

      B.    Plaintiff Does Not Allege That The Statements Attributed To Mr. Laplanche Were False At The Time They Were Made ......................................6

              1.    Plaintiff Fails to Allege That The IPO Letter Was False Or Misleading......................................................................................6

              2.    Plaintiff Fails To Allege That Mr. Laplanche's Post-IPO Statements Were False Or Misleading...........................................7

      C.    Mr. Laplanche's Statements In The IPO Letter Are Non-Actionable Forward-Looking And Opinion Statements...............................................8

      D.    Mr. Laplanche's Post-IPO Statements Concerning The Company's Reputation And Growth Are Non-Actionable Puffery ...............................10

      E.    Plaintiff Fails to Allege Any Material Omissions Regarding Mr. Laplanche's Alleged Interest In Cirrix ...............................................11

II.     PLAINTIFF'S SECTION 10(B) CLAIM FAILS BECAUSE PLAINTIFF DOES NOT ALLEGE FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER .................................................................................................11

      A.    Plaintiff's Allegations Fail To Meet The Heightened Pleading Standards Of The PSLRA And Rule 9(b)........................................................11

      B.    Plaintiff Fails to Allege That Mr. Laplanche Acted With Scienter In Connection With Alleged Internal Control Issues.................................12

      C.    Plaintiff Fails To Allege That Mr. Laplanche Acted With Scienter In Connection With Cirrix-Related Transactions..........................................13

      D.    Plaintiff's Additional Scienter Allegations Regarding Mr. Laplanche Fail ..........14

              1.    Mr. Laplanche's Resignation Does Not Support A Strong Inference Of Scienter ......................................................................14

              2.    The Mere Existence Of A Governmental Inquiry Does Not Support A Strong Inference Of Scienter....................................14

              3.    Mr. Laplanche's Sarbanes-Oxley Certifications Do Not Support A Strong Inference Of Scienter ...............................................15

      E.    Any Inference Of Scienter Is Negated By The Absence Of Allegations That Mr. Laplanche Stood To Benefit From Any Fraud Alleged In The Complaint.........................................................................................15

III.    PLAINTIFF FAILS TO ALLEGE A "CONTROL PERSON" CLAIM ..........................16

CONCLUSION.........................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                            **Page(s)**

*Brodsky v. Yahoo! Inc.*,
  592 F. Supp. 2d 1192 (N.D. Cal. 2008) .................................................................6

*Brody v. Transitional Hosp. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ................................................................................6

*In re Bus. Objects S.A. Sec. Litig.*,
  2005 WL 1787860 (N.D. Cal. July 27, 2005)...............................................12, 15

*In re Cadence Design Sys. Sec. Lit.*,
  654 F. Supp. 2d 1037 (N.D. Cal. 2009) ...............................................................14

*Cali v. Rosenberg*,
  45 F.3d 435 (9th Cir. 1994) .................................................................................16

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.*,
  65 F. Supp. 3d 840 (N.D. Cal. 2014) ...................................................................12

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014)...........................................................................10, 11

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010) .........................................................................8, 10

*In re Daou Sys.*,
  411 F.3d 1006 (9th Cir. 2005) ...............................................................................4

*In re FVC.COM Sec. Litig.*,
  136 F. Supp. 2d 1031 (N.D. Cal. 2000) ...............................................................15

*Glazer Capital Mgmt. v. Magistri*,
  549 F.3d 736 (9th Cir. 2008) ...............................................................................15

*Gompper v. VISX*,
  298 F.3d 893 (9th Cir. 2002) .................................................................................7

*Kaplan v. Rose*,
  49 F.3d 1363 (9th Cir. 1994) .................................................................................4

*Lloyd v. CVB Fin.*,
  811 F.3d 1200 (9th Cir. 2016) .............................................................................10

*Matrixx Initiatives v. Siracusano*,
  563 U.S. 27 (2011)...............................................................................................11

*In re Maxwell Tech. Sec. Litig.*,
    18 F. Supp. 3d 1023 (S.D. Cal. 2014)...................................................................15

*McCasland v. FormFactor Inc.*,
    2008 WL 2951275 (N.D. Cal. July 25, 2008)..........................................................5

*Metzler Inv. GmbH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ...............................................................................12

*Okla. Firefighters Pension & Ret. Sys. v. IXIA*,
    50 F. Supp. 3d 1328 (C.D. Cal. 2014) ...................................................................12

*Omnicare v. Laborers Dist. Council Const. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015)...........................................................................................8, 9

*In re OmniVision Techs. Sec. Litig.*,
    937 F. Supp. 2d 1090 (N.D. Cal. 2013) .................................................................10

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp.*,
    774 F.3d 598 (9th Cir. 2014) ...................................................................................4

*Plichta v. SunPower Corp.*,
    790 F. Supp. 2d 1012 (N.D. Cal. 2011) .................................................................13

*Police Ret. Sys. of St. Louis v. Intuitive Surgical*,
    759 F.3d 1051 (9th Cir. 2014) ............................................................................9, 10

*Rubke v. Capital Bancorp Ltd.*,
    551 F.3d 1156 (9th Cir. 2009) .................................................................................9

*In re Splash Tech. Holdings Sec. Litig.*,
    160 F. Supp. 2d 1059 (N.D. Cal. 2001) ...................................................................6

*In re Stac Elecs. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ...................................................................................5

*Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*,
    552 U.S. 148 (2008)..................................................................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................................4

*In re U.S. Aggregates Sec. Litig.*,
    235 F. Supp. 2d 1063 (N.D. Cal. 2002) .................................................................14

*In re Van Wagoner Funds Sec. Litig.*,
    382 F. Supp. 2d 1173 (N.D. Cal. 2004) ...................................................................6

*In re Velti PLC Sec. Litig.*,
    2015 WL 5736589 (N.D. Cal. Oct. 1, 2015) .........................................................10

*Wenger v. Lumisys, Inc.*,
   2 F. Supp. 2d 1231 (N.D. Cal. 1998) ............................................................5, 8, 11

*In re Wet Seal Sec. Litig.*,
   518 F.Supp.2d 1148 (C.D. Cal. 2007) ...................................................................15

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994) ............................................................................9, 15

*Wozniak v. Align Tech.*,
   850 F. Supp. 2d 1029 (N.D. Cal. 2012) .............................................................7, 10

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ....................................................................13, 14, 15

**Statutes & Rules**

Federal Rules of Civil Procedure
   Rule 8(a) .....................................................................................................................1
   Rule 9(b) ...........................................................................................................1, 4, 11
   Rule 12(b)(6) ..............................................................................................................1

Private Securities Litigation Reform Act of 1995 .................................................... *passim*

Securities Act of 1933
   15 U.S.C. § 77k ..........................................................................................................4
   15 U.S.C. § 77o ........................................................................................................16

Securities Exchange Act of 1934
   15 U.S.C. § 78t ........................................................................................................16
   15 U.S.C. § 78u–4 ..................................................................................................1, 4
   15 U.S.C. § 78u–5 ..................................................................................................8, 9

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2          PLEASE TAKE NOTICE that on March 2, 2017, at 8:00 a.m., or as soon thereafter as

3    the matter may be heard before the Honorable William H. Alsup in Courtroom 8, 19th Floor,

4    450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Renaud Laplanche will, and

5    hereby does, move to dismiss all claims asserted against him in the Consolidated Complaint (the

6    "Complaint").  Mr. Laplanche moves for dismissal pursuant to Rules 8(a), 9(b), and 12(b)(6) of

7    the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995,

8    15 U.S.C. § 78u–4 ("PSLRA") on the grounds that lead plaintiff Water and Power Employees'

9    Retirement, Disability and Death Plan of the City of Los Angeles ("Plaintiff") fails to state a

10   claim for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the

11   "1934 Act") and Rule 10b–5 promulgated thereunder, and fails to state a claim for violations of

12   Sections 11 and 15 of the Securities Act of 1933 (the "1933 Act").  This motion is based on this

13   Notice of Motion and Motion to Dismiss; the following Memorandum of Points and

14   Authorities; Mr. Laplanche's Request for Judicial Notice; the Declaration of Robert J. Liubicic

15   in Support of Mr. Laplanche's Motion to Dismiss (the "Liubicic Decl.") and exhibits thereto;

16   the motion to dismiss filed by the LendingClub Defendants[1] (the "LendingClub Motion" or

17   "LendingClub Mot."), in which Mr. Laplanche joins to the extent applicable to Mr. Laplanche;

18   the motion to dismiss filed by the Underwriter Defendants[2] (the "Underwriter Motion" or

19   "Underwriter Mot."), in which Mr. Laplanche joins to the extent applicable to Mr. Laplanche;

20   the pleadings and records on file in the above-captioned action; the argument of counsel; and

21   such additional matters that the Court may deem proper.

22

23

24

25   [1] The LendingClub Defendants include LendingClub Corporation ("LendingClub" or the
     "Company"), Daniel T. Ciporin, Jeffrey Crowe, Carrie Dolan, Rebecca Lynn, John J. Mack,
26   Mary Meeker, John C. (Hans) Morris, Lawrence H. Summers and Simon Williams.

27   [2] The Underwriter Defendants include Morgan Stanley & Co. LLC, Goldman, Sachs & Co.,
     Credit Suisse Securities (USA) LLC, Citigroup Global Markets Inc., Allen & Company LLC,
28   Stifel, Nicolaus & Company, Incorporated, BMO Capital Markets Corp., William Blair &
     Company, L.L.C., and Wells Fargo Securities, LLC.

**ISSUES TO BE DECIDED**

1.      Should the Section 11 claim against Mr. Laplanche be dismissed where Plaintiff fails to sufficiently allege that the IPO Registration Statement contained any misrepresentation or omission of material fact at the time of filing?

2.      Should the Section 10(b) claim against Mr. Laplanche be dismissed where Plaintiff fails to sufficiently allege any materially false statements, facts sufficient to raise a strong inference of scienter, or facts establishing loss causation?

3.      Should the "control person" claims against Mr. Laplanche be dismissed where Plaintiff fails to sufficiently allege an underlying violation of the 1933 Act or 1934 Act?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

In addition to the arguments made in the LendingClub Motion and Underwriter Motion, Mr. Laplanche seeks dismissal based on three principal deficiencies in the Complaint.

*First*, the statements attributed to Mr. Laplanche are not actionable.  Specifically, the statements are either (i) not alleged to have been false or misleading at the time they were made; (ii) forward-looking statements covered by the PSLRA's safe harbor; or (iii) corporate puffery. Plaintiff also fails to match up most of these statements with the reasons why they are purportedly misleading, and thus engages in improper "puzzle pleading."

*Second*, Plaintiff has failed to plead facts showing that Mr. Laplanche made these statements with anything other than a good-faith belief in their accuracy, and thus cannot sustain its Section 10(b) claim.

*Third*, Plaintiff's claims for control person liability against Mr. Laplanche under Section 15 of the 1933 Act and Section 20(a) of the 1934 Act fail because Plaintiff fails to plead a primary securities violation against Mr. Laplanche.

## BACKGROUND[3]

Mr. Laplanche is LendingClub's founder.  ¶ 12.[4]  He served as its Chief Executive Officer ("CEO") and as a member of its board of directors through May 5, 2016, when he resigned.  *See id.*  In connection with its December 11, 2014 initial public offering (the "IPO"), LendingClub included in the attached prospectus (the "Prospectus")[5] a letter signed by Mr. Laplanche (the "IPO Letter").  The IPO Letter stated, among other things, that Mr. Laplanche "believe[d] Lending Club ha[d] the potential to profoundly improve people's financial lives over the coming decades."  Bafus Decl. Ex. A at 40.  It further stated that "[t]ransforming the banking system will not happen overnight," and the Company was "planning to lead the transformation over the span of a decade or two."  *Id.* at 41.

In 2015 and 2016, Mr. Laplanche spoke on multiple earnings calls and investor calls, presented at industry conferences, and gave interviews to the press.  *See, e.g.*, ¶¶ 12, 31, 32, 33.  Mr. Laplanche fielded questions regarding his thoughts on the direction of the Company, its business model, and other matters.  *See, e.g.*, ¶¶ 32, 93, 94.  Mr. Laplanche promoted the Company's growth and reputation, and opined on what he thought set LendingClub apart from its peers.  *See, e.g.*, ¶¶ 31, 33.

In an SEC filing on May 9, 2016, LendingClub announced that it accepted Mr. Laplanche's resignation as Chairman and CEO following a review by the Company's board of directors of certain near-prime loans that were sold to an investor in March and April 2016 in contravention of the investor's instructions.  *See* May 9, 2016 Form 8-K, Bafus Decl. Ex. D. The disclosure stated that the Company's remediation steps in relation to the sale of non-conforming loans included the termination or resignation of three senior managers.  *See id.*

---

[3] Mr. Laplanche joins and hereby incorporates by reference the Introduction and Statement of Facts sections in the LendingClub Motion.

[4] Unless otherwise specified, "¶ _" refers to paragraphs in the Complaint.

[5] A copy of the Prospectus is attached as Exhibit A to the Declaration of Marie C. Bafus (the "Bafus Decl.") accompanying the LendingClub Motion.  As discussed in the Request for Judicial Notice accompanying the LendingClub Motion, the Prospectus and other SEC filings may be considered on a motion to dismiss because they are (i) judicially noticeable, and/or (ii) referred to, quoted and relied upon in the Complaint.

**LEGAL STANDARDS**

To prevail on its Section 10(b) claim, Plaintiff must prove (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *See Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 157 (2008); *In re Daou Sys.*, 411 F.3d 1006, 1014 (9th Cir. 2005). A claim under Section 10(b) is subject to the heightened pleading requirements of Rule 9(b) and the PSLRA. *See* 15 U.S.C. § 78u–4; *Oregon Pub. Emps. Ret. Fund v. Apollo Grp.*, 774 F.3d 598, 604 (9th Cir. 2014); *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-14 (2007). Pursuant to Rule 9(b) and the PSLRA, the Complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

To state a claim under Section 11, Plaintiff must demonstrate that the Registration Statement contained a material false statement or omission of fact necessary for statements made not to be misleading. 15 U.S.C. § 77k(a); *Kaplan v. Rose*, 49 F.3d 1363, 1371 (9th Cir. 1994). Rule 9(b)'s heightened pleading standards also apply to Plaintiff's Section 11 claim because it sounds in fraud. *See* LendingClub Mot. at 7-8.

**ARGUMENT**

**I.      PLAINTIFF'S SECTION 10(B) AND SECTION 11 CLAIMS FAIL BECAUSE THE COMPLAINT DOES NOT PLEAD A MATERIAL MISREPRESENTATION OR OMISSION**

The statements cited by Plaintiff cannot sustain its Section 10(b) and Section 11 claims against Mr. Laplanche. First, the Complaint engages in improper "puzzle pleading" by failing to match up nearly all of the allegedly false statements attributed to Mr. Laplanche with the reasons why those statements are purportedly misleading. Second, most of the statements attributed to Mr. Laplanche in the Complaint are not actionable because they are either (i) not alleged to have

1   been false or misleading at the time they were made; (ii) forward-looking statements covered by

2   the PSLRA's safe harbor; or (iii) statements reflecting non-actionable opinion or puffery.

3           **A.      Plaintiff Engages In Improper "Puzzle Pleading"**

4           Nearly all of Plaintiff's allegations regarding allegedly false or misleading statements

5   attributed to Mr. Laplanche fail in the first instance because the Complaint does not "specify . . .

6   the reasons why [each] statement is misleading," as required by the PSLRA.  15 U.S.C.A. § 78u-

7   4(b)(1).  Allegations premised on each of these statements fail under Section 11 as well insofar

8   as the Complaint does not set forth "what is false or misleading about [the] statement, and why it

9   is false." *In re Stac Elecs. Litig.*, 89 F.3d 1399, 1409 (9th Cir. 1996) (internal quotation marks

10  omitted).

11          The Complaint engages in improper "puzzle pleading" because it is drafted in a

12  "hodgepodge style and 'often rambles through long stretches of material quoted from

13  defendants' public statements (many of which seem innocuous enough even by plaintiffs'

14  recounting) unpunctuated by any specific reasons for falsity.'" *McCasland v. FormFactor Inc.*,

15  2008 WL 2951275, at *7 (N.D. Cal. July 25, 2008) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42

16  F.3d 1541, 1553-54 (9th Cir. 1994) (*en banc*)).  The Complaint includes 13 paragraphs quoting

17  and describing approximately 22 statements attributed to Mr. Laplanche.  Nearly all of those

18  paragraphs are unaccompanied by any explanation as to how the statements are allegedly false or

19  misleading. *See* ¶¶ 31, 32, 33, 34, 75, 87, 93, & 96.[6]  Instead, Plaintiff relies on two paragraphs

20  broadly alleging that all the statements cited in the Complaint were false or misleading. *See* ¶¶

21  48, 73; *see also* ¶ 92 (alleging that the statements in ¶¶ 74-91 are false and misleading for the

22  reasons set forth in ¶ 73).

23          The Court should reject Plaintiff's "puzzle" Complaint because it makes it impossible to

24  discern the basis for Plaintiff's allegations of falsity for nearly all of the statements attributed to

25  Mr. Laplanche. *See Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1243-44 (N.D. Cal. 1998)

26  (observing that, "[i]n the context of securities class action complaints, courts have repeatedly

27
28  ---
    [6] The only statements attributed to Mr. Laplanche in the Complaint for which Plaintiff makes any
    direct effort to show falsity are those contained in ¶¶ 39, 47, 88 and 94.  The defects in Plaintiff's
    allegations with respect to these statements, and others, are addressed *infra* in Sections I.B-D.

1  lamented plaintiffs' counsels' tendency to place the burden [ ] on the reader to sort out the

2  statements and match them with the corresponding adverse facts to solve the 'puzzle' of

3  interpreting Plaintiffs' claims") (collecting cases) (alteration in original) (citation omitted); *see,*

4  *e.g., In re Splash Tech. Holdings Sec. Litig.*, 160 F. Supp. 2d 1059, 1073 (N.D. Cal. 2001)

5  (finding that "[t]he structure of the [complaint] renders it exceedingly difficult to discern

6  precisely which statements are alleged to be misleading," and dismissing the complaint on this

7  ground under Rule 8 and the PSRLA).

8          **B.**    **Plaintiff Does Not Allege That The Statements Attributed To Mr. Laplanche Were False At The Time They Were Made**

9

10        A statement is misleading if it "affirmatively create[s] an impression of a state of affairs

11  that differs in a material way from the one that actually exists." *Brody v. Transitional Hosp.*

12  *Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Here, Plaintiff's Section 11 and Section 10(b) claims

13  cannot be sustained because they are not premised on statements that were allegedly false at the

14  time they were made. *See, e.g., Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192 (N.D. Cal. 2008);

15  *In re Van Wagoner Funds Sec. Litig.*, 382 F. Supp. 2d 1173, 1181–82 (N.D. Cal. 2004).

16          **1.**    **Plaintiff Fails to Allege That The IPO Letter Was False Or Misleading**

17      ***Relationship with Cirrix.***  Plaintiff alleges that the IPO Letter falsely represented that

18  LendingClub was "providing equal access" to information "for all investors, small and large,"

19  because Cirrix allegedly had an undisclosed "working partnership" with LendingClub.  ¶ 39.

20  Plaintiff's vague allegation concerning a purported "working partnership" with Cirrix does not

21  make the representation in the IPO Letter false or misleading because Plaintiff fails to identify

22  any specific or unique tools, data or access that LendingClub gave to Cirrix but did not give to

23  other investors.  *See* LendingClub Mot. at 16 & § V.B.

24      ***Transparency and Sophistication of Loan Approval Process.***  The Complaint also

25  alleges that the statement in the IPO Letter that LendingClub "earn[s] the trust of [its] customers

26  by offering maximum transparency into our products' *terms and performance*" (Bafus Decl. Ex.

27  A at 40) (emphasis added)), was false because, among other conclusory allegations,

28

---

LendingClub's deficient internal controls allowed management to sell loans that fell below borrowers' express guidelines.  *See* ¶¶ 47, 48.

Plaintiff fails, however, to plead any facts showing that the Company did *not* offer investors "transparency into [its] products' *terms and performance*."  ¶ 47 (emphasis added); *see Wozniak v. Align Tech.*, 850 F. Supp. 2d 1029, 1036 (N.D. Cal. 2012) (statements not shown to be misleading where allegations did not directly contradict statements); *see also* LendingClub Mot. at 10-11 (Plaintiff does not establish any contradiction concerning statements about transparency, and the Registration Statement itself disclosed that LendingClub did not routinely verify income information furnished by borrowers).  In addition, Plaintiff's reliance on the sale of non-conforming loans in March and April 2016 to establish the falsity of the December 2014 IPO Letter is an improper attempt to plead "fraud by hindsight."  *Gompper v. VISX*, 298 F.3d 893, 897 (9th Cir. 2002) ("pleading fraud by hindsight" not permitted under the PSLRA).

### 2.    Plaintiff Fails To Allege That Mr. Laplanche's Post-IPO Statements Were False Or Misleading

***Credit and Liquidity Risks.***  With respect to Mr. Laplanche's statement in May 2015 that LendingClub did not "directly take credit risks" (¶ 32), or that LendingClub had "no intentions as a matter of business model, to start investing [in its] own balance sheet" (¶ 96), the Complaint fails to allege how these statements were inaccurate or misleading when made.  The Complaint does not, for example, allege any facts showing that LendingClub was directly taking credit risks or investing in its own balance sheet at or around the time these statements were allegedly made.  *See* LendingClub Mot. § V.B.

***Investor Base.***  With regard to Mr. Laplanche's statement during an earnings call in October 2015 in which he referred to "the very diverse investor database we've built very patiently over the last eight years" (¶ 88), the Complaint fails to allege facts showing that LendingClub's investor base was *not* diverse at the time of this statement.  Plaintiff points to LendingClub's alleged "long use of Cirrix" as an investor.  *See id.*  But the allegation that Cirrix was *one* of LendingClub's investors does not contradict Mr. Laplanche's statement.[7]  Moreover,

---

[7] In fact, Cirrix's investment in LendingClub was relatively small.  *See* LendingClub Mot. at 17 (Complaint concedes that Cirrix's 2015 investment of $174 million in whole loans represented

1    the Complaint omits the context for Mr. Laplanche's statement, which referred to the "diversity"

2    of LendingClub's investor base "in terms of both risk and duration."  *See* Q3 Earnings Call (Oct.

3    29, 2015), Liubicic Decl. Ex. A at 10.[8]

4          ***Comparisons to Mortgage Lending.***  The Complaint also references Mr. Laplanche's

5    December 2015 statement at a conference that "[o]ur situation is almost the opposite of what

6    you've seen in the mortgage space in 2008, where it was a very diffused and long chain of

7    intermediaries touching the loans . . . ."  ¶ 94.  Plaintiff argues that this statement is false because

8    "LendingClub was actually using the identical types of loans that led to the mortgage crash in

9    2008 – subprime loans and liar loans."  *Id.*  But Mr. Laplanche's statement drew a distinction

10   between the *number of intermediaries* touching LendingClub loans and mortgage loans in

11   2008—it did not contain any assertion as to LendingClub's use (or non-use) of subprime or "liar

12   loans."

13          **C.    Mr. Laplanche's Statements In The IPO Letter Are Non-Actionable**

14                 **Forward-Looking And Opinion Statements**

15         The PSLRA provides a "barrier at the pleading stage in the form of a safe harbor for

16   'forward-looking statements.'"  *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010).  A

17   statement falls within the PSLRA's safe harbor provision if:  (1) it is "identified as a forward-

18   looking statement, and is accompanied by meaningful cautionary statements identifying

19   important factors that could cause actual results to differ materially from those in the forward-

20   looking statement;" or (2) "the plaintiff fails to prove that the forward-looking statement" was

21   "made with actual knowledge by that person that the statement was false or misleading."  15

22   U.S.C. § 78u–5(c)(1); *see Cutera*, 610 F.3d at 1108.  Similarly, statements of opinion are not

23   actionable under the federal securities laws.  *See Omnicare v. Laborers Dist. Council Const.*

24   *Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015) ("a sincere statement of pure opinion is not

25   an 'untrue statement of material fact,' regardless whether an investor can ultimately prove the

26

27   only about 2% of LendingClub's $8.4 billion in originations in 2015).

28   [8] As discussed in the accompanying Request for Judicial Notice, because the Q3 Earnings Call is quoted in the Complaint, it can be incorporated by reference.

1  belief wrong") (citations omitted); *Wenger*, 2 F. Supp. 2d at 1245 ("Vague statements of opinion

2  are not actionable under the federal securities laws . . . .").

3       Plaintiff contends that Mr. Laplanche falsely stated in the IPO Letter: "I believe

4  LendingClub has the potential to profoundly improve people's financial lives over the coming

5  decades," and that LendingClub had a "mission of transforming the banking system." ¶ 47.

6  These forward-looking statements are protected under the first prong of the PSLRA's safe-harbor

7  because the IPO Letter and Prospectus specifically warned investors that these statements related

8  to potentially distant and uncertain events. *See* 15 U.S.C. § 78u-5(i) ("plans and objectives of

9  management for future operations" are forward-looking statements); *Police Ret. Sys. of St. Louis

10  v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059 (9th Cir. 2014) (finding that "classic growth and

11  revenue projections" were "forward-looking on their face" and also that CEO's statements

12  regarding his "expectations" for the future were likewise non-actionable); *Omnicare*, 135 S. Ct.

13  at 1327-28 (statements of opinion that include "words like 'I think' or 'I believe'" "convey some

14  lack of certainty as to the statement's content"). The IPO Letter stated that "[t]ransforming the

15  banking system will not happen overnight," and that LendingClub was "planning to lead the

16  transformation over the span of a decade or two." Bafus Decl. Ex. A at 41. The Prospectus also

17  contained a "SPECIAL NOTE REGARDING FORWARD-LOOKING STATEMENTS" on the

18  page immediately following the IPO Letter, which provided notice to investors that words like

19  "believe" (among others) as used in the Prospectus "convey uncertainty of future events or

20  outcomes, [and] are intended to identify forward-looking statements" that are "subject to a

21  number of risks, uncertainties and assumptions," including risks described in the Prospectus. *Id.*

22  at 42; *see In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413 (9th Cir. 1994) (optimistic

23  statements are not actionable when precise cautionary language elsewhere in the document

24  adequately discloses the risks involved).

25       The statements are also protected under the second prong of the PSLRA safe-harbor, as

26  Plaintiff fails to allege that Mr. Laplanche had actual knowledge that these statements were in

27  any way false or misleading when made. *See* 15 U.S.C. § 78u–5(c)(1). For the same reason,

28  these statements do not support Plaintiff's claim under Section 11. *See Rubke v. Capital*

1    *Bancorp Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009); *see also In re Velti PLC Sec. Litig.*, 2015 WL

2    5736589, at *23 (N.D. Cal. Oct. 1, 2015) (dismissing Section 11 claims premised on statements

3    of opinion), *appeal dismissed* (Apr. 4, 2016).

4              **D.    Mr. Laplanche's Post-IPO Statements Concerning The Company's**
                      **Reputation And Growth Are Non-Actionable Puffery**
5

6              Several of Mr. Laplanche's post-IPO statements cited in the Complaint are the type of

7    vague, optimistic statements that the Ninth Circuit has found cannot support a securities fraud

8    claim. *See Police Ret. Sys. of St. Louis*, 759 F.3d at 1059, 1060.  For example, the Complaint's

9    allegation that Mr. Laplanche "repeatedly portrayed [LendingClub] as the industry's 'good

10   guys'" (¶ 31), including in statements he made in 2013 and 2015 (*id.*), is the type of "subjective

11   assessment" that "hardly amounts to a securities violation," *Cutera*, 610 F.3d at 1111; *see also*

12   *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014)

13   ("It is well-established that general statements about reputation [and] integrity . . . are

14   inactionable 'puffery,' meaning that they are too general to cause a reasonable investor to rely

15   upon them.") (citation and internal quotation marks omitted); *In re OmniVision Techs. Sec.*

16   *Litig.*, 937 F. Supp. 2d 1090, 1103 (N.D. Cal. 2013) ("Many courts have rejected liability based

17   on 'vague, run-of-the-mill corporate optimism' including such language as: 'we're the leader in a

18   rapidly growing market,' [and] 'it's a great time for a company like ours[.]'").

19             Similarly, Mr. Laplanche's statements in 2015 and 2016 regarding LendingClub's

20   "deliberate" and "disciplined" growth (¶ 34), and the Company "growing only as fast as we

21   believe is responsible and compatible with solid risk management and a great user experience" (¶

22   75), constitute non-actionable subjective assessments.  *See Lloyd v. CVB Fin.*, 811 F.3d 1200,

23   1206-07 (9th Cir. 2016) (dismissing as "vague, optimistic statements" that "are not actionable"

24   comments "boasting that '[t]he overall credit quality of the loan portfolio is sound" and

25   "'superior' to those of its peers" and that the company has "limited its exposure to problem

26   credits"); *Wozniak*, 850 F. Supp. 2d at 1036 ("outstanding retail results," "business will be good

27   this year," and "industry leading growth," are non-actionable statements of corporate optimism).

28

Mr. Laplanche's statement in October 2015 that "we're patiently building [a] reputation and [the] trust [of customers]" (¶ 87) is also too general to cause a reasonable investor to rely upon it.  Nor does the Complaint allege that in October 2015 LendingClub was *not* building its reputation and the trust of its customers.  Similarly, Mr. Laplanche's statement at a conference in December 2015 that "[w]e have an immediate check with investors, a lot of transparency as to what the quality is, a lot of disclosures" (¶ 93) is non-specific puffery that cannot support a securities fraud claim.  *See City of Pontiac*, 752 F.3d at 183 ("general statements" about "compliance with ethical norms are inactionable 'puffery'") (citation omitted).[9]

### E. Plaintiff Fails to Allege Any Material Omissions Regarding Mr. Laplanche's Alleged Interest In Cirrix

Plaintiff fails to plead any facts showing that Mr. Laplanche had a duty to disclose his interest in Cirrix.  ¶ 43.  As an initial matter, the Complaint does not specifically identify any public statements that were rendered false or misleading based on the absence of such information.  *See* LendingClub Mot. at 9, 16.  The Complaint, moreover, fails to show that Mr. Laplanche's interest in Cirrix would have "altered the 'total mix' of information made available" to the public, *Matrixx Initiatives v. Siracusano*, 563 U.S. 27, 38 (2011) (citation omitted), or that Cirrix was a "related party" at the time of any of the disclosures cited in the Complaint.  *See* LendingClub Mot. at 15-16.

## II. PLAINTIFF'S SECTION 10(B) CLAIM FAILS BECAUSE PLAINTIFF DOES NOT ALLEGE FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER

Plaintiff's allegations, whether considered individually or collectively, do not support a strong inference that Mr. Laplanche acted with scienter in connection with any allegedly false statements cited in the Complaint.

### A. Plaintiff's Allegations Fail To Meet The Heightened Pleading Standards Of The PSLRA And Rule 9(b)

The Complaint's "Post-IPO Allegations" all concern alleged misleading statements as to

---

[9] In addition, the Complaint ignores the context of Mr. Laplanche's statement.  Mr. Laplanche was specifically contrasting LendingClub's transparency and disclosures to that of "specialty finance companies or banks" which "sell [risk] off to investors."  *See* Transcript of Credit Suisse Technology, Media & Telecom Conference (Dec. 2, 2015), Liubicic Decl. Ex. B at 5.

the amount of the Company's loan originations, its assumption of credit risk, and its internal controls. *See* ¶¶ 66-104.[10]   As an initial matter, the Section 10(b) claim should be dismissed because one is left to guess which of the scienter allegations in ¶ 73 correspond to which of the alleged statements set forth in ¶¶ 66-104. *See In re Bus. Objects S.A. Sec. Litig.*, 2005 WL 1787860, at *8 (N.D. Cal. July 27, 2005) ("[W]here, as here, a securities fraud complaint 'requires a laborious deconstruction and reconstruction of a great web of scattered, vague, redundant and often irrelevant allegations,' the spirit and letter of the PSLRA support dismissal.") (quoting *Wenger*, 2 F. Supp. 2d at 1243).   Plaintiff's conclusory assertion that Mr. Laplanche acted with scienter is insufficient without "specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008); *see Okla. Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1364 (C.D. Cal. 2014) ("[m]ere allegations" of "deficient internal controls are insufficient to give rise to a strong inference of scienter" absent "specific facts indicating that any of the individual defendants recklessly disregarded or intentionally exploited internal control deficiencies.").

### B.   Plaintiff Fails to Allege That Mr. Laplanche Acted With Scienter In Connection With Alleged Internal Control Issues

Plaintiff's allegation that Mr. Laplanche acted with scienter because the "'tone at the top' was not one that emphasized best business practices or honest and complete disclosures" (¶ 73) is so vague and generalized that it cannot, without more, support the conclusion that Mr. Laplanche acted deliberately or recklessly with respect to any allegedly false statements.   Courts have rejected such generalized allegations of corporate mismanagement as insufficient to show scienter. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.*, 65 F. Supp. 3d 840, 861 (N.D. Cal. 2014) ("Taken together, those facts paint a picture of corporate mismanagement and unrealized optimism, but they still do not evince such fraudulent intent or deliberate recklessness as to make the inference of scienter cogent.").

---

[10] The Complaint contains no allegations of scienter with respect to statements in ¶¶ 1-65.

Plaintiff also alleges that "senior LendingClub insiders," including Mr. Laplanche, "manipulated" or "altered" LendingClub "databases" at some unspecified point in time.  *See* ¶¶ 73, 116, 118.  There is an absence of allegations connecting Mr. Laplanche to any such conduct.  To the extent Plaintiff is alluding to LendingClub's disclosure in May 2016 of a "gap in preventative controls related to data management"—an allegation referenced elsewhere in the Complaint (*see* ¶ 54)—the Complaint does not support any inference, let alone a *strong* inference, that Mr. Laplanche was involved in or even knew about any such issues prior to the disclosure.  *See* LendingClub Mot. at 19-21 (noting that Plaintiff improperly asks the Court to infer the requisite state of mind based on *subsequent* discoveries).  Moreover, LendingClub's public disclosure of an issue relating to its "data management" cannot, without more, support a strong inference of scienter with respect to Mr. Laplanche.[11]  *See Plichta v. SunPower Corp.*, 790 F. Supp. 2d 1012 (N.D. Cal. 2011) (finding that "it [did] not follow" from a company's admission of falsified journal entries that "the corporation and its management acted with scienter" with respect to the falsified information).

## C.   Plaintiff Fails To Allege That Mr. Laplanche Acted With Scienter In Connection With Cirrix-Related Transactions

Plaintiff has failed to allege that Mr. Laplanche's ownership interest in Cirrix constituted a "related party transaction" (*see* ¶ 43; LendingClub Mot. at 15-16), or that any lack of additional disclosure related to such a transaction was material (*see* LendingClub Mot. at 16).  Given the paucity of facts alleged in connection with this subject, Plaintiff fails to offer any grounds to infer—let alone "strongly infer"—that Mr. Laplanche knew or believed that the disclosures relating to his interest in Cirrix should have been even more fulsome than they actually were.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009);

---

[11] As part of Plaintiff's scattershot approach to its pleadings relating to Mr. Laplanche, Plaintiff alleges that Mr. Laplanche took out loans for himself and family members in 2009 to "misleadingly increase LendingClub's reported platform volume," and suggests that this alleged conduct bears on the truth of statements made concerning internal controls at the time of the Company's December 2014 IPO.  ¶¶ 60, 118.  But the Complaint fails to allege any plausible connection between these events and Plaintiff's allegations concerning purported misstatements made in connection with LendingClub's IPO *over five years later* in December 2014.  *See also* LendingClub Mot. at 14 (Plaintiff makes no effort to plead that the December 2009 loans were material).

*see also* May 16, 2016 Form 10-Q, Bafus Decl. Ex. E at 60 ("the Company was aware of these investments before they were made…").

### D. Plaintiff's Additional Scienter Allegations Regarding Mr. Laplanche Fail

The Complaint levies several additional scattershot allegations against Mr. Laplanche (*see* ¶¶ 118-125), none of which, individually or collectively, creates a strong inference of scienter.

### 1. Mr. Laplanche's Resignation Does Not Support A Strong Inference Of Scienter

Contrary to Plaintiff's contention (*see* ¶¶ 105, 125), Mr. Laplanche's resignation does not create a strong inference of scienter because Plaintiff fails to allege that the resignation was the result of any fraud or other deliberately reckless wrongdoing by Mr. Laplanche. *See In re U.S. Aggregates Sec. Litig.*, 235 F. Supp. 2d 1063, 1074 (N.D. Cal. 2002) ("Plaintiff can point to no particularized allegation refuting the reasonable assumption that [an executive] was fired simply because the errors that [led] to the restatement occurred on his watch or because he failed adequately to supervise his department."). Mr. Laplanche's resignation around the time of the Company's public disclosure of potentially negative information does not, without more, support a strong inference of scienter. *See Zucco Partners*, 552 F.3d at 1002 ("Where a resignation occurs slightly before or after the defendant corporation issues a restatement, a plaintiff must plead facts refuting the reasonable assumption that the resignation occurred as a result of restatement's issuance itself in order for a resignation to be strongly indicative of scienter."); *see also In re Cadence Design Sys. Sec. Lit.*, 654 F. Supp. 2d 1037, 1050 (N.D. Cal. 2009) ("It is therefore quite plausible to infer that the resignations [of the executive who served as President, CEO and Director, along with other members of senior management], however forced, were the result of the company's poor performance and management.").

### 2. The Mere Existence Of A Governmental Inquiry Does Not Support A Strong Inference Of Scienter

Plaintiff's allegation that the U.S. Securities and Exchange Commission ("SEC") is investigating "LendingClub's buyback plan" and related communications with the Company's board of directors (¶ 119) does not establish scienter on the part of Mr. Laplanche regarding any

of the statements in the Complaint.  The mere existence of a governmental inquiry does not

support an inference of scienter against Mr. Laplanche because Plaintiff alleges no facts

underlying the investigation or its connection to any statements cited in the Complaint.  *See In*

*re Maxwell Tech. Sec. Litig.*, 18 F. Supp. 3d 1023, 1042-43 (S.D. Cal. 2014) (post-restatement

government investigation did not give rise to strong inference of scienter absent specific facts

regarding the investigation and its connection to plaintiffs' allegations); *Bus. Objects S.A. Sec.*

*Litig.*, 2005 WL 1787860, at *8 (ongoing SEC investigation did not support a strong inference

of scienter without facts connecting the investigation to plaintiffs' allegations).

### 3.  Mr. Laplanche's Sarbanes-Oxley Certifications Do Not Support A Strong Inference Of Scienter

Plaintiff alleges that Mr. Laplanche's Sarbanes-Oxley certifications are probative of

scienter.  *See* ¶ 121.  But "required certifications under Sarbanes-Oxley section 302(a) . . . add

nothing substantial to the scienter calculus." *Zucco*, 552 F.3d at 1003-04; *see also Glazer*

*Capital Mgmt. v. Magistri*, 549 F.3d 736, 747 (9th Cir. 2008) ("If we were to accept [the

plaintiff's] proffered interpretation of Sarbanes-Oxley, scienter would be established in every

case where there was an accounting error or auditing mistake made by a publicly traded

company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA.")

(alteration in original) (citation omitted).

### E.  Any Inference Of Scienter Is Negated By The Absence Of Allegations That Mr. Laplanche Stood To Benefit From Any Fraud Alleged In The Complaint

Plaintiff's scienter allegations are further undermined by its failure to allege that Mr.

Laplanche benefitted (or could have benefitted) in any way from the fraud alleged in the

Complaint.  As outlined in detail in the LendingClub Motion, *see* LendingClub Mot. at 22-23,

Mr. Laplanche did *not* sell any stock during the class period—thus negating any inference of

scienter.  *See Worlds of Wonder*, 35 F.3d at 1425 ("[T]he Officers' minimal sales of stock also

negates an inference of scienter"); *In re FVC.COM Sec. Litig.*, 136 F. Supp. 2d 1031, 1039

(N.D. Cal. 2000) ("[T]he fact that FVC's President and CEO . . . did not sell any of his stock . . .

negates any slight inference of scienter."); *In re Wet Seal Sec. Litig.*, 518 F.Supp.2d 1148, 1177-

78 (C.D. Cal. 2007) ("while allegations of insider sales are not required in securities fraud cases, the lack of any tangible, personal benefit here further weighs against the Officer Defendants having scienter") (internal quotation marks and citations omitted).  Rather, Mr. Laplanche's good-faith belief in his statements is confirmed by his substantial purchases of LendingClub stock during the class period.  *See* LendingClub Mot. at 23.

**III.    PLAINTIFF FAILS TO ALLEGE A "CONTROL PERSON" CLAIM**

Because the Complaint does not plead an underlying securities law violation, Plaintiff's control person claims against Mr. Laplanche must also be dismissed.  *See* 15 U.S.C. § 77o; 15 U.S.C. § 78t; *Cali v. Rosenberg*, 45 F.3d 435 (9th Cir. 1994).

CONCLUSION

For the foregoing reasons, the Complaint should be dismissed as against Mr. Laplanche.

Dated: January 20, 2017                    MILBANK, TWEED, HADLEY & McCLOY LLP

                                                            By:     /s/ Robert J. Liubicic
                                                                    Robert J. Liubicic

                                                            *Attorneys for Defendant Renaud Laplanche*