QUINN EMANUEL URQUHART & SULLIVAN, LLP
Diane M. Doolittle (Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:      (650) 801-5000
Facsimile:      (650) 801-5100

John Potter (Bar No. 165843)
johnpotter@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:      (415) 875-6600
Facsimile:      (415) 875-6700

David M. Grable (Bar No. 237765)
davegrable@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone:      (213) 443-3000
Facsimile:      (213) 443-3100

*Attorneys for Defendants LendingClub Corporation,
Daniel Ciporin, Jeffrey Crowe, Rebecca Lynn,
John Mack, Mary Meeker, John C. (Hans) Morris,
Lawrence Summers, and Simon Williams*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE LENDINGCLUB CORPORATION SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 3:16-CV-02627-WHA<br><br>CLASS ACTION<br><br>**LENDINGCLUB DEFENDANTS' AMENDED ANSWER TO THE AMENDED CONSOLIDATED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |

1  Defendants LendingClub Corporation ("LendingClub"), Daniel Ciporin, Jeffrey Crowe,

2  Rebecca Lynn, John Mack, Mary Meeker, John C. (Hans) Morris, Lawrence Summers, and Simon

3  Williams (collectively with LendingClub, the "LendingClub Defendants"), by and through their

4  undersigned counsel, hereby file the following Answer and Affirmative Defenses to the Amended

5  Consolidated Complaint for Violation of the Federal Securities Laws ("Complaint").

## ANSWER

7  The Complaint's introductory paragraph requires no response.

## INTRODUCTION

9  1.  Paragraph 1 contains legal conclusions to which no response is required.  To the

10  extent a response is required, the LendingClub Defendants admit that this is a purported securities

11  class action asserting claims under the Securities Act of 1933 ("Securities Act"), the Securities

12  Exchange Act of 1934 ("Exchange Act"), and SEC Rule 10b-5, otherwise deny the allegations

13  in this paragraph.

14  2.  The LendingClub Defendants admit that LendingClub represented itself in part as a

15  peer-to-peer lending marketplace.  The LendingClub Defendants further admit that Renaud

16  Laplanche was a LendingClub founder and, until May 2016, was its CEO.  The un-sourced

17  quotation speaks for itself, and the LendingClub Defendants lack knowledge or information

18  sufficient to form a belief about whether the purported quotation is accurate, and otherwise deny

19  the remaining allegations in paragraph 2.

20  3.  The LendingClub Defendants admit that Dr. Lawrence H. Summers is a former

21  U.S. Treasury Secretary, that John J. Mack is a former Morgan Stanley CEO, and that both have

22  served as LendingClub directors.  The un-sourced quotation speaks for itself, and the LendingClub

23  Defendants lack knowledge or information sufficient to form a belief about whether the purported

24  quotation is accurate, and otherwise deny the remaining allegations in paragraph 3.

25  4.  The LendingClub Defendants admit that LendingClub raised over $1 billion in its

26  December 2014 IPO, selling 66.7 million shares at $15 each, and its stock price rose to over $25

27  per share following the IPO.  The LendingClub Defendants deny the remaining allegations in

28  paragraph 4.

5.      The LendingClub Defendants admit that in 2016, LendingClub amended its Form 10-K Annual Report for 2015.  The LendingClub Defendants further admit that on May 10, 2016, LendingClub's stock price closed at $4.10 per share.  The un-sourced quotations speaks for themselves, and the LendingClub Defendants lack knowledge or information sufficient to form a belief about whether the purported quotations are accurate, and otherwise deny the remaining allegations in paragraph 5.

6.      The un-sourced quotation speaks for itself, and the LendingClub Defendants otherwise deny the allegations in paragraph 6.

## JURISDICTION AND VENUE

7.      Paragraph 7 contains legal conclusions to which no response is required.  To the extent a response is required, the LendingClub Defendants admit this Court has federal question jurisdiction in this case, and otherwise deny the remaining allegations in this paragraph.

8.      Paragraph 8 contains legal conclusions as to which no response is required.  The LendingClub Defendants admit that LendingClub has a location within the Northern District of California.  The LendingClub Defendants deny the remaining allegations in paragraph 8.

## PARTIES

9.      The LendingClub Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 9, and on that basis deny them.

10.      The LendingClub Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 10, and on that basis deny them.

11.      The LendingClub Defendants admit the allegations in paragraph 11.

12.      The LendingClub Defendants admit that Renaud Laplanche was a LendingClub founder and, until May 2016, was its CEO.  The LendingClub Defendants further admit that, as CEO, Mr. Laplanche signed certain of LendingClub's filings with the SEC and made statements in press releases, conference calls, and in other public forums.  The LendingClub Defendants deny the remaining allegations in paragraph 12.

13.      The LendingClub Defendants admit that Carrie Dolan was LendingClub's Chief Financial Officer during the period December 11, 2014 to May 6, 2016, and that Ms. Dolan

resigned on or about August 2, 2016.  The LendingClub Defendants further admit that, as CFO, Ms. Dolan signed certain of LendingClub's filings with the SEC and made statements in press releases, conference calls, and in other public forums.  The LendingClub Defendants deny the remaining allegations in paragraph 13.

14.     The LendingClub Defendants admit that Renaud Laplanche and Carrie Dolan took part in overseeing certain aspects of LendingClub's operations and financial controls, and, along with the Director Defendants, signed and/or authorized their signatures on documents required for completing LendingClub's IPO.  The LendingClub Defendants deny the remaining allegations in paragraph 14.

15.     Paragraph 15 contains legal conclusions to which no response is required.  To the extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

16.     The LendingClub Defendants admit that Daniel Ciporin is an outside director of LendingClub and that he signed or authorized his signature on the Registration Statement.  The LendingClub Defendants deny the remaining allegations in paragraph 16.

17.     The LendingClub Defendants admit that Jeffrey Crowe is an outside director of LendingClub and that he signed or authorized his signature on the Registration Statement.  The LendingClub Defendants deny the remaining allegations in paragraph 17.

18.     The LendingClub Defendants admit that Rebecca Lynn was an outside director of LendingClub and that she signed or authorized her signature on the Registration Statement.  The LendingClub Defendants deny the remaining allegations in paragraph 18.

19.     The LendingClub Defendants admit that John Mack is an outside director of LendingClub and that he signed or authorized his signature on the Registration Statement.  The LendingClub Defendants deny the remaining allegations in paragraph 19.

20.     The LendingClub Defendants admit that Mary Meeker is an outside director of LendingClub and that she signed or authorized her signature on the Registration Statement.  The LendingClub Defendants deny the remaining allegations in paragraph 20.

21.     The LendingClub Defendants admit that John C. (Hans) Morris is an outside director of LendingClub and that he signed or authorized his signature on the Registration

1    Statement.  The LendingClub Defendants deny the remaining allegations in paragraph 21.

2         22.    The LendingClub Defendants admit that Lawrence Summers is an outside director

3    of LendingClub and that he signed or authorized his signature on the Registration Statement.  The

4    LendingClub Defendants deny the remaining allegations in paragraph 22.

5         23.    The LendingClub Defendants admit that Simon Williams is an outside director of

6    LendingClub and that he signed or authorized his signature on the Registration Statement.  The

7    LendingClub Defendants deny the remaining allegations in paragraph 23.

8         24.    Paragraph 24 requires no response.

9         25.    The LendingClub Defendants admit that Morgan Stanley & Co. LLC; Goldman,

10   Sachs & Co.; Credit Suisse Securities USA LLC; Citigroup Global Markets Inc.; Allen &

11   Company LLC; Stifel, Nicolaus & Company, Incorporated; BMO Capital Markets Corp.; William

12   Blair & Company LLC; and Wells Fargo Securities LLC served as underwriters of LendingClub's

13   IPO and participated in preparing and disseminating the Registration Statement.  The LendingClub

14   Defendants deny the remaining allegations in paragraph 25.

15        26.    Paragraph 26 requires no response.

16                                    **BACKGROUND**

17        27.    The LendingClub Defendants admit that LendingClub operates an online

18   marketplace that attempts to match those seeking to borrow money with those seeking to invest in

19   loans.  The LendingClub Defendants further admit that the LendingClub marketplace offers

20   personal loans, consumer loans, educational loans, patient finance loans, and small business loans.

21   The LendingClub Defendants further admit that those seeking to invest in LendingClub loans can

22   do so based on term and credit characteristics.  The LendingClub Defendants deny the remaining

23   allegations in paragraph 27.

24        28.    The LendingClub Defendants admit that LendingClub generates revenue from

25   origination and servicing fees.  The un-sourced quotation speaks for itself, and the LendingClub

26   Defendants lack knowledge or information sufficient to form a belief about whether the purported

27   quotation is accurate.  Except as expressly admitted, the LendingClub Defendants otherwise deny

28   the allegations in paragraph 28.

29.     The LendingClub Defendants admit that LendingClub operates a marketplace where lenders can obtain good returns on their investments and borrowers can obtain reasonable loan rates, and that LendingClub operates in a market that was traditionally closed to individual investors.  The un-sourced quotations speaks for themselves, and the LendingClub Defendants lack knowledge or information sufficient to form a belief about whether the purported quotations are accurate.  The LendingClub Defendants deny the remaining allegations in paragraph 29.

30.     The LendingClub Defendants admit that potential borrowers can apply using its online loan platform and may then be matched with a lender or multiple lenders who may fund entire loans, portions of loans, and/or portions of pools of loans.  The LendingClub Defendants further admit WebBank is LendingClub's primary issuing bank partner and that WebBank originates loans facilitated through LendingClub's platform, and that LendingClub receives fees for loans originating from its online loan platform.  The LendingClub Defendants deny the remaining allegations in paragraph 30.

31.     The quoted material in Paragraph 31 speaks for itself and requires no response.  To the extent a response is required or the Complaint misquotes Renaud Laplanche, the LendingClub Defendants deny the allegations in paragraph 31.

32.     The quoted material in Paragraph 32 speaks for itself and requires no response.  To the extent a response is required or the Complaint misquotes LendingClub, the LendingClub Defendants deny the allegations in paragraph 32.

33.     The quoted material in Paragraph 33 speaks for itself and requires no response.  To the extent a response is required or the Complaint misquotes Renaud Laplanche, the LendingClub Defendants deny the allegations in paragraph 33.

**IPO-RELATED ALLEGATIONS**

34.     The LendingClub Defendants admit that LendingClub completed its IPO, utilizing a Form S-1 registration statement, on or about December 11, 2014.  The LendingClub Defendants further admit that, through its IPO, LendingClub raised over $1 billion by selling 66.7 million shares at $15 each.  The LendingClub Defendants deny the remaining allegations in paragraph 34.

35.     The quoted material in Paragraph 35 speaks for itself and requires no response.

1   LendingClub Defendants otherwise deny the allegations in paragraph 35.

2        36.    The quoted material in Paragraph 36 speaks for itself and requires no response.

3   LendingClub Defendants otherwise deny the allegations in paragraph 36.

4        37.    The quoted material in Paragraph 37 speaks for itself and requires no response.

5   LendingClub Defendants otherwise deny the allegations in paragraph 37.

6        38.    The LendingClub Defendants lack knowledge or information sufficient to form a

7   belief about the truth of the allegations in paragraph 38, and on that basis deny them.

8        39.    The LendingClub Defendants admit that as of close of business April 1, 2016,

9   LendingClub, Mr. Laplanche and Mr. Mack owned approximately 15%, 8%, and 8% of limited

10  partnership interests in Cirrix, respectively, for an aggregate interest of approximately 31%.  The

11  LendingClub Defendants deny the remaining allegations in paragraph 39.

12       40.    The LendingClub Defendants lack knowledge or information sufficient to form a

13  belief about the truth of the allegations in paragraph 40, and on that basis deny them.

14       41.    The LendingClub Defendants deny the allegations in paragraph 41.

15       42.    The LendingClub Defendants admit that by April 1, 2016, LendingClub, Mr.

16  Laplanche, and Mr. Mack owned a combined 31% of Cirrix.  The LendingClub Defendants lack

17  knowledge or information sufficient to form a belief about the truth of the remaining allegations in

18  paragraph 42, and on that basis deny them.  Separately, the footnote in paragraph 42 contains legal

19  conclusions to which no response is required.  To the extent a response is required, the

20  LendingClub Defendants deny the allegations in this footnote.

21       43.    The LendingClub Defendants deny the allegations in paragraph 43.

22       44.    The quoted material in Paragraph 44 speaks for itself and requires no response.

23  The LendingClub Defendants otherwise deny the allegations in paragraph 44.

24       45.    The quoted material in Paragraph 45 speaks for itself and requires no response.

25  The LendingClub Defendants otherwise deny the allegations in paragraph 45.

26       46.    Paragraph 46 contains no factual allegations and therefore requires no response.  To

27  the extent a response is required, the LendingClub Defendants deny the allegations in this

28  paragraph.

1    47.    The quoted material in Paragraph 47 speaks for itself and requires no response.

2    The LendingClub Defendants otherwise deny the allegations in paragraph 47.

3    48.    The quoted material in Paragraph 48 speaks for itself and requires no response.

4    LendingClub Defendants otherwise deny the allegations in paragraph 48.

5    49.    The LendingClub Defendants admit that after the end of the first quarter of 2016,

6    LendingClub became aware that approximately $15.1 million and $7.2 million in near-prime loans

7    were sold to a single institutional investor in March and April 2016, respectively.  The loans in

8    question failed to conform to the investor's express instructions as to a non-credit, non-pricing

9    element.  Certain personnel apparently were aware that the sale did not meet the investor's criteria.

10   In one case, involving $3.0 million in loans, an application date was changed in a live

11   LendingClub database in an attempt to appear to meet the investor's requirement, and the balance

12   of the loans were sold in direct contravention of the investor's direction.  The change in application

13   date was promptly remediated.  The LendingClub Defendants deny the remaining allegations in

14   paragraph 49.

15   50.    The quoted material in Paragraph 50 speaks for itself and requires no response.

16   The LendingClub Defendants otherwise deny the allegations in paragraph 50.

17   51.    The LendingClub Defendants admit that LendingClub disclosed material

18   weaknesses in internal controls in May 2016, and those disclosures speak for themselves.  The

19   LendingClub Defendants otherwise deny the allegations in paragraph 51.

20   52.    The quoted material in Paragraph 52 speaks for itself and requires no response.

21   The LendingClub Defendants otherwise deny the allegations in paragraph 52.

22   53.    The LendingClub Defendants admit that LendingClub identified 32 loans made in

23   the second half of December 2009 through the Lending Club platform, totaling approximately

24   $722,800 in originations and $25,000 in revenue, to LendingClub's former CEO, Renaud

25   Laplanche, and three of his family members.  LendingClub's review has found that these loans

26   were issued in order to help increase reported platform loan volume for December 2009.  The

27   LendingClub defendants deny the remaining allegations in paragraph 53.

28   54.    The quoted material in Paragraph 54 speaks for itself and requires no response.

1   The LendingClub Defendants deny the remaining allegations in paragraph 54.  Separately, the

2   footnote in paragraph 54 contains legal conclusions to which no response is required.  To the

3   extent a response is required, the LendingClub Defendants deny the allegations in this footnote.

### POST-IPO ALLEGATIONS

5   55.     The quoted material in Paragraph 55 speaks for itself and requires no response.  To

6   the extent a response is required or the Complaint misquotes Renaud Laplanche, the LendingClub

7   Defendants deny the allegations in paragraph 55.

8   56.     The quoted material in Paragraph 56 speaks for itself and requires no response.  To

9   the extent a response is required or the Complaint misquotes Renaud Laplanche, the LendingClub

10  Defendants deny the allegations in paragraph 56.

11  57.     The quoted material in Paragraph 57 speaks for itself and requires no response.  To

12  the extent a response is required or the Complaint misquotes Renaud Laplanche, the LendingClub

13  Defendants deny the allegations in paragraph 57.

14  58.     The LendingClub Defendants admit that during the year ended December 31, 2015,

15  Cirrix purchased $139.6 million of whole loans and $34.9 million of interests in whole loans from

16  LendingClub.  The LendingClub Defendants  lack knowledge or information sufficient to form a

17  belief about the truth of the remaining allegations in paragraph 58, and on that basis deny them.

18  59.     The LendingClub Defendants admit that on April 1, 2016, LendingClub closed a

19  $10.0 million investment for an ownership interest in Cirrix of approximately 15%.  As of close of

20  business April 1, 2016, LendingClub, Mr. Laplanche and Mr. Mack owned approximately 15%,

21  8%, and 8% of limited partnership interests in Cirrix, respectively, for an aggregate interest of

22  approximately 31%.  The LendingClub Defendants deny the remaining allegations in paragraph

23  59.

24  60.     The LendingClub Defendants deny the allegations in paragraph 60.

25  61.     The LendingClub Defendants admit that during the first quarter of 2016, a family

26  of funds, in which Cirrix participates as a holding company, purchased $114.5 million of whole

27  loans and interests in whole loans from LendingClub.  The LendingClub Defendants further admit

28  that Cirrix's LendingClub loan purchases in Q1 2016 amounted to 67% of LendingClub's loan-

origination growth.  The LendingClub Defendants deny the remaining allegations in paragraph 61.

62.     The quoted material in Paragraph 62 speaks for itself and requires no response. The LendingClub Defendants deny the remaining allegations in paragraph 62.

63.     The LendingClub Defendants admit that in February 2015, LendingClub filed a Form 10-K, reporting that in the fourth quarter of 2014, LendingClub's "marketplace facilitated over $1.4 billion of loan originations, of which approximately $0.2 billion were invested in through notes, $0.4 billion were invested in through certificates and $0.8 billion were invested in through whole loan sales."  The LendingClub Defendants deny the remaining allegations in paragraph 62.

64.     The quoted material in paragraph 64 speaks for itself and requires no response. The LendingClub Defendants otherwise deny the allegations in paragraph 64.

65.     The quoted material in paragraph 65 speaks for itself and requires no response. The LendingClub Defendants otherwise deny the allegations in paragraph 65.

66.     The LendingClub Defendants deny the allegations in paragraph 66.

67.     The quoted material in paragraph 67 speaks for itself and requires no response. The LendingClub Defendants otherwise deny the allegations in paragraph 67.

68.     The material purportedly quoted from LendingClub's May 5, 2015 earnings call speaks for itself and requires no response.  To the extent a response is required or the Complaint misquotes Renaud Laplanche, the LendingClub Defendants deny the allegations in paragraph 68.

69.     The LendingClub Defendants admit that on May 5, 2015, LendingClub filed a Form 10-Q with the SEC, which included financial and operating results for the quarter ended March 31, 2015.  The Form 10-Q included certifications by Renaud Laplanche and Carrie Dolan pursuant to the Sarbanes-Oxley Act.  The LendingClub Defendants otherwise deny the allegations in paragraph 69.

70.     The quoted material in paragraph 70 speaks for itself and requires no response. The LendingClub Defendants otherwise deny the allegations in paragraph 70.

71.     The quoted material in paragraph 71 speaks for itself and requires no response. The LendingClub Defendants otherwise deny the allegations in paragraph 71.

72.     The quoted material in paragraph 72 speaks for itself and requires no response. The LendingClub Defendants otherwise deny the allegations in paragraph 72.

73.     The quoted material in paragraph 73 speaks for itself and requires no response. The LendingClub Defendants otherwise deny the allegations in paragraph 73.

74.     The LendingClub Defendants admit that on August 4, 2015, LendingClub issued a Form 8-K that stated that LendingClub "had another very strong quarter," and that "[l]oan originations in the second quarter of 2015 were $1.91 billion, compared to $1.01 billion in the same period last year, an increase of 90% year-over-year." The Form 8-K also stated that LendingClub had an operating revenue of $96.1 million, adjusted EBITDA of $13.4 million, and a loss per share of $0.01. The LendingClub Defendants otherwise deny the allegations in paragraph 74.

75.     The LendingClub Defendants admit that on August 5, 2015, LendingClub issued a Form 10-Q that stated that LendingClub's "marketplace facilitated $1.9 billion of loan originations, of which approximately $0.3 billion were invested in through notes, $0.6 billion were invested in through certificates and $1.0 billion were invested in through whole loan sales." The Form 10-Q further stated that "[o]riginations are a key indicator of the adoption rate of our marketplace, growth of our brand, scale of our business, strength of our network effect, economic competitiveness of our products and future growth. Loan originations have grown significantly over time due to increased awareness of our brand, our high borrower and investor satisfaction ratings, the effectiveness of our borrower acquisition channels, a strong track record of loan performance and the expansion of our capital resources." The LendingClub Defendants otherwise deny the allegations in paragraph 75.

76.     The LendingClub Defendants admit that in LendingClub's Q2 2015 Form 10-Q, LendningClub stated the following: "We do not assume credit risk or use our own capital to invest in loans facilitated by our marketplace, except in limited circumstances and in amounts that are not material." The LendingClub Defendants otherwise deny the allegations in paragraph 76.

77.     The quoted material in paragraph 77 speaks for itself and requires no response. The LendingClub Defendants otherwise deny the allegations in paragraph 77.

78.     The quoted material in paragraph 79 speaks for itself and requires no response.  To the extent a response is required or the Complaint misquotes LendingClub's response to the U.S. Treasury Department, the LendingClub Defendants deny the allegations in this paragraph.

79.     The quoted material in paragraph 79 speaks for itself and requires no response. The LendingClub Defendants otherwise deny the allegations in paragraph 79.

80.     The material purportedly quoted from LendingClub's October 29, 2015 earnings call speaks for itself and requires no response.  To the extent a response is required or the Complaint misquotes Renaud Laplanche, the LendingClub Defendants deny the allegations in paragraph 80.

81.     The material purportedly quoted from LendingClub's October 29, 2015 earnings call speaks for itself and requires no response.  To the extent a response is required or the Complaint misquotes Renaud Laplanche, the LendingClub Defendants deny the allegations in paragraph 81.

82.     The quoted material in paragraph 82 speaks for itself and requires no response. The LendingClub Defendants otherwise deny the allegations in paragraph 82.

83.     The quoted material set forth in paragraph 72 and referenced in paragraph 83 speaks for itself and requires no response.  The LendingClub Defendants otherwise deny the allegations in paragraph 83.

84.     The quoted material in paragraph 84 speaks for itself and requires no response. The LendingClub Defendants otherwise deny the allegations in paragraph 84.

85.     The LendingClub Defendants deny the allegations in paragraph 85.

86.     The material purportedly quoted in paragraph 86 speaks for itself and requires no response.  To the extent a response is required or the Complaint misquotes Renaud Laplanche, the LendingClub Defendants deny the allegations in this paragraph.

87.     The material purportedly quoted in paragraph 87 speaks for itself and requires no response.  To the extent a response is required or the Complaint misquotes Renaud Laplanche, the LendingClub Defendants deny the allegations in this paragraph.

88.     The quoted material in paragraph 88 speaks for itself and requires no response.

1    The LendingClub Defendants deny the remaining allegations in paragraph 88.

2            89.      The LendingClub Defendants admit that on Febrary 11, 2016, LendingClub hosted

3    a conference call to discuss Q4 2015 earnings.  The material purportedly quoted from that call

4    speaks for itself and requires no response.  To the extent a response is required or the Complaint

5    misquotes RenaudLaplanche, the LendingClub Defendants otherwise deny the allegations in

6    paragraph 89.

7            90.      The quoted material in paragraph 90 speaks for itself and requires no response.

8    The LendingClub Defendants otherwise deny the allegations in paragraph 90.

9            91.      The quoted material in paragraph 91 speaks for itself and requires no response.

10   The LendingClub Defendants otherwise deny the allegations in paragraph 91.

11           92.      The quoted material in paragraph 92 speaks for itself and requires no response.

12   The LendingClub Defendants otherwise deny the allegations in paragraph 92.

13           93.      The quoted material in paragraph 93 speaks for itself and requires no response.

14   The LendingClub Defendants otherwise deny the allegations in paragraph 93.

15           94.      The LendingClub Defendants deny the allegations in paragraph 94.

16                              **LENDINGCLUB'S STATEMENTS**

17           95.      The LendingClub Defendants admit that in its May 2016 Form 8-K, LendingClub

18   disclosed that the company's board of directors accepted the resignation of Renaud Laplanche as

19   Chairman and CEO following an internal review of sales of $22 million in near-prime loans to a

20   single investor (later identified as the Jeffries Group), in contravention of the investor's express

21   instructions as to a non-credit and non-pricing element.  The LendingClub Defendants deny the

22   remaining allegations in paragraph 95.

23           96.      The LendingClub Defendants admit that in its May 2016 Form 8-K, LendingClub

24   disclosed that LendingClub discovered a failure to inform the board's Risk Committee of personal

25   interests held in a third party fund while LendingClub was contemplating an investment in the

26   same fund.  The LendingClub Defendants deny the remaining allegations in paragraph 96.

27           97.      The LendingClub Defendants admit that on May 9, 2016, LendingClub's stock

28   price closed at $4.62 per share.  The LendingClub Defendants further admit that LendingClub's

stock price continued to fall for the next four days.  The LendingClub Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 97, and on that basis deny them.

98.     The LendingClub Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 98, and on that basis deny them.

99.     The LendingClub Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 99, and on that basis deny them.

100.    The LendingClub Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 100, and on that basis deny them.  Separately, the footnote in paragraph 100 contains legal conclusions to which no response is required.  To the extent a response is required, the LendingClub Defendants deny the allegations in this footnote.

101.    The LendingClub Defendants admit that on May 16, 2016, LendingClub filed a Form 10-Q with the SEC.  The material purportedly quoted from LendingClub's Form 10-Q requires no response.  The LendingClub Defendants deny the remaining allegations in paragraph 101.

102.    The material purportedly quoted from LendingClub's Form 10-Q requires no response.  The LendingClub Defendants deny the remaining allegations in paragraph 102.

103.    The LendingClub Defendants admit that on May 9, 2016, LendingClub received a grand jury subpoena from the Department of Justice.  The LendingClub Defendants lack knowledge or information sufficient to form a belief about the truth of the other allegations in paragraph 103, and on that basis deny them.

104.    The LendingClub Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 104, and on that basis deny them.

105.    The LendingClub Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 105, and on that basis deny them.

106.    The un-sourced quotation speaks for itself, and the LendingClub Defendants lack knowledge or information sufficient to form a belief about whether the purported quotation is accurate.  The LendingClub Defendants admit that Jeff Bogan started at LendingClub in April

2012 and worked as the Head of its Institutional Group; that Adelina Grozdanoza previously worked at Morgan Stanley and started at LendingClub in July 2013 and worked as the Vice President of its Institutional Group; that Matt Wierman previously worked at Morgan Stanley and started at LendingClub in October 2011 and worked as its Senior Vice President of Marketing; and that each of them was involved to some degree in preparing LendingClub for its IPO and each departed LendingClub in 2016.  The LendingClub Defendants deny the remaining allegations in paragraph 106.

107.    The LendingClub Defendants admit that on June 28, 2016, LendingClub disclosed that it determined that adjustments were made to the valuation of certain fund assets that were not consistent with generally accepted accounting principles, and that remedial measures were being taken.  The LendingClub Defendants deny the remaining allegations in paragraph 107.

## SCIENTER ALLEGATIONS

108.    The LendingClub Defendants admit that LendingClub identified 32 loans made in the second half of December 2009 through the Lending Club platform, totaling approximately $722,800 in originations and $25,000 in revenue, to LendingClub's former CEO, Renaud Laplanche, and three of his family members.  LendingClub's review has found that these loans were issued in order to help increase reported platform loan volume for December 2009.  The LendingClub defendants deny the remaining allegations in paragraph 108.

109.    The LendingClub Defendants admit that Renaud Laplanche pledged some of his LendingClub stock to secure personal loans from a third-party financial institution, which was not disclosed to the board during subsequent deliberations.  The LendingClub Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 109, and on that basis deny them.

110.    The LendingClub Defendants admit that LendingClub disclosed material weaknesses in internal controls in May 2016, and those disclosures speak for themselves.  The LendingClub Defendants further admit that Renaud Laplanche and Carrie Dolan executed certifications pursuant to the Sarbanes-Oxley Act in 2014 and 2015, which likewise speak for themselves.  Separately, the footnote in paragraph 110 contains legal conclusions to which no

response is required.  The LendingClub Defendants deny the remaining allegations in paragraph 110.

111.    The LendingClub Defendants admit that LendingClub disclosed material weaknesses in internal controls in May 2016, and those disclosures speak for themselves.  The LendingClub Defendants further admit that Renaud Laplanche and Carrie Dolan executed certifications pursuant to the Sarbanes-Oxley Act in 2014 and 2015, which likewise speak for themselves.  The LendingClub Defendants deny the remaining allegations in paragraph 111.

112.    The LendingClub Defendants admit that at certain points in time, Renaud Laplanche, Carrie Dolan, and Jason Altieri constituted LCA's Investment Policy Committee, and that this Committee was responsible for managing LCA's investments in loans.  The LendingClub Defendants deny the allegations in paragraph 112.

113.    The LendingClub Defendants admit that Carrie Dolan resigned from LendingClub in August 2016.  The LendingClub Defendants further admit that between November 3, 2015 and December 14, 2015, Carrie Dolan sold 135,000 shares of LendingClub stock for over $1.8 million.  The LendingClub Defendants lack knowledge or information regarding the Bloomberg report and on that basis denies those allegations.  The LendingClub Defendants deny the remaining allegations in paragraph 113.

114.    The LendingClub Defendants admit that LendingClub has implemented changes in internal controls over financial reporting, including remedial efforts in response to weaknesses identified by LendingClub.  The LendingClub Defendants otherwise deny the allegations in paragraph 114.

115.    The LendingClub Defendants admit that Renaud Laplanche and several senior managers either resigned or were terminated in 2016 and LendingClub's disclosures regarding those events speak for themselves.  The LendingClub Defendants further admit that LendingClub hired an outside consulting firm to support management processes.  The un-sourced quotation speaks for itself, and the LendingClub Defendants lack knowledge or information sufficient to form a belief about whether the purported quotation is accurate.  The LendingClub Defendants otherwise deny the allegations in paragraph 115.

**LOSS CAUSATION/ECONOMIC LOSS**

116.     The LendingClub Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 116, and on that basis deny them.

117.     The LendingClub Defendants deny the allegations in paragraph 117.

**PRESUMPTION OF RELIANCE**

118.     Paragraph 118 contains legal conclusions to which no response is required.  To the extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

119.     The LendingClub Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 119, and on that basis deny them.

**CLASS ACTION ALLEGATIONS**

120.     Paragraph 120 contains legal conclusions to which no response is required.  To the extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

121.     Paragraph 121 contains legal conclusions to which no response is required.  To the extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

122.     Paragraph 122 contains legal conclusions to which no response is required.  To the extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

123.     Paragraph 123 contains legal conclusions to which no response is required.  To the extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

124.     Paragraph 124 contains legal conclusions to which no response is required.  To the extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

125.     Paragraph 125 contains legal conclusions to which no response is required.  To the extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

**COUNT I**

126.     Paragraph 126 requires no response.

127.     Paragraph 127 contains legal conclusions to which no response is required.  To the extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

128.     Paragraph 128 contains legal conclusions to which no response is required.  To the extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

129.     The LendingClub Defendants admit that LendingClub is the registrant for the IPO and issuer of its shares.  Paragraph 129 further contains legal conclusions to which no response is required.  To the extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

130.     Paragraph 130 contains legal conclusions to which no response is required.  To the extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

131.     Paragraph 131 contains legal conclusions to which no response is required.  To the extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

132.     Paragraph 132 contains legal conclusions to which no response is required.  To the extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

133.     Paragraph 133 contains legal conclusions to which no response is required.  To the extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

134.     The LendingClub Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 134, and on that basis deny them.

135.     Paragraph 135 contains legal conclusions to which no response is required.  To the extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

136.     The LendingClub Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 136, and on that basis deny them.

137.     The LendingClub Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 137, and on that basis deny them.

## **COUNT II**

138.     Paragraph 138 requires no response.

139.     Paragraph 139 requires no response.

140.     Paragraph 140 contains legal conclusions to which no response is required.  To the extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

141.     The LendingClub Defendants admit that Mr. Ciporin was a general partner at Canaan Partners, a related entity of which, Canaan VII LP, owned 15.7% of LendingClub prior to the IPO; and that KPCB Holdings, Inc. owned 4.6% of LendingClub prior to the IPO.  The

1    LendingClub Defendants further admit that these two entities owned 20.3% of LendingClub prior

2    to the IPO, and sold 5.7 million shares in the IPO for total proceeds of $85.5 million.  The

3    LendingClub Defendants lack knowledge or information sufficient to form a belief about the truth

4    of the remaining allegations in paragraph 141, and on that basis deny them.

5          142.    The LendingClub Defendants lack knowledge or information sufficient to form a

6    belief about the truth of the allegations in paragraph 142, and on that basis deny them.

7                                    **COUNT III**

8          143.    Paragraph 143 requires no response.

9          144.    The LendingClub Defendants deny the allegations in paragraph 144.

10         145.    The LendingClub Defendants deny the allegations in paragraph 145.

11         146.    The LendingClub Defendants lack knowledge or information sufficient to form a

12   belief about the truth of the allegations in paragraph 146, and on that basis deny them.

13                                   **COUNT IV**

14         147.    Paragraph 147 requires no response.

15         148.    Paragraph 148 contains legal conclusions to which no response is required.  To the

16   extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

17         149.    Paragraph 149 contains legal conclusions to which no response is required.  To the

18   extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

19         150.    Paragraph 150 contains legal conclusions to which no response is required.  To the

20   extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

21         151.    Paragraph 151 contains legal conclusions to which no response is required.  To the

22   extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

23         152.    Paragraph 152 contains legal conclusions to which no response is required.  To the

24   extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

25         153.    Paragraph 153 contains legal conclusions to which no response is required.  To the

26   extent a response is required, the LendingClub Defendants deny the allegations in this paragraph.

27                                 **PRAYER FOR RELIEF**

28         The LendingClub Defendants deny that the plaintiff is entitled to any of the requested

1  relief and deny all allegations in the Complaint's Prayer for Relief.

2  **<u>DEMAND FOR JURY TRIAL</u>**

3  No response is required to the Complaint's demand for a jury trial.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## THE LENDINGCLUB DEFENDANTS' AFFIRMATIVE DEFENSES

Subject to the responses above, the LendingClub Defendants allege and assert the following defenses in response to the allegations, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.  In addition to the affirmative defenses described below, subject to its responses above, the LendingClub Defendants specifically reserve all rights to allege additional affirmative defenses that become known through the course of discovery or further investigation in this action.

## AFFIRMATIVE DEFENSE NO. 1:  DUE DILIGENCE

1.     Lead Plaintiff's and the putative class's claims are barred, in whole or in part, because, as contemplated in Section 11(b)(3) of the Securities Act, the Director Defendants exercised due diligence in connection with the IPO.  The Director Defendants acted at all times in good faith and had no knowledge, were not reckless in not knowing, and in the exercise of reasonable care could not have known of any alleged misstatements or omissions of material fact in the prospectus filed with the United States Securities and Exchange Commission (the "SEC") on December 11, 2014 (the "Prospectus") and the Registration Statement, and all prior versions or subsequent amendments thereof (including materials incorporated by reference) (collectively, the "Offering Documents") identified in the Complaint.  At all relevant times, the Director Defendants conducted a reasonable and diligent investigation and had reasonable grounds to believe, and did believe at the time the Offering Documents became effective, that the statements in the Offering Documents were true and that there were no omissions of material fact.

2.     The Director Defendants' reasonable and diligent investigation included an extensive review of LendingClub's business and business practices, including a review of numerous LendingClub financial, business, and operational documents; communications with LendingClub employees regarding the business; the use of experts and consultants to advise the Director Defendants in connection with the IPO; and a review of other available information regarding LendingClub's business and operations.  With respect to portions of the Offering Documents purporting to be made on the authority of accounting, financial, or other experts retained to assist in preparing the Offering Documents, the Director Defendants had no reasonable

grounds to believe, and did not believe, that such statements were untrue, that there was any omission of material fact necessary to make the statements therein not misleading, or that such part of the Offering Documents did not fairly represent the statement of the expert.

### AFFIRMATIVE DEFENSE NO. 2:  GOOD FAITH

3.     Pursuant to Section 15 of the Securities Act, Lead Plaintiff's and the putative class's claims are barred, in whole or in part, because the Director Defendants had no knowledge of or reasonable ground to believe in the existence of the purported facts by reason of which the liability of any defendant is alleged in the Complaint to exist, including but not limited to any of the alleged misstatements and omissions in Paragraphs 32-37, 43-45, and 49-50 of the Complaint because, among other reasons, the Director Defendants relied in good faith upon professionals, including legal and finance professionals, as well as auditors, who advised the Director Defendants in connection with the IPO and subsequent matters alleged in the Complaint.  Pursuant to Section 20(a) of the Exchange Act, Lead Plaintiff's and the putative class's claims are barred, in whole or in part, because LendingClub acted in good faith and did not directly or indirectly induce any acts which are alleged in the Complaint to establish the liability of any defendant, including but not limited to the purported making of the alleged misstatements or omissions referenced above, because, among other reasons, LendingClub relied in good faith upon professionals, including legal and finance professionals, as well as auditors, who advised LendingClub in connection with the IPO and subsequent matters alleged in the Complaint.

### AFFIRMATIVE DEFENSE NO. 3:  REASONABLE RELIANCE ON PROFESSIONALS

4.     There were numerous professionals involved in preparing the Offering Documents, and in preparing subsequent public statements and disclosures by LendingClub, including those alleged in the Complaint to be misstatements and/or omissions.  As discussed above, the LendingClub Defendants used experts and consultants to advise the LendingClub Defendants in connection with the IPO and subsequent matters alleged in the Complaint.  Lead Plaintiff's and the putative class's claims are barred, in whole or in part, because the LendingClub Defendants reasonably relied in good faith on the relevant professional judgments, opinions, and advice of such professionals, including legal and finance professionals, as well as auditors.

**AFFIRMATIVE DEFENSE NO. 4:  PLAINTIFF'S KNOWLEDGE & RELIANCE**

5.        Lead Plaintiff's and the putative class's claims are barred, in whole or in part, to the extent that they purchased LendingClub stock with actual or constructive knowledge of the facts that they allege were misrepresented or omitted in the Complaint.  For example, certain putative class members were employed by LendingClub or were investors on or otherwise had knowledge of the LendingClub platform or business.  In addition, the complaint publicly filed in California Superior Court on February 26, 2016 in *Geller v. LendingClub Corp., et al.*, Case No. CIV-537300 ("*Geller*"), alleged misstatements based on credit risk in connection with loans and the transparency between LendingClub and platform participants, (*see, e.g.*, *Geller* Compl. at ¶¶ 49, 54, 57), subjects that the Complaint also alleges were the basis for purported misstatements (*see, e.g.*, Compl. ¶¶ 33, 35).  Putative class members who purchased LendingClub stock with knowledge of the facts they allege were misrepresented or omitted assumed the risk that the value of those securities would decline.  To the extent Lead Plaintiff or the putative class relied on the alleged misrepresentations or omissions, if any were in fact made, such reliance was unreasonable in light of, among other reasons, information that was publicly disclosed or available or because specific putative class members were privy to information regarding LendingClub's business or platform, as set out above.

**AFFIRMATIVE DEFENSE NO. 5:  FORWARD-LOOKING STATEMENTS**

6.        Lead Plaintiff's and the putative class's claims are barred, in whole or in part, because certain alleged misstatements, including in the Offering Documents, were forward-looking statements, were identified as such, and were accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statements, and are thus non-actionable under the bespeaks caution doctrine, as well as, for any alleged misstatements that were not issued in connection with the IPO, under the Private Securities Litigation Reform Act's safe harbor provision, 15 U.S.C. § 78u-5(c). The Registration Statement makes clear on page 42 that it includes "forward-looking statements" and that "[t]he words 'believe,' 'may,' 'will,' 'potentially,' 'estimate,' 'continue,' 'anticipate,' 'intend,' 'could,' 'would,' 'predict,' 'plan' and 'expect,' and similar expressions that convey

1  uncertainty of future events or outcomes, are intended to identify forward-looking statements."

2  The Registration Statement also identifies factors that could cause actual results to differ from the

3  contents of such statements, such as its reference on page 14 to "navigating complex and evolving

4  regulatory and competitive environments."

5  <u>**AFFIRMATIVE DEFENSE NO. 6:  NEGATIVE CAUSATION**</u>

6        7.      Pursuant to Section 11(e) of the Securities Act, Lead Plaintiff's and the putative

7  class's claims are barred, in whole or in part, because the damages for which Lead Plaintiff claims

8  the LendingClub Defendants are responsible represent something other than the depreciation in

9  value of the offered securities resulting from such part of the Offering Documents, with respect to

10  which liability is asserted in the Complaint, not being true or omitting a material fact required to

11  be stated therein or necessary to make the statements therein not misleading.  The LendingClub

12  Defendants intend to present expert testimony regarding other plausible causes of the depreciation

13  in value of LendingClub securities, including but not limited to market forces and unrelated

14  developments in LendingClub's industry and business.

15  <u>**AFFIRMATIVE DEFENSE NO. 7:  DAMAGES UNDER SECTION 11**</u>

16        8.      Lead Plaintiff's and the putative class's claims are barred, in whole or in part,

17  because each of the LendingClub Defendants is not liable under Section 11(e) of the Securities

18  Act for alleged damages in excess of the total price at which the securities were offered to the

19  public.

20  <u>**AFFIRMATIVE DEFENSE NO. 8:  STATUTE OF LIMITATIONS**</u>

21        9.      Section 13 of the Securities Act requires an action to be brought within one year

22  "after the discovery of the untrue statement or the omission, or after such discovery should have

23  been made by the exercise of reasonable diligence."  Lead Plaintiff's and the putative class's

24  Securities Act claims are therefore barred to the extent that the purported misstatements or

25  omissions alleged in the Complaint were discovered, or should have been discovered by the

26  exercise of reasonable diligence, (1) for LendingClub, before May 16, 2015, one year before

27  LendingClub was first named as a defendant in this action, and (2) for the Director Defendants,

28  before December 9, 2015, one year before the Director Defendants were first named as defendants

in this action, including because specific putative class members were privy to the LendingClub information that Lead Plaintiff contends was misrepresented or omitted, through employment by LendingClub, investment on or other knowledge of the LendingClub platform or business, or otherwise.

10.     Lead Plaintiff's and the putative class's claims under the Exchange Act and Rule 10b-5 are barred pursuant to 28 U.S.C. § 1658(b) to the extent that the purported misstatements or omissions alleged in the Complaint were discovered, or should have been discovered by the exercise of reasonable diligence, (1) for LendingClub, before May 16, 2014, two years before LendingClub was first named as a defendant in this action, and (2) for the Director Defendants, before December 9, 2014, two years before the Director Defendants were first named as defendants in this action, including because specific putative class members were privy to the LendingClub information that Lead Plaintiff contends was misrepresented or omitted, through employment by LendingClub, investment on or other knowledge of the LendingClub platform or business, or otherwise.  28 U.S.C. § 1658(b) requires an action to be brought no later than two years after "the plaintiff did discover or a reasonably diligent plaintiff would have 'discover[ed] the facts constituting the violation'—whichever comes first," *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010); *see also* 28 U.S.C. § 1658(b).

**<u>AFFIRMATIVE DEFENSE NO. 9:  TRUTH ON THE MARKET</u>**

11.     Lead Plaintiff's and the putative class's claims are barred, in whole or in part, because the matters alleged in the Complaint to be the subject of misrepresentation and omissions, including but not limited to alleged misstatements and omissions in Paragraphs 32-37, 43-45, and 49-50 of the Complaint, were publicly disclosed or were in the public domain, including, but not limited to, via disclosures and information made available to the public by LendingClub and via allegations in the complaint filed in California Superior Court on February 26, 2016 in *Geller* alleging misstatements based on credit risk in connection with loans and the transparency between LendingClub and platform participants, (*see, e.g.*, *Geller* Compl. at ¶¶ 49, 54, 57), subjects that the Complaint also alleges were the basis for purported misstatements (*see, e.g.*, Compl. ¶¶ 33, 35), and, as such, were available to Lead Plaintiff and other alleged members of the putative class and

were at all times reflected in the price of LendingClub securities purchased or acquired after such information was made public.

## AFFIRMATIVE DEFENSE NO. 10:  PROPORTIONATE LIABILITY

12.     Any recovery to which Lead Plaintiff or the putative class may be entitled from each of the LendingClub Defendants is limited to the percentage of responsibility of that LendingClub Defendant in proportion to the total fault of all covered persons, pursuant to the proportionate liability provisions of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(f).


DATED: July 27, 2017                  Respectfully Submitted,


                                      QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP

                                      By: _____
                                      Diane M. Doolittle
                                      *Attorneys for Defendants LendingClub Corporation,*
                                      *Daniel Ciporin, Jeffrey Crowe, Rebecca Lynn,*
                                      *John Mack, Mary Meeker, John C. (Hans) Morris,*
                                      *Lawrence Summers, and Simon Williams*