JOHN T. JASNOCH (281605)
jjasnoch@scott-scott.com
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA  92101
Telephone:  619-233-4565
         - and –
BETH A. KASWAN
bkaswan@scott-scott.com
WILLIAM C. FREDERICKS
wfredericks@scott-scott.com
SEAN MASSON
smasson@scott-scott.com
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY  10169
Telephone:  212-223-6464

MARK C. MOLUMPHY (168009)
mmolumphy@cpmlegal.com
ALEXANDRA P. SUMMER (266485)
asummer@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:  650-697-6000

Counsel for Intervenors and the Certified Plaintiff
Class in *In re LendingClub Corp. S'holder Litig.,*
No. CIV 537000 (Cal. Super. Ct., San Mateo Cty.)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re LENDINGCLUB CORPORATION SECURITIES LITIGATION, | Case No. 3:16-cv-02627-WHA |
| | <u>CLASS ACTION</u> |
| This Document Relates To: | **DECLARATION OF MARK C. MOLUMPHY IN SUPPORT OF INTERVENORS' SUBMISSION RE JOINT CLASS NOTICE** |
| ALL ACTIONS. | |
| | Judge:      The Hon. William Alsup |

I, Mark C. Molumphy, declare as follows:

1.     I am an attorney duly admitted to practice before all courts of the State of California and all federal district courts located in California.  I am a partner with Cotchett, Pitre, & McCarthy, LLP, ("CPM"), the Co-Lead Counsel for the Intervenors and the Certified Plaintiff Class ("State Plaintiffs") in *In re LendingClub Corp. S'holder Litig.,* No. CIV 537000 (Cal. Super. Ct., San Mateo Cty.) ("State Action").  I submit this Declaration in support of State Plaintiffs' request for approval of the Joint Notice and Joint Summary Notice, true and correct copies of which are attached hereto as **Exhibits A and B**.  This Declaration is based upon my personal knowledge and if called to testify, I could and would do so competently as to the matters set forth herein.

2.     On October 20, 2017, this Court issued an order (1) granting State Plaintiffs' motion to intervene in the Federal Action; (2) denying the Federal Plaintiff's motion to enjoin the State Court Action; and (3) granting the Federal Plaintiff's motion for class certification of both 1933 Act and Exchange Act claims.  *See* Order re Class Certification, Dkt. 252.  With respect to issuance of class notice, this Court set up a two-step process, directing the parties to first submit a proposed joint notice to Judge Weiner in the State Court Action for her review and approval, and then to submit the proposed joint notice (together with any revisions approved or proposed by the State Court) to this Court within 21 days of the Order (*i.e.,* by November 10, 2017).

3.     The State Plaintiffs have done everything possible to comply with this Court's Order.

4.     First, on October 25, 2017, we made an *ex parte* application to Judge Weiner, informing her of this Court's Order and desire to coordinate class notice, and asking her to defer dissemination of a notice she had previously approved in the State Action.  Judge Weiner granted the application.  Further, in an effort to meet this Court's November 10 deadline, Judge Weiner directed the parties to submit a revised form of joint notice by November 6, 2017, and then to appear on her *ex parte* calendar at 2:00 p.m. on November 7, 2017 to discuss the proposed forms of joint notice.

5.     On November 1, 2017, having heard nothing from counsel for the Federal Plaintiff, I and my co-counsel, John Jasnoch from Scott+Scott, prepared and distributed to all counsel proposed forms of joint notice, which included information requested by this Court in its Class Certification Order.

DECL. OF MARK C. MOLUMPHY ISO INTERVENORS' SUBMISSION RE JOINT CLASS NOTICE; Case No. 3:16-cv-02627-WHA

6.      Unfortunately, counsel for Federal Plaintiff responded and requested that we agree to defer sending out any class notice, notwithstanding this Court's directions to all parties to prepare a joint notice.  The Federal Plaintiffs also declined to provide comments on the drafts that we prepared, and instead later circulated (on November 3, 2017) its own form of proposed notice that was drafted for separate use as a standalone "federal notice," rather than as a "joint notice".

7.      In order to meet Judge Weiner's November 6 deadline to submit a joint notice for her approval, and this Court's November 10 deadline to submit a joint notice for its approval, my firm reviewed the proposed notice from the Federal Plaintiffs and circulated revised versions of the Joint Notices to all parties in both actions.  Defendants' counsel in the State and Federal Action immediately responded, and provided suggested line edits to the Joint Notice.  We incorporated all of the Defendants' edits.  However, we did not receive any proposed line edits from the Federal Plaintiffs.

8.      At the end of the day on November 6, 2017, as directed by Judge Weiner, State Plaintiffs submitted to the State Court **both** (a) the proposed Joint Notice agreed upon by State Plaintiffs and Defendants, **and** (b) at the Federal Plaintiff's request, the form of "federal notice only" provided before. I was not provided with any alternative, joint notice by the Federal Plaintiff's counsel.  I also emailed all counsel and again notified them of the *ex parte* hearing the following day, November 7, 2017, in Judge Weiner's courtroom, to consider our application to approve a form of joint notice.

9.      On November 7, 2017, at 2:00 p.m., all parties in the State Court Action appeared before Judge Weiner to consider State Plaintiffs' *ex parte* application and the competing versions of notice that had been submitted.   True and correct copies of our Ex Parte Application and my supporting Declaration, attaching the proposed forms of notice, are attached hereto as **Exhibits C and D**.  Counsel for the Federal Plaintiff did not appear, nor did it submit anything in writing to the State Court to explain why the proposed form of Joint Notice agreed to by the State Plaintiffs and all Defendants was somehow defective.  Judge Weiner initially delayed the hearing in the event the Federal Plaintiff was simply running late and then, after waiting, confirmed that she had read the competing versions and approved (with minor technical edits) the proposed forms of Joint Notice that State Plaintiffs had submitted.  A true and correct copy of the Order Granting Plaintiffs' Ex Parte Application to Approve Joint Class

2

1  Notices is attached hereto as **Exhibit E**.  Judge Weiner directed that the approved forms of Joint Notice

2  be sent to this Court for its own review and consideration.

3        10.    At 4:52 p.m. on November 9, 2017 – two days ***after*** the State Court had approved the

4  forms of Joint Notice that we submitted to Judge Weiner, and just ***one day*** before this Court's deadline

5  for filing proposed forms of joint notice – Jason Forge, counsel for the Federal Plaintiff, emailed the

6  State Plaintiffs with a brand new form of proposed notice which, for the first time, was in the form of a

7  "joint notice."  A true and correct copy of the November 9, 2017 email is attached hereto as **Exhibit F**.

8  This was the first time we received any form of joint notice from the Federal Plaintiffs.

9       I declare under penalty of perjury under the laws of the United States of America that the

10  foregoing is true and correct.  Executed on November 10, 2017, in Burlingame, California.

11

12                      */s/ Mark C. Molumphy*

13                      MARK C. MOLUMPHY

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

DECL. OF MARK C. MOLUMPHY ISO INTERVENORS' SUBMISSION RE JOINT CLASS
NOTICE; Case No. 3:16-cv-02627-WHA

# EXHIBIT A

[EXHIBIT A]

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN MATEO

| | |
|---|---|
| IN RE LENDINGCLUB CORPORATION SHAREHOLDER LITIGATION | Master File No.: CIV 537300 |

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE LENDINGCLUB CORPORATION SECURITIES LITIGATION | Case No.: 3:16-cv-02627-WHA |

### [PROPOSED] NOTICE OF PENDENCY OF CLASS ACTIONS

*Courts have authorized this notice. This is not a solicitation from a lawyer.*
*You are not being sued.*

**NOTICE OF PENDENCY OF CLASS ACTIONS: Please be advised that your rights may be affected by (1) a class action lawsuit pending in a state court if you purchased or otherwise acquired shares of the common stock of LendingClub Corporation, Inc. ("LendingClub" or the "Company") between December 11, 2014 and June 8, 2015, and (2) by a class action lawsuit pending in a federal court if you purchased or otherwise acquired shares of the common stock of LendingClub between December 11, 2014 and May 6, 2016, inclusive. This Notice explains important rights you may have. Please read it carefully.**

- Class action lawsuits are pending in the Superior Court of the State of California, San Mateo County (the "State Court") and in the United States District Court for the Northern District of California (the "Federal Court") alleging violations of the Securities Act of 1933 (the "1933 Act") against (1) LendingClub, (2) certain of LendingClub's officers and directors (the "Individual Defendants") who signed the Registration Statement and incorporated Prospectus (the "Offering Materials") for LendingClub's December 11, 2014 Offering, and (3) the underwriters of the Offering (the "Underwriter Defendants").[1] In addition, the class action in

---

[1] The Individual Defendants consist of Renaud Laplanche (former CEO and director) and Carrie Dolan (former CFO), and current or former Company directors Daniel Ciporin, Jeffrey Crowe, Rebecca Lynn, John Mack, Mary Meeker, John Morris, Lawrence Summers, and Simon Williams. The Underwriter Defendants consist of Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC (formerly known as Goldman, Sachs & Co.), Credit Suisse Securities (USA) LLC, Citigroup Global Markets Inc., Allen & Company LLC, Stifel, Nicolaus & Company, Incorporated, BMO Capital Markets Corp., William Blair & Company, L.L.C., and Wells Fargo Securities, LLC. LendingClub, the Individual Defendants, and the Underwriter Defendants are collectively referred to as "Defendants."

the Federal Court asserts claims against LendingClub and Individual Defendants Laplanche and Dolan under the Exchange Act of 1934 (the "Exchange Act").

- By orders dated June 22, 2017 and September 19, 2017, the State Court has decided that the lawsuit pending before it (the "State Action") should proceed as a class action on behalf of a "class" and a "subclass" (i.e., a group and a sub-group of people and entities) that could include you.  Subject to certain exclusions discussed below, the State Court has certified a Class (the "State Class") that consists of "all persons and entities who, between December 11, 2014 and June 8, 2015, inclusive, purchased or otherwise acquired shares of the common stock of LendingClub . . . pursuant to and/or traceable to the Registration Statement and Prospectus".  The December 11, 2014 through June 8, 2015 time period is known as the "1933 Act Class Period."  The State Court has also certified a subclass (the "State Subclass") which, subject to certain exclusions discussed below, consists of "all persons and entities who purchased shares of the common stock of LendingClub directly in the December 11, 2014 Initial Public Offering".  The State Action asserts claims under §§ 11 and 15 of the "1933 Act" on behalf of the State Class, and claims under §§ 12(a)(2) and 15 of the 1933 Act on behalf of the State Subclass.

  By order dated October 20, 2017, the Federal Court also decided that the lawsuit pending before it (the "Federal Action") should proceed as a class action on behalf of a class that could include you.  Subject to certain exclusions discussed below, the Federal Court has certified a class (the "Federal Class") that consists of "All persons and entities who purchased or otherwise acquired the common stock of LendingClub Corporation during the period from December 11, 2014 through May 6, 2016 (for claims under the Exchange Act of 1934) and all those who purchased or acquired LendingClub common stock during the period from December 11, 2014 through June 8, 2015 (for claims under the 1933 Securities Act) and were damaged thereby."  The December 11, 2014 through May 6, 2016 time period is known as the "Exchange Act Class Period."  The Federal Action, like the State Action, also asserts claims under §§ 11 and 15 of the 1933 Act on behalf of all persons and entities who, during the shorter 1933 Act Class Period, purchased or otherwise acquired shares of LendingClub common stock.  Unlike the State Action, however, the Federal Action (a) does not assert any claims under § 12(a)(2) of the 1933 Act, but (b) does include claims under §§ 10(b) and 20(a) of the Exchange Act on behalf of those who purchased LendingClub shares during the longer Exchange Act Class Period.

- To the extent that you purchased LendingClub shares only during the period between June 9, 2015 and May 6, 2016, inclusive (i.e., during the broader Exchange Act Class Period but after the shorter 1933 Act Class Period), you are NOT a member of the State Class, but may be a member of the Federal Class.

- The two actions overlap in some respects and differ in others.  *See* "To what extent are the State and Federal actions the same or different?" at item 3 of the "Basic Information" section below.

- Class members will be notified of any settlement or recovery in either the State or the Federal Action, at which point they will have an opportunity to opt out of the settlement if they elect

to do so.  Class members will also be notified of any other recovery in either action which may affect them.  To date, however, no settlement or recovery has been obtained in either action, nor can there be any assurance that any settlements or recovery will be reached.

| YOUR LEGAL RIGHTS AND OPTIONS IN THESE LAWSUITS | |
|---|---|
| **Do Nothing** | ***Stay in both lawsuits.  Await the outcomes.  Share in possible benefits.  Give up certain rights.***<br><br>By doing nothing, you are choosing to stay in both the State Class (and State Subclass) and the Federal Class (as applicable).  You will be permitted to share in any applicable recoveries that may result from the class actions, but you will give up your rights to sue Defendants in a separate lawsuit for (a) the claims asserted in the State Action to the extent you are a member of the State Class, and (b) the claims asserted in the Federal Action to the extent you are a member of the Federal Class.  In addition, as a State and/or Federal Class member (as applicable), you will be bound by past and any future court rulings on, or the settlement of, the claims against Defendants in the State and/or Federal Actions (as applicable).  The Federal and State Actions are scheduled to go to trial in September and October, 2018, respectively, and to the extent you do nothing, you will be bound by any judgment(s) that are entered following any trial. |
| **Ask to Be Excluded from the State Class (and Subclass) and/or the Federal Class** | ***Get out of these lawsuits.  Get no benefits.  Keep your rights.***<br><br>If you opt out of the State Class and Subclass and the Federal Class (meaning you say in writing that you do not want to be included in this lawsuit), you will <u>not</u> be entitled to any recovery that may result from either of these class actions, but you will <u>not</u> be bound by any past or future rulings for or against Defendants.  You will be free to pursue your own claims against Defendants on your own or as part of a different lawsuit.  You may also opt out of the Class in one action, while staying in the Class in the other – in which case you will be bound only by any future rulings entered in the action that you do not opt-out of (but will not be entitled to any recovery that may result from the action you do opt out of). |

These rights and options, and the deadlines to exercise them, are further explained in this Notice.

## BASIC INFORMATION ABOUT THE LAWSUITS

**1.     Why did I get this Notice?**

Records indicate that you may have purchased LendingClub common stock between

December 11, 2014 and May 6, 2016, inclusive, and/or that you may have purchased shares of LendingClub common stock directly in LendingClub's December 11, 2014 Offering.  This Notice explains that both the State and Federal Courts have allowed, or "certified," classes in lawsuits that may affect you.  You have legal rights and options that you may exercise.  Judge Marie S. Weiner of the Superior Court of California for San Mateo County is overseeing the State Action pending in State Court.  That case is captioned *In re LendingClub Corporation Shareholder Litigation,* Case No. CIV537300.  Judge William H. Alsup of the United States District Court for the Northern District of California is overseeing the Federal Action pending in Federal Court.  That case is captioned *In re LendingClub Corporation Securities Litigation,* Case No. 3:16-cv-02627-WHA.

**2.     What are these lawsuits about?**

The Federal Action alleges that Defendants LendingClub, Laplanche and Dolan defrauded investors who purchased Lending Club common stock during the Exchange Act Class Period by making certain misstatements and omissions concerning LendingClub's internal controls, data integrity and security, and related-party transactions, and that these Defendants violated § 10(b) of the Exchange Act, as well as SEC Rule 10b-5 promulgated thereunder, by making such statements or omissions knowingly or with extreme recklessness, and caused the price of LendingClub common stock to be artificially inflated during the period from December 11, 2014 through May 6, 2016.  Lead Plaintiff in the Federal Action also asserts claims on behalf of investors who purchased Lending Club common stock during the shorter 1933 Act Class Period which allege that all Defendants violated §§ 11 and 15 of the 1933 Act because LendingClub's Offering Materials contained material misstatements and/or omissions concerning LendingClub's internal controls, data integrity and security, and related-party transactions.

The State Action also alleges that all Defendants violated § 11 of the federal Securities Act of 1933 (the "1933 Act") because the Offering Materials, pursuant to which LendingClub shares were sold in the Offering, allegedly contained materially false or misleading statements and/or omitted to disclose material information required to be disclosed concerning (a) LendingClub's internal controls, data integrity and security, and related-party transactions, as well as (b) LendingClub's allegedly usurious loan rates and defective loan underwriting practices.  The State Action also alleges that LendingClub and Defendant Renaud Laplanche violated § 12(a)(2) of the 1933 Act, and that, pursuant to § 15 of the 1933 Act, all of the Individual Defendants are liable for LendingClub's alleged violations of § 11 and § 12(a)(2) as "controlling persons" of LendingClub.  The State Action does not assert claims under the Exchange Act.

Defendants deny that they made any false or misleading statements or omissions that violated the Exchange Act or that LendingClub's Offering Documents contained any untrue statements of material fact or material omissions in violation of the 1933 Act, or that they otherwise violated the Exchange Act or 1933 Act.

**3.     To what extent are these lawsuits the same or different?**

The two actions overlap in some respects and differ in others.

○ Both the State and Federal Actions assert claims under §§ 11 and 15 of the 1933 Act on behalf of those who purchased LendingClub common stock during the 1933 Act Class Period (i.e. between December 11, 2014 and June 8, 2015, inclusive), based on allegations that the Defendants made misrepresentations and omitted material information in the Offering Materials used to conduct LendingClub's initial public offering in December 2014.

○ The State Action asserts certain additional theories of liability under the 1933 Act on behalf of purchasers during the 1933 Act Class Period, that are not contained in the Federal Action. More particularly, the State Action asserts additional 1933 Act theories and claims based on (a) Defendants' failure to adequately disclose LendingClub's allegedly usurious loan rates and defective loan underwriting practices in the Offering Materials; and (b) certain Defendants' alleged violations of § 12(a)(2) of the 1933 Act. The Federal Action does not contain such claims or theories of liability. For this reason, it is possible that the amount recoverable at trial on behalf of persons with 1933 Act claims may be higher in the State Action. However, it is also possible that the amount recoverable at trial on behalf of persons with 1933 Act claims would not be lower in the Federal Action because (1) such persons (to the extent that they have claims under § 11) are presumptively entitled to calculate certain damages based upon the trading value of Lending Club shares on the date that the Federal Action was first brought (May 16, 2016), whereas (2) in the State Action there is a risk that a court would find that the true value of LendingClub shares on the date that the State Action was first brought (February 26, 2016) was less favorable to 1933 Act claimants. Ultimately, whether a greater amount of damages is recoverable in the State or in the Federal Action on a given class member's 1933 Act claims (if any) is a complex question, which depends on the resolution of complex issues of law and the timing of particular class members' purchases and sales of LendingClub shares.

○ The State Action may also be subject to dismissal depending upon the outcome of a case currently pending before the United States Supreme Court (*Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*,), which challenges whether state courts have jurisdiction over the 1933 Act claims that have been brought in the State Action. In such an event, those who purchased during the 1933 Act Class Period would continue to be entitled to share in any recovery on 1933 Act claims that may be obtained in the Federal Action, *provided* that they do not "opt out" of the Federal Class (see item 15 below).

○ Only the Federal Action asserts claims under the Exchange Act.

○ To the extent that you purchased Lending Club shares only during the period between June 9, 2015 and May 6, 2016, inclusive (i.e., during the broader Exchange Act Class Period but after the shorter 1933 Act Class Period), you are NOT a member of the State Class but may be a member of the Federal Class.

**4.     What is a class action and who is involved?**

In a class action, one or more people or entities called "class representatives" sue on behalf of themselves and other persons or entities who have the same or similar claims (with such persons or entities referred to collectively as the "class" or "class members"). In the State Action, the

[State] Class Representatives are Kathy Geller, Dylan Youngblood, and Alton Consulting LLC, and the Subclass Representative is Dylan Youngblood.  In the Federal Action, the [Federal] Class Representative is the Water and Power Employees' Retirement Disability and Death Plan of the City of Los Angeles.  The persons and entities that filed the suits are called "plaintiffs" and the persons or entities being sued are called "defendants."  The State and Federal Courts will resolve the issues for all class and subclass members, except for those who exclude themselves, or "opt out," from the Class and Subclass (as discussed below).

The rulings by the respective Courts certifying the Federal and State Classes did not address the merits of these Actions.  Rather, certification means only that the ultimate outcomes of the Actions— whether favorable or unfavorable to Federal and State Plaintiffs  and the relevant classes and Defendants— will apply in like manner to each class member in each Action who does not timely elect to be excluded from the Class in that Action.

**5.     What has happened so far?**

**The State Action**.  On February 26, 2016, State Class Representative Geller filed, in State Court, the first complaint against Defendants on behalf of a putative class.  The Action alleged that Defendants had violated §§ 11, 12(a)(2) and 15 of the Securities Act by selling, or offering to sell, LendingClub shares pursuant to Offering Materials that contained materially false or misleading statements and/or omitted to disclose material information required to be disclosed therein.  All three State Class Representatives filed an amended consolidated complaint on August 26, 2016.

On September 30, 2016, in response to Defendants' demurrers the State Court sustained all of the State Plaintiffs' section 11 claims, but initially dismissed their section 12(a)(2) claims.  Fact discovery commenced in the fall of 2016 and remains ongoing.  On January 17, 2017, the State Class Representatives filed a Second Amended Consolidated Complaint (the "State Complaint"), which repled the § 12(a)(2) claims that the State Court had dismissed.  On March 17, 2017, the State Court sustained in part and denied in part Defendants' demurrers to the repled § 12(a)(2) claims.  Pursuant to the September 30, 2016 and March 17, 2017 Orders, and as previously described above, the § 11 claims are proceeding against all Defendants, and the § 12(a)(2) claims are proceeding against only Defendants LendingClub and Laplanche.  The § 15 claims, based upon LendingClub's underlying alleged violations of §§ 11 and 12(a)(2), are proceeding against the Individual Defendants.  On June 22, 2017, the State Court certified the State Class and the State Subclass.

**The Federal Action.**  On May 16, 2016, the first federal complaint against Defendants on behalf of a putative class for violations of the federal securities laws was filed in the Federal Court, and the Lead Plaintiff filed its Consolidated Complaint on December 9, 2016.  By order dated May 25, 2017, the Defendants' motions to dismiss the Consolidated Complaint were granted in part and denied in part.  On June 15, 2017 the Lead Plaintiff filed the operative Amended Complaint for Violation of the Federal Securities Laws, asserting claims under §§ 11 and 15 of the 1933 Act and § 10(b) of the Exchange Act, as well as SEC Rule 10b-5 promulgated thereunder, as described above.  On July 27, 2017, Defendants answered the Amended Complaint.

On September 21, 2017, the State Class Representatives filed a motion to intervene and limited objection in the Federal Court, arguing that the State Court (which had already certified a

1933 Act class) was the superior forum for litigating all 1933 Act claims. The Federal Class Representative opposed the motion to intervene and the limited objection. On October 20, 2017 the Federal Court granted the motion to intervene, denied the limited objection, and directed the parties in both cases to meet and confer and prepare a joint notice, and to request the State Court's participation in a joint notice program to potential class members. Both Courts have since approved the issuance of this Notice.

**6.      What type of recovery are the Class Representatives asking for?**

Both the State and Federal Class Representatives are asking for money to compensate the State Class and Federal Class Members, respectively, for the losses they allegedly suffered as a result of Defendants' conduct, as well as pre-judgment and post-judgment interest. Members of the State Subclass may also be entitled to rescission of their purchases of LendingClub shares.

**7.      Is there any money available now?**

No money or benefits are available now because neither Court has yet decided whether Defendants did anything wrong, and no settlements have been reached. There is no guarantee that any money or benefits ever will be obtained. If they are, you will receive a notice describing how to receive a share of any recovery in which you may be eligible to participate.

**8.      What happens if there is a settlement in either of these actions?**

You will be notified of any settlement in either action. At that time, you will have an opportunity to opt out of the settlement. Opting out of the settlement, however, is not the same as opting out of the Class, and doing so will NOT restore your right to bring your own lawsuit against these defendants based on the same, or similar, facts and circumstances related to LendingClub.

### DETERMINING IF YOU ARE A MEMBER OF THE CLASS OR SUBCLASS

**9.      How do I know if I am a Class or Subclass Member?**

You are a member of the State Class in the State Action if you purchased shares of LendingClub common stock pursuant to and/or traceable to the Registration Statement and Prospectus on or between December 11, 2014 and June 8, 2015, inclusive (the "1933 Act Class Period").

You are a member of the State Subclass in the State Action (which asserts claims under § 12(a)(2)) if you purchased shares of LendingClub common stock directly in LendingClub's December 11, 2014 Offering. In general, this means that you or your agent must have purchased LendingClub common stock at the $15.00 (exactly) per share offering price, with a "trade date" of December 10 or December 11, 2014, directly from one of the Defendants.[2]

---

[2]      If you did *not* purchase LendingClub shares directly in LendingClub's December 11, 2014 Offering, but rather, purchased shares on the open market, including at a price *other than* the $15.00 per share offering price, then you are not a member of the State Subclass.

You are a member of the Federal Class in the Federal Action if you purchased or otherwise acquired the common stock of LendingClub Corporation during the period from December 11, 2014 through May 6, 2016, inclusive (the "Exchange Act Class Period"), and were damaged thereby. However, only class members who purchased shares of LendingClub common stock pursuant to and/or traceable to the Registration Statement and Prospectus during the 1933 Act Class Period are eligible to recover on the 1933 Act claims that have been asserted in the Federal Action.

Please note that to the extent that you purchased LendingClub shares only during the period between June 9, 2015 and May 6, 2016, inclusive (i.e., during the broader Exchange Act Class Period but after the shorter 1933 Act Class Period), you are NOT a member of the State Class, but may be a member of the Federal Class.

If one of your mutual funds purchased or otherwise acquired LendingClub shares, that does not make you a class or subclass member in either action; instead, you are a State Class, State Subclass, and/or Federal Class member only if you (or your broker on your behalf) purchased LendingClub shares for your own account. If you are the legal representative or fiduciary of a person or legal entity that purchased LendingClub shares (*e.g.*, if you are the trustee of a trust that purchased LendingClub shares), then the person or entity that you represent will be the State Class, State Subclass, and/or Federal Class member, but it may be legally bound by your decisions.

**10.    Are there exceptions to being included in the State Class (including the State Subclass) and Federal Class?**

Yes. There are also some people and entities that are excluded from the State Class, State Subclass and/or the Federal Class by definition. The excluded Persons are: each of the Defendants; their respective successors and assigns; past and current executive officers and directors of LendingClub and the Underwriter Defendants; the legal representatives, heirs, successors or assigns of the Individual Defendants; and any entity in which any of the above excluded persons have or had a majority ownership interest. Short sellers who incurred losses during the class period as a result of their short sales are excluded from the Federal Class. Also excluded from the State Class, State Subclass, and/or the Federal Class will be any Person who timely and validly seeks exclusion from the State Class, State Subclass, and Federal Class in accordance with the requirements of this Notice.

**11.    Are you still not sure if you're included?**

If you are still not sure whether you are included in the State Class, State Subclass, or Federal Class you can get free help at www.[StateLendingClubLitigationWebsite].com or www.[FederalLendingClubLitigationWebsite].com or by calling or writing to Co-Lead Counsel for either the State or Federal Class at the phone numbers or addresses provided in response to question 15 below.

## YOUR OPTIONS AS A CLASS MEMBER

**12.    What are my options as a State Class, State Subclass, and/or Federal Class Member?**

You may decide to stay in the State Class (and State Subclass, if applicable[3]), in the Federal Class, or in both Classes.  You may also decide to opt out of one Class (but stay in the other), or you may opt out of both Classes.

**13.    What happens if I choose to stay in the State Class (including the SubClass, if applicable) and the Federal Class?**

If you stay in the State Class (including the State Subclass, if applicable) and the Federal Class, you will be permitted to share in a recovery, if any, that may occur in those Actions if you suffered compensable losses, subject to the terms of any plan of allocation that may be approved in such Actions by the relevant Court.  But you give up any rights to sue Defendants separately about the same legal claims in these lawsuits.  You will also be legally bound by the Orders issued by either Court as well as any Judgments made by either Court in the respective class actions, even if there are no recoveries.  The Federal and State Actions are scheduled to go to trial in September and October, 2018, respectively, and to the extent you do nothing you will be bound by any judgment(s) that are entered following any trial.[4]

**14.    How do I stay in the State Class (including the State Subclass, if applicable) and the Federal Class?**

You do not have to do anything at this time to stay in both the State Class (including the State Subclass, if applicable) and the Federal Class.

**15.    What happens if I "opt out" (exclude myself) from the State Class (including the State Subclass, if applicable) and/or the Federal Class?**

If you opt out of the State Class (which will also automatically cause you to opt out of the State SubClass) and the Federal Class – which you can do by stating in writing that you do not want to be included in the State Class, the Federal Class, or both (*see* item 16 below) -- you will give up the right to participate in any recoveries that may occur in the action(s) that you opt out of.  If you opt out of both actions, you will keep any rights you may currently have to sue Defendants regarding the legal claims at issue, and you will also *not* be bound by the Orders issued by either Court and the Judgments made by either Court in these class actions.

You may also opt out of the Class in one action, while staying in the Class in the other, in

---

[3] *If* you are a member of the State SubClass, you may stay in both the State Class and the Subclass, or opt out of both, but you cannot stay in one and opt out of the other.

[4] To the extent that you purchased LendingClub shares only during the period between June 9, 2015 and May 6, 2016, inclusive (i.e., during the broader Exchange Act Class Period but after the shorter 1933 Act Class Period), you are NOT a member of the State Class, and would therefore only be bound by any judgments entered in the Federal Action.

which case you will give up the right to participate in any recoveries that may occur in the action(s) that you opt out of, but will only be bound by Orders and Final Judgments issued by (including any settlements approved by) the Court in the action that you do not opt out of.

**16.     How do I "opt out" (exclude myself) from the State Class (and State Subclass, if applicable) and/or the Federal Class?**

If you do not want to be a State Class and/or Federal Class Member, **you must send** a signed, written "Request to Opt Out" to the Notice Administrator so it is *received* no later than _____, 2018.  Your written request must include:

- ●     Your name, address, and telephone number;
- ●     A statement that you request exclusion from the Classes in *In re LendingClub Corporation Shareholder Litigation,* Case No. CIV537300 **and/or** *In re LendingClub Corporation Securities Litigation,* Case No. 3:16-cv-02627; and
- ●     Your signature

You must mail your Request to Opt Out by First-Class Mail to the following address:

*LendingClub Shareholder Litigation - Exclusions*
c/o KCC Class Action Services
3301 Kerner Blvd.
San Rafael, CA 94901

If you are potentially a member of both the State Class and the State Subclass, you cannot "opt out" of one and remain in the other, and any "opt out" request for the State Class or State Subclass will be deemed a request for exclusion from both.

## THE LAWYERS REPRESENTING YOU

**17.     As a State Class, Federal Class, and/or (if applicable) Subclass member, do I have a lawyer representing my interests in this case?**

Yes.  The State Court has appointed lawyers to represent the members of State Class and State Subclass, and the Federal Court has appointed lawyers to represent the members of the Federal Class.  These lawyers are called "Class Counsel."  The following lawyers have been appointed Class Counsel to represent the State Class and State Subclass in the State Action: Scott+Scott, Attorneys at Law, LLP (c/o John T. Jasnoch at jjasnoch@scott-scott.com, or 1-800-332-2259) and Cotchett, Pitre & McCarthy LLP (c/o Alexandra Summer) at asummer@cpmlegal.com, or 650-697-6000).  The following lawyers have been appointed Class Counsel to represent the Federal Class in the Federal Action:  Robbins Geller Rudman & Dowd, LLP (c/o _____) at _____@_____, or _____).

If you have questions about this Notice, you can contact any of the Class Counsel at the contact emails or phone numbers listed above.  For additional questions about the State Action or the Federal Action, you can contact the respective Class Counsel in those actions at the contact emails or phone numbers listed above.  You will not be separately charged for these lawyers, or

for the services of any other counsel representing the State Class or the Federal Class.

**18.     How will the lawyers for the State Class (including the  State Subclass) and Federal Class be compensated?**

If any recoveries are obtained for the State Class or Federal Class, Class Counsel will submit one or more applications to the State and/or Federal Court for an award of attorneys' fees and for reimbursement of litigation expenses that plaintiffs' counsel have incurred in pursuing the claims at issue.  Counsel may also ask the Court to approve a reasonable service award for one or more of the Class Representatives.  If approved, any such attorneys' fees, expenses or awards will either be paid from any recoveries obtained or separately by Defendants.  Neither the State Class nor Federal Class members will be liable for any such fees, expenses or awards.

**19.     Should I get my own lawyer?**

You do not need to hire your own lawyer.  However, you are free to hire your own lawyer at your own expense.  If you hire a lawyer to speak for you or to appear in either the State Court or the Federal Court, your lawyer must file a Notice of Appearance.

### GETTING MORE INFORMATION

**20.     Where do I get more information?**

This Notice contains only a summary of the State Action, the Federal Action, and proceedings to date.  Complete copies of public pleadings, Court rulings and other filings in the State Action are available for review and copying at the Clerk's office at the California Superior Court for the County of San Mateo at the following address: _____.  Complete copies of public pleadings, Court rulings and other filings in the Federal Action are available for review and copying at the Clerk's office at the United States District Court for the Northern District of California, at the following address: _____.  Additional information is also available at www.[StateLendingClubLitigationWebsite].com and www.[FederalLendingClubLitigationWebsite].com, or by contacting the Notice Administrator at *LendingClub Shareholder Litigation,* c/o KCC Class Action Services, P.O. Box 404019, Louisville, KY 40233-4019, tel. (__) ___-_____.

*Please do not contact the Courts, the Clerks of the Courts, or Defendants for additional information.  They cannot answer any questions or discuss the Action.*

## SPECIAL NOTICE TO BANKS, SECURITIES BROKERS, AND OTHER NOMINEES

If you purchased LendingClub shares (ticker: LC) between December 11, 2014 and June 8, 2015 inclusive or purchased LendingClub shares directly in the December 11, 2014 Offering at the $15.00 per share Offering price for the beneficial interest of a person or entity other than yourself, the Court has directed that, ***WITHIN FOURTEEN (14) CALENDAR DAYS OF YOUR RECEIPT OF THIS NOTICE***, you must either: (A) provide to the Notice Administrator the name and last known address of each person or entity for whom or which you purchased such shares (preferably in electronic format (MS Excel or CSV file); or (B) request from the Notice Administrator additional copies of this Notice (which will be provided to you free of charge) and send them, within fourteen (14) calendar days of receipt, by First-Class mail directly to the beneficial owners/purchasers of those LC shares.  All communications concerning the foregoing should be addressed to the Notice Administrator at: *LendingClub Shareholder Litigation,* c/o KCC Class Action Services, P.O. Box 404019, Louisville, KY 40233-4019, tel. (__) ___-_____, or by email to _____.

Regardless of whether you choose to complete the mailing yourself or elect to have the mailing performed for you, you may obtain reimbursement for or advancement of reasonable administrative costs actually incurred or expected to be incurred in connection with forwarding this Notice and which would not have been incurred but for the obligation to forward this Notice, upon submission of appropriate documentation to the Notice Administrator.

**PLEASE DO *NOT* CONTACT THE COURTS OR THE CLERKS' OFFICES REGARDING THIS NOTICE.**

Dated: _____, 2017               BY ORDER OF THE SUPERIOR COURT OF
                                   CALIFORNIA FOR SAN MATEO COUNTY
                                   HON. MARIE S. WEINER


Dated: _____, 2017               BY ORDER OF THE UNITED STATES DISTRICT
                                   FOR THE NORTHERN DISTRICT OF
                                   CALIFORNIA
                                   HON. WILLIAM H. ALSUP

# EXHIBIT B

[EXHIBIT B]

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN MATEO

| | |
|---|---|
| IN RE LENDINGCLUB CORPORATION SHAREHOLDER LITIGATION | Master File No.: CIV 537300 |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE LENDINGCLUB CORPORATION SECURITIES LITIGATION | Case No.: 3:16-cv-02627-WHA |

[PROPOSED] SUMMARY NOTICE OF PENDENCY OF CLASS ACTION

**TO:    ALL PERSONS AND ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED THE COMMON STOCK OF LENDINGCLUB CORPORATION BETWEEN DECEMBER 11, 2014 AND JUNE 8, 2015, INCLUSIVE, INCLUDING ALL PERSONS WHO PURCHASED LENDINGCLUB COMMON STOCK DIRECTLY IN LENDINGCLUB'S DECEMBER 11, 2014 INITIAL PUBLIC OFFERING AT $15 PER SHARE.**

**Please be advised that your rights may be affected by (1) a class action lawsuit pending in a state court if you purchased or otherwise acquired shares of the common stock of LendingClub Corporation, Inc. ("LendingClub" or the "Company") between December 11, 2014 and June 8, 2015, and (2) by a class action lawsuit pending in a federal court if you purchased or otherwise acquired shares of the common stock of LendingClub between December 11, 2014 and May 6, 2016, inclusive.  This Notice explains important rights you may have.  Please read it carefully.**

*Courts have authorized this notice.  This is not a solicitation from a lawyer.*

YOU ARE HEREBY NOTIFIED, pursuant to Court Orders dated June 22, 2017 and September 19, 2017, that a class and Subclass have been certified in a class action entitled *In re LendingClub Corporation Shareholder Litigation,* Case No. CIV537300 (the "State Action"), currently pending before the Hon. Marie S. Weiner in the Superior Court of the State of California, San Mateo County (the "State Court").

YOU ARE HEREBY NOTIFIED, pursuant to a Court Order dated October 20, 2017, a class has also been certified in a class action entitled *In re LendingClub Corporation Securities Litigation,* Case No. 3:16-cv-02627-WHA (the "Federal Action"), currently pending before the Hon. William H. Alsup in the United States District Court for the Northern District of California (the "Federal Court").

The State Action is brought on behalf of all persons or entities who purchased or otherwise acquired shares of LendingClub common stock pursuant and/or traceable to LendingClub's December 11, 2014 Initial Public Offering (the "IPO") during the period December 11, 2014 through June 8, 2015, inclusive (the "Class"), and asserts claims against (a) defendant LendingClub; (b) certain LendingClub officers and directors (the "Individual Defendants") who signed the Registration Statement and incorporated Prospectus for the IPO (the "Offering Materials"); and (c) the underwriters of LendingClub's IPO (the "Underwriter Defendants").  The State Plaintiffs, on behalf of the Class, allege that all Defendants violated § 11 of the federal Securities Act of 1933 (the "1933 Act") because the Offering Materials, pursuant to which LendingClub shares of common stock were offered and sold in the IPO, contained materially false or misleading statements and/or omitted to disclose material information required to be disclosed therein.  The State Plaintiffs also allege, on behalf of the Class, that each Individual Defendant is also liable for LendingClub's alleged violations of § 11 as a "controlling person" of LendingClub under § 15 of the 1933 Act.

The State Plaintiffs, on behalf of all persons or entities who purchased LendingClub common stock directly in the December 11, 2014 IPO (the "Subclass"), also allege that (a) Defendants LendingClub and Renaud Laplanche violated § 12(a)(2) of the 1933 Act because the Offering Materials contained materially false or misleading statements and/or omitted to disclose

material information required to be disclosed therein; and (b) each Individual Defendant is liable for LendingClub's alleged violations of § 12(a)(2) as a "controlling person" of LendingClub under § 15 of the 1933 Act.

The Federal Action alleges that Defendants LendingClub, Laplanche and Dolan defrauded investors who purchased LendingClub common stock between December 11, 2014 and May 6, 2016 by making certain misstatements and omissions concerning LendingClub's internal controls, data integrity and security, and related-party transactions, and that these Defendants violated § 10(b) of the Exchange Act, as well as SEC Rule 10b-5 promulgated thereunder, by making such statements or omissions knowingly or with extreme recklessness, and caused the price of LendingClub common stock to be artificially inflated during the period from December 11, 2014 through May 6, 2016.  Lead Plaintiff in the Federal Action also asserts claims on behalf of investors who purchased Lending Club common stock from December 11, 2014 through June 8, 2015 which allege that all Defendants violated §§ 11 and 15 of the 1933 Act because LendingClub's Offering Materials contained material misstatements and/or omissions concerning LendingClub's internal controls, data integrity and security, and related-party transactions.

Each Defendant denies that they made any false or misleading statements or omissions that violated the Exchange Act or that LendingClub's Offering Documents contained any untrue statements of material fact or material omissions in violation of the 1933 Act, or that they otherwise violated either the Exchange Act or 1933 Act.

The State Court has decided that the State Action should proceed as a class action with respect to the § 11 (and related § 15) claims on behalf of a **Class** that (subject to certain exclusions) consists of "all persons and entities who, between December 11, 2014 and June 8, 2015, inclusive, purchased or otherwise acquired shares of the common stock of LendingClub pursuant to and/or

traceable to the Registration Statement and Prospectus issued in connection with LendingClub's December 2014 Initial Public Offering."  The State Court has also certified a ***Subclass,*** with respect to the § 12(a)(2) (and related § 15) claims only, that consists of "all persons and entities who purchased shares of the common stock of LendingClub directly in the December 11, 2014 Initial Public Offering."

The Federal Court has also decided that the Federal Action should proceed on behalf of a ***Class*** that consists of "All persons and entities who purchased or otherwise acquired the common stock of LendingClub Corporation during the period from December 11, 2014 through May 6, 2016, inclusive, and were damaged thereby.  The Federal Action, like the State Action, also asserts claims under §§ 11 and 15 of the 1933 Act on behalf of all persons and entities who, purchased or otherwise acquired shares of LendingClub common stock between December 11, 2014 and June 8, 2015.

If you are a Member of the State Class (including the Subclass) or the Federal Class, your rights may be affected by these lawsuits.  If you have not received a detailed Notice of Pendency of Class Actions ("Notice"), you may obtain copies by writing to Notice Administrator, *In re LendingClub Shareholder Litigation*, c/ KCC Class Action Services, P.O. Box 404019, Louisville, KY 40233-4019, tel: (888) [___-____], or by downloading this information at www.[LendingClubLitigationWebsite]].com. Inquiries regarding the State Action, other than requests for a copy of the Notice, may be made to Co-Lead Class Counsel: Scott+Scott, Attorneys at Law, LLP, c/o John T. Jasnoch, 707 Broadway, Suite 1000, San Diego, CA, 92101, tel. (619)-233-4565 or Cotchett, Pitre & McCarthy LLP, c/o Alexandra P. Summer, 840 Malcolm Rd., Burlingame, CA, 94010, tel. (650)-753-1763.  Inquiries regarding the Federal Action may be made to [Federal P Insert].

You have the right to request exclusion ("opt out") from the State Class (which will also exclude you from the Subclass) or the Federal Class.  If you do not request exclusion from the State Class or Federal Class, you will be bound by past and any future rulings of the respective Courts on the claims asserted against the Defendants, even if there is no recovery.

IF YOU WISH TO REMAIN IN THE CLASSES, YOU DO NOT HAVE TO DO ANYTHING AT THIS TIME.  HOWEVER, IF YOU WISH TO BE EXCLUDED FROM THE STATE CLASS OR THE FEDERAL CLASS, YOU MUST SUBMIT A REQUEST FOR EXCLUSION BY _____, 2017, IN THE MANNER AND FORM EXPLAINED IN THE NOTICE.  ALL MEMBERS OF THE STATE CLASS OR FEDERAL CLASS WHO DO NOT VALIDLY REQUEST EXCLUSION FROM THE CLASS WILL BE BOUND BY ALL OF THE ORDERS THE RESPECTIVE COURTS ISSUE AND JUDGMENTS THE RESPECTIVE COURTS HAVE OR WILL MAKE IN THE ACTIONS, EVEN IF THERE IS NO RECOVERY.

**PLEASE DO _NOT_ CONTACT THE COURT OR THE CLERK'S OFFICE REGARDING THIS NOTICE**.

Dated: _____, 2017                    BY ORDER OF THE COURT
                                       HON. MARIE S. WEINER
                                       SUPERIOR COURT OF CALIFORNIA FOR SAN
                                       MATEO COUNTY


Dated: _____, 2017                    BY ORDER OF THE COURT
                                       HON. WILLIAM H. ALSUP
                                       UNITED STATES DISTRICT COURT FOR THE
                                       NORTHERN DISTRICT OF CALIFORNIA

# EXHIBIT C

1   MARK C. MOLUMPHY (SBN 168009)
    mmolumphy@cpmlegal.com
2   PHYRA M. McCANDLESS (SBN 260021)
    pmccandless@cpmlegal.com
3   COTCHETT, PITRE & McCARTHY, LLP
4   San Francisco Airport Office Center
    840 Malcolm Road, Suite 200
5   Burlingame, California 94010
    Telephone:    (650) 697-6000
6   Facsimile:    (650) 697-0577
7
    JOHN T. JASNOCH (281605)
8   jjasnoch@scott-scott.com
    SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
9   707 Broadway, Suite 1000
    San Diego, California  92101
10  Telephone:    (619) 233-4565
11  Facsimile:    (619) 233-0508

12  *Co-Lead Counsel for Plaintiffs*

13  [Additional counsel listed on signature page.]

14

15              **IN AND FOR THE STATE OF CALIFORNIA**

16                   **COUNTY OF SAN MATEO**

17
    In re LENDINGCLUB CORPORATION          Master File No.: CIV537300
18  SHAREHOLDER LITIGATION                 (Consolidated with CIV537633, 537637,
                                           537868, 538762)
19
20  This Document Relates To:             **PLAINTIFFS' *EX PARTE* APPLICATION**
                                          **TO APPROVE JOINT CLASS NOTICES**
21  ALL ACTIONS.
                                          Date:  November 7, 2017
22                                        Time:  2:00 p.m.
                                          Dept.  2
23                                        Hon. Marie S. Weiner

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE    **PLAINTIFFS' EX PARTE APPLICATION TO APPROVE JOINT CLASS NOTICES**
& McCARTHY, LLP

ENDORSED FILED
SAN MATEO COUNTY

NOV 0 7 2017

Clerk of the Superior Court
By TERRI MARAGOULAS
DEPUTY CLERK

Lead Plaintiffs bring this *ex parte* application and request the Court to approve the amended Joint Notice and Joint Summary Notice (together, the "Joint Class Notices"), jointly drafted by the Lead Plaintiff and Defendants in this action ("California Action").

The proposed Joint Class Notices follow prior orders granting class certification and directing that class notice be disseminated in both this action, as well as in federal class action, *In re Lendingclub Securities Litigation*, Case No. 3:16-cv-02627-WHA (N.D. Cal.) ("Federal Action"). Copies of the proposed Joint Notice and Joint Summary Notice are attached as Exhibits A and B to the Declaration of Mark C. Molumphy ("Molumphy Decl."), and to the Proposed Order, both submitted herewith.

As brief background, this Court previously certified a class and, on September 21, 2017, approved the forms of the original Notice and Summary Notice and a plan for dissemination jointly proposed by the parties. However, on October 12, 2017, before class notice was sent, a hearing on class certification was held in the Federal Action before Judge Alsup. The State Lead Plaintiffs moved to intervene in the Federal Action solely to contest the Federal Lead Plaintiff's request to certify a class to pursue Securities Act claims, since such claims were already certified and being pursued in the California Action, and to oppose the Federal Lead Plaintiff's request to enjoin the California Action, including the dissemination of class notice.

On October 20, 2017, Judge Alsup issued an order (1) granting the State Lead Plaintiff's motion to intervene in the Federal Action; (2) denying the Federal Lead Plaintiff's motion to enjoin the California Action; and (3) granting the Federal Lead Plaintiff's motion for class certification of both Securities Act and Exchange act claims. See Order re Class Certification, Molumphy Decl., Ex. C.

With respect to class notice, Judge Alsup directed the parties in the California Action and Federal Action to prepare a joint notice to be approved by courts in both actions. *Id.* at 26-28. Specifically, after reaffirming this Court's continuing jurisdiction over the California Action, Judge Alsup directed the parties to first submit a proposed joint notice to this Court for approval, and then to submit the joint notice to him within 21 days of the Order, or by November 10, 2017.

1    *Id.* Judge Alsup identified certain information about the respective cases that he wanted to be

2    included in the joint notice. *Id.* at 26-27.

3        On October 25, 2017, this Court granted California Lead Plaintiffs' *ex parte* application

4    to defer dissemination of notice and directed the parties to meet and confer and submit a revised

5    notice by November 6, 2017. This Court later sent an email and directed the parties to appear on

6    the *ex parte* calendar at 2:00 p.m. on November 7, 2017.

7        Pursuant to the directions by both respective courts, State Lead Plaintiffs prepared and

8    distributed to all counsel proposed Joint Class Notices, which updated the notice previously

9    approved by this Court to include information requested by Judge Alsup about the two class

10    actions. However, the Federal Lead Plaintiff instead proposed their own form of notice, which

11    was only a federal notice (not a joint notice). To move the ball forward, the State Lead Plaintiffs

12    integrated most of the changes made by the Federal Lead Plaintiffs and sent around new revised

13    versions of the Joint Class Notices. Defendants in the California and Federal Action provided

14    revisions, all of which were incorporated.

15

16        Accordingly, the proposed Joint Class Notices should be approved. First, they include all

17    information previously approved by this Court describing the California Action. Second, they

18    now include information describing the Federal Action, as well as information requested by

19    Judge Alsup in his Order re Class Certification. Finally, the Joint Class Notices have been

20    approved by Defendants in both the California Action and Federal Action.[1]

21    Dated: November 7, 2017              **COTCHETT, PITRE & McCARTHY LLP**

22

23                    By: _____

24                           MARK C. MOLUMPHY

25

26

27    [1] The Federal Lead Plaintiff has not agreed to the form of Joint Class Notices, and instead, asked
to submit its own version of a proposed notice. Molumphy Decl., Ex. D. However, the

28    competing version is not a joint notice, but rather a federal-only notice making brief reference to
the California Action. More to the point, virtually all of the information in the competing
version is already in the proposed Joint Class Notices.

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**PLAINTIFFS' EX PARTE APPLICATION TO APPROVE JOINT CLASS NOTICES**    2

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
JOHN T. JASNOCH
707 Broadway, Suite 1000
San Diego, California  92101
Telephone:  (619) 233-4565
Facsimile:  (619) 233-0508

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
WILLIAM C. FREDERICKS
BETH A. KASWAN
SEAN T. MASSON
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY  10169
Telephone:  (212) 223-6444
Facsimile:  (212) 223-6334

*Co-Lead Class Counsel in California Action*

# EXHIBIT D

1  MARK C. MOLUMPHY (SBN 168009)
   mmolumphy@cpmlegal.com
2  PHYRA M. McCANDLESS (SBN 260021)
   pmccandless@cpmlegal.com
3  COTCHETT, PITRE & McCARTHY, LLP
4  San Francisco Airport Office Center
   840 Malcolm Road, Suite 200
5  Burlingame, California 94010
6  Telephone:     (650) 697-6000
   Facsimile:     (650) 697-0577
7
   JOHN T. JASNOCH (281605)
8  jjasnoch@scott-scott.com
   SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
9  707 Broadway, Suite 1000
   San Diego, California  92101
10 Telephone:     (619) 233-4565
11 Facsimile:     (619) 233-0508

12 *Co-Lead Counsel for Plaintiffs*

13 [Additional counsel listed on signature page.]

14

15          **IN AND FOR THE STATE OF CALIFORNIA**

16               **COUNTY OF SAN MATEO**

17
   In re LENDINGCLUB CORPORATION        Master File No.: CIV537300
18 SHAREHOLDER LITIGATION               (Consolidated with CIV537633, 537637,
                                        537868, 538762)
19 ──────────────────────────────
20 This Document Relates To:            **DECLARATION OF MARK C.
                                        MOLUMPHY IN SUPPORT OF
21 ALL ACTIONS.                         PLAINTIFFS' *EX PARTE* APPLICATION
                                        TO APPROVE JOINT CLASS NOTICES**
22
23                                      Date:  November 7, 2017
                                        Time:  2:00 p.m.
24                                      Dept.  2
                                        Hon. Marie S. Weiner
25
26
27
28

LAW OFFICES        **MOLUMPHY DECL. ISO PLAINTIFFS' EX PARTE APPLICATION TO APPROVE
COTCHETT, PITRE    JOINT CLASS NOTICES**
& McCARTHY, LLP

I, MARK C. MOLUMPHY, DECLARE AS FOLLOWS:

1.      I am a partner with Cotchett, Pitre & McCarthy LLP, Co-Lead Counsel for the Lead Plaintiffs ("California Lead Plaintiffs") and the Class in this action ("California Action").  I declare that the following is true based on my own personal knowledge.

2.      California Lead Plaintiffs seek approval of proposed Joint Class Notices consistent with prior orders granting class certification and directing that class notice be disseminated in both this action, as well as in federal class action, *In re Lendingclub Securities Litigation*, Case No. 3:16-cv-02627-WHA (N.D. Cal.) ("Federal Action").  True and correct copies of the proposed Joint Notice and Joint Summary Notice (together, the "Joint Class Notices") are attached hereto as Exhibits A and B, and to the Proposed Order, submitted herewith.

3.      On October 20, 2017, Judge Alsup issued an order (1) granting the State Lead Plaintiff's motion to intervene in the Federal Action; (2) denying the Federal Lead Plaintiff's motion to enjoin the California Action; and (3) granting the Federal Lead Plaintiff's motion for class certification of both Securities Act and Exchange act claims.  A true and correct copy of the Order re Class Certification is attached hereto as Exhibit C.

4.      With respect to class notice, Judge Alsup directed the parties in the California Action and Federal Action to prepare a joint notice to be approved by courts in both actions.  *Id.* at 26-28.  Specifically, after reaffirming this Court's continuing jurisdiction over the California Action, Judge Alsup directed the parties to first submit a proposed joint notice to this Court for approval, and then to submit the joint notice to him within 21 days of the Order, or by November 10, 2017.  *Id.*  Judge Alsup identified certain information about the respective cases that he wanted to be included in the joint notice.  *Id.* at 26-27.

5.      On October 25, 2017, this Court granted California Lead Plaintiffs' *ex parte* application to defer dissemination of notice and directed the parties to meet and confer and submit a revised notice by November 6, 2017.  This Court later sent an email and directed the parties to appear on the *ex parte* calendar at 2:00 p.m. on November 7, 2017.

**MOLUMPHY DECL. ISO PLAINTIFFS' EX PARTE APPLICATION TO APPROVE      1
JOINT CLASS NOTICES**

6.      My firm, along with Scott+Scott, prepared and distributed to all counsel proposed Joint Class Notices, which updated the notice previously approved by this Court to include information requested by Judge Alsup about the two class actions.  However, the Federal Lead Plaintiff proposed their own form of notice, which was only a federal notice (not a joint notice).  To move the ball forward, my firm integrated most of the changes made by the Federal Lead Plaintiffs and sent around new revised versions of the Joint Class Notices.  We then received revisions from counsel representing the Defendants in the California and Federal Action, all of which were incorporated.  Accordingly, the proposed Joint Class Notices have been approved by the California Lead Plaintiffs and Defendants in both the California and Federal Actions.

7.      However, the Federal Lead Plaintiff has not approved the Joint Class Notices and, instead, asked to submit its own version of a proposed notice.  A true and correct copy of the Federal Lead Plaintiff's version is attached hereto as Exhibit D.  This competing version is not a joint notice, but rather a federal-only notice making brief reference to the California Action.  Moreover, virtually all of the information in this competing version is already in the proposed Joint Class Notices.

8.      On November 6, 2017, prior to 10:00 a.m., I sent an email and gave notice to counsel representing all parties in both the California Action and Federal Action of California Lead Plaintiffs' intent to bring this ex parte application today.  A true and correct copy of my email is attached hereto as Exhibit E.  Defendants do not oppose the relief.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct to the best of my knowledge.  Executed on November 7, 2017, at Burlingame, California.

_____
MARK C. MOLUMPHY

**MOLUMPHY DECL. ISO PLAINTIFFS' EX PARTE APPLICATION TO APPROVE      2
JOINT CLASS NOTICES**

# EXHIBIT A

[EXHIBIT A]

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN MATEO

| | |
|---|---|
| IN RE LENDINGCLUB CORPORATION SHAREHOLDER LITIGATION | Master File No.: CIV 537300 |

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE LENDINGCLUB CORPORATION SECURITIES LITIGATION | Case No.: 3:16-cv-02627-WHA |

### [PROPOSED] NOTICE OF PENDENCY OF CLASS ACTIONS

*Courts have authorized this notice. This is not a solicitation from a lawyer.*
*You are not being sued.*

**NOTICE OF PENDENCY OF CLASS ACTIONS: Please be advised that your rights may be affected by (1) a class action lawsuit pending in a state court if you purchased or otherwise acquired shares of the common stock of LendingClub Corporation, Inc. ("LendingClub" or the "Company") between December 11, 2014 and June 8, 2015, and (2) by a class action lawsuit pending in a federal court if you purchased or otherwise acquired shares of the common stock of LendingClub between December 11, 2014 and May 6, 2016, inclusive.  This Notice explains important rights you may have.  Please read it carefully.**

● Class action lawsuits are pending in the Superior Court of the State of California, San Mateo County (the "State Court") and in the United States District Court for the Northern District of California (the "Federal Court") alleging violations of the Securities Act of 1933 (the "1933 Act") against (1) LendingClub, (2) certain of LendingClub's officers and directors (the "Individual Defendants") who signed the Registration Statement and incorporated Prospectus (the "Offering Materials") for LendingClub's December 11, 2014 Offering, and (3) the underwriters of the Offering (the "Underwriter Defendants").[1]  In addition, the class action in

---

[1] The Individual Defendants consist of Renaud Laplanche (former CEO and director) and Carrie Dolan (former CFO), and current or former Company directors Daniel Ciporin, Jeffrey Crowe, Rebecca Lynn, John Mack, Mary Meeker, John Morris, Lawrence Summers, and Simon Williams.  The Underwriter Defendants consist of Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC (formerly known as Goldman, Sachs & Co.), Credit Suisse Securities (USA) LLC, Citigroup Global Markets Inc., Allen & Company LLC, Stifel, Nicolaus & Company, Incorporated, BMO Capital Markets Corp., William Blair & Company, L.L.C., and Wells Fargo Securities, LLC.  LendingClub, the Individual Defendants, and the Underwriter Defendants are collectively referred to as "Defendants."

the Federal Court asserts claims against LendingClub and Individual Defendants Laplanche and Dolan under the Exchange Act of 1934 (the "Exchange Act").

- By orders dated June 22, 2017 and September 19, 2017, the State Court has decided that the lawsuit pending before it (the "State Action") should proceed as a class action on behalf of a "class" and a "subclass" (i.e., a group and a sub-group of people and entities) that could include you. Subject to certain exclusions discussed below, the State Court has certified a Class (the "State Class") that consists of "all persons and entities who, between December 11, 2014 and June 8, 2015, inclusive, purchased or otherwise acquired shares of the common stock of LendingClub . . . pursuant to and/or traceable to the Registration Statement and Prospectus". The December 11, 2014 through June 8, 2015 time period is known as the "1933 Act Class Period." The State Court has also certified a subclass (the "State Subclass") which, subject to certain exclusions discussed below, consists of "all persons and entities who purchased shares of the common stock of LendingClub directly in the December 11, 2014 Initial Public Offering". The State Action asserts claims under §§ 11 and 15 of the "1933 Act" on behalf of the State Class, and claims under §§ 12(a)(2) and 15 of the 1933 Act on behalf of the State Subclass.

  By order dated October 20, 2017, the Federal Court also decided that the lawsuit pending before it (the "Federal Action") should proceed as a class action on behalf of a class that could include you. Subject to certain exclusions discussed below, the Federal Court has certified a class (the "Federal Class") that consists of "All persons and entities who purchased or otherwise acquired the common stock of LendingClub Corporation during the period from December 11, 2014 through May 6, 2016 (for claims under the Exchange Act of 1934) and all those who purchased or acquired LendingClub common stock during the period from December 11, 2014 through June 8, 2015 (for claims under the 1933 Securities Act) and were damaged thereby." The December 11, 2014 through May 6, 2016 time period is known as the "Exchange Act Class Period." The Federal Action, like the State Action, also asserts claims under §§ 11 and 15 of the 1933 Act on behalf of all persons and entities who, during the shorter 1933 Act Class Period, purchased or otherwise acquired shares of LendingClub common stock. Unlike the State Action, however, the Federal Action (a) does not assert any claims under § 12(a)(2) of the 1933 Act, but (b) does include claims under §§ 10(b) and 20(a) of the Exchange Act on behalf of those who purchased LendingClub shares during the longer Exchange Act Class Period.

- To the extent that you purchased LendingClub shares only during the period between June 9, 2015 and May 6, 2016, inclusive (i.e., during the broader Federal Class Period but after the shorter 1933 Act Class Period), you are NOT a member of the State Class, but may be a member of the Federal Class.

- The two actions overlap in some respects and differ in others. *See* "To what extent are the State and Federal actions the same or different?" at item 3 of the "Basic Information" section below.

- Class members will be notified of any settlement or recovery in either the State or the Federal Action, at which point they will have an opportunity to opt out of the settlement if they elect

to do so.  Class members will also be notified of any other recovery in either action which may affect them.  To date, however, no settlement or recovery has been obtained in either action, nor can there be any assurance that any settlements or recovery will be reached.

| YOUR LEGAL RIGHTS AND OPTIONS IN THESE LAWSUITS | |
| --- | --- |
| **Do Nothing** | ***Stay in both lawsuits.  Await the outcomes.  Share in possible benefits.  Give up certain rights.***<br><br>By doing nothing, you are choosing to stay in both the State Class (and State Subclass) and the Federal Class (as applicable).  You will be permitted to share in any applicable recoveries that may result from the class actions, but you will give up your rights to sue Defendants in a separate lawsuit for (a) the claims asserted in the State Action to the extent you are a member of the State Class, and (b) the claims asserted in the Federal Action to the extent you are a member of the Federal Class.  In addition, as a State and/or Federal Class member (as applicable), you will be bound by past and any future court rulings on, or the settlement of, the claims against Defendants in the State and/or Federal Actions (as applicable).  The Federal and State Actions are scheduled to go to trial in September and October, 2018, respectively, and to the extent you do nothing, you will be bound by any judgment(s) that are entered following any trial. |
| **Ask to Be Excluded from the State Class (and Subclass) and/or the Federal Class** | ***Get out of these lawsuits.  Get no benefits.  Keep your rights.***<br><br>If you opt out of the State Class and Subclass and the Federal Class (meaning you say in writing that you do not want to be included in this lawsuit), you will <u>not</u> be entitled to any recovery that may result from either of these class actions, but you will <u>not</u> be bound by any past or future rulings for or against Defendants.  You will be free to pursue your own claims against Defendants on your own or as part of a different lawsuit.  You may also opt out of the Class in one action, while staying in the Class in the other – in which case you will be bound only by any future rulings entered in the action that you do not opt-out of (but will not be entitled to any recovery that may result from the action you do opt out of). |

These rights and options, and the deadlines to exercise them, are further explained in this Notice.

## BASIC INFORMATION ABOUT THE LAWSUITS

**1.     Why did I get this Notice?**

Records indicate that you may have purchased LendingClub common stock between

December 11, 2014 and May 6, 2016, inclusive, and/or that you may have purchased shares of LendingClub common stock directly in LendingClub's December 11, 2014 Offering.   This Notice explains that both the State and Federal Courts have allowed, or "certified," classes in lawsuits that may affect you.   You have legal rights and options that you may exercise.   Judge Marie S. Weiner of the Superior Court of California for San Mateo County is overseeing the State Action pending in State Court.   That case is captioned *In re LendingClub Corporation Shareholder Litigation,* Case No. CIV537300.   Judge William H. Alsup of the United States District Court for the Northern District of California is overseeing the Federal Action pending in Federal Court.   That case is captioned *In re LendingClub Corporation Securities Litigation,* Case No. 3:16-cv-02627-WHA.

**2.      What are these lawsuits about?**

The Federal Action alleges that Defendants LendingClub, Laplanche and Dolan defrauded investors who purchased Lending Club common stock during the Exchange Act Class Period by making certain misstatements and omissions concerning LendingClub's internal controls, data integrity and security, and related-party transactions, and that these Defendants violated § 10(b) of the Exchange Act, as well as SEC Rule 10b-5 promulgated thereunder, by making such statements or omissions knowingly or with extreme recklessness, and caused the price of LendingClub common stock to be artificially inflated during the period from December 11, 2014 through May 6, 2016.   Lead Plaintiff in the Federal Action also asserts claims on behalf of investors who purchased Lending Club common stock during the shorter 1933 Act Class Period which allege that all Defendants violated §§ 11 and 15 of the 1933 Act because LendingClub's Offering Materials contained material misstatements and/or omissions concerning LendingClub's internal controls, data integrity and security, and related-party transactions.

The State Action also alleges that all Defendants violated § 11 of the federal Securities Act of 1933 (the "1933 Act") because the Offering Materials, pursuant to which LendingClub shares were sold in the Offering, allegedly contained materially false or misleading statements and/or omitted to disclose material information required to be disclosed concerning (a) LendingClub's internal controls, data integrity and security, and related-party transactions, as well as (b) LendingClub's allegedly usurious loan rates and defective loan underwriting practices.   The State Action also alleges that LendingClub and Defendant Renaud Laplanche violated § 12(a)(2) of the 1933 Act, and that, pursuant to § 15 of the 1933 Act, all of the Individual Defendants are liable for LendingClub's alleged violations of § 11 and § 12(a)(2) as "controlling persons" of LendingClub.   The State Action does not assert claims under the Exchange Act.

Defendants deny that they made any false or misleading statements or omissions that violated the Exchange Act or that LendingClub's Offering Documents contained any untrue statements of material fact or material omissions in violation of the 1933 Act, or that they otherwise violated the Exchange Act or 1933 Act.

**3.      To what extent are these lawsuits the same or different?**

The two actions overlap in some respects and differ in others.

○ Both the State and Federal Actions assert claims under §§ 11 and 15 of the 1933 Act on behalf of those who purchased LendingClub common stock during the 1933 Act Class Period (i.e. between December 11, 2014 and June 8, 2015, inclusive), based on allegations that the Defendants made misrepresentations and omitted material information in the Offering Materials used to conduct LendingClub's initial public offering in December 2014.

○ The State Action asserts certain additional theories of liability under the 1933 Act on behalf of purchasers during the 1933 Act Class Period, that are not contained in the Federal Action. More particularly, the State Action asserts additional 1933 Act theories and claims based on (a) Defendants' failure to adequately disclose LendingClub's allegedly usurious loan rates and defective loan underwriting practices in the Offering Materials; and (b) certain Defendants' alleged violations of § 12(a)(2) of the 1933 Act. The Federal Action does not contain such claims or theories of liability. For this reason, it is possible that the amount recoverable at trial on behalf of persons with 1933 Act claims may be higher in the State Action. However, it is also possible that the amount recoverable at trial on behalf of persons with 1933 Act claims would not be lower in the Federal Action because (1) such persons (to the extent that they have claims under § 11) are presumptively entitled to calculate certain damages based upon the trading value of Lending Club shares on the date that the Federal Action was first brought (May 16, 2016), whereas (2) in the State Action there is a risk that a court would find that the true value of LendingClub shares on the date that the State Action was first brought (February 26, 2016) was less favorable to 1933 Act claimants. Ultimately, whether a greater amount of damages is recoverable in the State or in the Federal Action on a given class member's 1933 Act claims (if any) is a complex question, which depends on the resolution of complex issues of law and the timing of particular class members' purchases and sales of LendingClub shares.

○ The State Action may also be subject to dismissal depending upon the outcome of a case currently pending before the United States Supreme Court (*Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*,), which challenges whether state courts have jurisdiction over the 1933 Act claims that have been brought in the State Action. In such an event, those who purchased during the 1933 Act Class Period would continue to be entitled to share in any recovery on 1933 Act claims that may be obtained in the Federal Action, *provided* that they do not "opt out" of the Federal Class (see item 15 below).

○ Only the Federal Action asserts claims under the Exchange Act.

○ To the extent that you purchased Lending Club shares only during the period between June 9, 2015 and May 6, 2016, inclusive (i.e., during the broader Federal Class Period but after the shorter 1933 Act Class Period), you are NOT a member of the State Class but may be a member of the Federal Class.

**4.     What is a class action and who is involved?**

In a class action, one or more people or entities called "class representatives" sue on

behalf of themselves and other persons or entities who have the same or similar claims (with such persons or entities referred to collectively as the "class" or "class members").  In the State Action, the [State] Class Representatives are Kathy Geller, Dylan Youngblood, and Alton Consulting LLC, and the Subclass Representative is Dylan Youngblood.  In the Federal Action, the [Federal] Class Representative is the Water and Power Employees' Retirement Disability and Death Plan of the City of Los Angeles.  The persons and entities that filed the suits are called "plaintiffs" and the persons or entities being sued are called "defendants."  The State and Federal Courts will resolve the issues for all class and subclass members, except for those who exclude themselves, or "opt out," from the Class and Subclass (as discussed below).

The rulings by the respective Courts certifying the Federal and State Classes did not address the merits of these Actions.  Rather, certification means only that the ultimate outcomes of the Actions— whether favorable or unfavorable to Federal and State Plaintiffs  and the relevant classes and Defendants— will apply in like manner to each class member in each Action who does not timely elect to be excluded from the Class in that Action.

**5.      What has happened so far?**

**The State Action**.  On February 26, 2016, State Class Representative Geller filed, in State Court, the first complaint against Defendants on behalf of a putative class.  The Action alleged that Defendants had violated §§ 11, 12(a)(2) and 15 of the Securities Act by selling, or offering to sell, LendingClub shares pursuant to Offering Materials that contained materially false or misleading statements and/or omitted to disclose material information required to be disclosed therein.  All three State Class Representatives filed an amended consolidated complaint on August 26, 2016.

On September 30, 2016, in response to Defendants' demurrers the State Court sustained all of the State Plaintiffs' section 11 claims, but initially dismissed their section 12(a)(2) claims.  Fact discovery commenced in the fall of 2016 and remains ongoing.  On January 17, 2017, the State Class Representatives filed a Second Amended Consolidated Complaint (the "State Complaint"), which repled the § 12(a)(2) claims that the State Court had dismissed.  On March 17, 2017, the State Court sustained in part and denied in part Defendants' demurrers to the repled § 12(a)(2) claims.  Pursuant to the September 30, 2016 and March 17, 2017 Orders, and as previously described above, the § 11 claims are proceeding against all Defendants, and the § 12(a)(2) claims are proceeding against only Defendants LendingClub and Laplanche.  The § 15 claims, based upon LendingClub's underlying alleged violations of §§ 11 and 12(a)(2), are proceeding against the Individual Defendants.  On June 22, 2017, the State Court certified the State Class and the State Subclass.

**The Federal Action.**  On May 16, 2016, the first federal complaint against Defendants on behalf of a putative class for violations of the federal securities laws was filed in the Federal Court, and the Lead Plaintiff filed its Consolidated Complaint on December 9, 2016.  By order dated May 25, 2017, the Defendants' motions to dismiss the Consolidated Complaint were granted in part and denied in part.  On June 15, 2017 the Lead Plaintiff filed the operative Amended Complaint for Violation of the Federal Securities Laws, asserting claims under §§ 11 and 15 of the 1933 Act and § 10(b) of the Exchange Act, as well as SEC Rule 10b-5 promulgated thereunder, as described above.  On July 27, 2017, Defendants answered the Amended

Complaint.

On September 21, 2017, the State Class Representatives filed a motion to intervene and limited objection in the Federal Court, arguing that the State Court (which had already certified a 1933 Act class) was the superior forum for litigating all 1933 Act claims.  The Federal Class Representative opposed the motion to intervene and the limited objection.  On October 20, 2017 the Federal Court granted the motion to intervene, denied the limited objection, and directed the parties in both cases to meet and confer and prepare a joint notice, and to request the State Court's participation in a joint notice program to potential class members.  Both Courts have since approved the issuance of this Notice.

**6.      What type of recovery are the Class Representatives asking for?**

Both the State and Federal Class Representatives are asking for money to compensate the State Class and Federal Class Members, respectively, for the losses they allegedly suffered as a result of Defendants' conduct, as well as pre-judgment and post-judgment interest.  Members of the State Subclass may also be entitled to rescission of their purchases of LendingClub shares.

**7.      Is there any money available now?**

No money or benefits are available now because neither Court has yet decided whether Defendants did anything wrong, and no settlements have been reached.  There is no guarantee that any money or benefits ever will be obtained.  If they are, you will receive a notice describing how to receive a share of any recovery in which you may be eligible to participate.

**8.      What happens if there is a settlement in either of these actions?**

You will be notified of any settlement in either action. At that time, you will have an opportunity to opt out of the settlement.  Opting out of the settlement, however, is not the same as opting out of the Class, and doing so will NOT restore your right to bring your own lawsuit against these defendants based on the same, or similar, facts and circumstances related to LendingClub.

## DETERMINING IF YOU ARE A MEMBER OF THE CLASS OR SUBCLASS

**9.      How do I know if I am a Class or Subclass Member?**

You are a member of the State Class in the State Action if you purchased shares of LendingClub common stock pursuant to and/or traceable to the Registration Statement and Prospectus on or between December 11, 2014 and June 8, 2015, inclusive (the "1933 Act Class Period").

You are a member of the State Subclass in the State Action (which asserts claims under § 12(a)(2)) if you purchased shares of LendingClub common stock directly in LendingClub's December 11, 2014 Offering.  In general, this means that you or your agent must have purchased LendingClub common stock at the $15.00 (exactly) per share offering price, with a "trade date"

of December 10 or December 11, 2014, directly from one of the Defendants.[2]

You are a member of the Federal Class in the Federal Action if you purchased or otherwise acquired the common stock of LendingClub Corporation during the period from December 11, 2014 through May 6, 2016, inclusive (the "Class Period"), and were damaged thereby.  However, only class members who purchased shares of LendingClub common stock pursuant to and/or traceable to the Registration Statement and Prospectus during the 1933 Act Class Period are eligible to recover on the 1933 Act claims that have been asserted in the Federal Action.

Please note that to the extent that you purchased LendingClub shares only during the period between June 9, 2015 and May 6, 2016, inclusive (i.e., during the broader Federal Class Period but after the shorter 1933 Act Class Period), you are NOT a member of the State Class, but may be a member of the Federal Class.

If one of your mutual funds purchased or otherwise acquired LendingClub shares, that does not make you a class or subclass member in either action; instead, you are a State Class, State Subclass, and/or Federal Class member only if you (or your broker on your behalf) purchased LendingClub shares for your own account.  If you are the legal representative or fiduciary of a person or legal entity that purchased LendingClub shares (*e.g.*, if you are the trustee of a trust that purchased LendingClub shares), then the person or entity that you represent will be the State Class, State Subclass, and/or Federal Class member, but it may be legally bound by your decisions.

**10.     Are there exceptions to being included in the State Class (including the State Subclass) and Federal Class?**

Yes.  There are also some people and entities that are excluded from the State Class, State Subclass and/or the Federal Class by definition.   The excluded Persons are: each of the Defendants; their respective successors and assigns; past and current executive officers and directors of LendingClub and the Underwriter Defendants; the legal representatives, heirs, successors or assigns of the Individual Defendants; and any entity in which any of the above excluded persons have or had a majority ownership interest.  Short sellers who incurred losses during the class period as a result of their short sales are excluded from the Federal Class.  Also excluded from the State Class, State Subclass, and/or the Federal Class will be any Person who timely and validly seeks exclusion from the State Class, State Subclass, and Federal Class in accordance with the requirements of this Notice.

**11.     Are you still not sure if you're included?**

If you are still not sure whether you are included in the State Class, State Subclass, or Federal Class you can get free help at www.[StateLendingClubLitigationWebsite].com or www.[FederalLendingClubLitigationWebsite].com or by calling or writing to Co-Lead Counsel

---

[2]     If you did *not* purchase LendingClub shares directly in LendingClub's December 11, 2014 Offering, but rather, purchased shares on the open market, including at a price *other than* the $15.00 per share offering price, then you are not a member of the State Subclass.

for either the State or Federal Class at the phone numbers or addresses provided in response to question 15 below.

## YOUR OPTIONS AS A CLASS MEMBER

**12.     What are my options as a State Class, State Subclass, and/or Federal Class Member?**

You may decide to stay in the State Class (and State Subclass, if applicable[3]), in the Federal Class, or in both Classes.  You may also decide to opt out of one Class (but stay in the other), or you may opt out of both Classes.

**13.     What happens if I choose to stay in the State Class (including the SubClass, if applicable) and the Federal Class?**

If you stay in the State Class (including the State Subclass, if applicable) and the Federal Class, you will be permitted to share in a recovery, if any, that may occur in those Actions if you suffered compensable losses, subject to the terms of any plan of allocation that may be approved in such Actions by the relevant Court.  But you give up any rights to sue Defendants separately about the same legal claims in these lawsuits.  You will also be legally bound by the Orders issued by either Court as well as any Judgments made by either Court in the respective class actions, even if there are no recoveries.  The Federal and State Actions are scheduled to go to trial in September and October, 2018, respectively, and to the extent you do nothing you will be bound by any judgment(s) that are entered following any trial.[4]

**14.     How do I stay in the State Class (including the State Subclass, if applicable) and the Federal Class?**

You do not have to do anything at this time to stay in both the State Class (including the State Subclass, if applicable) and the Federal Class.

**15.     What happens if I "opt out" (exclude myself) from the State Class (including the State Subclass, if applicable) and/or the Federal Class?**

If you opt out of the State Class (which will also automatically cause you to opt out of the State SubClass) and the Federal Class – which you can do by stating in writing that you do not want to be included in the State Class, the Federal Class, or both (*see* item 16 below) -- you will give up the right to participate in any recoveries that may occur in the action(s) that you opt out of.  If you opt out of both actions, you will keep any rights you may currently have to sue Defendants regarding the legal claims at issue, and you will also *not* be bound by the Orders

---

[3] *If* you are a member of the State SubClass, you may stay in both the State Class and the Subclass, or opt out of both, but you cannot stay in one and opt out of the other.

[4] To the extent that you purchased LendingClub shares only during the period between June 9, 2015 and May 6, 2016, inclusive (i.e., during the broader Federal Class Period but after the shorter 1933 Act Class Period), you are NOT a member of the State Class, and would therefore only be bound by any judgments entered in the Federal Action.

issued by either Court and the Judgments made by either Court in these class actions.

You may also opt out of the Class in one action, while staying in the Class in the other, in which case you will give up the right to participate in any recoveries that may occur in the action(s) that you opt out of, but will only be bound by Orders and Final Judgments issued by (including any settlements approved by) the Court in the action that you do not opt out of.

**16.    How do I "opt out" (exclude myself) from the State Class (and State Subclass, if applicable) and/or the Federal Class?**

If you do not want to be a State Class and/or Federal Class Member, **you must send** a signed, written "Request to Opt Out" to the Notice Administrator so it is *received* no later than _____, 2018.  Your written request must include:

- Your name, address, and telephone number;
- A statement that you request exclusion from the Classes in *In re LendingClub Corporation Shareholder Litigation,* Case No. CIV537300 **and/or** *In re LendingClub Corporation Securities Litigation,* Case No. 3:16-cv-02627; and
- Your signature

You must mail your Request to Opt Out by First-Class Mail to the following address:

*LendingClub Shareholder Litigation - Exclusions*
c/o KCC Class Action Services
3301 Kerner Blvd.
San Rafael, CA 94901

If you are potentially a member of both the State Class and the State Subclass, you cannot "opt out" of one and remain in the other, and any "opt out" request for the State Class or State Subclass will be deemed a request for exclusion from both.

## THE LAWYERS REPRESENTING YOU

**17.    As a State Class, Federal Class, and/or (if applicable) Subclass member, do I have a lawyer representing my interests in this case?**

Yes.  The State Court has appointed lawyers to represent the members of State Class and State Subclass, and the Federal Court has appointed lawyers to represent the members of the Federal Class.  These lawyers are called "Class Counsel."  The following lawyers have been appointed Class Counsel to represent the State Class and State Subclass in the State Action: Scott+Scott, Attorneys at Law, LLP (c/o John T. Jasnoch at jjasnoch@scott-scott.com, or 1-800-332-2259) and Cotchett, Pitre & McCarthy LLP (c/o Alexandra Summer) at asummer@cpmlegal.com, or 650-697-6000).  The following lawyers have been appointed Class Counsel to represent the Federal Class in the Federal Action:  Robbins Geller Rudman & Dowd, LLP (c/o _____) at _____@_____, or _____).

If you have questions about this Notice, you can contact any of the Class Counsel at the

contact emails or phone numbers listed above.  For additional questions about the State Action or the Federal Action, you can contact the respective Class Counsel in those actions at the contact emails or phone numbers listed above.  You will not be separately charged for these lawyers, or for the services of any other counsel representing the State Class or the Federal Class.

**18.     How will the lawyers for the State Class (including the  State Subclass) and Federal Class be compensated?**

If any recoveries are obtained for the State Class or Federal Class, Class Counsel will submit one or more applications to the State and/or Federal Court for an award of attorneys' fees and for reimbursement of litigation expenses that plaintiffs' counsel have incurred in pursuing the claims at issue.  Counsel may also ask the Court to approve a reasonable service award for one or more of the Class Representatives.  If approved, any such attorneys' fees, expenses or awards will either be paid from any recoveries obtained or separately by Defendants.  Neither the State Class nor Federal Class members will be liable for any such fees, expenses or awards.

**19.     Should I get my own lawyer?**

You do not need to hire your own lawyer.  However, you are free to hire your own lawyer at your own expense.  If you hire a lawyer to speak for you or to appear in either the State Court or the Federal Court, your lawyer must file a Notice of Appearance.

## <u>GETTING MORE INFORMATION</u>

**20.     Where do I get more information?**

This Notice contains only a summary of the State Action, the Federal Action, and proceedings to date.  Complete copies of public pleadings, Court rulings and other filings in the State Action are available for review and copying at the Clerk's office at the California Superior Court for the County of San Mateo at the following address: _____.  Complete copies of public pleadings, Court rulings and other filings in the Federal Action are available for review and copying at the Clerk's office at the United States District Court for the Northern District of California, at the following address:  _____.  Additional information is also available at www.[StateLendingClubLitigationWebsite].com and www.[FederalLendingClubLitigationWebsite].com, or by contacting the Notice Administrator at *LendingClub Shareholder Litigation,* c/o KCC Class Action Services, P.O. Box 404019, Louisville, KY 40233-4019, tel. (__) ___-_____.

*Please do not contact the Courts, the Clerks of the Courts, or Defendants for additional information.  They cannot answer any questions or discuss the Action.*

## SPECIAL NOTICE TO BANKS, SECURITIES BROKERS, AND OTHER NOMINEES

If you purchased LendingClub shares (ticker: LC) between December 11, 2014 and June 8, 2015 inclusive or purchased LendingClub shares directly in the December 11, 2014 Offering at the $15.00 per share Offering price for the beneficial interest of a person or entity other than yourself, the Court has directed that, ***WITHIN FOURTEEN (14) CALENDAR DAYS OF YOUR RECEIPT OF THIS NOTICE***, you must either: (A) provide to the Notice Administrator the name and last known address of each person or entity for whom or which you purchased such shares (preferably in electronic format (MS Excel or CSV file); or (B) request from the Notice Administrator additional copies of this Notice (which will be provided to you free of charge) and send them, within fourteen (14) calendar days of receipt, by First-Class mail directly to the beneficial owners/purchasers of those LC shares.  All communications concerning the foregoing should be addressed to the Notice Administrator at: *LendingClub Shareholder Litigation,* c/o KCC Class Action Services, P.O. Box 404019, Louisville, KY 40233-4019, tel. (__) ___-_____, or by email to _____.

Regardless of whether you choose to complete the mailing yourself or elect to have the mailing performed for you, you may obtain reimbursement for or advancement of reasonable administrative costs actually incurred or expected to be incurred in connection with forwarding this Notice and which would not have been incurred but for the obligation to forward this Notice, upon submission of appropriate documentation to the Notice Administrator.

**PLEASE DO *NOT* CONTACT THE COURTS OR THE CLERKS' OFFICES REGARDING THIS NOTICE**.

| | |
|---|---|
| Dated: _____, 2017 | BY ORDER OF THE SUPERIOR COURT OF CALIFORNIA FOR SAN MATEO COUNTY<br>HON. MARIE S. WEINER |
| Dated: _____, 2017 | BY ORDER OF THE UNITED STATES DISTRICT FOR THE NORTHERN DISTRICT OF CALIFORNIA<br>HON. WILLIAM H. ALSUP |

# EXHIBIT B

**[EXHIBIT B]**

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN MATEO

| | |
|---|---|
| IN RE LENDINGCLUB CORPORATION SHAREHOLDER LITIGATION | Master File No.: CIV 537300 |

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE LENDINGCLUB CORPORATION SECURITIES LITIGATION | Case No.: 3:16-cv-02627-WHA |

[PROPOSED] SUMMARY NOTICE OF PENDENCY OF CLASS ACTION

**TO:    ALL PERSONS AND ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED THE COMMON STOCK OF LENDINGCLUB CORPORATION BETWEEN DECEMBER 11, 2014 AND JUNE 8, 2015, INCLUSIVE, INCLUDING ALL PERSONS WHO PURCHASED LENDINGCLUB COMMON STOCK DIRECTLY IN LENDINGCLUB'S DECEMBER 11, 2014 INITIAL PUBLIC OFFERING AT $15 PER SHARE.**

**Please be advised that your rights may be affected by (1) a class action lawsuit pending in a state court if you purchased or otherwise acquired shares of the common stock of LendingClub Corporation, Inc. ("LendingClub" or the "Company") between December 11, 2014 and June 8, 2015, and (2) by a class action lawsuit pending in a federal court if you purchased or otherwise acquired shares of the common stock of LendingClub between December 11, 2014 and May 6, 2016, inclusive.  This Notice explains important rights you may have.  Please read it carefully.**

*Courts have authorized this notice.  This is not a solicitation from a lawyer.*

YOU ARE HEREBY NOTIFIED, pursuant to Court Orders dated June 22, 2017 and September 19, 2017, that a class and Subclass have been certified in a class action entitled *In re LendingClub Corporation Shareholder Litigation,* Case No. CIV537300 (the "State Action"), currently pending before the Hon. Marie S. Weiner in the Superior Court of the State of California, San Mateo County (the "State Court").

YOU ARE HEREBY NOTIFIED, pursuant to a Court Order dated October 20, 2017, a class has also been certified in a class action entitled *In re LendingClub Corporation Securities Litigation,* Case No. 3:16-cv-02627-WHA (the "Federal Action"), currently pending before the Hon. William H. Alsup in the United States District Court for the Northern District of California (the "Federal Court").

The State Action is brought on behalf of all persons or entities who purchased or otherwise acquired shares of LendingClub common stock pursuant and/or traceable to LendingClub's December 11, 2014 Initial Public Offering (the "IPO") during the period December 11, 2014 through June 8, 2015, inclusive (the "Class"), and asserts claims against (a) defendant LendingClub; (b) certain LendingClub officers and directors (the "Individual Defendants") who signed the Registration Statement and incorporated Prospectus for the IPO (the "Offering Materials"); and (c) the underwriters of LendingClub's IPO (the "Underwriter Defendants"). The State Plaintiffs, on behalf of the Class, allege that all Defendants violated § 11 of the federal Securities Act of 1933 (the "1933 Act") because the Offering Materials, pursuant to which LendingClub shares of common stock were offered and sold in the IPO, contained materially false or misleading statements and/or omitted to disclose material information required to be disclosed therein. The State Plaintiffs also allege, on behalf of the Class, that each Individual Defendant is also liable for LendingClub's alleged violations of § 11 as a "controlling person" of LendingClub under § 15 of the 1933 Act.

The State Plaintiffs, on behalf of all persons or entities who purchased LendingClub common stock directly in the December 11, 2014 IPO (the "Subclass"), also allege that (a) Defendants LendingClub and Renaud Laplanche violated § 12(a)(2) of the 1933 Act because the Offering Materials contained materially false or misleading statements and/or omitted to disclose

material information required to be disclosed therein; and (b) each Individual Defendant is liable for LendingClub's alleged violations of § 12(a)(2) as a "controlling person" of LendingClub under § 15 of the 1933 Act.

The Federal Action alleges that Defendants LendingClub, Laplanche and Dolan defrauded investors who purchased LendingClub common stock between December 11, 2014 and May 6, 2016 by making certain misstatements and omissions concerning LendingClub's internal controls, data integrity and security, and related-party transactions, and that these Defendants violated § 10(b) of the Exchange Act, as well as SEC Rule 10b-5 promulgated thereunder, by making such statements or omissions knowingly or with extreme recklessness, and caused the price of LendingClub common stock to be artificially inflated during the period from December 11, 2014 through May 6, 2016.  Lead Plaintiff in the Federal Action also asserts claims on behalf of investors who purchased Lending Club common stock from December 11, 2014 through June 8, 2015 which allege that all Defendants violated §§ 11 and 15 of the 1933 Act because LendingClub's Offering Materials contained material misstatements and/or omissions concerning LendingClub's internal controls, data integrity and security, and related-party transactions.

Each Defendant denies that they made any false or misleading statements or omissions that violated the Exchange Act or that LendingClub's Offering Documents contained any untrue statements of material fact or material omissions in violation of the 1933 Act, or that they otherwise violated either the Exchange Act or 1933 Act.

The State Court has decided that the State Action should proceed as a class action with respect to the § 11 (and related § 15) claims on behalf of a ***Class*** that (subject to certain exclusions) consists of "all persons and entities who, between December 11, 2014 and June 8,

2015, inclusive, purchased or otherwise acquired shares of the common stock of LendingClub pursuant to and/or traceable to the Registration Statement and Prospectus issued in connection with LendingClub's December 2014 Initial Public Offering."  The State Court has also certified a *Subclass,* with respect to the § 12(a)(2) (and related § 15) claims only, that consists of "all persons and entities who purchased shares of the common stock of LendingClub directly in the December 11, 2014 Initial Public Offering."

The Federal Court has also decided that the Federal Action should proceed on behalf of a *Class* that consists of "All persons and entities who purchased or otherwise acquired the common stock of LendingClub Corporation during the period from December 11, 2014 through May 6, 2016, inclusive, and were damaged thereby.  The Federal Action, like the State Action, also asserts claims under §§ 11 and 15 of the 1933 Act on behalf of all persons and entities who, purchased or otherwise acquired shares of LendingClub common stock between December 11, 2014 and June 8, 2015.

If you are a Member of the State Class (including the Subclass) or the Federal Class, your rights may be affected by these lawsuits.  If you have not received a detailed Notice of Pendency of Class Actions ("Notice"), you may obtain copies by writing to Notice Administrator, *In re LendingClub Shareholder Litigation*, c/ KCC Class Action Services, P.O. Box 404019, Louisville, KY 40233-4019, tel: (888) [___-____], or by downloading this information at www.[LendingClubLitigationWebsite]].com. Inquiries regarding the State Action, other than requests for a copy of the Notice, may be made to Co-Lead Class Counsel: Scott+Scott, Attorneys at Law, LLP, c/o John T. Jasnoch, 707 Broadway, Suite 1000, San Diego, CA, 92101, tel. (619)-233-4565 or Cotchett, Pitre & McCarthy LLP, c/o Alexandra P. Summer, 840 Malcolm Rd., Burlingame, CA, 94010, tel. (650)-753-1763.  Inquiries regarding the Federal Action may

be made to [Federal P Insert].

You have the right to request exclusion ("opt out") from the State Class (which will also exclude you from the Subclass) or the Federal Class.  If you do not request exclusion from the State Class or Federal Class, you will be bound by past and any future rulings of the respective Courts on the claims asserted against the Defendants, even if there is no recovery.

IF YOU WISH TO REMAIN IN THE CLASSES, YOU DO NOT HAVE TO DO ANYTHING AT THIS TIME.  HOWEVER, IF YOU WISH TO BE EXCLUDED FROM THE STATE CLASS OR THE FEDERAL CLASS, YOU MUST SUBMIT A REQUEST FOR EXCLUSION BY _____, 2017, IN THE MANNER AND FORM EXPLAINED IN THE NOTICE.  ALL MEMBERS OF THE STATE CLASS OR FEDERAL CLASS WHO DO NOT VALIDLY REQUEST EXCLUSION FROM THE CLASS WILL BE BOUND BY ALL OF THE ORDERS THE RESPECTIVE COURTS ISSUE AND JUDGMENTS THE RESPECTIVE COURTS HAVE OR WILL MAKE IN THE ACTIONS, EVEN IF THERE IS NO RECOVERY.

**PLEASE DO _NOT_ CONTACT THE COURT OR THE CLERK'S OFFICE REGARDING THIS NOTICE**.

Dated:  _____, 2017                    BY ORDER OF THE COURT
                                        HON. MARIE S. WEINER
                                        SUPERIOR COURT OF CALIFORNIA FOR SAN
                                        MATEO COUNTY


Dated:  _____, 2017                    BY ORDER OF THE COURT
                                        HON. WILLIAM H. ALSUP
                                        UNITED STATES DISTRICT COURT FOR THE
                                        NORTHERN DISTRICT OF CALIFORNIA

# EXHIBIT C

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re

LENDINGCLUB SECURITIES
LITIGATION.

_____/

This Document Relates to:

ALL ACTIONS.

_____/

No. C 16-02627 WHA
No. C 16-02670 WHA
No. C 16-03072 WHA

(CONSOLIDATED)

**ORDER RE CLASS
CERTIFICATION**

## INTRODUCTION

In this PSLRA action, lead plaintiff moves for class certification and to enjoin a parallel
state action. Class representatives in the parallel state action move to intervene and, along with
defendants, oppose class certification. For the reasons herein, lead plaintiff's motion for class
certification is **GRANTED.** Lead plaintiff's motion for an injunction is **DENIED.** State plaintiffs'
motion to intervene is **CONDITIONALLY GRANTED**.

## STATEMENT

**1. THE FEDERAL ACTION.**

The background of this action has been set forth in a prior order (Dkt. No. 181).
In brief, a number of putative class actions were filed in our district court on behalf of investors
who purchased securities of defendant LendingClub Corporation in its initial public offering.
The actions were consolidated and an order appointed Water and Power Employees' Retirement,

United States District Court

For the Northern District of California

Disability and Death Plan of the City of Los Angeles ("WPERP") as lead plaintiff (Dkt. No. 90). Remaining defendants include LendingClub, Renaud Laplanche (LendingClub's founder and former CEO), Carrie Dolan (LendingClub's former CFO), LendingClub directors and former directors, and the financial firms that underwrote LendingClub's IPO (Dkt. No. 126 at 5–6).

LendingClub acted as a so-called peer-to-peer lender. It operated an online marketplace that connected borrowers to investors. When a borrower and investor matched, LendingClub facilitated the loan and then acted as the loan servicer, earning fees for servicing and loan origination (Dkt. No. 126 at ¶¶ 29–30).

On December 11, 2014, LendingClub completed its IPO, selling more than 66.7 million shares of common stock at $15 per share. In connection with the IPO, it issued a registration statement, which it filed with the SEC. That statement included representations about LendingClub's internal control procedures for financial reporting, which stated that LendingClub had evaluated its disclosure controls and procedures and concluded that they were "effective at a reasonable assurance level." The registration statement further represented that LendingClub evaluated borrowers using "sophisticated risk assessment" processes and maintained an effective data-security program (Dkt. No. 126 ¶¶ 35, 57).

The registration statement also specified a 180-day "lock-up" period, beginning on December 11, 2014, during which only IPO shares were available to the public. When the lock-up period ended on June 9, 2015, both IPO and non-IPO shares became available on the open market (*id.* at 35, Dkt. No. 223 at 3).

WPERP began purchasing shares of LendingClub stock on May 4, 2015, and by the time the lock-up period ended on June 9, 2015, it owned 306,620 shares. WPERP continued thereafter to buy and sell LendingClub shares, never holding fewer than the 306,620 shares, eventually acquiring more than 1.7 million shares (Dkt. No. 231-1).

On May 9, 2016, less than eighteen months after the IPO and issuance of the registration form, LendingClub's CEO, Laplanche, resigned following "an internal review of sales of $22 million in near-prime loans to a single investor, in contravention of the investor's express instructions as to a non-credit and non-pricing element." LendingClub also reported that it had

United States District Court

For the Northern District of California

discovered that Laplanche had a financial stake in Cirrix Capital, L.P., a company formed for the sole purpose of purchasing LendingClub loans. One week later, LendingClub's quarterly report revealed that it had "identified material weakness," including a "[l]ack of transparent communication and appropriate oversight" in dealing with investors. These weaknesses resulted from "the aggregation of control deficiencies related to the Company's 'tone at the top,'" which deficiencies "also existed at the end of 2015" (*id.* ¶¶ 43, 105–06).

As these and other revelations of improprieties came to light, LendingClub's share price went into precipitous decline. Three securities actions were filed in federal court in San Francisco in June 2016. They were related to the undersigned judge, and later consolidated with WPERP appointed as lead plaintiff, and Robbins Geller Rudman & Dowd LLP as lead counsel (Dkt. Nos. 71, 90, 113). The consolidated complaint asserts claims under Section 11 and Section 15 of the Securities Act of 1933, and Section 10(b), Rule 10b–5, and Section 20(a) of the Exchange Act of 1934.

Lead plaintiff now moves for certification of a class consisting of:

> All persons and entities who purchased or otherwise acquired the common stock of LendingClub Corporation ("LendingClub" or the "Company") during the period from December 11, 2014 through May 6, 2016, inclusive (the "Class Period"), and were damaged thereby, including those who purchased LendingClub common stock traceable to the Registration Statement (collectively, the "Class"). Excluded from the Class are defendants and their families, the officers, directors, and affiliates of defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

Defendant LendingClub and director defendants filed an opposition to the motion, which the remaining defendants join.

**2.    THE STATE ACTION.**

In February 2016, approximately three-and-a-half months before this action, a class action complaint was filed against LendingClub in the Superior Court of the State of California, County of San Mateo, alleging violations of Sections 11, 15, and 12(a)(2) of the Securities Act of 1933. *In re LendingClub Corp. Shareholder Litig*., Master File No. CIV537300 (Cal. Super. June 23, 2017). Like this action, the state action alleges LendingClub's registration statement

3

1 contained misstatements and omissions concerning, inter alia, "material weaknesses in

2 LendingClub's internal controls," "undisclosed related–party transactions," and the assumption

3 of undisclosed but material credit and liquidity risks.  The court in the state action certified

4 a class in June 2017.  Class Notice, however, remains unsent (Dkt. No. 227 ¶ 8; Exh. C ¶ 1).

5      On September 21, the date oppositions to class certification were due in the federal

6 action, class representatives in the parallel state action moved to intervene for the limited

7 purpose of opposing class certification of Sections 11 and 15 claims.  They filed an opposition to

8 class certification as an attachment to their motion to intervene.  An order set the hearing on their

9 motions for October 12, the same date as the hearing on this motion for class certification (Dkt.

10 Nos. 222, 229).

11      All parties to both actions appeared at the October 12 hearing.  This order follows full

12 briefing and oral argument.

13 **ANALYSIS**

14      This order first addresses state plaintiffs' motion for intervention.  It then turns to

15 WPERP's motion for class certification, and finally addresses WPERP's motion to enjoin the

16 state action.

17      **1.**     **INTERVENTION.**

18      State plaintiffs move for permissive intervention, and in the alternative for intervention

19 as of right.  For the reasons herein, permissive intervention is **GRANTED** subject to certain

20 conditions.

21      For permissive intervention, the applicant need only show that (1) independent grounds

22 for jurisdiction exist; (2) the motion is timely; and (3) the applicant's claim or defense shares a

23 common question of law or fact with the main action.  FRCP 24(b); *In re Benny*, 791 F.2d 712,

24 721–22 (9th Cir. 1986).  Further, in exercising its discretion, the court should consider "whether

25 the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

26 FRCP 24(b)(3).

27      WPERP opposes the motion to intervene only on the grounds of timeliness.

28

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    **A.    Timeliness.**

2    WPERP argues that state plaintiffs' motion is prejudicial because, by waiting to move

3    until only three weeks before the hearing on class certification, they have denied WPERP any

4    opportunity to take discovery that would aid WPERP in showing that it is better suited to protect

5    the putative class (Dkt. No. 235 at 8).  State plaintiffs' delay in bringing this motion, WPERP

6    argues, was tactical.  It forced WPERP either to respond without sufficient information, or to

7    seek a continuance, which would have given state plaintiffs an opportunity to advance their case,

8    including by distributing their class notice, which was approved on September 22 (but has not

9    yet been sent).  That notice, WPERP observes, would not inform class members of the existence

10   of the federal suit (*id.* at 8–9).

11   Allowing the state plaintiffs to proceed and distribute notice, WPERP contends, will

12   prejudice absent class members for a variety of reasons, chief among them that the state action's

13   Sections 11 and 15 claims are capped at a much lower recovery amount than the federal action

14   — a claim that state plaintiffs dispute (*ibid.*).

15   Though cognizant of the limited time WPERP had to respond to state plaintiffs' motion,

16   this order finds that intervention is appropriate because absent class members will be best served

17   by allowing state plaintiffs, who also purport to act in the putative class's best interest, to set

18   forth their argument for why they are the better representative.  WPERP had two weeks to

19   prepare a response to state plaintiffs' opposition to class certification, which was adequate under

20   these circumstances.  Therefore, state plaintiffs' motion is timely for the limited purpose for

21   which they seek to intervene.[1]

22   State plaintiffs' motion to intervene is therefore **GRANTED** on the condition that they

23   remain under this Court's jurisdiction so that the undersigned judge may coordinate their action

24   with the federal action to avoid any prejudice to absent class members.

25   To a limited degree, such coordination is already underway.  At the hearing on this

26   motion, state plaintiffs agreed they will participate in the settlement conference before

27   

28   _____

     [1]  State plaintiffs have met the additional requirements of permissive intervention — independent
     grounds for jurisdiction, and common claims — which WPERP has not opposed.

5

1   Chief Magistrate Judge Joseph Spero on November 28, and have further assured the undersigned

2   judge that they will not send class notification until this order issued. Moreover, state plaintiffs

3   agreed that they will not discuss settlement (except at the settlement conference) until the

4   Supreme Court issues a decision in *Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*, _U.S. _, 137

5   S. Ct. 2325 (2017), which decision has the potential to jeopardize their case by revoking state

6   court jurisdiction over Securities Act claims.

7           Certain additional requirements to state plaintiffs' intervention are set forth below in the

8   section addressing WPERP's motion to enjoin the state action. Before addressing those

9   conditions, however, this order first turns to WPERP's motion for class certification.

10          **2.      CLASS CERTIFICATION.**

11          The party seeking class certification bears the burden of first showing that it meets

12  the four prerequisites of FRCP 23(a): (1) numerosity; (2) common questions of law or fact;

13  (3) typicality; and, (4) adequacy. FRCP 23(b) sets forth three conditions under which, if the

14  prerequisites of FRCP 23(a) are satisfied, a class action may be maintained. Class certification

15  is appropriate if a plaintiff meets all the prerequisites of FRCP 23(a) and at least one condition

16  of FRCP 23(b). *Abdullah v. U.S. Sec. Assocs., Inc*., 731 F.3d 952, 956–57 (9th Cir. 2013).

17  Under FRCP 23(b)(3), the district court must find "that the questions of law or fact common to

18  class members predominate over any questions affecting only individual members," and "that a

19  class action is superior to other available methods for fairly and efficiently adjudicating the

20  controversy." The Supreme Court has "cautioned that a court's class-certification analysis must

21  be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim,"

22  *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); however, "[m]erits questions may be

23  considered to the extent — but only to the extent — that they are relevant to determining

24  whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret.*

25  *Plans and Trust Funds*, 568 U.S. 455, 464–65 (2013).

26

27

28

United States District Court

For the Northern District of California

6

United States District Court

For the Northern District of California

### A. FRCP 23(a).

#### *(1) Numerosity.*

Defendants do not challenge certification based on the numerosity element.  Here, plaintiff estimates that there are thousands of members in the proposed class based on the over 394 million outstanding shares of LendingClub common stock.  This is sufficient to satisfy the numerosity requirement of FRCP 23(a)(1).

#### *(2) Commonality.*

Defendants likewise do not challenge certification under FRCP 23(a)'s commonality requirement.  To show commonality, a plaintiff "need not show . . . that every question in the case, or even a preponderance of questions, is capable of class wide resolution.  So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)."  *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014).  Here, WPERP's allegations that investors were defrauded by the same misleading registration statement over the same period of time, and suffered similar losses as a result are sufficient to fulfill FRCP 23(a)'s commonality requirement.

#### *(3) Typicality.*

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  FRCP 23(a)(3).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[ ], and whether other class members have been injured by the same course of conduct."  *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) (quotations omitted).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Class certification is inappropriate, however, if a putative class representative is subject to "unique defenses which threaten to become the focus of the litigation."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

United States District Court

For the Northern District of California

1    Defendants argue that WPERP is atypical because it is subject to unique defenses based

2  on its trading history. Specifically, defendants argue that WPERP cannot show that its shares are

3  traceable to IPO purchases, a necessary element of a Section 11 claim. Defendants further argue

4  that WPERP's Sections 10(b) and 11 claims are both subject to negative loss causation

5  defenses that threaten to predominate over common questions and render their claims atypical.

6  Each argument is addressed in turn.

7                    *(a)      Traceability.*

8    To prove a violation of Section 11, a plaintiff must show the securities it purchased were

9  issued under a materially false or misleading registration statement. *In re Century Aluminum Co.*

10  *Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir. 2013). If a company issues multiple rounds of stock

11  under different registration statements, this requires proof that the plaintiff's shares are traceable

12  to the misleading statement and not to an innocent one. Otherwise, the plaintiff has not been

13  damaged, and has no standing to sue. *Ibid.* "The burden of tracing shares to a particular public

14  offering rests with plaintiffs." *In re Wells Fargo Mortg.-Backed Certificates Litig.*, 712 F. Supp.

15  2d 958, 963 (N.D. Cal. 2010).

16    Here, LendingClub issued approximately 295 million shares via private offering to

17  insiders prior to its IPO. These were not traded during the lock-up period. WPERP did not

18  acquire any of these shares, nor were they connected with the allegedly misleading registration

19  statement (*see* Dkt. 231-10).

20    LendingClub then issued 67 million shares in the IPO under an allegedly false

21  registration statement, which issuance was followed by a lock-up period from December 11,

22  2014, to June 8, 2015, during which only IPO shares were available for purchase. WPERP

23  purchased IPO shares beginning in May 2016, and acquired over 300,000 shares prior to the last

24  day of the lock-up period (Dkt. No. 223 at 3). On June 9, 2015, private shares entered the open

25  market, and were commingled therein with IPO shares.

26    Therefore, only shares that were purchased in the IPO or on the open market before

27  June 9, 2015, are traceable to the allegedly misleading disclosure statement (absent an

28  individualized showing that post-lock-up purchases were individually traceable to the IPO).

United States District Court

For the Northern District of California

1    This is so because "[i]f there is a mixture of pre-registration stock and stock sold under the

2    misleading registration statement, a plaintiff must either show that he purchased his stock in the

3    initial offering or trace his later-purchased stock back to the initial offering." *Hertzberg v.*

4    *Dignity Partners, Inc.*, 191 F.3d 1076, 1080 n.4 (9th Cir. 1999)

5         It is undisputed that WPERP did not purchase or own any privately issued shares during

6    the six month lock-up period from December 2014 to June 9, 2015. At the end of the lock-up

7    period it owned 306,620 shares, and its holdings never dropped below this number (Dkt. No.

8    231-1). It is likewise undisputed, however, that WPERP traded in the post-lock-up market.

9    In fact, it purchased and sold hundreds of thousand more shares during the post-lock-up period

10   than it had purchased in the lock-up period (*ibid.*).

11        As a result of the post-lock-up commingling, defendants argue that WPERP cannot trace

12   its current shares to the allegedly misleading registration statement and, therefore, lacks

13   standing. They observe that our court of appeals has strictly construed the tracing requirement.

14   In *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d at 1106, for example, our court of appeals

15   held that where a plaintiff purchased stock in a mixed market (*i.e.,* one containing both shares

16   issued under the misleading statement and shares not alleged to be misleading) it could prove

17   traceability in only one of two ways: (1) by showing it purchased directly in the allegedly

18   misleading issuance, or (2) by tracing chain of title from later purchased shares back to the

19   allegedly misleading issuance. *Ibid.* Further illustrating this strict requirement, the court in *In re*

20   *Quarterdeck Office Sys., Inc. Sec. Litig.*, No. CV 92-3970-DWW(GHKX), 1993 WL 623310, at

21   *2 (C.D. Cal. Sept. 30, 1993) (Judge David Williams) held that though the plaintiff purchased

22   stock in a market containing 97 percent shares issued under the misleading statement, this was

23   not enough to show traceability because its shares could have come from the innocent three

24   pereent. Traceability, it held, is not a matter of probability, but rather is construed literally and

25   requires a showing that the shares purchased were actually the offending shares. *Id.* at *3.

26        These decisions, though they illustrate the strict application of Section 11's traceability

27   requirement, are inapposite here. It is uncontested that WPERP purchased shares issued under

28   the allegedly misleading registration statement before they were commingled with any other

9

United States District Court

For the Northern District of California

1    shares.  Nobody argues otherwise and, therefore, probability does not enter into the analysis.

2    The only question is whether WPERP *retained* the shares.

3           This, in turn, presents the question of which accounting treatment those shares should

4    be given.  WPERP correctly observes that if its transactions are afforded "last-in, first-out"

5    ("LIFO") treatment, all of its holdings as of June 8, 2015 would remain traceable to the lock-up

6    period (Reply at 2).  If, on the other hand, the first-in, first-out ("FIFO") method is used, WPERP

7    will be deemed to have owned no traceable shares by the corrective disclosure date.

8           Whether LIFO or FIFO applies is a matter of first impression in the Section 11

9    traceability context.  In the somewhat different context of calculating estimated losses under

10   the PSLRA, however, the majority of courts in our district have preferred the LIFO method.

11   *See Bodri v. Gopro, Inc.*, No. 16-CV-00232-JST, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28,

12   2016) (Judge Jon Tigar) ("While the Ninth Circuit has declined to endorse a particular method"

13   to determine which party has the greatest financial stake, "the weight of authority puts the most

14   emphasis on the competing movants' estimated losses, using a 'last in, first out' ("LIFO")

15   methodology.") (citations and quotations omitted); *see also Nicolow v. Helwett Packard Co.*, No.

16   12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (Judge Charles Breyer);

17   *Perlmutter v. Intuitive Surgical*, Inc., No. 10-CV-03451-LHK, 2011 WL 566814, at *11 (N.D.

18   Cal. Feb. 15, 2011) (Judge Lucy Koh); *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007

19   WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) (Judge Ronald Whyte).

20          It would be incongruous to measure losses by one method, yet measure traceability by the

21   opposite method.  A lead plaintiff who suffered the greatest losses under a Section 10(b) claim

22   might also be deemed to lack standing under a Section 11 claim based on such an incongruity.

23   Accordingly, this order finds that the LIFO method, preferred for determining estimated loss, is

24   likewise best suited to determine the number of IPO shares retained.  Using this method, WPERP

25   has demonstrated that it retained over 300,000 shares from the end of the IPO-period until the

26   date it filed suit and, therefore, will not be subject to defendants' unique standing defense.

27

28

United States District Court

For the Northern District of California

### *(b)* ***Negative Loss Causation.***

Defendants further argue that WPERP's claims are susceptible to a showing of "negative loss causation," which is an affirmative defense to both Section 11 and 10(b) claims. *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

A negative causation defense "prevents recovery for losses that the defendant proves are not attributable to the alleged misrepresentation or omission in the registration statement." *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 860 (9th Cir. 2013). In general, a misrepresentation will not be deemed to have caused a loss if the shares at issue were sold before the defendant discloses its misleading statement. *See Eichenholtz v. Verifone Holdings, Inc.*, No. C07–06140MHP, 2008 WL 3925289, at *4 (N.D. Cal. Aug. 22, 2008).

Defendants point out that WPERP sold hundreds of thousands of shares prior to the corrective disclosure and, therefore, will not be able to recover for any losses sustained in those sales (Br. at 10).

This may be true, but it hardly shows that WPERP's claims are atypical of the putative class. As an initial matter, it is undisputed that WPERP retained 1.7 million shares through the end of the class period (Dkt. No. 223 at 16). Those shares are unaffected by defendants' anticipated negative loss causation defense. Moreover, WPERP is not in any way uniquely vulnerable to a negative loss causation defense. Negative loss causation will apply to any class member who sold shares prior to the corrective disclosure.

Finally, plaintiff correctly observes that our court of appeals has recognized a "leakage" damages model, under which a plaintiff may recover for interim manifestations of later-disclosed fraud that begin to "leak out" prior to the corrective disclosure. *See In re Daou Sys.*, 411 F.3d 1006, 1026 (9th Cir. 2005). Leakage may very well prove to be a viable damage model in this action — a determination that will be informed by discovery. If so, applicable leakage damages may overcome defendants' negative loss causation theory. This is a class question that is not unique to WPERP, and will benefit from WPERP's development as this action proceeds.

11

### *(4)* *Adequacy.*

To determine whether a plaintiff will adequately serve the class, courts consider two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members [,] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Defendants do not contend that WPERP has conflicts of interest with other class members. Instead, they argue that WPERP has shown that it will not vigorously prosecute this action because it allegedly lacks basic knowledge about LendingClub stock and the underlying litigation (Br. at 12).

In support of their argument, defendants highlight portions of the deposition of WPERP chief investment officer, Jeremy Wolfson. In particular, they note that Wolfson was not aware that WPERP had purchased LendingClub securities "until this case" and has not reviewed any of LendingClub's SEC filings (*id.* at 13; Dkt. No. 227-5 at 103:23–104:01, 96:17–24). Moreover, Wolfson was unaware that LendingClub remained one of the top ten holdings in WPERP's portfolio (making up 2.2 percent of its investments) as of July 2017 (Dkt. Nos. 227-5 at 122:12–123:14; 227-1). Additionally, defendants observe that Wolfson could not say exactly what alleged misstatements LendingClub had made in its registration statement without looking at the complaint (Dkt. No. 227-5 at 154:15–18), and could not name each defendant in this action from memory (*id.* at 144:1–10). Based on the foregoing, they contend that this is an attorney-driven suit, and that WPERP cannot adequately represent unnamed plaintiffs.

These arguments overstate the burdens placed upon lead plaintiffs. To establish adequacy lead plaintiffs need only be "familiar with the basis for the suit and their responsibilities as lead plaintiffs." *In re Intuitive Surgical Sec. Litig.*, No. 5:13-cv-01920-EJD, 2016 WL 7425926, at *7 (N.D. Cal. Dec. 22, 2016) (Judge Edward Davila); *see also Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ("The record indicates clearly that [lead plaintiff] understands his duties and is currently willing and able to perform them. The Rule does not require more."). FRCP 23(a)(4)

United States District Court
For the Northern District of California

1    imposes only a modest burden, and one that WPERP has carried here.  WPERP has vigorously

2    prosecuted this action to date, and the fact that its chief investment officer had not personally

3    consulted SEC filings or memorized portions of the complaint does not undercut this.  Wolfson

4    otherwise demonstrated a basic understanding of the theory of the lawsuit, different defendants'

5    roles in the underlying schemes alleged, and WPERP's past and continuing investment in

6    LendingClub (Dkt. No. 231-3 at 149:3–21, 70:20–72:20, 138:20–139:18, 189:1–19).  No more is

7    required to show adequacy.

8         Based on the foregoing, WPERP has satisfied the elements of FRCP 23(a).  Accordingly,

9    this order now turns to the requirements of FRCP 23(b).

10            **B.**      **FRCP 23(b).**

11              *(1)*     *Predominance.*

12         FRCP 23(b)(3) requires that "questions of law or fact common to class members

13    predominate over any questions affecting only individual members."  FRCP 23(b)(3).

14    This requirement "tests whether proposed classes are sufficiently cohesive to warrant

15    adjudication by representation."  *Amchem Prods.*, 521 U.S. at 623.  Class certification under

16    FRCP 23(b)(3) is proper when common questions represent a significant portion of the case

17    and can be resolved for all members of the class in a single adjudication.  *Comcast v. Behrend*,

18    569 U.S. 27 (2013).

19         Defendants argue that WPERP's Section 11 class claims fail to meet the predominance

20    standard because adjudicating these claims will require individualized assessments of class

21    members' reliance on the allegedly misleading registration statement, and knowledge of the

22    allegedly misleading conduct at the time they purchased shares of LendingClub stock.

23    Additionally, defendants argue that WPERP has failed to provide a sufficient method for

24    calculating classwide damages.

25              *(a)*     *Reliance.*

26         Generally, Section 11 claims do not require proof of reliance.  See *Hildes v. Arthur*

27    *Andersen LLP*, 734 F.3d 854, 859 (9th Cir. 2013) ("[U]nlike §10(b) of the Securities and [sic]

28    Exchange Act, §11 does not have a scienter or reliance requirement . . .").  There is an exception,

United States District Court
For the Northern District of California

however, when an issuer "has made generally available to its security holders an earnings statement covering a period of at least twelve months beginning after the effective date of the registration statement." 15 U.S.C. 77k(a)(5).

Defendants argue that Section 11 claims arising out of purchases made after February 22, 2016 — the date LendingClub issued its 2015 Form 10-K — fall within the exception set forth in Section 77k(a)(5). These claims, defendants argue, will therefore require individualized proof of reliance, and will not share common questions (Opp. at 15).[2]

This will not be an issue here, however, because for reasons described in greater detail below, this order limits WPERP's Section 11 claim to purchases made before June 9, 2015, the final day of the lock-up period. Defendants' reliance defense is therefore inapplicable.

### *(b)* *Knowledge.*

A plaintiff who knows of a misrepresentation at the time he purchases stock is not entitled to recovery under Section 11. 15 U.S.C. § 77k (recovery available to "any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission)").

Defendants contend that certain class members invested in individual loans on the LendingClub platform prior to the IPO and were, therefore, aware of many of the facts underlying alleged misrepresentations and omissions regarding loan origination. Consequently, defendants argue, those putative class members who invested in individual loans will be unable to show they lacked knowledge of alleged misrepresentations at the time of the IPO, and will not be able to recover.

---

[2] WPERP contends that it is entitled to a presumption of reliance for its Section 10(b) claims both under a fraud-on-the-market theory, *see Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and under the omission theory enunciated in *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972). Defendants do not challenge the presumption of reliance under the fraud-on-the-market theory (*see* Opp. at 14). Defendants, do, however, contend that WPERP cannot prove reliance under *Affiliated Ute* because this is a mixed case, not a case of pure omission. This argument is waged in the sections of the parties' briefs otherwise devoted to FRCP 23(b) commonality. It is not, however, an issue of commonality, and is instead an argument about the merits of different causation models. The parties' dispute about causation models does not resolve any issues regarding class certification and is, therefore, not considered here.

United States District Court
For the Northern District of California

1    This argument is unavailing. An order *dismissed* WPERP's claims related to the

2    loan-approval process, and WPERP did not seek leave to amend those claims (Dkt. No 181

3    at 16–17). Therefore, the theory upon which defendants predicate their knowledge argument

4    is no longer in this case. Moreover, even if certain investors were aware of LendingClub's

5    loan-approval process, this does not show that they knew of problems with LendingClub's

6    internal controls over financial reporting, Cirrix's relationship to LendingClub, problems with

7    data management, or any of the other issues raised in the consolidated amended complaint.

8                    *(c)      **Damages.***

9           Relying on *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), defendants next argue that

10   WPERP has not provided a sufficient method for calculating damages and has, therefore, has

11   failed to prove predominance (Opp. at 17).

12          In *Comcast*, the Supreme Court reiterated the principle that under FRCP 23(b), a

13   plaintiff must establish that damages are capable of measurement on a classwide basis. *Id.* at 34.

14   This requires plaintiffs to "show that their damages stemmed from the defendant's actions

15   that created the legal liability" and can "feasibly and efficiently be calculated once the common

16   liability questions are adjudicated." *Leyva v. Medline Indus. Inc*., 716 F.3d 510, 514 (9th Cir.

17   2013) (citing *Comcast*, 569 U.S. at 34).

18          True, WPERP has not offered in great detail about its proposed damages model.

19   Whether plaintiff will ultimately prevail in proving damages, however, is not necessary to

20   determine at this stage. Instead, the question for class certification is whether WPERP has

21   met its burden of establishing that damages can be proven on a class-wide basis. *In re Diamond*

22   *Foods*, 295 F.R.D. 240, 252 (N.D. Cal. 2013).

23          Here, WPERP explained that damages can be calculated (Dkt. No. 215 at 16):

24          using an event study to determine the price inflation attributable
             to defendants' fraud . . . Once the price inflation is determined,

25          the actual damages suffered by each individual class member
             will require nothing more than the mechanical application of

26          one of two equations under the PSLRA, depending on whether
             the individuals sold their shares within 90 days of the revelations

27          or held them beyond this period.

28

                                             15

WPERP's expert, Bjorn Steinholt, further explained that (Dkt. No. 216 ¶ 14) (citations and quotations omitted):

> the impact of the alleged misrepresentations (or inflation) can be estimated, and class-wide damages quantified, based on an analysis of the market prices using an event study. This is so because the alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all investors composing the class, and that, therefore, the Class will prevail or fail in unison. Importantly, while the inflation per share may be different for different Class members depending on when they purchased (or sold) their shares, the methodology for quantifying the damages is the same for all Class members.

WPERP's proposed method — using an event study — is widely accepted for calculating damages of a class of stockholders. *See Diamond Foods*, 295 F.R.D. at 251. Defendants have not cited any reasons that such a method would be unworkable here. WPERP's showing is sufficient to satisfy its burden under FRCP 23(b)(3).

### *(2)* *Superiority.*

"The purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175 (citations and quotations omitted). One of the factors to be considered in determining whether a class action is superior to other available methods is the extent and nature of other litigation already commenced by members of the class. FRCP 23(b)(3)(B).

Defendants contend that WPERP does not meet the superiority requirement because Section 11 and 15 claims are better litigated in the parallel state court action. While it is true that an almost-identical action already commenced in another forum weighs against superiority, here, WPERP persuasively argues that its claims are nevertheless superior.

*First*, WPERP notes that despite state plaintiffs having filed first, the state case is scheduled for trial *after* this action. Therefore, the preference for efficient resolution of claims favors the federal action.

*Second*, WPERP points out the Supreme Court recently granted certiorari and is set to hear argument in November in *Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*, 137 S. Ct. 2325 (2017). The issue certified is whether state courts lack subject-matter jurisdiction to hear securities class actions alleging only claims under the Securities Act of 1933. If the Supreme

16

United States District Court
For the Northern District of California

Court finds that state courts lack jurisdiction over such actions, its decision will effectively end the state case, which raises only 1933 Act claims.

*Third*, WPERP observes that it has litigated more vigorously than the state representatives. Though defendants asserted similar affirmative defenses in both actions, the state plaintiffs raised no objections to those defenses while WPERP, after bringing a motion to strike, convinced defendants to drop 115 of their 154 affirmative defenses (*see* Forge Decl., Exhs. 8–12; Dkt. Nos. 193, 206). Additionally, defendants raised similar reliance-on-counsel defenses, while also asserting privilege in both actions. State plaintiffs did not object, whereas WPERP sought and obtained an order requiring defendants to either abandon their reliance-on-counsel defenses or produce the ostensibly privileged documents (Dkt. Nos. 217–218).

State plaintiffs, who intervened in this action for the sole purpose of objecting to certification, make additional arguments for why the state action is superior to this action for adjudicating Section 11 and 15 claims. Their primary argument is that the state case provides for greater recovery than this action and is, therefore, superior. For the reasons below, their argument falls short.

### (a) *Extent of Available Recovery.*

The state plaintiffs contend that because WPERP no longer alleges Securities Act theories of liability based on the loan-approval process (which claims were dismissed (Dkt. No. 181 at 16–17)), it will be unable to seek as broad a recovery as the state plaintiffs, whose loan approval process claims survived the pleading stage (*see* Dkt. No. 221-1 ¶¶ 68–75, 81–89). It further points out that the state action maintains Section 11 and 15 claims based upon LendingClub's alleged failure to adequately disclose the extent to which its loans violated state usury laws, which claims are likewise absent from the federal action (Dkt. No. 222-1 at 8–9).

State plaintiffs contend that these additional Section 11 theories increase their potential recovery by at least $200 million (*id.* at 9; Dkt. No. 221-2 ¶ 17). This is so, they argue, because Section 11(e) provides that if a defendant can show that any portion of a plaintiff's claimed damages arise from something other than their claimed theory of liability, "such portion of

1    or all such damages shall not be recoverable."  15 U.S.C. §77k(e).  Therefore, to the extent

2    LendingClub can show that damages are a result of theories not included in the federal action,

3    WPERP will not be able to recover those damages.

4           Specifically, state plaintiffs argue that they will be able to recover damages on days

5    where LendingClub stock price dropped and the only negative news was related to the deficient

6    loan-approval process, whereas WPERP will not (Dkt. 222-1 at 9–10).  State plaintiffs' expert,

7    Dr. Scott Hakala, identified nine dates during which he claims price declines related to theories

8    at issue only in the state action (*id.* at 10; Dkt. 221-2 ¶ 13).  Dr. Hakala opines that it is,

9    therefore, likely that defendants will be able to successfully assert a negative loss causation

10   defense against WPERP for any price drops that occurred during these nine days, reducing

11   WPERP's damages accordingly (Dkt. 221-2 ¶ 14).

12          WPERP strenuously disputes Dr. Hakala's methodology.  It observes that losses that

13   Dr. Hakala attributes to state theories only — for example, LendingClub's "8-K updating loss

14   projections and interest rates for standard loan program" — could as easily be related, in whole

15   or in part, to material weaknesses in internal controls or concealed assumptions of credit risk

16   (which would be recoverable in the federal action).  Dr. Hakala, they observe, does not explain

17   in his declaration *why* these damages could not be attributed to federal claim theories, or even

18   appear to consider possible alternative causes.

19          Moreover, our plaintiff correctly notes that the burden to prove the effect these events

20   allegedly had on LendingClub stock prices rests with *defendants*.  *See* 15 U.S.C. 77k(e).

21   In order for Dr. Hakala's numbers to bear out, defendants will have to prove that all of the

22   losses Dr. Hakala allocated to problems with LendingClub's loan origination process were,

23   in fact, caused by news related to issues with loan origination and not any of the other myriad of

24   possible causes.  This is a tall order.  WPERP will no doubt submit its own expert report tying

25   these losses to different events.[3]

26

27           [3]  WPERP also points to five decisions in the last twelve years in other districts rejecting Dr. Hakala's
     loss causation opinions under *Daubert* (Dkt. No. 235 at 11–12).  It argues that these are evidence that
28   Dr. Hakala's opinions are generally unreliable, and so should be disregarded.  These other cases, however,
     are not evidence that Dr. Hakala has rendered an unreliable opinion in *this* action, and this argument therefore

United States District Court
For the Northern District of California

Furthermore, even accepting Dr. Hakala's calculations, WPERP argues that it is nevertheless in a position to reap a greater recovery. This is so, it argues, because under Section 11, damages are limited to "the difference between the amount paid for the security . . . and [] the value thereof *as of the time such suit was brought* . . . ." 15 U.S.C. 77k(e) (emphasis added). The state plaintiffs' Section 11 suit was filed on February 26, 2016, when the closing price of LendingClub's stock was $8.41 per share. The day the federal suit was filed, May 16, 2016, LendingClub's stock closed at $3.94 per share. Therefore, WPERP contends, the state plaintiffs are foreclosed from pursuing $4.47 per share, which damages are available to the federal plaintiff. Using the state plaintiffs' experts' own calculations (accounting for price drops he claims are recoverable in the state court, but not here), the state plaintiffs would still recover $.39 less per share than WPERP, which amounts to approximately $26.6 million greater recovery for WPERP (*see* Dkt. No. 221-2 at 4–5).

While all parties agree that damages are capped by the date upon which suit is filed, state plaintiffs contend that the cap is not based upon the market price at that date, but instead by the true value of the stock, which should take into account any theretofore undisclosed misrepresentations. They ground this argument in the plain language of Section 11, which provides that damages shall be limited to "the difference between the amount paid for the security . . . and [] the *value thereof* as of the time such suit was brought," 15 U.S.C. 77K(e)(1), and a decision of the Court of Appeals for the Second Circuit holding that under Section 11 value *may* be distinct from price, *see McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995).

Unquestionably, the typical value used to measure Section 11 damages is the stock's price on the day a plaintiff files suit, and in an open market value is ordinarily synonymous with price. Whether a stock's "value" on the date suit is filed can be distinct from its price for the purpose of calculating Section 11 damages is a question unresolved by our court of appeals. Whether, even if value and price can diverge for the purpose of Section 11 damages, such

carries little weight.

United States District Court
For the Northern District of California

1   divergence is appropriate in the state plaintiffs' action is yet another unresolved question.  In any

2   event, this presents a difficult issue (not decided here) that could seriously hamper state

3   plaintiffs, limiting their damages to a number well below that of our plaintiff, who is no doubt

4   entitled to a damage calculation based upon LendingClub's stock price the day WPERP filed

5   suit.  The threat that they will be limited in ways our plaintiff will not — in combination with

6   other advantages our plaintiff has, noted above — is enough to show that our plaintiff satisfies

7   the superiority requirement.[4]

8       Accordingly, the federal class action remains the superior forum with respect to

9   maximizing recoverable damages.

### (b)     Juror Confusion Outweighed By Efficient Disposition of Claims.

12      The state plaintiffs further contend that the Section 11 claims should be separated from

13  the Section 10(b) claims to avoid juror confusion due to the different scienter and causation

14  standards applied to these claims (Dkt. No. 222-1 at 15).  It argues that it may be difficult for

15  jurors to separate the requirements of these different claims, though state plaintiffs cite no case

16  law for this proposition.

17      Contrary to state plaintiffs' contention, jurors are regularly called upon to resolve

18  difficult questions involving different mental state and causation requirements.  Indeed, because

19  of the similar conduct underlying Securities Act and Exchange Act claims, jurors are often

20  presented with this very situation of differentiating between the requirements of Section 10(b)

21  and Section 11.  "While there are some legal differences between the Securities Act and

22  Exchange Act claims — such as whether defendants acted with scienter — the similarities are

23  far greater because the claims in all cases revolve around whether [the defendant] materially

---

[4]  WPERP argues that our court of appeals has held that under Section 11 the value of a stock is equivalent to its price and, therefore, state plaintiffs' interpretation is foreclosed by binding authority.  This, however, is an inaccurate characterization.  WPERP relies upon two decisions in which our court of appeals stated that damages for a Section 11 claim are measured by the "price" of the stock at the date suit is filed, but neither of those cases actually directly addressed the issue at stake here.  *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421 (9th Cir. 1994); *In re Broderbund/Learning Co. Sec. Litig.*, 294 F.3d 1201, 1204 (9th Cir. 2002).  Instead, each found that plaintiffs had failed to prove loss for reasons entirely unrelated to whether Section 11 damages were measured by stock price or some alternative value, and stated that damages can be measured by stock price on the day suit is filed only in passing.

United States District Court
For the Northern District of California

1   misrepresented its financial condition." *In re Century Aluminum Co. Sec. Litig.*, No. C 09-1001

2   SI, 2009 WL 2905962, at *2 (N.D. Cal. Sept. 8, 2009) (Judge Susan Illston).

3          State plaintiffs' suggestion that it would be more efficient and effective to sever the

4   Section 11 claims from this action does not hold water.  WPERP has shown that moving

5   forward with its Section 11 claims as lead plaintiff in the federal forum is the superior means

6   for resolving this dispute.

7                        **C.    CLASS DEFINITION**.

8          Defendants next argue that even if this order certifies a class, it should place certain

9   limitations on the class definition.  Defendants first contend that any Section 11 Class must end

10  on June 8, 2015, since subsequent purchases cannot be traced to the IPO.  While it is possible to

11  trace later-purchased stock to the IPO through individualized proof, the practical value of this

12  limitation is persuasive.  It will head off the problem of trying to adjudicate individual claims

13  of traceability, which may prove resource intensive and time consuming, while leaving intact

14  any claims that individuals who did not purchase before June 9, but can nevertheless trace to the

15  IPO may have.  If, on the other hand, the class definition includes shareholders who purchased

16  after June 8, 2015, those who do not come forward, because they did not realize they could trace

17  back to the IPO, would have their claims extinguished.  In light of these risks, the class definition

18  is hereby amended to include only persons and entities who purchased LendingClub common

19  stock before June 9, 2015.

20         Defendants next argue that any investors who sold their securities before the May 2016

21  corrective disclosure should be excluded from the class because, under *Dura*, 544 U.S. at

22  342–43, they cannot demonstrate a loss caused by the alleged misrepresentation.  As discussed

23  above, such an exclusion is premature as WPERP may prove that some of the truth "leaked out"

24  prior to the corrective disclosures and caused injury at an earlier date.  *See In re Daou Sys.*,

25  411 F.3d at 1026.  Accordingly, this order declines to impose this limitation.

26         Defendants also argue that the class should exclude any "short sellers" (Opp. at 21).

27  Defendants do not define short sellers and their usage is ambiguous.  This order declines to

28  exclude from the class every investor who ever took a short position on LendingClub stock.

                                              21

United States District Court

For the Northern District of California

1  Moreover, since the proposed class definition limits the class to individuals who were damaged

2  by their acquisition of LendingClub stock, it automatically excludes any short sale profits based

3  on price declines.  It is, however, possible that a short sale could have resulted in a loss (for the

4  short seller) during the class period if, for instance, the short sale occurred during a period in

5  which their was a short-term price increase.  Given the practical difficulties of tracing the short

6  seller's loss to any alleged fraud, excluding short sellers who incurred losses from short sales

7  during the class period is a sensible limitation that is hereby incorporated into the class

8  definition.

9       Finally, WPERP and the underwriter defendants seek to include the following additional

10  language not previously in the proposed class definition (bolded language):

11       All persons and entities who purchased or otherwise acquired the
         common stock of LendingClub Corporation ("LendingClub" or the
12       "Company") during the period from December 11, 2014 through
         May 6, 2016, inclusive (the "Class Period"), and were damaged
13       thereby, including those who purchased LendingClub common
         stock traceable to the Registration Statement (collectively, the
14       "Class").  Excluded from the Class are defendants and their
         families, the officers, directors, and affiliates of defendants, at all
15       relevant times, members of their immediate families and their legal
         representatives, heirs, successors or assigns, and any entity in
16       which defendants have or had a controlling interest.
         **Notwithstanding the foregoing, the Class shall include any**
17       **investment company or pooled investment fund, including, but**
         **not limited to, mutual fund families, exchange traded funds,**
18       **fund of funds and hedge funds, in which the Underwriter**
         **Defendants, or any of them, have, has or may have a direct or**
19       **indirect interest, or as to which any Underwriter Defendant's**
         **affiliates may act as an investment advisor, but as to which any**
20       **Underwriter Defendant alone or together with any of its**
         **respective affiliates is neither a majority owner nor the holder**
21       **of a majority beneficial interest.**

22       The other defendants do not object to this modification.  This order accepts this

23  modification.  Accordingly, the class definition is modified as follows:

24       All persons and entities who purchased or otherwise acquired the
         common stock of LendingClub Corporation ("LendingClub" or the
25       "Company") during the period from December 11, 2014 through
         **June 8**, 2016, inclusive (the "Class Period"), and were damaged
26       thereby, ~~including those who purchased LendingClub common~~
         ~~stock traceable to the Registration Statement~~ (collectively, the
27       "Class").  Excluded from the Class are **short sellers who incurred**
         **losses during the class period as a result of their short sales,**
28       defendants and their families, the officers, directors, and affiliates
         of defendants, at all relevant times, members of their immediate

                                        22

United States District Court

For the Northern District of California

families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest. **Notwithstanding the foregoing, the Class shall include any investment company or pooled investment fund, including, but not limited to, mutual fund families, exchange traded funds, fund of funds and hedge funds, in which the Underwriter Defendants, or any of them, have, has or may have a direct or indirect interest, or as to which any Underwriter Defendant's affiliates may act as an investment advisor, but as to which any Underwriter Defendant alone or together with any of its respective affiliates is neither a majority owner nor the holder of a majority beneficial interest**.

### 3. INJUNCTION?

On October 10, an order granted the parties in this action an opportunity to respond to each of state plaintiffs' motions to intervene and oppose class certification (Dkt. No. 229). WPERP responded on October 5 opposing intervention, and requesting an order enjoining the state action pursuant to the All Writs Act, 28 U.S.C. 1651(a), and the Anti-Injunction Act, 28 U.S.C. 2283 (Dkt. No. 235 at 17–22).

It argues that such an order is permitted *first* because the PSLRA expressly provides district courts the authority to enjoin state actions, and *second* because allowing the state case to proceed will interfere with this Court's jurisdiction. WPERP requests that even if the Court is not inclined to enjoin the state action, "At a minimum . . . it should enjoin the imminent dissemination of the class notice in the State Case, as it is an unnecessary expense for the class to bear *and* the notice conceals from class members the existence of this litigation and the February 26, 2016 damages cutoff in the State Case" (*ibid.*).

Each argument is addressed in turn.

### A. The All Writs Act and Anti-Injunction Act.

The All Writs Act provides that "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. 1651(a). The Anti-Injunction Act, in turn, limits the power of federal courts in order to preserve comity, providing just three circumstances under which a federal court may use its delegated powers to enjoin a state court proceeding: (1) where a federal statute expressly provides the court the power to enjoin a state proceeding; (2) where an injunction is necessary in aid of the federal court's jurisdiction; or,

United States District Court

For the Northern District of California

1   (3) where an injunction is necessary to protect or effectuate the federal court's judgments.

2   28 U.S.C. 2283; *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 282 (1970).

3   In applying the Anti–Injunction Act, the Supreme Court has cautioned that, "any doubts as to the

4   propriety of a federal injunction against state court proceedings should be resolved in favor of

5   permitting the state courts to proceed in an orderly fashion to finally determine the controversy."

6   *Id.* at 295.

7                    **B.       No Injunction Pursuant To The "Express Authority" Exception.**

8           WPERP argues that the PSLRA confers "express authority" upon district courts to enjoin

9   state actions by making it incumbent upon them to appoint a lead plaintiff who is "most capable

10  of adequately representing the interest of class members."  15 U.S.C. 78u-4(a)(3)(B).  It

11  contends that if district courts could not enjoin state court proceedings to carry out the mandate

12  of the PSLRA, then the PSLRA could not be given its intended meaning or scope (Dkt. No. 235

13  at 18).

14          Only one court, however, has found an express right to enjoin a state court proceeding

15  based upon the PSLRA.  In *BankAmerica Corp. Sec. Litig.*, 95 F. Supp. 2d 1044, 1049–50 (E.D.

16  Mo. 2000), the court stayed a state securities suit due to the woefully inadequate representation

17  in the state action, which it found threatened the rights of the federal litigants.  There, the state

18  court had not yet certified a class, state plaintiffs had taken almost no discovery and held

19  substantially less stock than the federal plaintiffs (1/26th the number of shares), and yet the state

20  plaintiffs were engaged in negotiations to settle all class claims on behalf of all class members,

21  including members of the already certified federal class.  The court further observed that the

22  state plaintiffs' attorneys had engage in "precisely the sort of lawyer-driven machinations the

23  PSLRA was designed to prevent."  *Id.* at 1050.  They had filed numerous inadequate motions for

24  class certification, overlooked potential conflicts of interest among classes, and attempted to

25  restructure the classes, "not in the best interest of the class members, but to avoid federal courts

26  at all costs."  When this restructuring proved difficult, the attorneys pushed for settlement despite

27  the early stage of the proceedings and the fact that almost no substantive discovery had been

28

1    completed. The court held that "under the facts of [that] case . . . an injunction [was] necessary

2    to preserve the federal plaintiffs' rights under the PSLRA." *Ibid.*

3          We have a vastly different scenario before us. Here, the state court has certified a class,

4    the state plaintiffs are advanced in discovery, and there is no intimation of the improprieties

5    that were afoot in *BankAmerica*. Moreover, at the present no party has raised the specter of a

6    settlement, certainly not a settlement that threatens to dispose of all claims on behalf of all class

7    members. Given these critical distinctions, the state action does not so threaten the integrity of

8    the PSLRA that failing to enjoin it would amount to an abrogation of a Congressional mandate.

9                    **C.     Injunction In Aid Of Jurisdiction Not Yet Necessary.**

10          Even where a federal statute does not expressly provide federal courts the power to

11   enjoin state proceedings, injunctive relief may nevertheless be necessary "to prevent a state court

12   from so interfering with a federal court's consideration or disposition of a case as to seriously

13   impair the federal court's flexibility and authority to decide that case." The mere existence of a

14   parallel action in state court, however, "does not rise to the level of interference with federal

15   jurisdiction necessary to permit injunctive relief under the 'necessary in aid of' exception." *Lou*

16   *v. Belzberg*, 834 F.2d 730, 740 (9th Cir. 1987). Rather, courts have applied this doctrine

17   sparingly. Generally, an injunction "is justified only where a parallel state action threatens to

18   render the exercise of the federal court's jurisdiction nugatory." *Sandpiper Vill. Condo. Ass'n.,*

19   *Inc. v. Louisiana-Pac. Corp.*, 428 F.3d 831, 843 (9th Cir. 2005).

20          WPERP argues that an injunction is necessary here to prevent the usurpation of this

21   Court's jurisdiction. It points in particular to the impending class notice, which the state court

22   has approved, and which it argues will hinder absent class members' right to recover what they

23   are entitled to. That is so, it argues, because the notice does not inform them that (1) there is an

24   ongoing federal action, (2) the potential recovery in the federal action is substantially greater

25   than the state action, and (3) an unfavorable decision in *Cyan, Inc. v. Beaver Cty. Employees Ret.*

26   *Fund*, _U.S. _, 137 S. Ct. 2325 (2017), set to be argued next month, could end the state court

27   suit. It further observes that, unlike the state plaintiffs, federal plaintiff underwent the PSLRA's

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   rigorous standards for appointing lead plaintiffs, has the largest financial stake of any party,

2   and is better positioned to act on behalf of absent class members (Dkt. No. 235 at 18–21).

3       Enjoining the state court proceedings at this juncture, under these circumstances, is

4   unnecessary.  The only circumstance in which federal courts typically enjoin their state

5   counterparts on jurisdictional grounds is when a final disposition of a complex litigation is

6   imminent, and injunction of the state action is necessary to effectuate the settlement or judgment.

7   *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998); *In re Baldwin-United*

8   *Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 333 (2d Cir. 1985); *In re*

9   *Vioxx Prod. Liab. Litig.*, 869 F. Supp. 2d 719, 726 (E.D. La. 2012) ("Circuit Courts have been

10  most willing to uphold an injunction pursuant to the "in aid of jurisdiction" exception in the

11  MDL or complex litigation context when settlement is complete or imminent in the federal court,

12  and often after preliminary or final certification of a class").  No such circumstances are present

13  here.

14      Nevertheless, concerns remain regarding the current form of state plaintiffs' class notice,

15  which fails to notify class members of the parallel federal action, the pendency of *Cyan* and its

16  potential effect on their case, or the potential that the filing date of their suit could substantially

17  limit damages.

18      In order to address those concerns and others that may arise from these parallel

19  proceedings, the undersigned conditionally granted state plaintiffs' motion to intervene, with

20  the condition being that state plaintiffs remain subject to this Court's jurisdiction for the purpose

21  of coordinating its Section 11 class with WPERP so as to assure that absent class members are

22  protected.  To that end, state plaintiffs shall reform (and federal plaintiffs shall prepare) their

23  class notices to inform class members of the parallel actions, the important differences between

24  those actions, and their right to opt out of either, both, or neither action (which, in the latter

25  event, will bind them to whichever action should reach judgment first).  Specifically, the notices

26  must inform class members of the following:  (1) There are two lawsuits proceeding in parallel,

27  one in state and one in federal court, which overlap in certain respects and not in others;

28  (2) Some important differences between these suits include:  (a) the state action maintains

26

United States District Court

For the Northern District of California

certain theories of liability under which the class may be granted relief including as a result of LendingClub's allegedly usurious loan rates, and alleged problems with LendingClub's loan application procedures. The federal action does not contain these theories of liability and, therefore, risks a lower recovery depending upon whether defendants can successfully show that damages should be attributed to the state theories; (b) class members in the federal action are potentially entitled to a greater recovery based upon the date federal lead plaintiff filed its action. Whether the state class members are entitled to this recovery remains uncertain; and, (c) the state action may be subject to dismissal depending upon the outcome of *Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*, _U.S. _, 137 S. Ct. 2325 (2017), a case currently pending before the United States Supreme Court, which challenges state courts' jurisdiction over the claims that state plaintiffs have asserted in this action; and, (3) Class members will be notified of any settlement in either action, at which point they will have an opportunity to opt out of the settlement if they elect to do so.

The undersigned judge is mindful of potential comity concerns, and does not seek to intrude upon his California colleague, Judge Marie Weiner. Accordingly, state plaintiffs shall notify Judge Weiner of this order, and present the amended notice to her for approval. They shall also please ask Judge Weiner to require all parties in her case to participate in the mediation before Judge Spero.

As stated above, no injunction is necessary at this juncture and therefore WPERP's motion to enjoin the state action is **DENIED**. Nevertheless, given the stage of proceedings and various uncertainties and contingencies described above, this order is without prejudice to the future imposition of an injunction or stay of either the state or federal action should it become necessary.

## CONCLUSION

For the reasons stated above, state plaintiffs' motion to intervene is **CONDITIONALLY GRANTED**. WPERP's motion for class certification is **GRANTED** and the above-quoted class is hereby certified. Water and Power Employees' Retirement, Disability and Death Plan of the City of Los Angeles shall serve as lead plaintiff, and Robbins Geller Rudman & Dowd LLP is

appointed as class counsel.  WPERP's motion for an injunction is **DENIED WITHOUT PREJUDICE** to renewal.

Within **TWENTY-ONE CALENDAR DAYS** of the date of entry of this order, all parties to both the state and federal actions shall submit jointly an agreed-upon form of notice, which must incorporate the information set forth above regarding the parallel actions.  WPERP along with defendants must also submit a joint proposal for dissemination of the notice, and the timeline for opting out of the action.  Plaintiff must bear the costs of the notice, which shall include mailing by first-class mail.

Furthermore, all parties (including intervenors) are hereby **ORDERED TO APPEAR** before Chief Magistrate Judge Spero for the November 28 settlement conference.  Defendants **SHALL NOT** negotiate a settlement with state plaintiffs on any claims that are not in that action.

**IT IS SO ORDERED.**

Dated:  October 20, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

# EXHIBIT D

## NOTICE OF PENDENCY OF CLASS ACTION

**TO:**   ALL PERSONS AND ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED THE COMMON STOCK OF LENDINGCLUB CORPORATION DURING THE PERIOD FROM DECEMBER 11, 2014 THROUGH MAY 6, 2016, INCLUSIVE.

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS MAY BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.

You are receiving this notice because your rights may be affected by a class action lawsuit regarding your purchase of LendingClub Corporation ("LendingClub") common stock. If you are a Class Member, your rights will be affected by this lawsuit, which is referred to as *In re LendingClub Securities Litigation*, Case No. 3:16-cv-02627-WHA (the "Action"), and which is now pending before the United States District Court for the Northern District of California (the "Court"). The Court has ordered that this notice be sent to you.

On October 20, 2017, the Court determined that this lawsuit may proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. You received this notice because you were identified as a potential member of the Class. The purpose of this notice is to inform you how the lawsuit may affect your rights and what steps you may take. This notice is not an expression by the Court of any opinion as to the merits of any of the claims or defenses asserted by either side in the lawsuit. If you received this notice in error and you are not a member of the Class, you do not need to take any action and your rights will not be affected.

1.   **WHY SHOULD YOU READ THIS NOTICE?**

The Court has certified a Class in this lawsuit. The Class consists of all persons and entities who purchased shares of LendingClub common stock during certain time periods, including those who purchased shares of LendingClub common stock directly in or traceable to LendingClub's December 11, 2014 initial public offering (the "Offering"). For purposes of this lawsuit, shares are traceable to LendingClub's Offering if you purchased them on or before June 8, 2015. The Class is more fully described below. You may be a member of this Class. You may be entitled to participate in any benefits that may eventually be obtained for the Class as a result of this lawsuit. There is, however, no assurance that a judgment in favor of the Class will be granted.

This notice provides a summary of the lawsuit. It also describes who is eligible to be included in the Class, the effect of participating in this lawsuit as a Class member, discusses the parallel lawsuit pending in California state court, and explains how to request exclusion from the Class.

2.   **WHAT IS THIS LAWSUIT ABOUT?**

This is a securities lawsuit filed in the United States District Court for the Northern District of California. The complaint names as defendants LendingClub, former CEO Renaud Laplanche; former CFO Carrie Dolan; directors Daniel T. Ciporin, Jeffrey Crowe, Rebecca Lynn, John J. Mack, Mary Meeker, John C. (Hans) Morris, Lawrence H. Summers, and Simon

Williams; and Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC (formerly known as Goldman, Sachs & Co.), Credit Suisse Securities (USA) LLC, Citigroup Global Markets Inc., Allen & Company LLC, Stifel, Nicolaus & Company, Incorporated, BMO Capital Markets Corp., William Blair & Company, L.L.C., and Wells Fargo Securities, LLC.   The Court appointed Water and Power Employees Retirement, Disability and Death Plan of the City of Los Angeles as Lead Plaintiff in this lawsuit.

### (a)   LEAD PLAINTIFF'S CLAIMS

Lead Plaintiff, on behalf of the Class, alleges that Defendants defrauded investors by making certain misstatements and omissions concerning LendingClub's internal controls, data integrity and security, and related-party transactions.   Lead Plaintiff alleges that Defendants violated § 10(b) of the Securities Exchange Act of 1934, as well as SEC Rule 10b-5 promulgated thereunder, by making false or misleading statements or omissions knowingly or with extreme recklessness which caused the price of LendingClub common stock to be artificially inflated during the period from December 11, 2014 through May 6, 2016.   Lead Plaintiff further alleges that Defendants violated §§ 11 and 15 of the Securities Act of 1933, on the basis that LendingClub's registration statement and prospectus ("Offering Documents") contained untrue statements of material facts and/or omitted certain material information required to be disclosed. You may review a copy of the Complaint by visiting the following website: <mark>xxxx</mark>.

### (b)   DEFENDANTS' DENIAL OF LIABILITY

Defendants deny any wrongdoing or liability of the claims alleged.   Among other things, Defendants deny that they made any false or misleading statements or omissions violating the Securities Exchange Act of 1934 or that LendingClub's Offering Documents contained untrue statements of material facts or omissions in violation of the Securities Act of 1933.   Defendants further deny making the alleged misstatements and omissions knowingly or with extreme recklessness, or that they believed share prices during the period from December 11, 2014 through May 6, 2016 were inflated.   Defendants further deny that any investors sustained damages recoverable under the federal securities laws and assert that LendingClub's stock price decline was not caused by the disclosure of any wrongdoing or liability on the part of Defendants.

### 3.   THE PARALLEL STATE COURT ACTION

There is a parallel class action lawsuit pending in the Superior Court of the State of California, San Mateo County (the "State Court Action"), alleging violations of Sections 11, 15, and 12(a)(2) of the Securities Act of 1933. The State Court Action is referred to as   *In re LendingClub Corp. Shareholder Litig.*, Master File No. CIV537300 (Cal. Super. June 23, 2017). The State Court Action overlaps with this Action in certain respects but not in others. Like this Action, the State Court Action alleges LendingClub's Offering Documents contained misstatements and omissions, but contains different theories of liability.  The State Court Action does not allege violations under the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder; thus, if you purchased or acquired LendingClub common stock between June 8, 2015 and May 6, 2016, you may be a Class Member in this Action but you are not a member of the putative class in the State Court Action.

### (a)   Differences between this Action and the State Court Action

##### (i)   The State Court Action contains different theories of liability

The State Court Action maintains certain theories of liability under which the putative class there may be granted relief, including as a result of LendingClub's allegedly usurious loan rates and alleged problems with its loan application procedures.  This Action does not contain these theories of liability and, therefore, risks a lower recovery depending on whether Defendants can successfully show that damages should be attributed to these theories in the State Court Action.

##### (ii)   Class members in this Action may be entitled to a greater recovery

Because of statutory caps based upon the date upon which suit is filed, Class Members in this Action are potentially entitled to a greater recovery based upon the date Lead Plaintiff filed this Action, as compared with the filing date in the State Court Action.  Whether the class members in the State Court Action are entitled to this recovery remains uncertain.  *The defendants have reserved the right to argue that class members who do not elect to opt out of the State Court Action will be subject to a statutory cap on damages even in this Action.*

##### (iii)   The State Court Action may be subject to dismissal

The State Court Action may be subject to dismissal depending upon the outcome of *Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*, _U.S._, 137 S. Ct. 2325 (2017), a case currently pending before the United States Supreme Court.  That case challenges state courts' jurisdiction over the claims brought in the State Court Action.  *If you opt out of this Action, a subsequent dismissal of the State Court Action on jurisdictional grounds could prevent you from recovering your damages in any action.*

### (b)   What happens if there is a settlement in either of these actions?

You will be notified of any settlement in either action. At that time, you will have an opportunity to opt out of the settlement.  Opting out of the settlement, however, is not the same as opting out of the Class, and doing so will NOT restore your right to bring your own lawsuit against these defendants based on the same, or similar, facts and circumstances related to LendingClub.

### 4.   WHO IS A CLASS MEMBER?

By order dated October 20, 2017, the Court certified a Class.  By stipulation of the parties, and approved by the Court on November 1, 2017, the Class has been defined as follows:

> All persons and entities who purchased or otherwise acquired the common stock of LendingClub Corporation ("LendingClub" or the "Company") during the period from December 11, 2014 through May 6, 2016 (for claims under the Exchange Act of 1934) and all those who purchased or acquired LendingClub common stock during the period from December 11, 2014 through June 8, 2015 (for claims under the 1933 Securities Act) and were damaged thereby

(collectively, the "Class").    Excluded  from  the  Class  are  short  sellers  who incurred losses during the class period as a result of their short sales, defendants and  their  families,  the  officers,  directors,  and  affiliates  of  defendants,  at  all relevant  times,  members  of  their  immediate  families  and  their  legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.  Notwithstanding the foregoing, the Class shall include any investment company or pooled investment fund, including, but not limited to, mutual fund families, exchange traded funds, fund of funds and hedge funds, in which the Underwriter Defendants, or any of them, have, has or may have a direct or indirect interest, or as to which any Underwriter Defendant's affiliates may act as an investment advisor, but as to which any Underwriter Defendant alone or together with any of its respective affiliates is neither a majority owner nor the holder of a majority beneficial interest.

The ruling by the Court certifying the Class does not address the merits of this Action. Rather, certification means only that the ultimate outcome of the Action— whether favorable or unfavorable to Lead Plaintiff  and the Class or Defendants— will apply in like manner to each Class Member who does not timely elect to be excluded from the Class.

5.      WHO REPRESENTS THE CLASS?

Robbins Geller Rudman & Dowd LLP, also referred to as Class Counsel, represents the Class in this lawsuit.

6.      HOW DO YOU PARTICIPATE IN THIS CLASS ACTION?

If you fall within the definition of the Class set forth above, you are a member of the Class.  **IF YOU WISH TO REMAIN A MEMBER OF THE CLASS IN THIS ACTION, YOU DO NOT NEED TO DO ANYTHING AT THIS TIME.**  As a Class Member, you will be bound by any judgment or settlement, whether favorable or unfavorable, in this Action.  Thus, you may participate in any monetary settlement or judgment rendered in favor of the Class, and you may submit a Proof of Claim following such a settlement or judgment.  **No settlement or judgment has occurred at this time.  You will necessarily also be bound by any unfavorable judgment which may be rendered in favor of Defendants.  You may not have the further opportunity to seek exclusion from the Class at the time of any settlement.  In other words, this may be your only chance to opt out of the lawsuit.**

Lead Plaintiff and Class Counsel represent the Class and all of its members.  Class Counsel have agreed to pursue this Action on a contingent-fee basis.  All attorney's fees and expenses will be payable only out of a recovery on behalf of the Class, if any, and will be subject to approval by the Court.  Class Members will not have to pay lawyers any additional amounts, and in no event will individual Class Members be obligated to pay any judgment, court costs, or lawyer's fees for participating in this Action.

Any Class Member who does not request exclusion from the Class may also enter an appearance through his or her own counsel at his or her own expense.

7.      HOW CAN YOU BE EXCLUDED FROM THE CLASS?

If you wish to be excluded from the Class, meaning to "opt out" of the lawsuit, you must submit a request for exclusion in accordance with the instructions in the next paragraph.  **If you choose to be excluded: (1) you will NOT be entitled to share in any recovery from any settlement or judgment in this Action that may be paid to members of the Class as a result of a trial or other resolution of this lawsuit; (2) you will NOT be bound by any judgment or release entered in this lawsuit; and (3) at your own expense, you MAY pursue any claims that you have by filing your own lawsuit or taking other action.** If you are requesting exclusion because you want to bring your own lawsuit based on the matters alleged in this litigation, you may want to consult an attorney to discuss whether any individual claim that you may wish to pursue would be time-barred by the applicable statutes of limitation or repose.

To be excluded, you must send a written request for exclusion from the Class addressed to LendingClub Securities Litigation, c/o Gilardi & Co. LLC, P.O. Box 8040, San Rafael, CA 94912-8040.  Your request must be **received by [100 days after entry of Notice Date]**. After that date, you may not have the right to be excluded from the Class in this Action.  In order to be valid, any request for exclusion must set forth the name and address of the person or entity requesting exclusion and must specify the amount of LendingClub shares purchased or acquired and sold (if any) during the Class Period and the dates of such purchases, acquisitions, and sales. The request must also state that such person or entity "requests exclusion from the Class in the LendingClub Securities Litigation," and must be signed by such person or entity.  You may not exclude yourself from the class via email.

**Only request exclusion if you do NOT wish to participate in this Class Action and do NOT wish to share in any potential recovery that the Class may obtain.**

8.      HOW DO YOU GET MORE INFORMATION?

This notice contains only a summary of the litigation and your rights as a potential Class Member.  For more detailed information regarding the matters involved in this litigation, please refer to the papers on file in this Action, which may be inspected during business hours, at the Office of the Clerk of Court, 450 Golden Gate Ave., San Francisco, CA 94102.  For a fee, all papers filed in this litigation are available at www.pacer.gov, and important documents in the case have been posted on the following website: xxx.  Inquiries regarding this litigation may be addressed to Class Counsel:

Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 1-800-449-4900

9.      NOTICE TO BROKERS AND CUSTODIANS

If you hold or held LendingClub common stock covered by the Action on behalf of a beneficial owner or in "street name," you are directed by the Court to provide this notice to the beneficial owner.  You may obtain additional copies of this notice by contacting Gilardi & Co.

LLC, the Notice Administrator, at the address or telephone number below.  As an alternative, you may provide the Notice Administrator with mailing lists of beneficial owners.  Please contact the Notice Administrator immediately upon receipt of this notice.

If you verify and provide details about your assistance with either of these options, you may be reimbursed for the actual expense you incur to send the notices, including postage and/or the reasonable cost of determining the names and addresses of beneficial owners.  The Notice Administrator will send you a form for the verification.  Send any requests for reimbursement, along with appropriate supporting documentation, to:

> LendingClub Securities Litigation
> c/o Gilardi & Co. LLC
> Post Office Box 8040
> San Rafael, CA 94912-8040
>
> Telephone:   1-800-654-5763
> Email:       xxx
> Website:     xxx

### 10.   CHANGE IN YOUR ADDRESS.

If this notice was mailed to you at an old address, or if you move, please advise the Notice Administrator of your current address so that you can receive any future notice and/or Proof of Claim forms.  If you are not a member of the Class, you may discard this notice.


DATED:       ,2017              BY ORDER OF THE UNITED STATES DISTRICT
                               COURT FOR THE NORTHERN DISTRICT OF
                               CALIFORNIA

# EXHIBIT E

**From:**        Mark Molumphy
**Sent:**        Monday, November 6, 2017 9:57 AM
**To:**          Jason Forge; Joseph Sarles; John Jasnoch; charlene.shimada@morganlewis.com;
                 RLiubicic@milbank.com; sstrauss@stblaw.com; Diane Doolittle
**Cc:**          William C. Fredericks; Beth Kaswan; Sean Masson; Tamarah Prevost; Phyra McCandless;
                 Valerie Lozano; Vicki Parker; Rachel Jensen; Michael Albert; Carissa Dolan
**Subject:**     RE: LendingClub Joint Notice

Counsel,

Pursuant to our prior communications, as well as orders by both Judge Alsup and Judge Weiner, this will confirm once again that the State Lead Plaintiffs intend to (1) submit their proposed joint notice to Judge Weiner by today's deadline and (2) make an ex parte application tomorrow, Tuesday, November 7, 2017 at 2:00 p.m., seeking approval of the proposed joint notice.  This will allow us to meet Judge Alsup's deadline for submission of a joint notice by November 10.

At this point, we have not received any comments from defendants, and only received a proposed federal notice (not a joint notice) from Federal Lead Plaintiff which we are now trying to integrate with our joint notice.  We anticipate sending around a new version of the joint notice shortly.

Mark

# EXHIBIT E

1    MARK C. MOLUMPHY (SBN 168009)
2    mmolumphy@cpmlegal.com
     PHYRA M. McCANDLESS (SBN 260021)
3    pmccandless@cpmlegal.com
     COTCHETT, PITRE & McCARTHY, LLP
4    San Francisco Airport Office Center
     840 Malcolm Road, Suite 200
5    Burlingame, California 94010
6    Telephone:    (650) 697-6000
     Facsimile:    (650) 697-0577
7
8    JOHN T. JASNOCH (281605)
     jjasnoch@scott-scott.com
9    SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
     707 Broadway, Suite 1000
10   San Diego, California  92101
     Telephone:    (619) 233-4565
11   Facsimile:    (619) 233-0508

12   *Co-Lead Counsel for Plaintiffs*

13   [Additional counsel listed on signature page.]

14

15              **IN AND FOR THE STATE OF CALIFORNIA**

16                    **COUNTY OF SAN MATEO**

17
     In re LENDINGCLUB CORPORATION          Master File No.: CIV537300
18   SHAREHOLDER LITIGATION                 (Consolidated with CIV537633, 537637,
                                            537868, 538762)
19   ————————————————————
20   This Document Relates To:              **[PROPOSED] ORDER GRANTING
                                            PLAINTIFFS' *EX PARTE* APPLICATION
21   ALL ACTIONS.                           TO APPROVE JOINT CLASS NOTICES**

22                                          Date:  November 7, 2017
23                                          Time:  2:00 p.m.
                                            Dept.  2
24                                          Hon. Marie S. Weiner

25

26

27

28

LAW OFFICES          **[PROPOSED] ORDER GRANTING PLAINTIFFS' EX PARTE APPLICATION TO
COTCHETT, PITRE      APPROVE JOINT CLASS NOTICES**
& McCARTHY, LLP

ENDORSED FILED
SAN MATEO COUNTY

NOV 0 7 2017

Clerk of the Superior Court
By TERRI MARAGOULAS
DEPUTY CLERK

1        The Court, having considered Lead Plaintiffs' *ex parte* application to approve the

2   amended Joint Notice and Joint Summary Notice (together, the "Joint Class Notices"), as well as

3   all argument and the competing version of notice, HEREBY ORDERS THAT the application is

4   GRANTED.  The Joint Notice and Joint Summary Notice, attached hereto as Exhibits A and B,

5   are approved and should be submitted to United States District Court Judge William Alsup for

6   approval in the federal class action, *In re Lendingclub Securities Litigation*, Case No. 3:16-cv-

7   02627-WHA (N.D. Cal.).

8        IT IS SO ORDERED.

9   Dated: <u> NOV 0 7 2017    </u>.

                                   **MARIE S. WEINER**

10

11                                     HON. MARIE S. WEINER

12                                     JUDGE OF THE SUPERIOR COURT

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] ORDER GRANTING PLAINTIFFS' EX PARTE APPLICATION TO APPROVE JOINT CLASS NOTICES**       1

# EXHIBIT A

[EXHIBIT A]

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN MATEO

| | |
|---|---|
| IN RE LENDINGCLUB CORPORATION SHAREHOLDER LITIGATION | Master File No.: CIV 537300 |

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE LENDINGCLUB CORPORATION SECURITIES LITIGATION | Case No.: 3:16-cv-02627-WHA |

### [PROPOSED] NOTICE OF PENDENCY OF CLASS ACTIONS

*Courts have authorized this notice. This is not a solicitation from a lawyer.*
*You are not being sued.*

**NOTICE OF PENDENCY OF CLASS ACTIONS: Please be advised that your rights may be affected by (1) a class action lawsuit pending in a state court if you purchased or otherwise acquired shares of the common stock of LendingClub Corporation, Inc. ("LendingClub" or the "Company") between December 11, 2014 and June 8, 2015, and (2) by a class action lawsuit pending in a federal court if you purchased or otherwise acquired shares of the common stock of LendingClub between December 11, 2014 and May 6, 2016, inclusive. This Notice explains important rights you may have. Please read it carefully.**

- Class action lawsuits are pending in the Superior Court of the State of California, San Mateo County (the "State Court") and in the United States District Court for the Northern District of California (the "Federal Court") alleging violations of the Securities Act of 1933 (the "1933 Act") against (1) LendingClub, (2) certain of LendingClub's officers and directors (the "Individual Defendants") who signed the Registration Statement and incorporated Prospectus (the "Offering Materials") for LendingClub's December 11, 2014 Offering, and (3) the underwriters of the Offering (the "Underwriter Defendants").[1]  In addition, the class action in

---

[1] The Individual Defendants consist of Renaud Laplanche (former CEO and director) and Carrie Dolan (former CFO), and current or former Company directors Daniel Ciporin, Jeffrey Crowe, Rebecca Lynn, John Mack, Mary Meeker, John Morris, Lawrence Summers, and Simon Williams.  The Underwriter Defendants consist of Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC (formerly known as Goldman, Sachs & Co.), Credit Suisse Securities (USA) LLC, Citigroup Global Markets Inc., Allen & Company LLC, Stifel, Nicolaus & Company, Incorporated, BMO Capital Markets Corp., William Blair & Company, L.L.C., and Wells Fargo Securities, LLC.  LendingClub, the Individual Defendants, and the Underwriter Defendants are collectively referred to as "Defendants."

the Federal Court asserts claims against LendingClub and Individual Defendants Laplanche and Dolan under the Exchange Act of 1934 (the "Exchange Act").

- By orders dated June 22, 2017 and September 19, 2017, the State Court has decided that the lawsuit pending before it (the "State Action") should proceed as a class action on behalf of a "class" and a "subclass" (i.e., a group and a sub-group of people and entities) that could include you. Subject to certain exclusions discussed below, the State Court has certified a Class (the "State Class") that consists of "all persons and entities who, between December 11, 2014 and June 8, 2015, inclusive, purchased or otherwise acquired shares of the common stock of LendingClub . . . pursuant to and/or traceable to the Registration Statement and Prospectus". The December 11, 2014 through June 8, 2015 time period is known as the "1933 Act Class Period." The State Court has also certified a subclass (the "State Subclass") which, subject to certain exclusions discussed below, consists of "all persons and entities who purchased shares of the common stock of LendingClub directly in the December 11, 2014 Initial Public Offering". The State Action asserts claims under §§ 11 and 15 of the "1933 Act" on behalf of the State Class, and claims under §§ 12(a)(2) and 15 of the 1933 Act on behalf of the State Subclass.

By order dated October 20, 2017, the Federal Court also decided that the lawsuit pending before it (the "Federal Action") should proceed as a class action on behalf of a class that could include you. Subject to certain exclusions discussed below, the Federal Court has certified a class (the "Federal Class") that consists of "All persons and entities who purchased or otherwise acquired the common stock of LendingClub Corporation during the period from December 11, 2014 through May 6, 2016 (for claims under the Exchange Act of 1934) and all those who purchased or acquired LendingClub common stock during the period from December 11, 2014 through June 8, 2015 (for claims under the 1933 Securities Act) and were damaged thereby." The December 11, 2014 through May 6, 2016 time period is known as the "Exchange Act Class Period." The Federal Action, like the State Action, also asserts claims under §§ 11 and 15 of the 1933 Act on behalf of all persons and entities who, during the shorter 1933 Act Class Period, purchased or otherwise acquired shares of LendingClub common stock. Unlike the State Action, however, the Federal Action (a) does not assert any claims under § 12(a)(2) of the 1933 Act, but (b) does include claims under §§ 10(b) and 20(a) of the Exchange Act on behalf of those who purchased LendingClub shares during the longer Exchange Act Class Period.

- To the extent that you purchased LendingClub shares only during the period between June 9, 2015 and May 6, 2016, inclusive (i.e., during the broader ~~Federal~~ Class Period but after the shorter 1933 Act Class Period), you are NOT a member of the State Class, but may be a member of the Federal Class. └─ Exchange Act

- The two actions overlap in some respects and differ in others. *See* "To what extent are the State and Federal actions the same or different?" at item 3 of the "Basic Information" section below.

- Class members will be notified of any settlement or recovery in either the State or the Federal Action, at which point they will have an opportunity to opt out of the settlement if they elect

to do so. Class members will also be notified of any other recovery in either action which may affect them. To date, however, no settlement or recovery has been obtained in either action, nor can there be any assurance that any settlements or recovery will be reached.

| YOUR LEGAL RIGHTS AND OPTIONS IN THESE LAWSUITS | |
|---|---|
| **Do Nothing** | *Stay in both lawsuits. Await the outcomes. Share in possible benefits. Give up certain rights.*<br><br>By doing nothing, you are choosing to stay in both the State Class (and State Subclass) and the Federal Class (as applicable). You will be permitted to share in any applicable recoveries that may result from the class actions, but you will give up your rights to sue Defendants in a separate lawsuit for (a) the claims asserted in the State Action to the extent you are a member of the State Class, and (b) the claims asserted in the Federal Action to the extent you are a member of the Federal Class. In addition, as a State and/or Federal Class member (as applicable), you will be bound by past and any future court rulings on, or the settlement of, the claims against Defendants in the State and/or Federal Actions (as applicable). The Federal and State Actions are scheduled to go to trial in September and October, 2018, respectively, and to the extent you do nothing, you will be bound by any judgment(s) that are entered following any trial. |
| **Ask to Be Excluded from the State Class (and Subclass) and/or the Federal Class** | *Get out of these lawsuits. Get no benefits. Keep your rights.*<br><br>If you opt out of the State Class and Subclass and the Federal Class (meaning you say in writing that you do not want to be included in this lawsuit), you will <u>not</u> be entitled to any recovery that may result from either of these class actions, but you will <u>not</u> be bound by any past or future rulings for or against Defendants. You will be free to pursue your own claims against Defendants on your own or as part of a different lawsuit. You may also opt out of the Class in one action, while staying in the Class in the other – in which case you will be bound only by any future rulings entered in the action that you do not opt-out of (but will not be entitled to any recovery that may result from the action you do opt out of). |

These rights and options, and the deadlines to exercise them, are further explained in this Notice.

## BASIC INFORMATION ABOUT THE LAWSUITS

1. **Why did I get this Notice?**

Records indicate that you may have purchased LendingClub common stock between

December 11, 2014 and May 6, 2016, inclusive, and/or that you may have purchased shares of LendingClub common stock directly in LendingClub's December 11, 2014 Offering. This Notice explains that both the State and Federal Courts have allowed, or "certified," classes in lawsuits that may affect you. You have legal rights and options that you may exercise. Judge Marie S. Weiner of the Superior Court of California for San Mateo County is overseeing the State Action pending in State Court. That case is captioned *In re LendingClub Corporation Shareholder Litigation,* Case No. CIV537300. Judge William H. Alsup of the United States District Court for the Northern District of California is overseeing the Federal Action pending in Federal Court. That case is captioned *In re LendingClub Corporation Securities Litigation,* Case No. 3:16-cv-02627-WHA.

## 2.    What are these lawsuits about?

The Federal Action alleges that Defendants LendingClub, Laplanche and Dolan defrauded investors who purchased Lending Club common stock during the Exchange Act Class Period by making certain misstatements and omissions concerning LendingClub's internal controls, data integrity and security, and related-party transactions, and that these Defendants violated § 10(b) of the Exchange Act, as well as SEC Rule 10b-5 promulgated thereunder, by making such statements or omissions knowingly or with extreme recklessness, and caused the price of LendingClub common stock to be artificially inflated during the period from December 11, 2014 through May 6, 2016. Lead Plaintiff in the Federal Action also asserts claims on behalf of investors who purchased Lending Club common stock during the shorter 1933 Act Class Period which allege that all Defendants violated §§ 11 and 15 of the 1933 Act because LendingClub's Offering Materials contained material misstatements and/or omissions concerning LendingClub's internal controls, data integrity and security, and related-party transactions.

The State Action also alleges that all Defendants violated § 11 of the federal Securities Act of 1933 (the "1933 Act") because the Offering Materials, pursuant to which LendingClub shares were sold in the Offering, allegedly contained materially false or misleading statements and/or omitted to disclose material information required to be disclosed concerning (a) LendingClub's internal controls, data integrity and security, and related-party transactions, as well as (b) LendingClub's allegedly usurious loan rates and defective loan underwriting practices. The State Action also alleges that LendingClub and Defendant Renaud Laplanche violated § 12(a)(2) of the 1933 Act, and that, pursuant to § 15 of the 1933 Act, all of the Individual Defendants are liable for LendingClub's alleged violations of § 11 and § 12(a)(2) as "controlling persons" of LendingClub. The State Action does not assert claims under the Exchange Act.

Defendants deny that they made any false or misleading statements or omissions that violated the Exchange Act or that LendingClub's Offering Documents contained any untrue statements of material fact or material omissions in violation of the 1933 Act, or that they otherwise violated the Exchange Act or 1933 Act.

## 3.    To what extent are these lawsuits the same or different?

The two actions overlap in some respects and differ in others.

○ Both the State and Federal Actions assert claims under §§ 11 and 15 of the 1933 Act on behalf of those who purchased LendingClub common stock during the 1933 Act Class Period (i.e. between December 11, 2014 and June 8, 2015, inclusive), based on allegations that the Defendants made misrepresentations and omitted material information in the Offering Materials used to conduct LendingClub's initial public offering in December 2014.

○ The State Action asserts certain additional theories of liability under the 1933 Act on behalf of purchasers during the 1933 Act Class Period, that are not contained in the Federal Action. More particularly, the State Action asserts additional 1933 Act theories and claims based on (a) Defendants' failure to adequately disclose LendingClub's allegedly usurious loan rates and defective loan underwriting practices in the Offering Materials; and (b) certain Defendants' alleged violations of § 12(a)(2) of the 1933 Act. The Federal Action does not contain such claims or theories of liability. For this reason, it is possible that the amount recoverable at trial on behalf of persons with 1933 Act claims may be higher in the State Action. However, it is also possible that the amount recoverable at trial on behalf of persons with 1933 Act claims would not be lower in the Federal Action because (1) such persons (to the extent that they have claims under § 11) are presumptively entitled to calculate certain damages based upon the trading value of Lending Club shares on the date that the Federal Action was first brought (May 16, 2016), whereas (2) in the State Action there is a risk that a court would find that the true value of LendingClub shares on the date that the State Action was first brought (February 26, 2016) was less favorable to 1933 Act claimants. Ultimately, whether a greater amount of damages is recoverable in the State or in the Federal Action on a given class member's 1933 Act claims (if any) is a complex question, which depends on the resolution of complex issues of law and the timing of particular class members' purchases and sales of LendingClub shares.

○ The State Action may also be subject to dismissal depending upon the outcome of a case currently pending before the United States Supreme Court (*Cyan, Inc. v. Beaver Cty. Employees Ret. Fund,*), which challenges whether state courts have jurisdiction over the 1933 Act claims that have been brought in the State Action. In such an event, those who purchased during the 1933 Act Class Period would continue to be entitled to share in any recovery on 1933 Act claims that may be obtained in the Federal Action, *provided* that they do not "opt out" of the Federal Class (see item 15 below).

○ Only the Federal Action asserts claims under the Exchange Act.   *Exchange Act*

○ To the extent that you purchased Lending Club shares only during the period between June 9, 2015 and May 6, 2016, inclusive (i.e., during the broader ~~Federal~~ Class Period but after the shorter 1933 Act Class Period), you are NOT a member of the State Class but may be a member of the Federal Class.

**4.    What is a class action and who is involved?**

In a class action, one or more people or entities called "class representatives" sue on

behalf of themselves and other persons or entities who have the same or similar claims (with such persons or entities referred to collectively as the "class" or "class members"). In the State Action, the [State] Class Representatives are Kathy Geller, Dylan Youngblood, and Alton Consulting LLC, and the Subclass Representative is Dylan Youngblood. In the Federal Action, the [Federal] Class Representative is the Water and Power Employees' Retirement Disability and Death Plan of the City of Los Angeles. The persons and entities that filed the suits are called "plaintiffs" and the persons or entities being sued are called "defendants." The State and Federal Courts will resolve the issues for all class and subclass members, except for those who exclude themselves, or "opt out," from the Class and Subclass (as discussed below).

The rulings by the respective Courts certifying the Federal and State Classes did not address the merits of these Actions. Rather, certification means only that the ultimate outcomes of the Actions— whether favorable or unfavorable to Federal and State Plaintiffs  and the relevant classes and Defendants— will apply in like manner to each class member in each Action who does not timely elect to be excluded from the Class in that Action.

**5.      What has happened so far?**

**The State Action.** On February 26, 2016, State Class Representative Geller filed, in State Court, the first complaint against Defendants on behalf of a putative class. The Action alleged that Defendants had violated §§ 11, 12(a)(2) and 15 of the Securities Act by selling, or offering to sell, LendingClub shares pursuant to Offering Materials that contained materially false or misleading statements and/or omitted to disclose material information required to be disclosed therein. All three State Class Representatives filed an amended consolidated complaint on August 26, 2016.

On September 30, 2016, in response to Defendants' demurrers the State Court sustained all of the State Plaintiffs' section 11 claims, but initially dismissed their section 12(a)(2) claims. Fact discovery commenced in the fall of 2016 and remains ongoing. On January 17, 2017, the State Class Representatives filed a Second Amended Consolidated Complaint (the "State Complaint"), which repled the § 12(a)(2) claims that the State Court had dismissed. On March 17, 2017, the State Court sustained in part and denied in part Defendants' demurrers to the repled § 12(a)(2) claims. Pursuant to the September 30, 2016 and March 17, 2017 Orders, and as previously described above, the § 11 claims are proceeding against all Defendants, and the § 12(a)(2) claims are proceeding against only Defendants LendingClub and Laplanche. The § 15 claims, based upon LendingClub's underlying alleged violations of §§ 11 and 12(a)(2), are proceeding against the Individual Defendants. On June 22, 2017, the State Court certified the State Class and the State Subclass.

**The Federal Action.** On May 16, 2016, the first federal complaint against Defendants on behalf of a putative class for violations of the federal securities laws was filed in the Federal Court, and the Lead Plaintiff filed its Consolidated Complaint on December 9, 2016. By order dated May 25, 2017, the Defendants' motions to dismiss the Consolidated Complaint were granted in part and denied in part. On June 15, 2017 the Lead Plaintiff filed the operative Amended Complaint for Violation of the Federal Securities Laws, asserting claims under §§ 11 and 15 of the 1933 Act and § 10(b) of the Exchange Act, as well as SEC Rule 10b-5 promulgated thereunder, as described above. On July 27, 2017, Defendants answered the Amended

Complaint.

On September 21, 2017, the State Class Representatives filed a motion to intervene and limited objection in the Federal Court, arguing that the State Court (which had already certified a 1933 Act class) was the superior forum for litigating all 1933 Act claims. The Federal Class Representative opposed the motion to intervene and the limited objection. On October 20, 2017 the Federal Court granted the motion to intervene, denied the limited objection, and directed the parties in both cases to meet and confer and prepare a joint notice, and to request the State Court's participation in a joint notice program to potential class members. Both Courts have since approved the issuance of this Notice.

**6.      What type of recovery are the Class Representatives asking for?**

Both the State and Federal Class Representatives are asking for money to compensate the State Class and Federal Class Members, respectively, for the losses they allegedly suffered as a result of Defendants' conduct, as well as pre-judgment and post-judgment interest. Members of the State Subclass may also be entitled to rescission of their purchases of LendingClub shares.

**7.      Is there any money available now?**

No money or benefits are available now because neither Court has yet decided whether Defendants did anything wrong, and no settlements have been reached. There is no guarantee that any money or benefits ever will be obtained. If they are, you will receive a notice describing how to receive a share of any recovery in which you may be eligible to participate.

**8.      What happens if there is a settlement in either of these actions?**

You will be notified of any settlement in either action. At that time, you will have an opportunity to opt out of the settlement. Opting out of the settlement, however, is not the same as opting out of the Class, and doing so will NOT restore your right to bring your own lawsuit against these defendants based on the same, or similar, facts and circumstances related to LendingClub.

## DETERMINING IF YOU ARE A MEMBER OF THE CLASS OR SUBCLASS

**9.      How do I know if I am a Class or Subclass Member?**

You are a member of the State Class in the State Action if you purchased shares of LendingClub common stock pursuant to and/or traceable to the Registration Statement and Prospectus on or between December 11, 2014 and June 8, 2015, inclusive (the "1933 Act Class Period").

You are a member of the State Subclass in the State Action (which asserts claims under § 12(a)(2)) if you purchased shares of LendingClub common stock directly in LendingClub's December 11, 2014 Offering. In general, this means that you or your agent must have purchased LendingClub common stock at the $15.00 (exactly) per share offering price, with a "trade date"

*Exchange Act*

of December 10 or December 11, 2014, directly from one of the Defendants.[2]

You are a member of the Federal Class in the Federal Action if you purchased or otherwise acquired the common stock of LendingClub Corporation during the period from December 11, 2014 through May 6, 2016, inclusive (the "Class Period"), and were damaged thereby. However, only class members who purchased shares of LendingClub common stock pursuant to and/or traceable to the Registration Statement and Prospectus during the 1933 Act Class Period are eligible to recover on the 1933 Act claims that have been asserted in the Federal Action.

Please note that to the extent that you purchased LendingClub shares only during the period between June 9, 2015 and May 6, 2016, inclusive (i.e., during the broader ~~Federal~~ Class Period but after the shorter 1933 Act Class Period), you are NOT a member of the State Class, but may be a member of the Federal Class.

*Exchange Act*

If one of your mutual funds purchased or otherwise acquired LendingClub shares, that does not make you a class or subclass member in either action; instead, you are a State Class, State Subclass, and/or Federal Class member only if you (or your broker on your behalf) purchased LendingClub shares for your own account. If you are the legal representative or fiduciary of a person or legal entity that purchased LendingClub shares (*e.g.*, if you are the trustee of a trust that purchased LendingClub shares), then the person or entity that you represent will be the State Class, State Subclass, and/or Federal Class member, but it may be legally bound by your decisions.

**10.     Are there exceptions to being included in the State Class (including the State Subclass) and Federal Class?**

Yes. There are also some people and entities that are excluded from the State Class, State Subclass and/or the Federal Class by definition. The excluded Persons are: each of the Defendants; their respective successors and assigns; past and current executive officers and directors of LendingClub and the Underwriter Defendants; the legal representatives, heirs, successors or assigns of the Individual Defendants; and any entity in which any of the above excluded persons have or had a majority ownership interest. Short sellers who incurred losses during the class period as a result of their short sales are excluded from the Federal Class. Also excluded from the State Class, State Subclass, and/or the Federal Class will be any Person who timely and validly seeks exclusion from the State Class, State Subclass, and Federal Class in accordance with the requirements of this Notice.

**11.     Are you still not sure if you're included?**

If you are still not sure whether you are included in the State Class, State Subclass, or Federal Class you can get free help at www.[StateLendingClubLitigationWebsite].com or www.[FederalLendingClubLitigationWebsite].com or by calling or writing to Co-Lead Counsel

---

[2]     If you did *not* purchase LendingClub shares directly in LendingClub's December 11, 2014 Offering, but rather, purchased shares on the open market, including at a price *other than* the $15.00 per share offering price, then you are not a member of the State Subclass.

for either the State or Federal Class at the phone numbers or addresses provided in response to question 15 below.

## YOUR OPTIONS AS A CLASS MEMBER

**12.** **What are my options as a State Class, State Subclass, and/or Federal Class Member?**

You may decide to stay in the State Class (and State Subclass, if applicable[3]), in the Federal Class, or in both Classes. You may also decide to opt out of one Class (but stay in the other), or you may opt out of both Classes.

**13.** **What happens if I choose to stay in the State Class (including the SubClass, if applicable) and the Federal Class?**

If you stay in the State Class (including the State Subclass, if applicable) and the Federal Class, you will be permitted to share in a recovery, if any, that may occur in those Actions if you suffered compensable losses, subject to the terms of any plan of allocation that may be approved in such Actions by the relevant Court. But you give up any rights to sue Defendants separately about the same legal claims in these lawsuits. You will also be legally bound by the Orders issued by either Court as well as any Judgments made by either Court in the respective class actions, even if there are no recoveries. The Federal and State Actions are scheduled to go to trial in September and October, 2018, respectively, and to the extent you do nothing you will be bound by any judgment(s) that are entered following any trial.[4]

**14.** **How do I stay in the State Class (including the State Subclass, if applicable) and the Federal Class?**

You do not have to do anything at this time to stay in both the State Class (including the State Subclass, if applicable) and the Federal Class.

**15.** **What happens if I "opt out" (exclude myself) from the State Class (including the State Subclass, if applicable) and/or the Federal Class?**

If you opt out of the State Class (which will also automatically cause you to opt out of the State SubClass) and the Federal Class – which you can do by stating in writing that you do not want to be included in the State Class, the Federal Class, or both (*see* item 16 below) -- you will give up the right to participate in any recoveries that may occur in the action(s) that you opt out of. If you opt out of both actions, you will keep any rights you may currently have to sue Defendants regarding the legal claims at issue, and you will also *not* be bound by the Orders

---

[3] *If* you are a member of the State SubClass, you may stay in both the State Class and the Subclass, or opt out of both, but you cannot stay in one and opt out of the other.

[4] To the extent that you purchased LendingClub shares only during the period between June 9, 2015 and May 6, 2016, inclusive (i.e., during the broader ~~Federal~~ Class Period but after the shorter 1933 Act Class Period), you are NOT a member of the State Class, and would therefore only be bound by any judgments entered in the Federal Action.

Exchange Act

issued by either Court and the Judgments made by either Court in these class actions.

You may also opt out of the Class in one action, while staying in the Class in the other, in which case you will give up the right to participate in any recoveries that may occur in the action(s) that you opt out of, but will only be bound by Orders and Final Judgments issued by (including any settlements approved by) the Court in the action that you do not opt out of.

**16.    How do I "opt out" (exclude myself) from the State Class (and State Subclass, if applicable) and/or the Federal Class?**

If you do not want to be a State Class and/or Federal Class Member, **you must send** a signed, written "Request to Opt Out" to the Notice Administrator so it is *received* no later than _____, 2018.  Your written request must include:

- Your name, address, and telephone number;
- A statement that you request exclusion from the Classes in *In re LendingClub Corporation Shareholder Litigation,* Case No. CIV537300 **and/or** *In re LendingClub Corporation Securities Litigation,* Case No. 3:16-cv-02627; and
- Your signature

You must mail your Request to Opt Out by First-Class Mail to the following address:

*LendingClub Shareholder Litigation - Exclusions*
c/o KCC Class Action Services
3301 Kerner Blvd.
San Rafael, CA 94901

If you are potentially a member of both the State Class and the State Subclass, you cannot "opt out" of one and remain in the other, and any "opt out" request for the State Class or State Subclass will be deemed a request for exclusion from both.

**THE LAWYERS REPRESENTING YOU**

**17.    As a State Class, Federal Class, and/or (if applicable) Subclass member, do I have a lawyer representing my interests in this case?**

Yes.  The State Court has appointed lawyers to represent the members of State Class and State Subclass, and the Federal Court has appointed lawyers to represent the members of the Federal Class.  These lawyers are called "Class Counsel."  The following lawyers have been appointed Class Counsel to represent the State Class and State Subclass in the State Action: Scott+Scott, Attorneys at Law, LLP (c/o John T. Jasnoch at jjasnoch@scott-scott.com, or 1-800-332-2259) and Cotchett, Pitre & McCarthy LLP (c/o Alexandra Summer) at asummer@cpmlegal.com, or 650-697-6000).  The following lawyers have been appointed Class Counsel to represent the Federal Class in the Federal Action:  Robbins Geller Rudman & Dowd, LLP (c/o _____) at _____@_____, or _____).

If you have questions about this Notice, you can contact any of the Class Counsel at the

contact emails or phone numbers listed above. For additional questions about the State Action or the Federal Action, you can contact the respective Class Counsel in those actions at the contact emails or phone numbers listed above. You will not be separately charged for these lawyers, or for the services of any other counsel representing the State Class or the Federal Class.

**18.  How will the lawyers for the State Class (including the State Subclass) and Federal Class be compensated?**

If any recoveries are obtained for the State Class or Federal Class, Class Counsel will submit one or more applications to the State and/or Federal Court for an award of attorneys' fees and for reimbursement of litigation expenses that plaintiffs' counsel have incurred in pursuing the claims at issue. Counsel may also ask the Court to approve a reasonable service award for one or more of the Class Representatives. If approved, any such attorneys' fees, expenses or awards will either be paid from any recoveries obtained or separately by Defendants. Neither the State Class nor Federal Class members will be liable for any such fees, expenses or awards.

**19.  Should I get my own lawyer?**

You do not need to hire your own lawyer. However, you are free to hire your own lawyer at your own expense. If you hire a lawyer to speak for you or to appear in either the State Court or the Federal Court, your lawyer must file a Notice of Appearance.

## GETTING MORE INFORMATION

**20.  Where do I get more information?**

This Notice contains only a summary of the State Action, the Federal Action, and proceedings to date. Complete copies of public pleadings, Court rulings and other filings in the State Action are available for review and copying at the Clerk's office at the California Superior Court for the County of San Mateo at the following address: _____. Complete copies of public pleadings, Court rulings and other filings in the Federal Action are available for review and copying at the Clerk's office at the United States District Court for the Northern District of California, at the following address: _____. Additional information is also available at www.[StateLendingClubLitigationWebsite].com and www.[FederalLendingClubLitigationWebsite].com, or by contacting the Notice Administrator at *LendingClub Shareholder Litigation,* c/o KCC Class Action Services, P.O. Box 404019, Louisville, KY 40233-4019, tel. (__) ___-____.

*Please do not contact the Courts, the Clerks of the Courts, or Defendants for additional information. They cannot answer any questions or discuss the Action.*

**SPECIAL NOTICE TO BANKS, SECURITIES BROKERS, AND OTHER NOMINEES**

  If you purchased LendingClub shares (ticker: LC) between December 11, 2014 and June 8, 2015 inclusive or purchased LendingClub shares directly in the December 11, 2014 Offering at the $15.00 per share Offering price for the beneficial interest of a person or entity other than yourself, the Court has directed that, *WITHIN FOURTEEN (14) CALENDAR DAYS OF YOUR RECEIPT OF THIS NOTICE*, you must either: (A) provide to the Notice Administrator the name and last known address of each person or entity for whom or which you purchased such shares (preferably in electronic format (MS Excel or CSV file); or (B) request from the Notice Administrator additional copies of this Notice (which will be provided to you free of charge) and send them, within fourteen (14) calendar days of receipt, by First-Class mail directly to the beneficial owners/purchasers of those LC shares. All communications concerning the foregoing should be addressed to the Notice Administrator at: *LendingClub Shareholder Litigation*, c/o KCC Class Action Services, P.O. Box 404019, Louisville, KY 40233-4019, tel. (__) ___-____, or by email to _____.

  Regardless of whether you choose to complete the mailing yourself or elect to have the mailing performed for you, you may obtain reimbursement for or advancement of reasonable administrative costs actually incurred or expected to be incurred in connection with forwarding this Notice and which would not have been incurred but for the obligation to forward this Notice, upon submission of appropriate documentation to the Notice Administrator.

**PLEASE DO *NOT* CONTACT THE COURTS OR THE CLERKS' OFFICES REGARDING THIS NOTICE.**

Dated: _____, 2017    BY ORDER OF THE SUPERIOR COURT OF
            CALIFORNIA FOR SAN MATEO COUNTY
            HON. MARIE S. WEINER


Dated: _____, 2017    BY ORDER OF THE UNITED STATES
            DISTRICT FOR THE NORTHERN DISTRICT OF
            CALIFORNIA
            HON. WILLIAM H. ALSUP

# EXHIBIT B

**[EXHIBIT B]**

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN MATEO

| | |
|---|---|
| IN RE LENDINGCLUB CORPORATION SHAREHOLDER LITIGATION | Master File No.: CIV 537300 |

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE LENDINGCLUB CORPORATION SECURITIES LITIGATION | Case No.: 3:16-cv-02627-WHA |

[PROPOSED] SUMMARY NOTICE OF PENDENCY OF CLASS ACTION

**TO:   ALL PERSONS AND ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED THE COMMON STOCK OF LENDINGCLUB CORPORATION BETWEEN DECEMBER 11, 2014 AND JUNE 8, 2015, INCLUSIVE, INCLUDING ALL PERSONS WHO PURCHASED LENDINGCLUB COMMON STOCK DIRECTLY IN LENDINGCLUB'S DECEMBER 11, 2014 INITIAL PUBLIC OFFERING AT $15 PER SHARE.**

**Please be advised that your rights may be affected by (1) a class action lawsuit pending in a state court if you purchased or otherwise acquired shares of the common stock of LendingClub Corporation, Inc. ("LendingClub" or the "Company") between December 11, 2014 and June 8, 2015, and (2) by a class action lawsuit pending in a federal court if you purchased or otherwise acquired shares of the common stock of LendingClub between December 11, 2014 and May 6, 2016, inclusive. This Notice explains important rights you may have. Please read it carefully.**

*Courts have authorized this notice. This is not a solicitation from a lawyer.*

YOU ARE HEREBY NOTIFIED, pursuant to Court Orders dated June 22, 2017 and

September 19, 2017, that a class and Subclass have been certified in a class action entitled *In re*

*LendingClub Corporation Shareholder Litigation,* Case No. CIV537300 (the "State Action"),

currently pending before the Hon. Marie S. Weiner in the Superior Court of the State of

California, San Mateo County (the "State Court").

YOU ARE HEREBY NOTIFIED, pursuant to a Court Order dated October 20, 2017, a class has also been certified in a class action entitled *In re LendingClub Corporation Securities Litigation,* Case No. 3:16-cv-02627-WHA (the "Federal Action"), currently pending before the Hon. William H. Alsup in the United States District Court for the Northern District of California (the "Federal Court").

The State Action is brought on behalf of all persons or entities who purchased or otherwise acquired shares of LendingClub common stock pursuant and/or traceable to LendingClub's December 11, 2014 Initial Public Offering (the "IPO") during the period December 11, 2014 through June 8, 2015, inclusive (the "Class"), and asserts claims against (a) defendant LendingClub; (b) certain LendingClub officers and directors (the "Individual Defendants") who signed the Registration Statement and incorporated Prospectus for the IPO (the "Offering Materials"); and (c) the underwriters of LendingClub's IPO (the "Underwriter Defendants"). The State Plaintiffs, on behalf of the Class, allege that all Defendants violated § 11 of the federal Securities Act of 1933 (the "1933 Act") because the Offering Materials, pursuant to which LendingClub shares of common stock were offered and sold in the IPO, contained materially false or misleading statements and/or omitted to disclose material information required to be disclosed therein. The State Plaintiffs also allege, on behalf of the Class, that each Individual Defendant is also liable for LendingClub's alleged violations of § 11 as a "controlling person" of LendingClub under § 15 of the 1933 Act.

The State Plaintiffs, on behalf of all persons or entities who purchased LendingClub common stock directly in the December 11, 2014 IPO (the "Subclass"), also allege that (a) Defendants LendingClub and Renaud Laplanche violated § 12(a)(2) of the 1933 Act because the Offering Materials contained materially false or misleading statements and/or omitted to disclose

material information required to be disclosed therein; and (b) each Individual Defendant is liable for LendingClub's alleged violations of § 12(a)(2) as a "controlling person" of LendingClub under § 15 of the 1933 Act.

The Federal Action alleges that Defendants LendingClub, Laplanche and Dolan defrauded investors who purchased LendingClub common stock between December 11, 2014 and May 6, 2016 by making certain misstatements and omissions concerning LendingClub's internal controls, data integrity and security, and related-party transactions, and that these Defendants violated § 10(b) of the Exchange Act, as well as SEC Rule 10b-5 promulgated thereunder, by making such statements or omissions knowingly or with extreme recklessness, and caused the price of LendingClub common stock to be artificially inflated during the period from December 11, 2014 through May 6, 2016. Lead Plaintiff in the Federal Action also asserts claims on behalf of investors who purchased Lending Club common stock from December 11, 2014 through June 8, 2015 which allege that all Defendants violated §§ 11 and 15 of the 1933 Act because LendingClub's Offering Materials contained material misstatements and/or omissions concerning LendingClub's internal controls, data integrity and security, and related-party transactions.

Each Defendant denies that they made any false or misleading statements or omissions that violated the Exchange Act or that LendingClub's Offering Documents contained any untrue statements of material fact or material omissions in violation of the 1933 Act, or that they otherwise violated either the Exchange Act or 1933 Act.

The State Court has decided that the State Action should proceed as a class action with respect to the § 11 (and related § 15) claims on behalf of a *Class* that (subject to certain exclusions) consists of "all persons and entities who, between December 11, 2014 and June 8,

2015, inclusive, purchased or otherwise acquired shares of the common stock of LendingClub pursuant to and/or traceable to the Registration Statement and Prospectus issued in connection with LendingClub's December 2014 Initial Public Offering." The State Court has also certified a *Subclass,* with respect to the § 12(a)(2) (and related § 15) claims only, that consists of "all persons and entities who purchased shares of the common stock of LendingClub directly in the December 11, 2014 Initial Public Offering."

The Federal Court has also decided that the Federal Action should proceed on behalf of a *Class* that consists of "All persons and entities who purchased or otherwise acquired the common stock of LendingClub Corporation during the period from December 11, 2014 through May 6, 2016, inclusive, and were damaged thereby. The Federal Action, like the State Action, also asserts claims under §§ 11 and 15 of the 1933 Act on behalf of all persons and entities who, purchased or otherwise acquired shares of LendingClub common stock between December 11, 2014 and June 8, 2015.

If you are a Member of the State Class (including the Subclass) or the Federal Class, your rights may be affected by these lawsuits. If you have not received a detailed Notice of Pendency of Class Actions ("Notice"), you may obtain copies by writing to Notice Administrator, *In re LendingClub Shareholder Litigation,* c/ KCC Class Action Services, P.O. Box 404019, Louisville, KY 40233-4019, tel: (888) [___-____], or by downloading this information at www.[LendingClubLitigationWebsite]].com. Inquiries regarding the State Action, other than requests for a copy of the Notice, may be made to Co-Lead Class Counsel: Scott+Scott, Attorneys at Law, LLP, c/o John T. Jasnoch, 707 Broadway, Suite 1000, San Diego, CA, 92101, tel. (619)-233-4565 or Cotchett, Pitre & McCarthy LLP, c/o Alexandra P. Summer, 840 Malcolm Rd., Burlingame, CA, 94010, tel. (650)-753-1763. Inquiries regarding the Federal Action may

be made to [Federal P Insert].

You have the right to request exclusion ("opt out") from the State Class (which will also exclude you from the Subclass) or the Federal Class. If you do not request exclusion from the State Class or Federal Class, you will be bound by past and any future rulings of the respective Courts on the claims asserted against the Defendants, even if there is no recovery.

> IF YOU WISH TO REMAIN IN THE CLASSES, YOU DO NOT HAVE TO DO ANYTHING AT THIS TIME. HOWEVER, IF YOU WISH TO BE EXCLUDED FROM THE STATE CLASS OR THE FEDERAL CLASS, YOU MUST SUBMIT A REQUEST FOR EXCLUSION BY _____, 2017, IN THE MANNER AND FORM EXPLAINED IN THE NOTICE. ALL MEMBERS OF THE STATE CLASS OR FEDERAL CLASS WHO DO NOT VALIDLY REQUEST EXCLUSION FROM THE CLASS WILL BE BOUND BY ALL OF THE ORDERS THE RESPECTIVE COURTS ISSUE AND JUDGMENTS THE RESPECTIVE COURTS HAVE OR WILL MAKE IN THE ACTIONS, EVEN IF THERE IS NO RECOVERY.

**PLEASE DO _NOT_ CONTACT THE COURT OR THE CLERK'S OFFICE REGARDING THIS NOTICE.**

Dated: _____, 2017

BY ORDER OF THE COURT
HON. MARIE S. WEINER
SUPERIOR COURT OF CALIFORNIA FOR SAN MATEO COUNTY

Dated: _____, 2017

BY ORDER OF THE COURT
HON. WILLIAM H. ALSUP
UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

# EXHIBIT F

## Mark Molumphy

| | |
|---|---|
| **From:** | Jason Forge <JForge@rgrdlaw.com> |
| **Sent:** | Thursday, November 9, 2017 4:52 PM |
| **To:** | Joseph Sarles |
| **Cc:** | Mark Molumphy |
| **Subject:** | Class Notice Submission |
| **Attachments:** | Alternate Exhibit A_Class Notice_LendingClub - Federal Proposal.docx; Alternate_Exhibit B_Summary Class Notice_LendingClub.docx; Ex 1 - Email re our disagreement state plaintiffs notice.pdf; Ex 2 - State Plaintiffs Transmittal Email.pdf; Ex 3 - 2017-11-07 PROPOSED ORDER.pdf; Ex 4 - Email re cost of notice dissemination.pdf; Exhibit A_Joint Class Notice_LendingClub - Federal Proposal 110917.docx; Exhibit B_Summary Class Notice_LendingClub.docx; Exhibit C_LC Notice Plan.docx; Stipulation Regarding Class Notice Procedures.docx; Lead Plaintiffs Submission Re_ Class Notice.docx |

Attached are the current (but not final) drafts of the documents we intend to file tomorrow.  Joseph, as you will see, the Submission Re Class Notice document contains the following sentence:  "Moreover, WPERP and the defendants – but not the State Plaintiffs – have agreed, subject to this Court's approval, to delay dissemination of the class notice due to the likelihood of confusion among class members about the differences of the parallel actions as set forth in this Court's Class Cert Order, whereas we should have clarity in six-to-eight months."  If this is not accurate or if you wish to rephrase, please let me know.

Jason

Jason A. Forge | Robbins Geller Rudman & Dowd
O 619 744 2645 | M 858 692 1117

**NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges.  Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.**