1  SIMONA G. STRAUSS (Bar No. 203062)
   sstrauss@stblaw.com
2  LEE BRAND (Bar No. 287110)
   lee.brand@stblaw.com
3  SIMPSON THACHER & BARTLETT LLP
   2475 Hanover Street
4  Palo Alto, California  94304
   Telephone:     (650) 251-5000
5  Facsimile:     (650) 251-5002

6  JONATHAN K. YOUNGWOOD (*pro hac vice*)
   jyoungwood@stblaw.com
7  SIMPSON THACHER & BARTLETT LLP
   425 Lexington Avenue
8  New York, New York  10017
   Telephone:     (212) 455-2000
9  Facsimile:     (212) 455-2502

10  *Attorneys for the Underwriter Defendants*

11              UNITED STATES DISTRICT COURT

12           NORTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| In re LENDINGCLUB SECURITIES LITIGATION | Case No. 3:16-cv-02627-WHA |
| | CLASS ACTION |
| This Document Relates To: | **UNDERWRITER DEFENDANTS' OPPOSITION TO MOTION TO COMPEL PRODUCTION OF WITHHELD DOCUMENTS** |
|     ALL ACTIONS. | |
| | DATE: December 7, 2017 |
| | TIME: 8:00 a.m. |
| | JUDGE:  Hon. William H. Alsup |
| | COURTROOM:  12, 19th Floor |

1

## **TABLE OF CONTENTS**

2 INTRODUCTION .................................................................................................. 1

3 BACKGROUND .................................................................................................... 2

4 LEGAL STANDARDS ........................................................................................... 5

5 ARGUMENT ......................................................................................................... 7

6   I. The Assertion of a Due Diligence Defense to a Section 11 Claim Does Not
    Waive the Attorney-Client Privilege ......................................................... 7

7

8   II. Case Law Outside of the Securities Context Similarly Does Not Support a
    Finding of Waiver Here ............................................................................. 9

9   III. This Court's Decision in *Schwab* Does Not Compel a Finding of Waiver ........... 13

10   IV. The Court Should Reject Lead Plaintiff's Request That Any Privilege
    Waiver Would Extend to Subjects That Are Unrelated to the Substantive
11    Issues in This Case ................................................................................... 15

12 CONCLUSION ..................................................................................................... 17

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Aclara Biosciences, Inc. v. Caliper Techs. Corp.*,
   No. C99–1968 CRB (JCS), 2001 WL 777083 (N.D. Cal. June 16, 2000) ............................ 16

*Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
   No. 90 Civ. 7811 (AGS), 1994 WL 510043 (S.D.N.Y. Sept. 16, 1994) ...........................11-12

*AT&T Corp. v. Microsoft Corp.*,
   No. 02-0164 MHP (JL), 2003 WL 21212614 (N.D. Cal. Apr. 18, 2003) ............................. 10

*Bittaker v. Woodford*,
   331 F.3d 715 (9th Cir. 2003) ........................................................................................ 16

*Brezoczky v. Domtar Corp.*,
   No. 16-cv-04995-EJD (HRL), 2017 WL 3492008 (N.D. Cal. Aug. 15, 2017) .................... 10

*Chevron Corp. v. Pennzoil Co.*,
   974 F.2d 1156 (9th Cir. 1992) ................................................................................. 10, 16

*Davine v. Golub Corp.*,
   No. 3:14-30136-MGM, 2017 WL 517749 (D. Mass. Feb. 8, 2017) ...................................... 11

*First Nat'l Bank v. Warner Bros. Entm't*,
   No. CV 09-08887-GAF(VBKx), 2011 WL 13213920 (C.D. Cal. June 28, 2011) ................ 16

*Genentech, Inc. v. Insmed Inc.*,
   236 F.R.D. 466 (N.D. Cal. 2006) ................................................................................. 10

*Home Indem. Co. v. Lane Powell Moss & Miller*,
   43 F.3d 1322 (9th Cir. 1995) ...............................................................................5-6, 10, 14

*IGT v. Alliance Gaming Corp.*,
   No. 2:04–cv–1676–RCJ–RJJ, 2007 WL 2429147 (D. Nev. Aug. 20, 2007) ........................ 16

*In re Broadcom Corp. Sec. Litig.*,
   No. SA CV 01275GLTMLGX, 2005 WL 1403516 (C.D. Cal. Feb. 10, 2005) .................... 12

*In re Charles Schwab Corp. Sec. Litig.*,
   No. 3:08-cv-01510, Order re Waiver of Attorney-Client and Work-Product
   Privileges (N.D. Cal. Feb. 23, 2010) ......................................................................... *passim*

*In re Int'l Rectifier Sec. Litig.*,
   No. CV91-3357-RMT (BQRx), 1997 WL 529600 (C.D. Cal. Mar. 31, 1997) ............... 6, 8-9

*In re Lidoderm Antitrust Litig.*,
   No. 14-MD-02521-WHO, 2016 WL 4191612 (N.D. Cal. Aug. 9, 2016) ........................12-13

*In re Method of Processing Ethanol Byproducts & Related Subsystems ('858
   Patent Litig.*,
   No. 1:10-ml-02181-LJM-DML, 2014 WL 2938183 (S.D. Ind. June 30, 2014) .................... 11

*In re ML-Lee Acquisition Fund II, L.P. & ML-Lee Acquisition Fund (Ret. Accounts) II, L.P. Sec. Litig.*,
  848 F. Supp. 527 (D. Del. 1994) ............................................................................... 8

*In re Refco, Inc. Sec. Litig.*,
  Master File No. 05-Civ.-8626 (S.D.N.Y. Jan. 4, 2010) ............................................. 7

*In re Worldcom, Inc. Sec. Litig.*,
  No. 02 Civ. 3288(DLC), 2004 WL 936320 (S.D.N.Y. May 3, 2004) ....................... 8

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*,
  552 F.3d 1033 (9th Cir. 2009) .......................................................................... 9-10, 14

*Mushroom Assocs. v. Monterey Mushrooms, Inc.*,
  No. C-91-1092 TEH (PJH), 1992 WL 442892 (N.D. Cal. May 19, 1992) ............. 13

*Olvera v. Cty. of Sacramento*,
  No. CIV. 10–550 WBS CKD, 2012 WL 273158 (E.D. Cal. Jan. 30, 2012) .............. 12

*REC Software USA, Inc. v. Bamboo Sols. Corp.*,
  No. C11–0554JLR, 2013 WL 364716 (W.D. Wash. Jan. 30, 2013) ........................ 16

*Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*,
  No. C 03-05669 JW (RS), 2007 WL 2069946 (N.D. Cal. July 13, 2007) ............... 12

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*,
  32 F.3d 851 (3d Cir. 1994) .......................................................................... 10, 11

*Sender v. Franklin Res. Inc.*,
  No. 11-cv-03828-EMC (SK), 2016 WL 641633 (N.D. Cal. Feb. 18, 2016) ............. 6

*Starsight Telecast, Inc. v. Gemstar Dev. Corp.*,
  158 F.R.D. 650 (N.D. Cal. 1994) ............................................................... 16-17

*United Food & Commercial Workers Union v. Chesapeake Energy Corp.*,
  No. CIV-09-1114-D, 2012 WL 2370637 (W.D. Okla. June 22, 2012) ....................... 8

*United States ex rel. Calilung v. Ormat Indus.*,
  No. 3:14-CV-00325-RCJ-VPC, 2016 WL 4107682 (D. Nev. Aug. 1, 2016) ......... 6, 12, 16

*United States v. Bauer*,
  132 F.3d 504 (9th Cir. 1997) ............................................................................ 6

*United States v. Mett*,
  178 F.3d 1058 (9th Cir. 1999) .......................................................................... 6

*U.S. Ethernet Innovations LLC v. Acer Inc.*,
  No. C 10-3724 CW (LB), 2014 WL 3570749 (N.D. Cal. July 17, 2014) ............. 10-11

*Weil v. Inv./Indicators, Research & Mgmt., Inc.*,
  647 F.2d 18 (9th Cir. 1981) ............................................................................ 16

*Weinberger v. Jackson*,
  No. C-89-2301-CAL, 1990 WL 260676 (N.D. Cal. Oct. 11, 1990) ....................... 6

*Williams v. Sprint/United Mgmt. Co.*,
    464 F. Supp. 2d 1100 (D. Kan. 2006) ................................................................................. 12

**<u>STATUTES</u>**

15 U.S.C. § 77k(b)(3) .................................................................................................................. 2

15 U.S.C. § 77k(b)(3)(A) ............................................................................................................ 6

15 U.S.C. § 77k(b)(3)(B) ............................................................................................................ 6

Defendants Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC (formerly known as Goldman, Sachs & Co.), Credit Suisse Securities (USA) LLC, Citigroup Global Markets Inc., Allen & Company LLC, Stifel, Nicolaus & Company, Incorporated, BMO Capital Markets Corp., William Blair & Company, L.L.C., and Wells Fargo Securities, LLC (collectively, the "Underwriter Defendants") respectfully submit this opposition to Lead Plaintiff's Motion to Compel Production of Withheld Documents ("Mot.").

## INTRODUCTION

By arguing that the mere assertion of a due diligence defense amounts to a blanket waiver of attorney-client privilege, Lead Plaintiff's motion (i) misstates well-settled law across the country, (ii) disregards the Court's prior ruling with respect to privilege waiver in this case, (iii) ignores the context of this Court's ruling in *Charles Schwab*, which found waiver where (unlike here) defendants specifically invoked their reliance on counsel, and (iv) proposes an unprecedented rule that would vitiate privilege upon the assertion of literally any claim or defense that implicates state of mind. As this Court has already held ***in this case***, plaintiffs are certainly entitled to know whether a defendant will rely on the advice of counsel, and, ***if so***, it is only fair that the privilege be deemed waived to that extent. Dkt. No. 218 at 2:4-10; *see also* Dkt. No. 262 at 1:25-26 (similarly noting with respect to the instant motion that "privilege can be waived by asserting reliance upon the opinions sought to be withheld"). But that is a decision to be made by each defendant, who may preserve the privilege by foregoing reliance on counsel.

This is no trivial legal issue. Corporate and individual defendants across thousands of civil and criminal matters regularly contend with the fact that their knowledge or intent is an issue in the case, either as an element of a claim or a defense. Yet no court has ever held that their state of mind cannot be explored without a corresponding waiver of privilege if they had consulted a lawyer on the relevant subject. Indeed, courts that have addressed this issue in the due diligence context have declined to find a waiver unless the defendant specifically relies on the advice of counsel for its defense, just as this Court already held as to the LendingClub defendants in connection with their good-faith and "reliance on professionals" defenses.

1    Accordingly, the key question here for waiver purposes is whether the Underwriter

2  Defendants' due diligence defense is based on and relies on communications with, or advice of,

3  counsel.  As the Court held in *Schwab*, and as a matter of fundamental fairness, where advice of

4  counsel is used as a sword, the privilege that otherwise would attach to that communication cannot

5  be invoked during discovery as a shield.  But, as discussed below, that is not the situation here

6  because the Underwriter Defendants expressly and unequivocally are not relying—and will not

7  rely—on the advice of their deal counsel for their due diligence defense.

8    The motion to compel should be denied.

9  **BACKGROUND**

10    On June 15, 2017, Lead Plaintiff filed an Amended Complaint asserting a claim against the

11  Underwriter Defendants for violation of Section 11 of the Securities Act.  Dkt. No. 182 ¶¶ 126-

12  37.[1]  Although Section 11 is sometimes considered a strict liability claim, the statute provides

13  what is commonly referred to as a "due diligence" defense.  That provision allows certain

14  defendants, including underwriters, to avoid liability based on their belief, following a reasonable

15  investigation, that the registration statement at issue did not contain any false or misleading

16  statements.  *See* 15 U.S.C. § 77k(b)(3).  The provision does not premise reasonableness on advice

17  of counsel or even mention counsel.  *Id.*

18    The Underwriter Defendants' Answer filed in this action asserted due diligence as an

19  affirmative defense.  Dkt. No. 188 at 16:25-17:3.  Their Amended Answer similarly asserts the

20  defense.  Dkt. No. 201 at 15:5-25.  The defense reads as follows:

21  **FIRST DEFENSE**

22    Lead Plaintiff and the putative class are not entitled to any recovery from
the Underwriter Defendants because, as contemplated in Section 11(b)(3) of the
23  Securities Act, the Underwriter Defendants exercised due diligence in connection
with their underwriting of the IPO.  The Underwriter Defendants acted at all times
24  in good faith and had no knowledge, were not reckless in not knowing, and in the
exercise of reasonable care could not have known of any alleged misstatements or
25  omissions of material fact in the Offering Documents.  At all relevant times, the
Underwriter Defendants conducted a reasonable and diligent investigation and had
26  reasonable grounds to believe, and did believe at the time the Offering Documents

27  ──────────────

28  [1]   There are no other claims, including Exchange Act claims, against the Underwriter Defendants
in this case.

2

became effective, that the statements in the Offering Documents were true and that there were no omissions of material fact.

The Underwriter Defendants' reasonable and diligent investigation included an extensive review of LendingClub's business and business practices, including a review of numerous LendingClub financial, business, and operational documents; communications with LendingClub employees regarding the business; the use of experts and consultants to advise the Underwriter Defendants in connection with the IPO; and a review of other available information regarding LendingClub's business and operations.  With respect to portions of the Offering Documents purporting to be made on the authority of accounting, financial, or other experts retained to assist in preparing the Offering Documents, the Underwriter Defendants had no reasonable grounds to believe, and did not believe, that such statements were untrue, that there was any omission of material fact necessary to make the statements therein not misleading, or that such part of the Offering Documents did not fairly represent the statement of the expert.[2]

Significantly, the Underwriters Defendants' Amended Answer, including their due diligence defense, does **not** invoke or rely on advice of counsel.  Thus, while Lead Plaintiff accuses the Underwriter Defendants of "scrubbing" the word "counsel" from their affirmative defense, Mot. at 7:3-4, (i) the word never appeared in the original Answer, (ii) the word does not appear in the Amended Answer, and (iii) Lead Plaintiff ignores the fact that myriad **non-legal** professionals (including accountants and auditors, financial experts, and investigative firms) provided information to the underwriters in connection with the IPO and their diligence efforts.

On July 21, 2017, before Lead Plaintiff had even served document requests in this action, the Underwriter Defendants produced approximately 80,000 pages of documents from the files of the two lead underwriters for the syndicate, most of which related to the diligence defense. Declaration of Simona G. Strauss ("Strauss Decl.") ¶ 2.[3]  This production included documents covering all aspects of the due diligence process.  *Id.*  For example, the underwriters provided voluminous materials related to document requests sent from the underwriters to LendingClub for diligence purposes and questions for diligence calls with the company, its agents, and various third

---

[2]   To the extent that the reference to "good faith" in the Underwriter Defendants' Amended Answer, Dkt. No. 201 at 15:8-11, is interpreted to extend beyond an assertion of their statutory due diligence defense, the Underwriter Defendants are willing to strike the reference.  In any event, they are not relying on, and have not placed at issue, any privileged communications in connection with any of their affirmative defenses.

[3]   These documents had been collected and produced in the state court action following an agreement on custodians, date ranges and search terms with the plaintiffs in that action.  *Id.*

UNDERWRITER DEFS.' OPPOSITION TO MOTION TO COMPEL          CASE NO. 3:16-cv-02627-WHA

parties. *Id.* In addition, the underwriters produced the documents and information they received from LendingClub in response to their inquiries. *Id.* That information was produced whether it was sent to the underwriters directly by LendingClub, LendingClub's deal counsel (Fenwick & West), the underwriters' deal counsel (O'Melveny & Myers, or "OMM"), or otherwise. *Id.* The production in this action also includes non-privileged information about OMM's role in the due diligence process. *Id.* For example, the Underwriter Defendants produced their notes from, and discussions about, diligence calls with LendingClub, without regard for whether OMM may have participated in those calls. *Id.* Moreover, LendingClub produced relevant documents from the IPO data room, which had been made available to the underwriters as part of their diligence. *Id.* ¶ 3.[4]

When they produced documents in the state court action, and as is customary in all litigations, the Underwriter Defendants withheld privileged documents. Among these documents are attorney-client privileged communications between the underwriters and OMM about the LendingClub IPO. *Id.* ¶ 4. The underwriters thereafter provided the state court plaintiffs with privilege logs. *Id.* All of the entries in these logs concern privileged communications between the underwriters and their counsel, documents withheld under the work product and/or common interest doctrines, or, in two cases, documents redacted for privacy to remove social security numbers. *Id.* The Underwriter Defendants thereafter provided Lead Plaintiff in this action with a copy of the privilege logs. *Id.* The Underwriter Defendants have also provided Lead Plaintiff with additional information regarding the complete state court production so that Lead Plaintiff could understand what steps were taken to collect and produce documents in that action. *Id.*[5]

On September 7, 2017, Lead Plaintiff submitted a discovery letter to the Court asserting that the LendingClub defendants' (but not the Underwriter Defendants') affirmative defenses

---

[4] The data room was no longer available by the time litigation was filed and thus could not be accessed or produced by the Underwriter Defendants. LendingClub had retained a copy of the data room, however, and produced it, first in the state court action and thereafter in the instant action. *Id.*

[5] Because the Underwriter Defendants have not yet completed their document production in this action, which will include a broader time period, additional custodians, and expanded search terms than in the state court action, they have not yet produced a separate privilege log here.

4

1    asserting "good faith" and "reliance on professionals" had put their privileged communications

2    with counsel at issue, thus requiring the LendingClub defendants either to waive privilege or

3    abandon the defenses.  Dkt. No. 217 at 1-2.  The Court denied Lead Plaintiff's request, holding

4    instead that, "*[t]o the extent* defendants rely upon the advice of counsel at trial or on summary

5    judgment, they must produce the relevant communications upon which they rely."  Dkt. No. 218 at

6    2:4-5 (emphasis added).  While the discovery dispute, and the Court's Order, did not involve the

7    Underwriter Defendants directly, they nonetheless took it to heart.  Specifically, the underwriters

8    elected not to pursue an advice of counsel defense in any context, including as part of their due

9    diligence defense, a decision of which they informed Lead Plaintiff.  *See* Mot., Ex. 7 at 1.

10          On November 16, 2017, despite being informed that the Underwriter Defendants were not

11   relying on advice of counsel for their due diligence defense, Lead Plaintiff filed a discovery letter,

12   this time requesting that "the Court order the Underwriter Defendants to produce all documents

13   withheld or redacted on privilege grounds contrary to the scope of discovery (and waiver)

14   articulated by this Court in [*In re Charles Schwab Corp. Sec. Litig.*, No. 3:08-cv-01510, Order re

15   Waiver of Attorney-Client and Work-Product Privileges (N.D. Cal. Feb. 23, 2010)]."  Dkt. No.

16   261 at 2.  In its order setting the briefing schedule on Lead Plaintiff's motion to compel, the Court

17   noted that the "[u]nderwriter defendants must be mindful that a privilege can be waived by

18   asserting reliance upon the opinions sought to be withheld."  Dkt. No. 262 at 1:25-26.  As

19   discussed further below, the Underwriter Defendants were and remain mindful of that potential

20   waiver and, accordingly, are ***not relying on any withheld opinions by or advice of counsel***.

## LEGAL STANDARDS

22          Courts narrowly construe the circumstances under which they will find an implied waiver

23   of privilege.  Specifically, "an implied waiver of the attorney-client privilege occurs when (1) the

24   party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this

25   affirmative act, the asserting party ***puts the privileged information at issue***; and (3) allowing the

26   privilege would deny the opposing party access to information vital to its defense."  *Home Indem.*

27   *Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (emphasis added).  The

28   "overarching consideration is whether allowing the privilege to protect against disclosure of the

1    information would be 'manifestly unfair' to the opposing party." *Id*.  Indeed, Lead Plaintiff's own

2    case law highlights how narrowly waiver must be construed.  *See United States ex rel. Calilung v.*

3    *Ormat Indus.*, No. 3:14-CV-00325-RCJ-VPC, 2016 WL 4107682, at *5 (D. Nev. Aug. 1, 2016)

4    (noting that "waiver does not entitle [the requesting party] to discover everything defendant knew"

5    and that "[t]he court must impose a waiver no broader than needed to ensure the fairness of the

6    proceedings") (internal quotation marks and citations omitted).  This narrow construal of waiver

7    reflects the importance of the attorney-client privilege.  *See, e.g.*, *United States v. Mett*, 178 F.3d

8    1058, 1062 (9th Cir. 1999) ("'[T]he attorney-client privilege is, perhaps, the most sacred of all

9    legally recognized privileges.'") (quoting *United States v. Bauer,* 132 F.3d 504, 510 (9th Cir.

10   1997)); *Sender v. Franklin Res. Inc.*, No. 11-cv-03828-EMC (SK), 2016 WL 641633, at *1 (N.D.

11   Cal. Feb. 18, 2016) (same).

12          Section 11 of the Securities Act provides a defense to liability where the defendant "had,

13   after reasonable investigation, reasonable grounds to believe and did believe, at the time such part

14   of the registration statement became effective, that the statements therein were true and that there

15   was no omission to state a material fact required to be stated."  15 U.S.C. § 77k(b)(3)(A); *see also*

16   *id.* § 77k(b)(3)(B) (reasonable reliance on portions of registration statement made on authority of

17   or reflecting opinions of an expert).  Again, the statute does not make the reasonableness of an

18   investigation dependent on counsel advice or even mention counsel.  Courts evaluating due

19   diligence defenses thus consider whether the defendant employed a reasonable ***process*** to become

20   familiar with the issuer's business and operations and to learn about the matters covered in the

21   registration statement.  *See, e.g.*, *Weinberger v. Jackson*, No. C-89-2301-CAL, 1990 WL 260676,

22   at *2-3 (N.D. Cal. Oct. 11, 1990); *In re Int'l Rectifier Sec. Litig.*, No. CV91-3357-RMT (BQRx),

23   1997 WL 529600, at *8 (C.D. Cal. Mar. 31, 1997) (setting forth applicable factors to assess

24   reasonableness of underwriters' diligence process).

25

26

27

28

## ARGUMENT

**I.     The Assertion of a Due Diligence Defense to a Section 11 Claim Does Not Waive the Attorney-Client Privilege**

Courts confronted with the precise issue now before the Court hold that the mere assertion of a due diligence defense does not in and of itself constitute a waiver of privilege, but rather that a waiver is possible *if* the defendant chooses to rely on advice of counsel as part of that defense, which is not the case here.

In *In re Refco, Inc. Securities Litigation*, Master File No. 05-Civ.-8626 (S.D.N.Y. Jan. 4, 2010) (Strauss Decl. Ex. 1), for example, underwriters retained law firm Cravath, Swaine to assist with their work, including diligence, in connection with an IPO.  The underwriters thereafter asserted a due diligence defense in response to the Section 11 claim that was filed against them.  Plaintiffs sought "an order either that 1) the Underwriter Defendants have already asserted an 'advice of counsel' defense and have therefore waived any privilege" or that "the Underwriter Defendants are barred from relying on any aspect of the work performed by Cravath in connection with any affirmative defenses to the claims asserted against them in this case."  *Id.* at 1.  The underwriters responded that "they [we]re not interposing an advice of counsel defense to the strict liability claims brought against them under Section[] 11," but rather that "their defense [wa]s for 'due diligence,'" and that this defense was based not "on legal *advice* from counsel, but rather on the fact that Cravath conducted an investigation of Refco on their behalf that was a part of the Underwriter Defendants' due diligence."  *Id.* (emphasis in original).

The *Refco* court agreed with the underwriters and held that there had been no privilege waiver because the underwriters were not relying on an "advice of counsel" defense, but rather on the sufficiency of their investigation, *i.e.*, the due diligence conducted.  *Id.* at 3.  Thus, although one of the underwriters had testified that it had "relied on Cravath as our counsel to ensure that the Registration Statement among other things was accurate," this general reliance was distinct from reliance on specific communications with counsel to establish the due diligence defense.  *Id.* at 2.  The court also noted more broadly that "a client must specifically rely on counsel as relevant to a defense before a subject matter waiver will be found."  *Id.* at 2 n.2.

7

1    The district court in *United Food & Commercial Workers Union v. Chesapeake Energy*

2  *Corp.* similarly held that defendants asserting a due diligence defense to Securities Act claims do

3  not "assert[] reliance on counsel in a manner that has been recognized by courts as waiving the

4  attorney-client privilege."  No. CIV-09-1114-D, 2012 WL 2370637, at *9 (W.D. Okla. June 22,

5  2012).  The court explained that there was "a distinction in securities litigation between the due

6  diligence defense and the reliance [on counsel] defense," in the sense that "the former does not

7  require proof of reliance on counsel."  *Id.*  Indeed, the "due diligence defense does not require that

8  [defendants] rely on communications with counsel to demonstrate that they acted with due

9  diligence in connection with the Offering."  *Id.*  Rather, "they must show that their actions, not

10  those of counsel, demonstrate the reasonableness of their investigation."  *Id.*  Because the

11  defendants in that case (like the Underwriter Defendants here) did not indicate any intent to

12  "introduce evidence reflecting otherwise privileged attorney-client communications to support

13  their contention that they acted with due diligence" or "argue that their conduct was based on

14  information or advice provided by legal counsel," the court found that there was no waiver of the

15  attorney-client privilege.  *Id.*; *see also In re Worldcom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC),

16  2004 WL 936320, at *1 (S.D.N.Y. May 3, 2004) (ordering underwriter defendants to *either*

17  provide discovery concerning the advice of their deal counsel *or* "to avoid such discovery" by

18  advising plaintiff "that they do *not* intend to rely on an advice of counsel defense") (emphasis in

19  original).[6]

20    In addition to ignoring the above cases, which are directly on point, Lead Plaintiff fails to

21  cite a single case—including *Schwab*—in which any court has found an implied waiver simply by

22  asserting an affirmative due diligence defense, without the defendant's explicit reliance on the

23  advice of counsel.[7]  The Underwriter Defendants are aware of none.

---

[6]  *See also In re ML-Lee Acquisition Fund II, L.P. & ML-Lee Acquisition Fund (Ret. Accounts) II, L.P. Sec. Litig.*, 848 F. Supp. 527, 565-66 (D. Del. 1994) (denying motion to compel production of "documents concerning due diligence" unless defendants assert a "reliance on counsel defense" in securities fraud action bringing claims under Investment Company Act).

[7]  The Underwriter Defendants note that the court in *International Rectifier*, a case cited by Lead Plaintiff, granted summary judgment in favor of the underwriters based on the reasonableness

8

## II.     Case Law Outside of the Securities Context Similarly Does Not Support a Finding of Waiver Here

Case law on the doctrine of implied waiver outside of the securities context provides no more support for Lead Plaintiff's position than does case law in the Section 11 due diligence context discussed above.  At the outset, it is worth stepping back to appreciate the staggering impact of the relief that Lead Plaintiff seeks here, as well as its consequences for almost any civil or criminal litigation.  By Lead Plaintiff's reasoning, any due diligence defense to a Section 11 claim would automatically result in a privilege waiver with respect to all communications with deal counsel.  In the context of any other (civil or criminal) action that affords a claim or defense implicating state of mind, a sweeping waiver of privilege would occur to the extent that the party had communicated with a lawyer on a topic related to the subject matter of the litigation that later ensued.  This could include a criminal defendant who asserts a defense based on the absence of knowledge or intent; a patent defendant who asserts a good-faith defense to a claim of willfulness; an insurance company defending against a bad faith refusal to settle claim; and, most relevant here, a defendant in a securities action who asserts ***any*** defense, whether statutory or not, based on its knowledge or belief.

This is simply not the law.  As the Ninth Circuit has made clear, while the attorney-client privilege "may not be used both as a sword and a shield," implied waiver is possible only if a party relies on communications from counsel.  *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1042-43 (9th Cir. 2009)).  In *Kaiser*, plaintiff moved to compel the production of privileged communications on the ground that defendant had argued at trial that it had declined to bring a product to market because of its concern over a potentially damaging appellate decision.  *Id.* at 1042.  The court denied plaintiff's motion, noting that, "***[i]f . . . [this] defense was based on the advice of [defendant's] attorneys***, [plaintiff] should have had access to those otherwise privileged attorney-client communications."  *Id.* at 1042-43 (emphasis added).  But because defendant "did not actually rely on an advice-of-counsel defense at trial," these

---

of their due diligence process, as judged by certain enumerated factors, none of which related to advice of counsel or communications with counsel.  1997 WL 529600, at *8.

1   communications did not become discoverable just because they conceivably could shed light on

2   defendant's state of mind with respect to the actions it took.  *Id.* at 1043.

3        Implied waiver is thus limited to situations where advice of counsel is necessarily put at

4   issue.  In *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992), for example, a defendant

5   argued that it had made certain investments based on tax considerations and specifically "'in

6   reliance upon the advice of our tax counsel.'"  *Id*. at 1162.  The Ninth Circuit held that, "to the

7   extent that [the defendant] claims that its tax position is reasonable because it was based on advice

8   of counsel, [the defendant] puts at issue the tax advice it received."  *Id*. at 1162-63.  Here, by

9   contrast, the Underwriter Defendants have not claimed that their due diligence process was

10  reasonable because it was based on advice of counsel.

11       Many other courts have similarly held that only the direct reliance on advice of counsel

12  results in an implied waiver of privilege.  The following represents but a small sampling of such

13  cases from the Ninth Circuit and this district:

14  - *Home Indem.*, 43 F.3d at 1327 (denying motion to compel production of privileged
      communications in connection with claim regarding "reasonableness" of settlement in
15    bad-faith refusal to settle action, where insurer "did prove the reasonableness of the
      settlement amount without relying on privileged communications," even though party
16    had received (but did not rely on) advice of counsel as to whether settlement was
      reasonable);

17  - *AT&T Corp. v. Microsoft Corp.*, No. 02-0164 MHP (JL), 2003 WL 21212614, at *7
18    (N.D. Cal. Apr. 18, 2003) ("[W]aiver only occurs when the party asserting advice of
      counsel has made the defense an issue in the case . . . . Only the alleged infringer's actual
19    reliance on advice of counsel [in patent matter] generates the defense and the
      accompanying waiver of privilege.") (citing *Rhone-Poulenc Rorer Inc. v. Home Indem.
20    Co.*, 32 F.3d 851, 863 (3d Cir. 1994));

21  - *Brezoczky v. Domtar Corp.*, No. 16-cv-04995-EJD (HRL), 2017 WL 3492008, at *2-3
      (N.D. Cal. Aug. 15, 2017) (holding that because "Plaintiff did not place any
22    communications with her counsel at issue" and "does not indicate anywhere that she
      intends to rely on these communications," "Plaintiff is not using the privilege as a sword
23    here; she may use it as a shield.") (citing *Rhone-Poulenc*, 32 F.3d at 863);

24  - *Genentech, Inc. v. Insmed Inc.*, 236 F.R.D. 466, 469 (N.D. Cal. 2006) (denying motion to
      compel production of privileged communications regarding prior art after witness denied
25    knowledge of prior art in connection with inequitable conduct claim in patent case, and
      stating that witness's testimony denying knowledge "does not waive the attorney-client
26    privilege because he did not put any attorney-client communication in issue nor did he do
      more than merely deny intent") (citing *Rhone-Poulenc*, 32 F.3d at 863);

27  - *U.S. Ethernet Innovations LLC v. Acer Inc.*, No. C 10-3724 CW (LB), 2014 WL
28    3570749, at *2-3 (N.D. Cal. July 17, 2014) (holding that testimony merely describing

10

1  due diligence process in connection with patent acquisition did not constitute implied
2  waiver as to underlying attorney communications during diligence).

3        Courts in other jurisdictions also have consistently found that merely asserting a claim or

4  affirmative defense involving the party's state of mind is insufficient to result in a privilege

5  waiver.  For example, in *Rhone-Poulenc*, defendant insurers argued that, by bringing a coverage

6  action, plaintiff insureds had waived privilege as to pre-coverage legal advice that could show that

7  they had improperly purchased coverage with the intent of pursuing insurance claims.  32 F.3d at

8  855, 861.  The court rejected this position, noting that legal "[a]dvice is not in issue merely

9  because it is relevant, and does not necessarily become in issue merely because the attorney's

10  advice might affect the client's state of mind in a relevant manner."  *Id.* at 863.  Rather, "[t]he

11  advice of counsel is placed in issue where the client asserts a claim or defense, and ***attempts to***

12  ***prove that claim or defense by disclosing or describing an attorney client communication***."  *Id.*

13  (emphasis added); *accord, e.g.*, *Davine v. Golub Corp.*, No. 3:14-30136-MGM, 2017 WL 517749,

14  at *6-7 (D. Mass. Feb. 8, 2017) (stating, in case where defendants asserted affirmative defense that

15  they acted in good faith and "in conformity with and reliance upon . . . advice of counsel," that

16  defendants "have not placed counsel's advice at issue by an affirmative act.  They have asserted a

17  defense of good faith, but they have not, at least thus far, invoked advice of counsel as a basis for

18  that defense."); *In re Method of Processing Ethanol Byproducts & Related Subsystems ('858)*

19  *Patent Litig.*, No. 1:10-ml-02181-LJM-DML, 2014 WL 2938183, at *3 (S.D. Ind. June 30, 2014)

20  ("Unless and until [plaintiff] of its own volition asserts that the disclosures (and alleged omissions

21  from disclosure) [to the patent office] . . . were made in good faith because [plaintiff] was

22  following its lawyers' advice, there is no foundation for an implied waiver of the attorney-client

23  privilege" even if attorney provided advice regarding appropriate disclosures); *Arkwright Mut. Ins.*

24  *Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 90 Civ. 7811 (AGS), 1994 WL 510043, at

25  *12 (S.D.N.Y. Sept. 16, 1994) ("Even where a party's state of knowledge is particularly at issue,

26  such as in a case involving claims of laches or justifiable reliance, waiver of the privilege should

27

28

11

1   not be implied because the relevant question is not what legal advice was given or what

2   information was conveyed to counsel, but what facts the party knew and when.").[8]

3          None of the cases cited by Lead Plaintiff is to the contrary.  In those cases, either the party

4   resisting production was expressly or necessarily relying on communications with counsel, or the

5   court indicated that it would find a waiver *if* the party chose to assert an advice of counsel defense.

6   *See, e.g.*, *Calilung*, 2016 WL 4107682, at *4 (in *qui tam* action, defendant asserted "good faith

7   defenses . . . with respect to [its] understanding and compliance with the law" that necessarily

8   depended on information provided by counsel); *Regents of Univ. of Cal. v. Micro Therapeutics,*

9   *Inc.*, No. C 03-05669 JW (RS), 2007 WL 2069946, at *4 (N.D. Cal. July 13, 2007) (plaintiff relied

10  on counsel's determination that certain prior art was not publicly available in defending against

11  inequitable conduct claim in patent action); *Olvera v. Cty. of Sacramento*, No. CIV. 10–550 WBS

12  CKD, 2012 WL 273158, at *4 (E.D. Cal. Jan. 30, 2012) (defendants asserted good-faith defense to

13  civil rights action based on advice provided by counsel); *In re Broadcom Corp. Sec. Litig.*, No. SA

14  CV 01275GLTMLGX, 2005 WL 1403516, at *2 (C.D. Cal. Feb. 10, 2005) (finding waiver where

15  Exchange Act defendants intended to testify that "they relied on their excellent attorney to do a

16  good job examining all the documents to tell them if anything was wrong, and their lawyers never

17  said anything was wrong," because "proposed testimony unequivocally puts in issue reliance upon

18  counsel as a defense");[9] *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2016 WL

19  4191612, at *5-6 (N.D. Cal. Aug. 9, 2016) (stating that certain of defendants' subjective

20  statements "rely in significant part on legal advice," and holding that "*if* defendants choose to rely

---

8   As the *Arkwright* court noted, it is unnecessary to invade the attorney-client privilege to
determine state of mind, as "the discovering party should simply inquire directly of the other
party as to its knowledge of relevant facts, which must be disclosed." *Id.*; *see also id.* at *8
(rejecting contention that "privileged communications containing facts are fair game in
discovery" when discovering party can determine what facts were known through other
means).

9   *But see Williams v. Sprint/United Mgmt. Co.*, 464 F. Supp. 2d 1100, 1114, 1116 (D. Kan.
2006) (rejecting waiver where, "[u]nlike *In re Broadcom Corp.* . . . the testimony of these
witnesses does not indicate that defendant intends to use advice of counsel to justify any
conduct on its part" and finding that "the attorney-client privilege ha[d] not been waived by
defendant's reliance on the due diligence review conducted by human resources" in connection
with good-faith defense to discrimination claim, notwithstanding legal involvement in some
due diligence).

1   on a subjective belief . . . that the record shows directly implicate attorney-client advice,

2   defendants will have effectuated an at-issue waiver") (emphasis in original); *Mushroom Assocs. v.*

3   *Monterey Mushrooms, Inc.*, No. C-91-1092 TEH (PJH), 1992 WL 442892, at *3 (N.D. Cal. May

4   19, 1992) (finding waiver where patent infringement defendants expressly stated their intention to

5   "rely on advice of counsel as a defense to willful infringement").[10]

6          Here, the Underwriter Defendants have not asserted an advice of counsel defense and are

7   not relying on any privileged communications for their defense.  They do not contend that their

8   due diligence investigation was reasonable because their deal counsel told them it was reasonable

9   or otherwise provided legal advice during the process; they do not argue that the Registration

10  Statement's disclosure with respect to Cirrix was adequate because OMM provided them with an

11  analysis of the Cirrix relationship and advised them that additional disclosure was unnecessary;

12  they do not rely on *any* opinions by or communications with their lawyers.  Rather, the

13  underwriters have asserted a statutory due diligence defense that focuses on the reasonableness of

14  their overall investigation, and they base that defense solely on non-privileged information

15  regarding the diligence *process*.  None of Lead Plaintiff's cases supports an implied privilege

16  waiver under these circumstances.

17  **III.   This Court's Decision in *Schwab* Does Not Compel a Finding of Waiver**

18         Lead Plaintiff relies heavily on this Court's decision in *Schwab*, quoting the statement that,

19  "[w]hen a defendant asserts the affirmative defense [of due diligence], he places in issue his

20  subjective state of mind as to the contested disclosures at the time in question and therefore *all*

21  information, whether privileged or not, received by him on those matters during or before the time

22  in question are discoverable."  Mot. at 5:15-17 (quoting *In re Charles Schwab Corp. Sec. Litig.*,

23  No. 3:08-cv-01510, Order re Waiver of Attorney-Client and Work-Product Privileges (N.D. Cal.

24  Feb. 23, 2010) at 1) (emphasis in original).

25

---

26  [10]  Lead Plaintiff cites three cases holding that "a *successful* due diligence defense negates
      scienter for a § 10(b) claim against the same defendant."  Mot. at 6:4-5 (emphasis in original).

27  The fact that a successful due diligence defense to a Securities Act claim can defeat scienter on
      an Exchange Act claim has nothing to do with whether the mere ***assertion*** of a diligence

28  defense waives privilege in connection with a Section 11 claim.

Lead Plaintiff ignores the factual context of the *Schwab* decision.  In *Schwab*, the individual defendants asserting a due diligence defense had ***expressly relied on the advice of counsel***, stating in their interrogatory responses that they "'knew that in-house and outside counsel drafted or reviewed the registration statements and prospectuses, together with auditors, and that these persons had accurately and appropriately prepared them.'"  Strauss Decl. ¶ 6, Ex. 2 (Pls.' Mem. in Support of Motion to Compel, Case No. 08-cv-01510-WHA (N.D. Cal. Jan. 25, 2010)) at 8:13-18; *id.* at 8:20-22 ("In addition, defendants tie their overarching 'reasonable care' affirmative defense . . . to attorney advice."); *see also id.* at Exhibit D, 3:21-23, 7:23-25.[11]  In addition, although the facts are largely redacted in the memorandum, the plaintiffs argued that the *Schwab* defendants also had selectively waived privilege by revealing advice of counsel to the SEC.  *Id*. at 2:11-4:13.  The *Schwab* plaintiffs consequently argued that "defendants are asserting that their registration statements and prospectuses reflect and are the product of attorney advice."  *Id.* at 8:17-20.  During argument in connection with the discovery dispute, the parties and the Court focused on whether defendants could simultaneously assert that they were "relying on the fact that counsel had reviewed the documents" while withholding privileged communications.  Strauss Decl. ¶ 8, Ex. 4 (Jan. 21, 2010 hearing transcript) at 83:2-6.  By contrast, the Underwriter Defendants here have offered no such defense and are not relying on any advice received from counsel, whether regarding the registration statement or otherwise.

The Court's finding of an implied waiver based on the *Schwab* defendants' assertion of an advice of counsel defense is consistent with controlling Ninth Circuit case law as set forth above. *See, e.g.*, *Kaiser*, 552 F.3d at 1042 (no waiver absent actual reliance on advice of counsel in proving defense); *Home Indem.*, 43 F.3d at 1327 (same).  It is also consistent with the Court's ruling ***in this case*** with respect to Lead Plaintiff's substantially similar argument as to the LendingClub defendants' "good faith" and "reliance on professionals" defenses.  Specifically, the

---

[11]  *See also* Strauss Decl. ¶ 7, Ex. 3 (reply brief) at 4:13-17 (plaintiffs arguing: "[D]efendants sought, received, and relied on the attorney advice implicit in the way that 'counsel drafted or reviewed the registration statement and prospectuses.'  What was the attorneys' advice?  Look to the registration statements and prospectuses: they were prepared as they were because counsel said this was the lawful way to prepare them.  We signed off on those because we accepted counsel's advice.").

1   Court did not require the LendingClub defendants to either abandon the defenses or waive

2   privilege.  Rather, it ordered them to state by a date certain whether they intended to "rely upon

3   the advice of counsel at trial or summary judgment" and, "to the extent" they decided to do so, to

4   "produce the relevant communications upon which they rely."  Dkt. No. 218 at 2:4-10.  That

5   decision, which reflects prevailing case law and common sense, should apply to this dispute as

6   well.  Indeed, in the order setting the briefing and hearing schedule on this very motion, the Court

7   reiterated that "privilege can be waived *by asserting reliance upon the opinions sought to be*

8   *withheld*."  Dkt. No. 261 at 1:25-26 (emphasis added).  Because the Underwriter Defendants are

9   *not* relying on the advice or opinions of their counsel, there is no basis on which to deviate from

10   the Court's previous guidance in this action.

11   **IV.    The Court Should Reject Lead Plaintiff's Request That Any Privilege Waiver Would**
         **Extent to Subjects That Are Unrelated to the Substantive Issues in This Case**

12

13            As discussed above, there was no waiver of privilege here because the Underwriter

14   Defendants are not relying on advice of counsel.[12]  But even if the Court finds any waiver, that

15   waiver should be narrowly construed.  Indeed, Lead Plaintiff overreaches in its request that the

16   Court order each Underwriter Defendant to either withdraw its First Defense or immediately

17   produce *all* documents that it received from counsel or sent to counsel "relating to the

18   LendingClub Registration Statement," without regard to the subject matter of the privileged

19   communication.  Mot. at 8-9.  The Registration Statement consisted of six separate SEC filings

20   totaling approximately 900 pages, plus well over 1,000 additional pages of combined exhibits to

21   these filings, on virtually every aspect of LendingClub's business.  Lead Plaintiff's claim that the

22   Registration Statement contained certain false and misleading statements is extremely limited

23   relative to the unchallenged portions of the Registration Statement.

24

25

---

26   [12]   The Underwriter Defendants were not planning to support their due diligence defense with any
       communications with counsel.  To the extent there is any finding of waiver of those
27       communications, however, the Underwriter Defendants would then be free to present those
         communications to the Court in connection with a summary judgment motion with respect to
28       their due diligence defense.

UNDERWRITER DEFS.' OPPOSITION TO MOTION TO COMPEL          CASE NO. 3:16-cv-02627-WHA

The Underwriter Defendants respectfully submit that compelling production of privileged communications touching on **any** aspect of the registration statement, without regard to whether the communication is related to a statement that is allegedly false or misleading, would be improper.  *See, e.g.*, *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) ("[T]he court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it. Because a waiver is required so as to be fair to the opposing side, the rationale only supports a waiver broad enough to serve that purpose.  Courts, including ours, that have imposed waivers under the fairness principle have therefore closely tailored the scope of the waiver to the needs of the opposing party in litigating the claim in question."); *Chevron*, 974 F.2d at 1162 (stating that subject matter waiver extends "'only as to communications about the matter actually disclosed'") (quoting *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981)); *First Nat'l Bank v. Warner Bros. Entm't*, No. CV 09-08887-GAF(VBKx), 2011 WL 13213920, at *2 (C.D. Cal. June 28, 2011) ("Under both California and federal law, waivers of the privilege are to be narrowly construed."); *Calilung*, 2016 WL 4107682, at *5 ("The court must impose a waiver no broader than needed to ensure the fairness of the proceedings."); *Aclara Biosciences, Inc. v. Caliper Techs. Corp.*, No. C99–1968 CRB (JCS), 2001 WL 777083, at *5 (N.D. Cal. June 16, 2000) (noting that "the scope of the subject matter of a waiver of the privilege should be construed narrowly" and only to the extent "necessary to prevent unfairness to the party seeking production"); *IGT v. Alliance Gaming Corp.*, No. 2:04–cv–1676–RCJ–RJJ, 2007 WL 2429147, at *3 (D. Nev. Aug. 20, 2007) (noting that "the Ninth Circuit construes subject matter waivers narrowly" to encompass only the subjects at issue, and deciding that defendant that publicly filed privileged document waived privilege only as to "[plaintiff's] specific allegations regarding patent invalidity" to the extent they were the "subject matter in the waived documents"); *REC Software USA, Inc. v. Bamboo Sols. Corp.*, No. C11–0554JLR, 2013 WL 364716, at *5 (W.D. Wash. Jan. 30, 2013) (noting that "the Ninth Circuit's waiver doctrine is narrow and only covers the precise subject matter of the disclosure for which the court found privilege to have been waived" and that finding a broad waiver encompassing unrelated areas would "run afoul of the court's duty to narrowly tailor any subject matter waiver"); *Starsight Telecast, Inc. v. Gemstar Dev. Corp.*, 158

16

F.R.D. 650, 655 (N.D. Cal. 1994) ("The waiver exception has been narrowly construed, and has been applied if facts relevant to a particular, narrow subject matter have been disclosed in circumstances in which it would be unfair to deny the other party an opportunity to discover other relevant facts with respect to that subject matter.").

## **<u>CONCLUSION</u>**

For the reasons set forth above, the Underwriter Defendants respectfully submit that Lead Plaintiff's motion should be denied in its entirety.[13]

Dated: December 1, 2017                                       SIMPSON THACHER & BARTLETT LLP

By:   /s/ Simona G. Strauss
      SIMONA G. STRAUSS

*Attorneys for the Underwriter Defendants*

---

[13] The Underwriter Defendants respectfully note that, given the significance of this issue, should the Court find any privilege waiver here, they will likely seek relief from that ruling in the form of an interlocutory appeal or an extraordinary writ.

UNDERWRITER DEFS.' OPPOSITION TO MOTION TO COMPEL          CASE NO. 3:16-CV-02627-WHA