QUINN EMANUEL URQUHART & SULLIVAN, LLP
Diane M. Doolittle (Bar No. 142046)
dianedoolittle@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801–5000
Facsimile:     (650) 801–5100

John Potter (Bar No. 165843)
johnpotter@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:     (415) 875–6600
Facsimile:     (415) 875–6700

David M. Grable (Bar No. 237765)
davegrable@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443–3000
Facsimile:     (213) 443–3100

*Attorneys for Defendants LendingClub Corporation,
Daniel Ciporin, Jeffrey Crowe, Rebecca Lynn,
John Mack, Mary Meeker, John C. (Hans) Morris,
Lawrence Summers, and Simon Williams*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE LENDINGCLUB CORPORATION SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 3:16–CV–02627–WHA<br><br><u>CLASS ACTION</u><br><br>**DEFENDANT LENDINGCLUB'S RESPONSE TO LEAD PLAINTIFF'S NOTICE, DKT. NO. 292** |

1    Lead Plaintiff's Notice to the Court (Dkt. 292)—which purports to challenge
LendingClub's assertion of privilege over an email exchange between LendingClub's outside
counsel and its general counsel—is rife with inaccuracies.  Exhibit 19 (Dkt. 289-1) is privileged
on its face, and LendingClub's assertion of privilege was timely and proper.  The Court should
reject Lead Plaintiff's Notice and affirm that Exhibit 19 be removed from the Court file and
returned to LendingClub in accordance with Federal Rule of Civil Procedure 26(b)(5)(B) and
Federal Rule of Evidence 502.

### A.   Exhibit 19 Is Privileged On Its Face

Exhibit 19 is a communication between LendingClub's then-General Counsel and its outside counsel.  "Communications between a client and its outside counsel are presumed to be made for the purpose of obtaining legal advice."  *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1073 (N.D. Cal. 2002) (citing *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996)); *see also AT&T Corp. v. Microsoft Corp.*, No. 02-0164 MHP (JL), 2003 WL 21212614, at *4 (N.D. Cal. Apr. 18, 2003) (citing *Chevron* and *Chen*) (same); *Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*, No. C08-02581 JF (HRL), 2010 WL 289858, at *4 (N.D. Cal. Jan. 15, 2010) (citing *Chevron* and holding plaintiff was unable to "overcome the presumptive privilege" that attaches to documents that have the purpose of "furthering communications with outside counsel").

Lead Plaintiff claims the document is not privileged because it is "just a transmittal email." (Dkt. 292 at 1.)  Not so.  As the face of the email unambiguously shows, Exhibit 19 consists *entirely* of emails to and from attorneys for LendingClub.  It includes an email from Jeff Vetter, a partner at Fenwick & West, LLP, providing legal advice to Jason Altieri, LendingClub's General Counsel at the time, concerning the content of a draft IPO-related presentation.  Counsel for Lead Plaintiff is well aware that Fenwick was outside counsel to LendingClub, including because Fenwick represented LendingClub previously *in this very case*.  (*See* Dkt. 179.)[1]  The chain

---

[1]   Given the obvious indicia of privilege, this unnecessary filing could have been avoided had Lead Plaintiff's counsel complied with its ethical obligation to alert opposing counsel of a

–1–
**DEFENDANT LENDINGCLUB'S RESPONSE TO LEAD PLAINTIFF'S NOTICE, DKT. NO. 292**
3:16–CV–02627–WHA

1  continues when Mr. Altieri then forwards Mr. Vetter's email containing legal advice and his own
2  additional legal advice to Renaud Laplanche, the then-CEO of the Company, and Mr. Laplanche
3  responds.  This communication consists entirely of the provision of legal advice by two different
4  attorneys acting in their capacity as such.  The communication was made in confidence, without
5  the presence of third parties, and the client (LendingClub) has not authorized the disclosure of the
6  communication.  It indisputably satisfies the requirements of privilege.  *See AT&T Corp.*, 2003
7  WL 21212614, at *3 (noting that privilege attaches: "1) where legal advice of any kind is sought;
8  2) from a legal adviser in his capacity as such; 3) the communications relating to that purpose; 4)
9  made in confidence; 5) by the client; 6) are at his instance permanently protected; 7) from
10 disclosure by himself or by the legal adviser; 8) unless the protection be waived.").

11      Despite this clear showing of privilege, which LendingClub fully articulated to Lead
12 Plaintiff, Lead Plaintiff contends LendingClub "has yet to identify any legal advice that was
13 sought or conveyed."  (Dkt. 292 at 1.)  That is false.  Lead Plaintiff goes on to say LendingClub
14 "has refused to specify the portions of the document it claims are privileged."  (*Id.*)  That too is
15 false.  LendingClub clawed back the document in its entirety, making clear the *entire*
16 communication is privileged.

17      **B.    Inadvertent Production of a Document Does Not Create Waiver**

18      Unable to refute the obvious application of privilege to the document, Lead Plaintiff argues
19 that somehow the document is no longer privileged because it was produced.  But there was no
20 waiver or intentional production here, and Lead Plaintiff offers no evidence to the contrary.  As
21 LendingClub explained to Lead Plaintiff already, LendingClub first became aware of the
22 document's inadvertent production only when Lead Plaintiff filed it Monday evening, without any
23 prior notice to LendingClub.  (*See* Dkt. 292-1.)  LendingClub immediately took action, notifying
24 Lead Plaintiff through a claw-back letter it sent within *hours* of the document being filed.  (*Id.*)

---

potentially inadvertent production of privileged material before filing it in support of a
Motion.  *See e.g.*, *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001) (noting that, "[d]espite [counsel's] roles as officers of the court, they failed to inform the court of their possession of the privileged materials until eight months after the first acquisition.").

This is timely as a matter of law.  *See, e.g.*, *Njenga v. San Mateo Cty. Superintendent of Sch.*, No. C-08-04019 EDL, 2010 WL 1261493, at *17 n. 2 (N.D. Cal. Mar. 30, 2010) (finding defendants "took prompt and reasonable steps to rectify the error by sending a letter *one week* after it discovered the inadvertent disclosure when the exhibit was filed in Plaintiff's opposition.") (emphasis added); *Mformation Techs., Inc. v. Research in Motion Ltd.*, No. C08-04990 JW (HRL), 2010 WL 3154441, at *2 (N.D. Cal. Aug. 9, 2010) (finding no waiver where documents "were recalled within *9 days* after [plaintiff] discovered that they had been inadvertently produced.") (emphasis added).

Lead Plaintiff implies that simply because the document was produced (along with half a million pages of other documents LendingClub has produced), the production must have been "knowing" and thus "advertent."  (Dkt. 292 at 1.)  That argument is frivolous.  As this Court is well aware, the document review and production process in a large and complex case where hundreds of thousands of pages have been produced is not perfect.  The mere fact documents were reviewed does not and cannot mean nothing in the production could have been produced inadvertently.  *See e.g. Datel Holdings Ltd. v. Microsoft Corp.*, No. C-09-05535 EDL, 2011 WL 866993, at *4 (N.D. Cal. Mar. 11, 2011) ("Inadvertent production of a relatively low proportion of documents in a large production under a short timetable due to mistake should be and usually is excused."); *Guidiville Rancheria of California v. United States*, No. 12-CV-1326 YGR, 2013 WL 6571945, at *4 (N.D. Cal. Dec. 13, 2013) (finding that "the Production Disclosure of the document as part of the administrative record did not operate as a waiver of the attorney-client privilege."); *United States v. Liew*, No. CR 11-00573-1 JSW, 2014 WL 12703794, at *2 (N.D. Cal. Jan. 31, 2014) (finding that inadvertently produced emails "are privileged and that the privilege has not been waived").

Lead Plaintiff's sole cited authority confirms this.  In *Transonic Sys. v. Non-Invasive Med. Tech.*, 192 F.R.D. 710 (D. Utah 2000), the relevant production consisted of just 451 pages of documents, and the court emphasized it was "not a document inadvertently included in vast materials." *Id.* at *711, *715.  Here, the document was part of a production of 312,733 pages of documents.  Moreover, *Transonic* pre-dates the current Federal Rule of Evidence 502, which notes

that "[t]he rule does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake. But the rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently." Fed. R. Evid. 502, advisory comm. n. to subdivision (b) (2007). This is *precisely* what LendingClub did.

The law is clear and Lead Plaintiff's baseless argument that this document was not inadvertently produced—simply because it was produced at all—should be rejected. Indeed, the Protective Order signed by this Court expressly provides that "the inadvertent production of Disclosure or Discovery Material covered by any applicable privilege or work-product protection shall not be deemed to waive such privilege or protection." (Dkt. 191, ¶ 11.) Lead Plaintiff's failure to heed the express terms of the Court's order is the only troubling conduct here.

### Conclusion

LendingClub respectfully requests that the Court deny Lead Plaintiff's "Notice" seeking to overrule LendingClub's assertion of privilege over Exhibit 19 to Lead Plaintiff's Reply in Support of Motion to Compel Production of Withheld Documents from the Underwriter Defendants (Dkt. 289-1) and that it be stricken from the docket.

DATED: December 7, 2017                    Respectfully Submitted,

                                                          QUINN EMANUEL URQUHART &
                                                          SULLIVAN, LLP

                                                          By: /s/ Joseph C. Sarles
                                                               JOSEPH C. SARLES

                                                        Attorneys for Defendants LendingClub Corporation,
                                                        Daniel Ciporin, Jeffrey Crowe, Rebecca Lynn,
                                                        John Mack, Mary Meeker, John C. (Hans) Morris,
                                                        Lawrence Summers, and Simon Williams

**SIGNATURE ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from Joseph C. Sarles.

                                 */s/*  Victoria Parker