ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (168593)
JASON A. FORGE (181542)
SCOTT H. SAHAM (188355)
RACHEL L. JENSEN (211456)
AUSTIN P. BRANE (286227)
MICHAEL ALBERT (301120)
CARISSA J. DOLAN (303887)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
jforge@rgrdlaw.com
scotts@rgrdlaw.com
rachelj@rgrdlaw.com
abrane@rgrdlaw.com
malbert@rgrdlaw.com
cdolan@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LENDINGCLUB SECURITIES LITIGATION | Case No. 3:16-cv-02627-WHA |
| | CLASS ACTION |
| This Document Relates To: | LEAD PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| ALL ACTIONS. | |
| | DATE:     March 29, 2018 |
| | TIME:      8:00 a.m. |
| | CTRM:     12, 19th Floor |
| | JUDGE:    Honorable William Alsup |

1372647_2

1
2

## TABLE OF CONTENTS

**Page**

3    NOTICE OF MOTION ........................................................................................................1

4    STATEMENT OF ISSUES TO BE DECIDED ................................................................2

5    MEMORANDUM OF POINTS AND AUTHORITIES ...................................................2

6    I.       INTRODUCTION ..................................................................................................2

7    II.      RELEVANT BACKGROUND .............................................................................3

8             A.      History of the Litigation.............................................................................3

9             B.      The Parties' Mediation Efforts and Lead Plaintiff's Cost-Benefit Analysis
                     of the Settlement ........................................................................................5

10            C.      The Proposed Settlement ............................................................................6

11            D.      Proposed Settlement Schedule ...................................................................8

12   III.     APPLICABLE LEGAL STANDARDS ................................................................9

13
14   IV.      THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL .................10

              A.      The Settlement Is Presumptively Fair ...................................................10
15
                     1.      The Settlement Is Based on Judge Spero's Mediator Proposal .................10
16
                     2.      The Settlement Was Reached Only After Discovery ..............................11
17
                     3.      Lead Plaintiff and Lead Counsel Believe that This Result Is in the
18                           Best Interests of the Class ........................................................11

19            B.      The Settlement Is Substantively Fair ...................................................13

20            C.      The Notice Program Satisfies Rule 23(e), Due Process, and the PSLRA .............16

21            D.      Proposed Plan of Allocation ...................................................................18

22            E.      Attorneys' Fees, Litigation Expenses, and Administrative Fees ..........................19

23   V.       CONCLUSION ....................................................................................................20

24
25
26
27
28

1372647_2

LEAD PLAINTIFF'S NOTICE OF MOTION & UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AND MEMO OF POINTS & AUTHORITIES - 3:16-cv-02627-WHA        - i -

1

**TABLE OF AUTHORITIES**

2

**Page**

3
**CASES**

4
5
*Booth v. Strategic Realty Tr., Inc.*,
   No. 13-cv-04921-JST, 2015 WL 3957746
   (N.D. Cal. June 28, 2015) ...............................................................................................14

6
7
*Ching v. Siemens Indus., Inc.*,
   No. C 11-4838 MEJ, 2013 WL 6200190
   (N.D. Cal. Nov. 27, 2013) ...............................................................................................17

8
9
*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ...........................................................................................14

10
11
*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .....................................................................................9, 18

12
13
*Grant v. Capital Mgmt. Servs. L.P.*,
   No. 10-cv-2471-WQH (BGS), 2013 WL 6499698
   (S.D. Cal. Dec. 11, 2013) ................................................................................................13

14
15
*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .....................................................................................9, 10

16
17
*Hart v. Colvin*,
   No. 15-cv-00623-JST, 2016 U.S. Dist. LEXIS 155799
   (N.D. Cal. Nov. 9, 2016)..............................................................................................9, 10

18
19
*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...........................................................................................14

20
21
*In re HP Sec. Litig.*,
   No. 3:12-cv-05980-CRB, 2015 WL 4477936
   (N.D. Cal. July 20, 2015) ................................................................................................16

22
23
*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015).....................................................................................15

24
*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010) .............................................................................................8

25
26
*In re NVIDIA Corp. Derivative Litig.*,
   No. C-06-06110-SBA (JCS), 2008 WL 5382544
   (N.D. Cal. Dec. 22, 2008) ...............................................................................................13

27
28
*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................................13, 14

1

2                                                                                              **Page**

3

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ....................................................................9

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   MDL No. 551, 1988 WL 158947
   (W.D. Wash. July 28, 1988) ..................................................................................15

*In re Zynga Inc. Sec. Litig.*,
   No. 12-cv-04007-JSC, 2015 WL 6471171
   (N.D. Cal. Oct. 27, 2015)........................................................................10, 13, 14, 15

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
   No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742
   (D. Nev. Oct. 19, 2012)..........................................................................................15

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ..................................................................................16

*Linney v. Cellular Alaska P'ship*,
   No. C-96-3008 DLJ, 1997 WL 450064
   (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ...........................11

*Lo v. Oxnard European Motors, LLC*,
   No. 11-cv-1009 JLS (MDD), 2011 WL 6300050
   (S.D. Cal. Dec. 15, 2011)........................................................................................15

*Luna v. Marvell Tech. Group, Ltd.*,
   No. 3:15-ev-05447-WFLA, ECF No. 222
   (N.D. Cal. Dec. 21, 2017) .........................................................................................8

*McPhail v. First Command Fin. Planning, Inc.*,
   No. 05cv179-IEG-JMA, 2009 WL 839841
   (S.D. Cal. Mar. 30, 2009)........................................................................................14

*Orvis v. Spokane Cty.*,
   281 F.R.D. 469 (E.D. Wash. 2012).........................................................................15

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ..................................................................................16

*Satchell v. Fed. Express Corp.*,
   No. C03-cv-2659 SI, 2007 WL 1114010
   (N.D. Cal. Apr. 13, 2007) ........................................................................................10

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2
**Page**

3

*Staton v. Boeing Co.*,
4
    327 F.3d 938 (9th Cir. 2003) ...................................................................................9

5
*Weeks v. Kellogg Co.*,
6
    No. CV 09-08102 (MMM), 2011 U.S. Dist. LEXIS 155472
    (C.D. Cal. Nov. 23, 2011)........................................................................................15

7
*Young v. Polo Retail*, *LLC*,
8
    No. C-02-4546 VRW, 2006 WL 3050861
    (N.D. Cal. Oct. 25, 2006)........................................................................................10

9

**STATUTES, RULES AND REGULATIONS**
10

11
15 U.S.C.
    §78u-4(a)(7)(A)-(F) ................................................................................................17

12
Federal Rules of Civil Procedure
13
    Rule 23 ..............................................................................................................16, 17
    Rule 23(c)(2)(B)........................................................................................................16
14
    Rule 23(e) ............................................................................................................9, 16
    Rule 23(e)(2) ..............................................................................................................3

15
California Rules of Court
16
    Rule 3.770 ................................................................................................................17

17

**SECONDARY AUTHORITIES**
18

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
19
    Cornerstone Research 2017
    *Securities Class Action Settlements: 2016 Review and Analysis* .............................14

20
*Manual for Complex Litigation* (4th ed. 2004)
21
    §21.63 .......................................................................................................................9

22

23

24

25

26

27

28

# NOTICE OF MOTION

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that, on March 29, 2018 at 8:00 a.m., or as soon as it may be heard in the Courtroom of the Honorable William Alsup, United States District Judge at the United States District Court for the Northern District of California, Courtroom 12, 19th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Lead Plaintiff Water and Power Employees' Retirement, Disability and Death Plan of the City of Los Angeles ("WPERP" or "Lead Plaintiff"), on behalf of itself and the Class, by and through Lead Counsel, does and will respectfully move this Court for an Order, pursuant to Federal Rule of Civil Procedure ("Rule") 23: (i) granting preliminary approval of a global settlement in the amount of $125 million to resolve this action and the state court action ("Settlement"); (ii) approving the form and substance of the proposed Long-form Notice of Pendency and Proposed Settlement of Class Action ("Notice"), the Summary Notice ("Summary Notice"), the Proof of Claim and Release form ("Proof of Claim"), and the methods of disseminating notice to the Class[1]; (iii) setting deadlines for Class Members to exercise their rights in connection with the proposed Settlement; and (iv) scheduling a hearing date for final approval of the Settlement and Plan of Allocation and application(s) for attorneys' fees and expenses ("Settlement Hearing").

This unopposed motion is supported by the below memorandum of points and authorities, the Stipulation and exhibits thereto, filed herewith as Exhibit A; the Declaration of Michael Joaquin of Gilardi & Co. LLC ("Gilardi") Regarding Notice Plan ("Joaquin Decl."), filed herewith; the Declaration of Jason A. Forge ("Forge Decl.") and Exhibit 1 thereto, filed herewith; the Declaration of Alan L. Manning ("Manning Decl."), filed herewith; and the Declaration of Jeremy Wolfson ("Wolfson Decl."), filed herewith.  A [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), with annexed exhibits, which were negotiated by the Settling Parties, is also submitted herewith.

---

[1]     Capitalized terms shall have the same meaning as set forth in the Stipulation of Settlement dated February 21, 2018 ("Stipulation").

1372647_2

LEAD PLAINTIFF'S NOTICE OF MOTION & UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND MEMO OF POINTS & AUTHORITIES - 3:16-cv-02627-WHA     - 1 -

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should grant preliminary approval of the proposed $125 million Settlement on the terms and conditions set forth in the Stipulation;

2.      Whether the Court should approve the form and substance of the proposed Notice, Proof of Claim, and Summary Notice appended as Exhibits A1 through A3 to the Preliminary Approval Order, as well as the manner and timing of notifying the Class of the Settlement; and

3.      Whether the Court should schedule a Settlement Hearing to determine whether the Settlement and Plan of Allocation should be finally approved, and whether applications for attorneys' fees and expenses should be approved.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

After nearly two years of hard-fought litigation, and less than three months from the close of fact discovery, the parties have reached a global Settlement of $125 million to resolve this action and the state court action.  This would be a very good result for the Class, especially given the financial resources of LendingClub relative to the size of the damages award Lead Plaintiff would seek at trial.  Indeed, the Settlement is expected to yield payments to Class Members of approximately 17% of Lead Plaintiff's estimate of total recoverable damages – 5 times the average recovery in securities class actions raising claims under the Securities and Exchange Acts, such as this one.

By any measure, this is a fair, adequate, and reasonable Settlement.  While Lead Plaintiff believes wholeheartedly in the merits of the class claims in this action, translating the merits into a trial victory is not a forgone conclusion.  What is more daunting is if Lead Plaintiff and the Class prevail at trial, there is a risk that LendingClub would be unable to pay a judgment of the magnitude that Lead Plaintiff would seek on behalf of the Class.  And, then, even if the Company could pay a judgment of that size, Class Members would be unlikely to see that money for years due to the lengthy appeals that would inevitably follow.  In contrast, this Settlement provides certainty and immediate relief to Class Members, who will no longer be at risk of losing at trial, being unable to collect on a post-trial judgment, or suffering the years' long frustration of lengthy appeals.

1372647_2

LEAD PLAINTIFF'S NOTICE OF MOTION & UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND MEMO OF POINTS & AUTHORITIES - 3:16-cv-02627-WHA        - 2 -

1    Lead Plaintiff requests, therefore, that the Court grant its unopposed motion for preliminary

2    approval, order the Notices to be disseminated, set deadlines for Class Members to exercise their

3    rights in connection with the Settlement, and set a date and time for a Settlement Hearing pursuant to

4    Rule 23(e)(2).

5    **II.    RELEVANT BACKGROUND**

6        **A.    History of the Litigation**

7        The initial complaint in this action alleged violations of the Securities Act of 1933 (the "1933

8    Act") and the Securities Exchange Act of 1934 (the "Exchange Act") and was filed against

9    Defendants LendingClub, Laplanche, and Dolan on May 16, 2016, in the United States District

10   Court for the Northern District of California.  On August 15, 2016, the Court appointed WPERP as

11   Lead Plaintiff.  ECF No. 90.  On October 28, 2016, the Court appointed Robbins Geller Rudman &

12   Dowd LLP ("Robbins Geller") as Lead Counsel.  ECF No. 113.

13       Lead Plaintiff filed the Consolidated Class Action Complaint for Violation of the Federal

14   Securities Laws on December 9, 2016.  ECF No. 127.  The complaint alleged violations of §11 of the

15   1933 Act against all defendants, §15 of the 1933 Act against Laplanche, Dolan and the Director

16   Defendants, and §§10(b) and 20(a) of the Exchange Act against LendingClub, Laplanche, and Dolan.

17   Lead Plaintiff alleged that LendingClub, Laplanche and Dolan defrauded investors who purchased

18   Lending Club common stock from December 11, 2014 through May 6, 2016, by making certain

19   misstatements and omissions concerning LendingClub's internal controls, data integrity and security,

20   and related-party transactions, and that these Defendants violated §10(b) of the Exchange Act and Rule

21   10b-5 by making such statements or omissions knowingly or with extreme recklessness, and caused

22   the price of LendingClub common stock to be artificially inflated during the period from December 11,

23   2014 through May 6, 2016.  Lead Plaintiff also asserted claims under §§11 and 15 of the 1933 Act on

24   behalf of investors who purchased Lending Club common stock traceable to LendingClub's IPO,

25   because LendingClub's offering materials allegedly contained material misstatements and/or omissions

26   concerning LendingClub's internal controls, data integrity and security, and related-party transactions.

27       Following briefing on Defendants' motions to dismiss and oral argument, on May 25, 2017,

28   the Court granted in part and denied in part the motions to dismiss.  ECF No. 181.  The Court upheld

1372647_2

LEAD PLAINTIFF'S NOTICE OF MOTION & UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AND MEMO OF POINTS & AUTHORITIES - 3:16-cv-02627-WHA   - 3 -

1    Lead Plaintiff's claims against all Defendants, but dismissed certain allegations related to

2    LendingClub's loan approval claims and Exchange Act claims related to data integrity and, as to

3    Dolan, related-party transactions.  The Court granted Lead Plaintiff leave to amend the dismissed

4    theories.

5        Lead Plaintiff filed the Amended Consolidated Complaint for Violation of the Federal

6    Securities Laws (the "Complaint") on June 15, 2017.  ECF No. 182.  Lead Plaintiff did not re-plead

7    the dismissed allegations, which Lead Plaintiff believed would not have increased recoverable

8    damages.

9        On June 29, 2017, Defendants filed their answers, denying all claims in the Complaint and

10   asserting certain defenses thereto.  ECF Nos. 185, 186, 188, 189.  Lead Plaintiff moved to strike the

11   majority of Defendants' affirmative defenses (ECF Nos. 193, 206), which led to them withdrawing

12   115 of 154 of their affirmative defenses and amending the remaining defenses.  ECF Nos. 200-203.

13       Since the lifting of the Private Securities Litigation Reform Act of 1995 ("PSLRA")

14   discovery stay in the summer of 2017, Lead Plaintiff has engaged in extensive discovery of both its

15   claims and Defendants' affirmative defenses.  Lead Plaintiff has received and analyzed over

16   3.2 million pages of documents from Defendants and over 500,000 pages of documents from third

17   parties.  Additionally, Lead Plaintiff produced to Defendants over 240,000 pages of documents, and

18   its representative sat for deposition.  Lead Plaintiff has also deposed two defendants and, at the time

19   this Settlement was reached, had noticed and was preparing to take 20 additional fact witness

20   depositions.  Lead Plaintiff had also retained numerous experts, including on damages, accounting,

21   and due diligence issues to analyze the evidence to date and begin preparing its expert reports.

22       Prior to reaching the Settlement, the parties also litigated a number of discovery disputes

23   involving privilege and confidentiality designations.  On September 7, 2017, Lead Plaintiff

24   challenged the LendingClub Defendants' reliance-on-counsel defense, resulting in their withdrawal

25   of this defense on September 29, 2017.  *See* ECF No. 218.  On November 16, 2017, Lead Plaintiff

26   moved for an order articulating the appropriate scope of discovery for defendants asserting a "due

27   diligence" affirmative defense to the Section 11 claims.  ECF No. 261.  This motion was subject to

28   extensive briefing and oral argument (ECF Nos. 261, 279, 287, 289, 294), resulting in an interim

order requiring the Underwriter Defendants to submit an offer to proof "precisely detailing what evidentiary facts they will present to the jury in support of their [due diligence] defense." ECF No. 301.  On February 20, 2018, the Court denied this motion with several caveats, including the underwriter defendants' concession that "that plaintiff's counsel can actually point out to the jury that the underwriter defendants could have waived the privilege but chose not to, and further argue before the jury that parts of the story concealed under claims of privilege would have been *unfavorable* to the underwriter defendants." ECF No. 329 at 4-5 (emphasis in original).  Finally, Lead Plaintiff continued to challenge confidentiality assertions all the way up until the proposed Settlement. *See, e.g.*, ECF Nos. 217-2, 292, 326.

At the time of Settlement, the parties were less than three months from the completion of fact discovery. *See* ECF No. 195 at 1.

**B.     The Parties' Mediation Efforts and Lead Plaintiff's Cost-Benefit Analysis of the Settlement**

On November 28, 2017, the parties in this action and the state court action engaged in an in-person settlement conference before Chief Magistrate Judge Joseph C. Spero, pursuant to this Court's order. ECF No. 280.  The settlement conference was preceded by the parties' submission of settlement conference statements and supporting exhibits analyzing the strengths and weaknesses of the respective parties' claims.  At all times during the settlement conference, the parties engaged in arm's-length negotiations.  Settlement discussions were unsuccessful at that settlement conference.

On January 29, 2018, the parties in this action and the state court action participated in a second in-person settlement conference overseen by Judge Spero. ECF No. 328.  Prior to the mediation, the parties submitted and exchanged updated mediation statements with supporting exhibits.  The second session was an extended day of arm's-length settlement negotiations, which were overseen by Judge Spero and continued into the night.  Lead Counsel, counsel for Defendants, and counsel for the State Class Representatives were all present.  That evening, Judge Spero issued the mediator's proposal of $125 million for a global resolution of all claims.

Representatives of Lead Plaintiff and the Los Angeles City Attorney's Office (the "LA City Attorney") were present for the entirety of the first mediation session. *See* Wolfson Decl., ¶2.  For

1372647_2

LEAD PLAINTIFF'S NOTICE OF MOTION & UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND MEMO OF POINTS & AUTHORITIES - 3:16-cv-02627-WHA          - 5 -

1   the second mediation session, two representatives of Lead Plaintiff were present for the entirety and

2   a LA City Attorney representative attended most of the session.  Following the second session,

3   representatives of Lead Plaintiff and the LA City Attorney met, both with and without Lead Counsel,

4   to carefully weigh the pros and cons of the mediator's proposal, including Lead Counsel's views of

5   the strength of the class claims and defenses in light of the discovery to date, the risks and expenses

6   of continuing the litigation (including collection risks a large judgment could pose), and the

7   Settlement Amount in light of both best- and worst-case scenarios.  *See id.*, ¶5.  These deliberations,

8   which included over a dozen phone calls and several meetings extended beyond Judge Spero's

9   deadline, which Lead Plaintiff had to ask to be extended.  After a full week of careful consideration,

10   Lead Plaintiff decided to accept the mediator's proposal.  *See id.*

11         Lead Plaintiff decided this Settlement is in the best interests of the Class based primarily on

12   three factors.  First, Lead Plaintiff carefully considered the size of the classwide damages claims in

13   relation to the size and financial resources of LendingClub, including an analysis of LendingClub's

14   balance sheet, financial performance trends, and operating cash needs.  *See, e.g.*, Forge Decl., Ex. 1

15   (analyst reports).  If LendingClub were to become insolvent, the $125 million Settlement would

16   amount to over 90% of estimated recoverable damages from the remaining corporate defendants.

17   *See* Forge Decl., ¶3.  Second, Lead Plaintiff weighed the risks at trial and on appeal, as well as the

18   attendant delays.  And third, Lead Plaintiff's decision to enter into this Settlement was informed by

19   Judge Spero's integral involvement in both settlement conferences, which were preceded by the

20   submissions of extensive briefing and dozens of exhibits and which culminated in his neutral

21   proposal of $125 million for a global resolution.

22         On February 5, 2018, the parties reached an agreement-in-principle for $125 million, subject

23   to agreement on the Stipulation.  The Settling Parties subsequently engaged in intensive negotiations,

24   including calls on nights and weekends, about the terms of the Settlement, exchanging multiple

25   drafts of the Stipulation and its exhibits before executing the final version on February 21, 2018.

26       **C.**    **The Proposed Settlement**

27         The proposed Settlement of $125 million will compensate Class Members for a significant

28   percentage of their estimated recoverable damages in this case.  The Class Members who are eligible

1   for a payment under the Settlement all fall within the definition of the Class certified by this Court

2   and by the state court.[2]  ECF Nos. 252, 255.

3          Under the Settlement, LendingClub will pay the Settlement Amount in two installments of

4   $62.5 million to be paid within twenty (20) business days after preliminary approval and no later

5   than the earlier of one (1) business day prior to the final approval hearing, or ninety (90) calendar

6   days after payment of the Initial Settlement Amount.  *See* Stipulation, ¶1.31.

7          In exchange for these payments, Lead Plaintiff and the Class will release Defendants and

8   their Related Parties from claims related to LendingClub publicly-traded common stock purchased

9   or acquired during the Class Period.  *See* Stipulation, ¶¶1.24, 1.42.  In addition, the State Class

10  Representatives will move to dismiss the state action subject to approval by the State Court.  Other

11  than releasing Unknown Claims, which are expressly limited to claims related to LendingClub

12  publicly-traded common stock purchased or acquired during the Class Period, there are no

13  substantive differences between the claims to be released and the certified class claims.[3]  *See id.*

14         The Net Settlement Fund will be distributed fairly and equitably to Class Members who

15  submit valid Proof of Claim forms in accordance with the Plan of Allocation ("POA") described in

16  the Notice.[4]  *See* Ex. A-1.  Lead Counsel crafted this POA in consultation with Lead Plaintiff and

17  both independent and Lead Plaintiff's in-house experts, as well as counsel for the State Class

18  Representatives and its independent expert, so as to ensure that it provides the fairest way to allocate

19  the Net Settlement Fund among Authorized Claimants.  *See* §IV.D, *infra.*[5]

20  _____

21  [2]     Simultaneously, the parties have filed a stipulation and proposed order regarding the
    definition of the Class in this case to make three minor changes to the class definition so that the
22  class definition in the state action will be subsumed within it.  *See* ECF No. 332.

23  [3]     Releasing Defendants have agreed to a mutual release of Released Plaintiffs and Class
    Members.  *See* Stipulation, ¶¶5.2, 5.3.

24  [4]     This Settlement has a claims procedure because the Class Members' purchases and sales are
25  not reflected in defendants' records, and such records only identify a small portion of the Class in
    any event.  In addition, as most securities are held in "street name" by brokers that buy them on
26  behalf of clients, the parties do not have Class Members' transactional data.

27  [5]     Lead Plaintiff and State Class Representatives have reached an agreement to jointly
    recommend that the POA will be structured to allocate what they estimate will amount to 36% of the
28  global recovery to class members based on their claims under the 1933 Act, and to allocate 64% of
    the global recovery to class members based on their claims under the Exchange Act.  The proposed

### D.      Proposed Settlement Schedule

Lead Plaintiff respectfully proposes the following schedule for the remainder of Settlement-related events through the claims deadline:

| | |
|---|---|
| Deadline to mail Notices and Proofs of Claim (the "Notice Date") | *10 business days after entry of the Preliminary Approval Order* |
| Deadline to publish Summary Notice in *The Wall Street Journal* and transmit via national newswire service | *14 calendar days after the Notice Date* |
| Deadline to file motions in support for final approval of Settlement, Plan of Allocation, and any application(s) for attorneys' fees and expenses | *35 calendar days prior to the Settlement Hearing* |
| Deadline to submit request for exclusion or objection to Settlement, Plan of Allocation, and/or attorneys' fees and expenses | *21 calendar days prior to the Settlement Hearing* |
| Deadline to file replies in support of Settlement, Plan of Allocation, and/or attorneys' fees and expenses; deadline to file proof of Notice | *14 calendar days prior to the Settlement Hearing* |
| Settlement Hearing | *At the Court's convenience, but no fewer than 110 calendar days after entry of the Preliminary Approval Order* |
| Deadline to submit Proof of Claim | *90 calendar days after the Notice Date (postmarked or electronically submitted)* |

All the parties in this action and the state action have agreed to the forgoing schedule. Moreover, this proposed schedule is similar to the one that this Court recently approved for the securities class action settlement in *Luna v. Marvell Tech. Group, Ltd.*, No. 3:15-ev-05447-WFLA, ECF No. 222 (N.D. Cal. Dec. 21, 2017) (Alsup, J., presiding), and complies with the Ninth Circuit's ruling in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010).

POA attached to the Notice is subject to further technical revisions by the Lead Plaintiff's and State Class Representative's respective experts to ensure that it satisfies the over-arching 36-64 allocation objective.  The parties note, however, that the POA is not part of the Settlement with Defendants.

1372647_2

LEAD PLAINTIFF'S NOTICE OF MOTION & UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND MEMO OF POINTS & AUTHORITIES - 3:16-cv-02627-WHA        - 8 -

1    **III.    APPLICABLE LEGAL STANDARDS**

2        "The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class

3    actions." *Hart v. Colvin*, No. 15-cv-00623-JST, 2016 U.S. Dist. LEXIS 155799, at *13 (N.D. Cal.

4    Nov. 9, 2016) (quoting *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).   In the

5    context of a class settlement, the Court must determine whether the settlement is "'fundamentally

6    fair, adequate and reasonable'" under Rule 23(e).  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir.

7    2003).[6] "'The initial decision to approve or reject a settlement proposal is committed to the sound

8    discretion of the trial judge.'"  *Hart*, 2016 U.S. Dist. LEXIS 155799, at *13 (quoting *Seattle*, 955

9    F.2d at 1276).

10       The *Manual for Complex Litigation* describes a three-step process for approving a class

11   action settlement: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of

12   the settlement to class members; and (3) a final approval hearing.  *See Manual for Complex*

13   *Litigation* §21.63 (4th ed. 2004).  "The Court's task at the preliminary approval stage is to determine

14   whether the settlement falls 'within the range of possible approval.'"  *Hart*, 2016 U.S. Dist. LEXIS

15   155799, at *14 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal.

16   2007)).  "The proposed settlement must be 'taken as a whole, rather than the individual component

17   parts' in the examination for overall fairness."  *Id.* at *15 (quoting *Hanlon v. Chrysler Corp.*, 150

18   F.3d 1011, 1026 (9th Cir. 1998)).  "Courts do not have the ability to 'delete, modify, or substitute

19   certain provisions'; the settlement 'must stand or fall in its entirety.'"  *Id.* (quoting *Hanlon*, 150 F.3d

20   at 1026).

21       Lead Plaintiff requests that the Court take the first and second steps in the approval process

22   by granting preliminary approval and ordering the dissemination of the Notices to Class Members,

23   subject only to possible technical revisions to the Plan of Allocation, as explained in n.5 *supra*.

24

25

26

---

27   [6]      Here, and throughout, citations and internal quotation marks are omitted, and emphasis is
28   supplied unless otherwise noted.

**IV.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL**

**A.    The Settlement Is Presumptively Fair**

The preliminary approval standard involves "both a procedural and a substantive component." *Young v. Polo Retail*, *LLC*, No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006).  First, this Settlement satisfies the procedural component.

As the Court in *Hart* explained:  "Preliminary approval of a settlement is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'"  2016 U.S. Dist. LEXIS 155799, at *14.  "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class."  *See id.* at *14-*15 (citing *Hanlon*, 150 F.3d at 1027); *see also In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007-JSC, 2015 WL 6471171, at *8-*11 (N.D. Cal. Oct. 27, 2015) (granting preliminary approval because settlement was "non-collusive," "lacks obvious deficiencies," and was "within the range of possible approval").

**1.    The Settlement Is Based on Judge Spero's Mediator Proposal**

First, courts have recognized "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Satchell v. Fed. Express Corp.*, No. C03-cv-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).  Here, Judge Spero played an active role in a protracted settlement process, including identifying each side's strengths, weaknesses, and risks.  Judge Spero also had the benefit of two sets of briefs, dozens of exhibits produced in discovery (as well as deposition excerpts), and hours of in-person talks with the parties in both the federal and state actions over the course of two days two months apart.  There was nothing hasty about this process, which concluded with Judge Spero making a neutral informed mediator's proposal of $125 million.  The fact that the Settlement Amount was proposed by Judge Spero provides an extra level of comfort that it was not collusive and that is was well-informed.  *See, e.g.*, *Zynga, Inc.*, 2015 WL 6471171, at *9 ("The use of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'").

1372647_2

LEAD PLAINTIFF'S NOTICE OF MOTION & UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AND MEMO OF POINTS & AUTHORITIES - 3:16-cv-02627-WHA          - 10 -

## 2.      The Settlement Was Reached Only After Discovery

Second, settlements are presumptively fair if reached after relevant discovery has taken place.  *See Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair."), *aff'd*, 151 F.3d 1234 (9th Cir. 1998).

Here, both Lead Plaintiff and State Class Representatives heeded the Court's advice that "it is better to develop and to present a proposed compromise ***after*** class certification, ***after*** diligent discovery on the merits, and ***after*** the damage study has been finalized."  ECF No. 13 ("Notice Regarding Factors to Be Evaluated For Any Proposed Class Settlement") at 4.  Indeed, Lead Plaintiff did not even consider a settlement proposal from Defendants until ***after*** this Court's rulings on the motions to dismiss and class certification ***and*** pursuing, obtaining and extensively analyzing thousands of documents, taking depositions, and consulting with its damages experts.  Similarly, State Class Representatives have represented to Lead Plaintiff that they did not consider any settlement proposals until well after the State Court's rulings on defendants' demurrers and class certification, and until after they had obtained and analyzed thousands of documents, participated in depositions and noticed and prepared for additional depositions, and consulted with its damages expert.

## 3.      Lead Plaintiff and Lead Counsel Believe that This Result Is in the Best Interests of the Class

Lead Plaintiff's informed view (joined by the State Class Representatives) that this Settlement is in the best interests of the Class also weighs in favor of preliminary approval.  This Court thoroughly vetted WPERP at the lead plaintiff stage.[7]  WPERP is a $12 billion governmental retirement plan run by sophisticated, capable, and independent individuals, bringing as an additional benefit to absent Class Members "the full collective litigation experience of the [Los Angeles] City

---

[7]      WPERP submitted a Certification in addition to its responses to the Court's detailed "questionnaire about its qualifications, experience in managing litigation, transactions in the shares at issue, and any potential conflicts related to the instant securities litigation," and appeared at the lead-plaintiff hearing, where the Court questioned its Chief Investment Officer, Jeremy Wolfson, regarding WPERP's qualifications.  ECF No. 90 at 3.

1372647_2

LEAD PLAINTIFF'S NOTICE OF MOTION & UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AND MEMO OF POINTS & AUTHORITIES - 3:16-cv-02627-WHA      - 11 -

1    Attorney's office [which were] drawn upon in assisting in this matter."   ECF No. 58-4 at 5.

2    Moreover, from the outset of this litigation, Lead Plaintiff committed *not* to "accept any payment for

3    serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any

4    recovery, except such reasonable costs and expenses (including lost wages) directly relating to the

5    representation of the class as ordered or approved by the court."   ECF No. 58-2 at 2.  As such, Lead

6    Plaintiff will only receive the same *pro rata* share of the Settlement as other Class Members and thus

7    could clearly undertake its cost-benefit analysis without the distraction of any other extraneous

8    motivation.  Lead Plaintiff further demonstrated its commitment to the class by agreeing to serve as

9    Lead Plaintiff *without* any guarantee that it would be reimbursed for its expenses.  ECF No. 58-4 at

10   6.  Indeed, Assistant LA City Attorney has personally paid for his own travel and hotel expenses for

11   Court hearings and for both settlement conferences in this case.  Manning Decl., ¶2.

12          Likewise, Lead Plaintiff and the Court went through a rigorous process before selecting and

13   appointing as Lead Counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), which Lead

14   Plaintiff selected over nine other firms.  *See* ECF No. 113 at 2.  This process included Lead

15   Plaintiff's consideration of the experience and qualifications of the specific lawyer who would lead

16   this litigation, as well an in-person interview of him and other lawyers vying to be selected as lead

17   counsel.  This Court approved WPERP's process and choice after "read[ing] with particularity the

18   fee proposals, staffing proposals, and counsel's track records."  ECF No. 113 at 2.

19          This Court's thorough vetting process worked.  As the Court recognized at the class

20   certification stage, "WPERP has vigorously prosecuted this action to date."  ECF No. 252 at 13.

21   Lead Counsel has worked exceedingly hard to advocate on behalf of Lead Plaintiff and the Class to

22   obtain all the information needed to prove the class claims and defeat the defenses in this case.

23   Nearly two years later, Lead Counsel has a thorough understanding of the strengths and weaknesses

24   as well as the defenses and risks of continuing to trial.

25          Lead Plaintiff, in consultation with Lead Counsel, fully explored the strengths and

26   weaknesses of the claims and the risks of proceeding to trial.  Lead Plaintiff and Lead Counsel

27   developed a thorough understanding of the facts of the case and the risks of continued litigation

28   through its analysis of, *inter alia*:  (i) publicly-available information regarding the Company's size

1372647_2

LEAD PLAINTIFF'S NOTICE OF MOTION & UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AND MEMO OF POINTS & AUTHORITIES - 3:16-cv-02627-WHA      - 12 -

1  and its financial resources; (ii) briefing on Defendants' motions to dismiss and this Court's ruling on

2  the same; (iii) extensive briefing on Lead Plaintiff's motion for class certification and the Court's

3  ruling on the motion; (iv) over 3.2 million pages of documents produced by Defendants and over

4  500,000 pages of documents produced by 18 third-parties; (v) the depositions taken (and prepared to

5  be taken) to date; (vi) frank discussions with Magistrate Judge Spero during the mediation process;

6  and (vii) consultation with damages experts, forensic accountants, and due diligence experts.  Lead

7  Plaintiff considered the possibility of obtaining a larger settlement in the future, but determined that

8  it was outweighed by the risks detailed herein.  It was only with its eyes wide open as to this

9  information and after weighing the pros and cons that Lead Plaintiff ultimately agreed to this

10  Settlement on behalf of the Class.  WPERP and the Los Angeles City Attorney's careful

11  consideration and approval of the Settlement are a testament to the fairness of the Settlement.

12  Finally, Lead Counsel's view (as well as State Lead Counsel's views) should be given

13  significant weight.  *See, e.g.*, *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS),

14  2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to

15  counsel's belief that settlement is in the best interest of those affected by the settlement."); *In re

16  Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (counsel's recommendation

17  weighed in favor of settlement, given counsel's familiarity with the dispute and significant

18  experience in securities litigation).

19  **B.      The Settlement Is Substantively Fair**

20  Second, we address the substantive component.  A court "'need not conduct a full settlement

21  fairness appraisal before granting preliminary approval . . . .'" *Grant v. Capital Mgmt. Servs. L.P.*,

22  No. 10-cv-2471-WQH (BGS), 2013 WL 6499698, at *5 (S.D. Cal. Dec. 11, 2013).  "The Court

23  cannot fully assess all of [the] fairness factors until after the final approval hearing; thus, 'a full

24  fairness analysis is unnecessary at this stage.'  Instead, 'the settlement need only be ***potentially*** fair,

25  as the Court will make a final determination of its adequacy at the hearing on Final Approval, after

26  such time as any party has had a chance to object and/or opt out.'"[8] *Zynga*, 2015 WL 6471171, at *8

---

[8]      In connection with the final approval of the Settlement, the Court will be asked to review these factors:  "'(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely

1372647_2

LEAD PLAINTIFF'S NOTICE OF MOTION & UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AND MEMO OF POINTS & AUTHORITIES - 3:16-cv-02627-WHA      - 13

1   (emphasis in original).  At this point, the Court's only task is to determine "whether the settlement

2   falls 'within the range of possible approval.'" *Booth v. Strategic Realty Tr., Inc.*, No. 13-cv-04921-

3   JST, 2015 WL 3957746, at *6 (N.D. Cal. June 28, 2015).  This Settlement is well within the range of

4   reasonableness for several reasons.

5        Principally, the $125 million Settlement is approximately 17% of estimated recoverable

6   damages – $711 million – if Lead Plaintiff prevailed on behalf of the Class at trial.  This figure,

7   however, does not account for the risk that LendingClub would be unable to pay a judgment of this

8   size.  If not, the remaining defendants face approximately $140 million in damages, so the

9   $125 million Settlement is 90% of the estimated recoverable damages after trial as against the

10   remaining defendants.  To put these figures in perspective, the recovery under this Settlement is over

11   five times greater than the median recovery of 3% of estimated damages in securities cases settled

12   between 1996 and 2016 in which both Rule 10b-5 claims and §§11 and/or 12(a)(2) claims were pled,

13   according to a recent Cornerstone Research Study.[9]  Moreover, Defendants have maintained

14   throughout this litigation that no damages can be established in this case whatsoever and that they

15   would prevail in their negative-causation argument for §11 claims.

16        In line with this study of median recoveries, courts regularly approve securities class action

17   settlements with far lesser recoveries as a percentage of recoverable damages.  *See, e.g.*, *McPhail v.*

18   *First Command Fin. Planning, Inc.*, No. 05cv179-IEG-JMA, 2009 WL 839841, at *5 (S.D. Cal.

19   Mar. 30, 2009) ($12 million settlement recovering 7% of estimated damages was fair and adequate);

20   *Omnivision*, 559 F. Supp. 2d at 1042 ($13.75 million settlement recovering 6% of potential damages

21   was "higher than the median percentage of investor losses recovered in recent shareholder class

22

23   duration of further litigation; (3) the risk of maintaining class action status throughout the trial;
(4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the

24   proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant;
and (8) the reaction of the class members of the proposed settlement.'" *Zynga*, 2015 WL 6471171, at

25   *8 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)); *see also*
*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004).

26   [9]   *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action*

27   *Settlements: 2016 Review and Analysis*, at 11, Figure 10 (Cornerstone Research 2017), available at
https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-

28   Settlements%E2%80%942016-Review-an (last visited on Feb. 13, 2018).

1   action settlements"); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,

2   No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) ($12.5 million

3   settlement recovering 3.5% of recoverable damages was approved and within the median recovery of

4   recent securities settlements); *see also Zynga*, 2016 WL 6471171, at *11 (approving settlement

5   recovering 14% of likely recoverable aggregate damages at trial); *Weeks v. Kellogg Co.*, No. CV 09-

6   08102 (MMM) (RZx), 2011 U.S. Dist. LEXIS 155472, at *53-*55 & n.85 (C.D. Cal. Nov. 23, 2011)

7   (approving "settlement amount [of] approximately 10 percent of th[e] total damages figure" because

8   "[e]stimates of what constitutes a fair settlement figure are tempered by factors such as the risk of

9   losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured

10   in years)").

11         The Settlement also represents a prompt and tangible recovery, without the considerable risk,

12   expense, and delay of prevailing on summary judgment motions, at trial, and in post-trial litigation.

13   *See, e.g.*, *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("'Generally,

14   unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

15   expensive litigation with uncertain results.'"); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, MDL

16   No. 551, 1988 WL 158947, at *4 (W.D. Wash. July 28, 1988) (finding settlement to be in the "best

17   interests of the class . . . before it is subjected further to the vagaries of litigation").  While Lead

18   Plaintiff believes it could have succeeded in establishing each element of its class claims, it would

19   have incurred considerable expenses and undertaken considerable risk in taking this case to trial.

20         In light of the inherent risks of continued litigation, and compared to the prompt recovery of

21   $125 million, the Settlement is a very good result for the Class.  *See, e.g.*, *Orvis v. Spokane Cty.*, 281

22   F.R.D. 469, 475 (E.D. Wash. 2012) ("[T]he proposed benefit to class members appears to the Court to

23   be within the range of fair and reasonable compensation given the uncertain outcome of the legal

24   arguments and the risks and probable delay for Plaintiff and class members if litigation were to

25   proceed toward trial."); *Lo v. Oxnard European Motors, LLC*, No. 11-cv-1009 JLS (MDD), 2011 WL

26   6300050, at *5 (S.D. Cal. Dec. 15, 2011) ("'Considering the potential risks and expenses associated

27   with continued prosecution of the Lawsuit, the probability of appeals, the certainty of delay, and the

28

1372647_2

LEAD PLAINTIFF'S NOTICE OF MOTION & UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AND MEMO OF POINTS & AUTHORITIES - 3:16-cv-02627-WHA         - 15 -

1   ultimate uncertainty of recovery through continued litigation,' the Court finds that, on balance, the

2   proposed settlement is fair, reasonable, and adequate[.]").  Thus, preliminary approval is merited here.

3   **C.      The Notice Program Satisfies Rule 23(e), Due Process, and the PSLRA**

4          Lead Counsel also requests approval of the proposed Notices in the form of the mailed

5   Notice and published Summary Notice, attached as Exhibits A-1 and A-3 to the Preliminary

6   Approval Order.  To satisfy due process, Rule 23, and the PSLRA, notice to class members must

7   (1) be provided in the most practicable manner under the circumstances and (2) describe "'the terms

8   of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

9   forward and be heard.'"  *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (quoting

10  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)); *see also* Fed. R. Civ. P.

11  23(c)(2)(B).  The proposed Notices satisfy both requirements.

12         First, Lead Plaintiff proposes to give Class Members notice in two ways:  (i) by first-class

13  mailing of the long-form Notice, addressed to those Class Members who can be reasonably

14  identified and located; and (ii) by publication of the Summary Notice in *The Wall Street Journal* and

15  transmission over *Business Wire* ("Notice Program").  *See* Joaquin Decl., ¶¶4-21 (describing Notice

16  Program and its expected reach to Class Members).  The parties do not have access to the Class

17  Members' email addresses, but the Notice will be posted on the Settlement and Lead Counsel's

18  websites.  The Notice Plan is consistent with those approved in numerous securities class actions and

19  constitutes the best notice practicable under these circumstances.  *See, e.g.*, *In re HP Sec. Litig.*,

20  No. 3:12-cv-05980-CRB, 2015 WL 4477936, at *2 (N.D. Cal. July 20, 2015) (finding the procedures

21  for notice, including mailing individual notice and publication notice satisfy Rule 23, the PSLRA,

22  and constitute the best notice practicable).

23         Moreover, the substance of the Notice easily satisfies Rule 23(e) and due process.  The

24  Notice and Summary Notice describe in clear, understandable language: (1) the Class definition and

25  Class claims; (2) the terms of the Settlement and the average recovery per share to Class Members;

26  (3) considerations that led Lead Plaintiff and Lead Counsel to conclude the Settlement is fair,

27  adequate, and reasonable; (4) the maximum attorneys' fees and expenses that may be sought; (5) the

28  deadlines and procedures for requesting exclusion from the Class, objecting to any aspect of the

1372647_2

LEAD PLAINTIFF'S NOTICE OF MOTION & UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AND MEMO OF POINTS & AUTHORITIES - 3:16-cv-02627-WHA        - 16 -

1   Settlement, and filing a Proof of Claim to participate in the Settlement; (6) the proposed POA; and

2   (7) the date, time, and place of the Settlement Hearing.  This is sufficient under Rule 23 and satisfies

3   due process requirements.  *See, e.g.*, *Ching v. Siemens Indus., Inc.*, No. C 11-4838 MEJ, 2013 WL

4   6200190, at *6 (N.D. Cal. Nov. 27, 2013) (approving notice that "adequately describes the nature of

5   the action, summarizes the terms of the settlement, identifies the class and provides instruction on

6   how to opt out and object, and sets forth the proposed fees and expenses to be paid to Plaintiff's

7   counsel and the settlement administrator in clear, understandable language").

8          The Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*,

9   stating: (i) the amount of the Settlement in the aggregate and on an average per share basis; (ii) that

10  the parties do not agree on the average amount of damages per share that would be recoverable if

11  Lead Plaintiff prevailed; (iii) that Lead Plaintiff and state plaintiffs may make application(s) for an

12  award of attorneys' fees and expenses, and the maximum amount that may be sought (including the

13  amount of such fees and expenses determined on an average per share basis); (iv) the name,

14  telephone number, and address of one or more counsel for the Class who will be available to answer

15  questions; and (v) the reasons why the parties are proposing the Settlement.  *Compare* Ex. A-1, *with*

16  15 U.S.C. §78u-4(a)(7)(A)-(F).  The Notice contains all of the information required by the PSLRA.[10]

17         Lead Counsel proposes that the Court appoint Gilardi to serve as the Claims Administrator

18  for the Settlement.  Gilardi is a recognized leader in administering class action settlements and

19  providing notice programs nationwide.  *See* Joaquin Decl., ¶3.  As the Claims Administrator, Gilardi

20  will see to it that the Notices approved by the Court are disseminated to Class Members consistent

21  with the Notice Plan, that the Settlement website is up and running on time, that resources are

22  available to Class Members for additional information, as well as to receive and process Proof of

23  Claims, and administer the Settlement pursuant to the terms in the Stipulation.  *See id.*, ¶¶4-21.

24

25

---

26  [10]     Prior to issuance of the Notice, in accord with California Rule of Court 3.770, the Stipulation
    contemplates that the parties in the state action will submit a copy of the Notice to the state court (the
27  Hon. Marie Weiner, J.) to give that court the opportunity to request the possible edits or additions to
    the Notice as a condition to its agreement to voluntarily dismiss the state action.  The parties,
28  however, do not anticipate that the state court would require or request any material changes.

1372647_2

LEAD PLAINTIFF'S NOTICE OF MOTION & UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AND MEMO OF POINTS & AUTHORITIES - 3:16-cv-02627-WHA      - 17 -

1    Gilardi is well equipped to administer this Settlement in an efficient and cost-effective manner.

2    Lead Plaintiff respectfully requests approval of Gilardi as Claims Administrator.

3           **D.**       **Proposed Plan of Allocation**

4           At the Settlement Hearing, the Court will decide whether to approve the proposed POA for

5    the Settlement proceeds, which is described to Class Members in the Notice.  *See* Ex. A-1 at 17-19.

6    While the POA is considered separately from the fairness of the Settlement, the standard of review

7    for a POA is the same – it must be fair, reasonable and adequate.  *See Seattle*, 955 F.2d at 1285.

8    Lead Plaintiff's carefully crafted POA is all three.

9           Specifically, Lead Plaintiff's proposed POA, which reflects material input from State Lead

10   Counsel and the State Class Representatives' expert, treats Class Members fairly and equitably based

11   on when they bought LendingClub stock and whether and when they sold the stock.  Eligible

12   claimants will recover their *pro rata* share of the Net Settlement Fund based on their "Recognized

13   Loss" as set forth in the POA.  The Claims Administrator will calculate Class Members' Recognized

14   Losses using the transactional information provided by Claimants on the Proof of Claim.

15          The POA also provides the fairest method of allocating the Net Settlement Fund based on

16   estimated recoverable damages for the Rule 10b-5 and §11 class claims, taking into account the strict

17   liability nature of the §11 claims and the alleged disclosure dates.  *See* Forge Decl., ¶3.  Lead

18   Plaintiff further states that to ensure that all Class Members have the opportunity to receive a

19   recovery (assuming they have a recognized loss) in exchange for their release and to account for the

20   possibility that additional discovery and expert analysis could enable §11 class members to

21   overcome defendants' negative-causation arguments for pre-revelation losses, as well as §11 class

22   members' opportunity to pursue collectable damages from the underwriter and individual

23   defendants, the POA provides an allocation for pre-revelation price drops.  *See id.*

24         Once the Claims Administrator has processed all submitted Proofs of Claim, distributions

25   will be made to Authorized Claimants according to the POA.  Authorized Claimants will receive *pro*

26   *rata* distributions according to: (i) the number of valid Proofs of Claim submitted by all Class

27   Members; (ii) the date(s) when each Class Member purchased or acquired and/or sold their

28   LendingClub common stock; and (iii) the number of shares each Class Member purchased or

1    acquired and sold.  *See* Stipulation, Ex. A-1 at 2.  After an initial distribution of the Net Settlement

2    Fund, if any balance remains (by reason of tax refunds, uncashed checks, or otherwise) after at least

3    six (6) months from the date of the initial distribution, Lead Counsel will re-distribute the balance

4    among Authorized Claimants who previously cashed their first checks.  These re-distributions will

5    be repeated until the balance in the Net Settlement Fund dips below $5,000.  After that, any

6    remainder will be donated to Second Harvest Food Bank or to another 501(c)(3) non-profit

7    organization unaffiliated with Lead Counsel or State Lead Counsel and approved by the Court.  *Id.*,

8    ¶6.8; *see* http://www.shfb.org/.

9         All plaintiffs, as well as their respective counsel and experts, have put a significant amount of

10   time and resources into preparing the POA and believe that it is fair and reasonable, and along with

11   the terms of the Stipulation, confers substantial benefits upon all Class Members and is in the best

12   interests of the Class.[11]

13        **E.       Attorneys' Fees, Litigation Expenses, and Administrative Fees**

14        As set forth in the Notice, Lead Counsel and State Lead Counsel intend to apply for an

15   aggregate award of attorneys' fees for counsel in both Litigations equal to no more than 14% of the

16   Settlement Amount, net of all expenses, and litigation expenses of no more than $325,000 in the

17   Federal Litigation and $325,000 in the State Litigation.  Both counsel's maximum expense figures

18   are based upon their current expenses and estimates of incurred expenses that have not yet been

19   invoiced and expenses that will be incurred between now and the filing of counsel's applications for

20   awards of attorneys' fees and expenses.

21        The Claims Administrator currently estimates that Notice and Administration Expenses (*see*

22   Stipulation, ¶1.19) will not exceed $1.25 million.  Joaquin Decl., ¶21.  This estimate assumes that

23   Gilardi may mail as many as 300,000 claim packages, and that approximately 70% of all Class

24   Members who are mailed the notice will file claims.  *Id.*, ¶¶19-20.  In the event that actual

25

26   _____

     [11]      As noted at n.5 *supra*, certain technical aspects of the POA are also subject to review and
27   technical revision before they are disseminated.  Should the Lead Plaintiff and State Class
     Representatives' experts agree to any changes in the POA, or be unable to agree on certain technical
28   matters, such matters will be promptly brought to the attention of the Court for resolution.

1  experience differs from these assumptions, Notice and Administration Expenses incurred in

2  connection with this Settlement will obviously vary.

3  **V.      CONCLUSION**

4         For all these reasons, Lead Plaintiff respectfully requests that the Court issue an order

5  substantially in the form of the Preliminary Approval Order: (a) preliminarily approving the

6  Settlement; (b) finding that the method and forms of notice set forth in the Preliminary Approval

7  Order satisfy due process and provide the best notice practicable under the circumstances, and

8  ordering that notice be provided to the Class; (c) appointing Gilardi as Claims Administrator;

9  (d) setting a date for the Settlement Hearing; and (e) granting such further relief as may be justified.

10  DATED:  February 21, 2018                    Respectfully submitted,

11                                              ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
12                                              DARREN J. ROBBINS
                                                JASON A. FORGE
13                                              SCOTT H. SAHAM
                                                RACHEL L. JENSEN
14                                              AUSTIN P. BRANE
                                                MICHAEL ALBERT
15                                              CARISSA J. DOLAN

16

17                                                     s/ Jason A. Forge
                                                      JASON A. FORGE
18
                                                655 West Broadway, Suite 1900
19                                              San Diego, CA  92101
                                                Telephone:  619/231-1058
20                                              619/231-7423 (fax)

21                                              Lead Counsel for Lead Plaintiff

22

23

24

25

26

27

28

1372647_2

LEAD PLAINTIFF'S NOTICE OF MOTION & UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AND MEMO OF POINTS & AUTHORITIES - 3:16-cv-02627-WHA      - 20 -

1

<u>CERTIFICATE OF SERVICE</u>

2

  I hereby certify that on February 21, 2018, I authorized the electronic filing of the foregoing

3

with the Clerk of the Court using the CM/ECF system.  I certify under penalty of perjury under the

4

laws of the United States of America that the foregoing is true and correct.  Executed on February

5

21, 2018.

6

             s/ Jason A. Forge
            JASON A. FORGE

7

8

            ROBBINS GELLER RUDMAN
              & DOWD LLP

9

            655 West Broadway, Suite 1900
            San Diego, CA  92101-8498

10

            Telephone:  619/231-1058
            619/231-7423 (fax)

11

            E-mail:jforge@rgrdlaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1375450_1