IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re

LENDINGCLUB SECURITIES
LITIGATION.
_____/

This Document Relates to:

ALL ACTIONS.
_____/

No. C 16-02627 WHA
No. C 16-02670 WHA
No. C 16-03072 WHA

(CONSOLIDATED)

**ORDER GRANTING
PRELIMINARY APPROVAL
OF CLASS SETTLEMENT**

## INTRODUCTION

In these consolidated PSLRA class actions, the lead plaintiff moves for preliminary approval of a proposed settlement agreement. The motion is **GRANTED**.

## STATEMENT

The background of these consolidated actions has been set forth in prior orders (*see, e.g.*, Dkt. Nos. 181, 252). In short, defendant LendingClub Corporation, which operated an online peer-to-peer marketplace to match borrowers with lenders for various loans, completed an initial public offering of its common stock in December 2014. The registration statement that LendingClub issued and filed with the Securities and Exchange Commission as part of that IPO contained certain representations regarding, among other things, LendingClub's internal controls, procedures, and data-security protocols. In May 2016, however, numerous discrepancies, weaknesses, and improprieties in LendingClub's business operations came to light, causing its share price to drop and various securities rating agencies to downgrade LendingClub.

These securities actions followed. All three were related to the undersigned judge and subsequently consolidated with Water and Power Employees' Retirement, Disability and Death Plan of the City of Los Angeles ("WPERP") as the lead plaintiff. A prior order certified the following class (Dkt. Nos. 252 at 22–23, 255):

> All persons and entities who purchased or otherwise acquired the common stock of LendingClub Corporation ("LendingClub" or the "Company") during the period from December 11, 2014 through May 6, 2016 (for claims under the Exchange Act of 1934) and all those who purchased or acquired LendingClub common stock during the period from December 11, 2014 through June 8, 2015 (for claims under the 1933 Securities Act) and were damaged thereby (collectively, the "Class"). Excluded from the Class are short sellers who incurred losses during the class period as a result of their short sales, defendants and their families, the officers, directors, and affiliates of defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest. Notwithstanding the foregoing, the Class shall include any investment company or pooled investment fund, including, but not limited to, mutual fund families, exchange traded funds, fund of funds and hedge funds, in which the Underwriter Defendants, or any of them, have, has or may have a direct or indirect interest, or as to which any Underwriter Defendant's affiliates may act as an investment advisor, but as to which any Underwriter Defendant alone or together with any of its respective affiliates is neither a majority owner nor the holder of a majority beneficial interest.

Significantly, that order specifically excluded from the class definition "short sellers who incurred losses from short sales during the class period" to account for "the practical difficulties of tracing the short seller's loss to any alleged fraud" (*id.* at 22).

The lead plaintiff has now filed an unopposed motion for preliminary approval of a proposed class settlement (Dkt. No. 333). For purposes of the instant motion only, the parties also filed a stipulated request to modify the foregoing class definition in three ways. *First*, they wish to change the start of the class period from December 11, 2014, to December 10, 2014, for claims under the 1933 Securities Act. *Second*, they wish to erase the exclusion of "short sellers who incurred losses during the class period as a result of their short sales." *Third*, they wish to change "defendants and their families" to "defendants and their *immediate* families" (emphasis added) in the list of excluded categories. The purpose of these changes would be to fully

2

subsume the class in a parallel state litigation so that both that litigation and this one could be settled in one fell swoop (Dkt. No. 332).

Again, the parties request these changes to our class definition for purposes of settlement only. Should the settlement fall through, the class definition would revert to that set forth in the class certification order. Having considered the parties' stipulation, the Court **GRANTS** their request to modify the class definition for purposes of settlement only.

## ANALYSIS

"A settlement should be approved if 'it is fundamentally fair, adequate and reasonable.'" *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (citation omitted). Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (Chief Judge Vaughn Walker). Here, the proposed settlement agreement satisfies these requirements.

### 1. BENEFIT TO CLASS MEMBERS.

The proposed settlement agreement establishes a gross settlement fund of $125 million (Dkt. No. 333-1 ¶ 1.31). Lead counsel in both the federal and state actions intend to seek up to approximately $16 million in attorney's fees and $650,000 in litigation expenses, to be paid out of the gross settlement fund (Dkt. Nos. 333 at 19, 333-1 at 51). Additionally, the claims administrator estimates that notice and administration expenses may cost up to $1.25 million, which would also be paid out of the gross settlement fund (Dkt. No. 333-6 ¶ 21). The net settlement fund that remains after these deductions will then be distributed on a pro rata basis to class members who complete and timely submit a valid proof-of-claim and release form, based on recognized losses calculated from information provided on said form (including, for example, when each claimant bought and sold LendingClub stock) (*see* Dkt. No. 333-1 at 71–82).

Any balance remaining after the initial distribution will be reallocated among authorized claimants until the net settlement fund dips below five thousand dollars. At that point, according

to the proposed settlement agreement, the remainder would be donated to "Second Harvest Food Bank or to another 501(c)(3) non-profit organization unaffiliated with Federal and State Lead Counsel and approved by the Court" (Dkt. No. 333-1 ¶ 6.8). The Court would prefer that the donation go to an organization with a purpose that bears a closer nexus to the claims asserted herein. At this stage, however, this detail does not preclude preliminary approval of the proposed settlement agreement.

The gross settlement fund of $125 million represents approximately seventeen percent of the total estimated damages that would be recoverable if the lead plaintiff prevailed at trial, *i.e.*, $711 million. If LendingClub proved incapable of paying a judgment of that size, however, then the remaining defendants would face only approximately $140 million in damages, in which case the $125 million gross settlement would represent approximately 89 percent of the total estimated damages recoverable at trial (Dkt. No. 333 at 14). The difference between the maximum possible recovery and the gross settlement fund accounts for not only the risk of LendingClub's insolvency but also avoided risks and costs of litigation, including the accrued fees and expenses of counsel, the risk of an adverse jury verdict, and the risks and costs of "lengthy appeals that would inevitably follow" (*see id.* at 2) even if the lead plaintiff prevails at trial. Given that this proposed settlement agreement comes after nearly two years of litigation, discovery, and motion practice, including prior orders on a motion to dismiss and on class certification (*see id.* at 11), both sides have had ample opportunity to carefully assess and weigh the relative strengths and weaknesses of their legal positions. The discounted settlement amount seems to reflect those considerations.

2. **SCOPE OF THE RELEASE.**

The proposed settlement agreement contains a release of claims that exceeds the scope of the certified class claims. Specifically, the proposed settlement agreement provides (Dkt. No. 333-1 ¶¶ 1.25, 1.42 (emphasis in original)):

> "Released Claims" means any and all claims, rights, causes of action, liabilities, actions, suits, damages, or demands (including Unknown Claims as defined in ¶ 1.42 herein) of any kind whatsoever, that Federal Lead Plaintiff, State Class Representatives, or any other Class Member has that relate in any way to the purchase, acquisition, holding, sale, or disposition of

4

LendingClub common stock by Class Members during the period between December 10, 2014 through May 6, 2016, inclusive, ***and*** either: (a) arise out of or are based upon or related to the facts alleged or the claims or allegations set forth in the Litigations; or (b) relate in any way to any alleged violation of the 1933 Act or the Exchange Act or any other state, federal or foreign jurisdiction's securities or other laws, any alleged misstatement, omission or disclosure (including in financial statements) or other alleged securities-related wrongdoing or misconduct by the Released Defendants. Notwithstanding the foregoing, "Released Claims" does not include claims relating to any LendingClub shares that were purchased or acquired before December 10, 2014 or claims relating to the enforcement of the settlement.

\*     \*     \*

"Unknown Claims" means (i) any Released Claims that Releasing Plaintiffs and Class Members do not know or suspect to exist in his, her or its favor at the time of the release, which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Defendants, or might have affected his, her or its settlement with and release of the Released Defendants, or might have affected his, her or its decision not to object to this settlement or seek exclusion from this settlement, and (ii) any Releasing Defendants' Claims that Releasing Defendants do not know or suspect to exist in his, her or its favor at the time of the release, which, if known by him, her or it, might have affected his, her or its settlement with and release of the Releasing Plaintiffs and Class Members. With respect to any and all Released Claims and Releasing Defendants' Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Federal Lead Plaintiff and State Class Representatives shall expressly waive and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code § 1542 and any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Releasing Plaintiffs and Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Federal Lead Plaintiff and State Class Representatives shall expressly settle and release and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, disclosed or undisclosed, matured or unmatured, whether or not concealed or hidden, which now exist, or heretofore have existed,

> upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Federal Lead Plaintiff and State Class Representatives acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

Although the undersigned judge typically requires that a release of class claims "be limited only to the claims certified for class treatment" and avoid "releasing claims that 'could have been brought'" (*see* Dkt. No. 13 at 3), this particular release is anchored to "the purchase, acquisition, holding, sale, or disposition of LendingClub common stock by Class Members during the [class] period" (*see* Dkt. No. 333 at 7). In another securities case, the undersigned judge recently granted preliminary approval of a proposed class settlement agreement with substantially identical language in its release of claims. *See Luna v. Marvell*, Case No. 15-5447 (Dkt. Nos. 220 ¶¶ 1.25, 1.33; 224 at 4:9–7:9). The same language suffices for purposes of preliminary approval here.

### 3. ATTORNEY'S FEES AND INCENTIVE AWARDS.

As stated, lead counsel in both the federal and state actions intend to seek up to approximately $16 million in attorney's fees and $650,000 in litigation expenses, to be paid out of the settlement fund. In addition, the state class representatives may seek incentive awards — up to five thousand dollars apiece — from the state court, but any such service award would be paid out of any fees and expenses awarded to lead counsel in the state action (Dkt. No. 333-1 ¶ 3.5). While the prospect of these forthcoming requests does not prevent preliminary approval at this stage, the parties are advised that the requested amount of attorney's fees and costs will be subject to close scrutiny and potential reduction at the final approval stage.

In addition, as cautioned in the "Notice Regarding Factors to be Evaluated for Any Proposed Class Settlement," the requests for incentive awards to the state class representatives is a "red flag" (Dkt. No. 13 at 5). Although those requests will be directed to the state court, they nevertheless raise the concern that incentive awards have been thrown in to the bargain to make a flawed or inadequate settlement more "palatable" to some of the players involved because any

6

1 proposed settlement agreement that purports to cover both the federal and state litigations would
2 ostensibly need the consent of the state class representatives as well.  At this stage, however, the
3 proposed settlement agreement does not provide for any automatic incentive award, no request
4 for any such award has been made yet, and the proposed settlement agreement will not be
5 contingent on the outcome of any such request.  Preliminary approval thus remains appropriate.

### 4. OTHER CONSIDERATIONS.

Another factor weighing in favor of preliminary approval is that the proposed settlement agreement came about as a result of extensive mediation efforts supervised by Chief Magistrate Judge Joseph Spero, including two in-person settlement conferences and subsequent deliberations.  Indeed, the proposed amount of $125 million for a global settlement came from Judge Spero's mediator's proposal (*see* Dkt. No. 333 at 5–6, 10).  This background is not dispositive of but nevertheless relevant to the question of whether this proposed settlement agreement appears to be "the product of serious, informed, non-collusive negotiations." *See In re Tableware*, 484 F. Supp. 2d at 1079.

### CONCLUSION

Subject to the foregoing, the lead plaintiff's unopposed motion for preliminary approval of the class action settlement is **GRANTED**.  Based solely upon the assurances that class counsel made during the hearing on this motion, the firm of Gilardi & Co. LLC is hereby **APPOINTED** as claims administrator.

The proof-of-claim and release form is **APPROVED**.

By **MARCH 23 AT NOON**, counsel shall resubmit the proposed notice (for first-class mail) and summary notice (for publication in *The Wall Street Journal* and transmission over *Business Wire*) for Court approval with the following modifications.  *First*, the estimated amount of attorney's fees that class counsel expect to request must also be expressed as a *dollar amount*, not just as "14% of the Net Settlement Fund" (*see* Dkt. No. 333-2 at 13, 24).  *Second*, class members must be clearly informed about how two groups of attorneys in the federal and state litigations would split the requested fee award.  Again, this estimated split must also be expressed as *dollar amounts*, not just as percentages.  In this connection, the notice should

7

clearly explain how much work class counsel did in the federal and state litigations, including, for example, the specific numbers of depositions taken and documents reviewed in each litigation, as well as any motion practice to date. *Third*, in addition to making clear how the requested attorney's fees, expenses, and administration costs will impact the settlement fund, the notices must provide clear estimates — again, expressed as *dollar amounts* — of the net amounts that will ultimately be distributed to class members. All of the foregoing must be explained in plain English in both the notice and the summary notice.

If counsel submits revised versions of the proposed notices with the foregoing revisions by March 17 at 5:00 p.m., then the undersigned judge will try to respond by the following Monday. In all events, counsel shall submit, along with the proposed notices, a revised proposed timeline for administering the settlement that takes into account the delay in obtaining Court approval for said notices.

The final pretrial conference and trial dates, as well as other pending deadlines in this action, are hereby **VACATED** and will be reset if final approval is not granted.

**IT IS SO ORDERED.**

Dated: March 16, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE