1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (168593)
JASON A. FORGE (181542)
SCOTT H. SAHAM (188355)
RACHEL L. JENSEN (211456)
AUSTIN P. BRANE (286227)
MICHAEL ALBERT (301120)
CARISSA J. DOLAN (303887)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
jforge@rgrdlaw.com
scotts@rgrdlaw.com
rachelj@rgrdlaw.com
abrane@rgrdlaw.com
malbert@rgrdlaw.com
cdolan@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LENDINGCLUB SECURITIES LITIGATION | Case No. 3:16-cv-02627-WHA |
| | CLASS ACTION |
| This Document Relates To: | LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| ALL ACTIONS. | |
| | DATE:        July 19, 2018 |
| | TIME:        8:00 a.m. |
| | CTRM:       12, 19th Floor |
| | JUDGE:      Honorable William Alsup |

1441875_1

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY  STATEMENT .................................................................2

II.    LITIGATION HISTORY .......................................................................4

III.   THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS
      ACTION SETTLEMENTS .....................................................................6

IV.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
      ADEQUATE................................................................................................9

      A.     The Strength of Lead Plaintiff's Case......................................9

      B.     The Risk, Expense, Complexity, and Likely Duration of Further Litigation ..........9

      C.     The Risk of Maintaining Class Action Status Throughout the Trial ....................11

      D.     The Amount Offered in Settlement..........................................12

      E.     The Extent of Discovery Completed and the Stage of the Proceedings ...............13

      F.     The Settlement Enjoys a Presumption of Reasonableness Because It Was
            Vigorously Negotiated and Is Supported by Experienced, Well-Informed
            Counsel ....................................................................................14

      G.    Presence of a Governmental Participant .................................16

      H.    Reaction of the Class Supports Approval of the Settlement...................................16

V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE....................................17

VI.   THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS
      REQUIREMENTS............................................................................................18

VII.  THE OBJECTION SHOULD BE OVERRULED ......................................................20

VIII. CONCLUSION............................................................................................20

1441875_1

LEAD PLTF'S NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND APPROVAL OF PLAN OF ALLOCATION AND MEMO OF POINTS & AUTHS - 3:16-cv-02627-WHA   - i -

1

# TABLE OF AUTHORITIES

2

Page

3

CASES

4

*Beecher v. Able,*
5    575 F.2d 1010 (2d Cir. 1978)..................................................................17

6

*Brotherton v. Cleveland,*
    141 F. Supp. 2d 894 (S.D. Ohio 2001) ...................................................17
7

*Churchill Village, L.L.C. v. Gen. Elec.,*
8    361 F.3d 566 (9th Cir. 2004) ....................................................................8

9

*Class Plaintiffs v. Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ................................................................17
10

*Destefano v. Zynga, Inc.,*
11    No. 12-cv-04007-JSC, 2016 WL 537946
    (N.D. Cal. Feb. 11, 2016).......................................................................20
12

*Dura Pharms., Inc. v. Broudo,*
13    544 U.S. 336 (2005).................................................................................7

14

*Ellis v. Naval Air Rework Facility,*
15    87 F.R.D. 15 (N.D. Cal. 1980),
    *aff'd*, 661 F.2d 939 (9th Cir. 1981)...................................................14, 15
16

*Hanlon v. Chrysler Corp.,*
17    150 F.3d 1011 (9th Cir. 1998) ..........................................................7, 8, 17

18

*Harris v. Vector Mktg. Corp.,*
19    No. C-08-5198 EMC, 2011 WL 1627973
    (N.D. Cal. Apr. 29, 2011) ......................................................................15
20

*In re Amgen Inc. Sec. Litig.,*
21    No. CV 7-2536 PSG, 2016 WL 10571773
    (C.D. Cal. Oct. 25, 2016) ................................................................. *passim*
22

*In re Bank of Am. Corp.,*
23    772 F.3d 125 (2d Cir. 2014).....................................................................19

24

*In re Chicken Antitrust Litig. Am. Poultry,*
25    669 F.2d 228 (5th Cir. 1982) ...................................................................17

26

*In re ECOtality, Inc. Sec. Litig.,*
27    No. 13-cv-03791-SC, 2015 WL 5117618
    (N.D. Cal. Aug. 28, 2015)........................................................................6

28

1441875_1

LEAD PLTF'S NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND APPROVAL OF PLAN OF ALLOCATION AND MEMO OF POINTS & AUTHS - 3:16-cv-02627-WHA          - ii -

1

2                                                                                    **Page**

3

*In re Gulf Oil/Cities Serv. Tender Offer Litig.,*
    142 F.R.D. 588 (S.D.N.Y. 1992) ........................................................................18

*In re Immune Response Sec. Litig.,*
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)...........................................................9, 12

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ........................................................................7, 13

*In re Mfrs. Life Ins. Co. Premium Litig.,*
    No. 1109, 1998 WL 1993385
    (S.D. Cal. Dec. 21, 1998)..................................................................................11

*In re Omnivision Techs., Inc.,*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................14

*In re Pacific Enters. Sec. Litig.,*
    47 F.3d 373 (9th Cir. 1995) ................................................................................8

*In re Portal Software, Inc. Sec. Litig.,*
    No. C-03-5138 VRW, 2007 WL 4171201
    (N.D. Cal. Nov. 26, 2007)...................................................................................8

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.,*
    229 F. Supp. 3d 1052 (N.D. Cal. 2017)
    enforcement granted, No. 2672 CRB (JSC), 2017 WL 914066
    (N.D. Cal. Mar. 6, 2017) ................................................................................- 16

*In re Wells Fargo Loan Processor Overtime Pay Litig.,*
    No. MDL C-07-1841 (EMC), 2011 WL 3352460
    (N.D. Cal. Aug. 2, 2011)......................................................................................8

*Linney v. Cellular Alaska P'ship,*
    No. C-96-3008 DLJ, 1997 WL 450064
    (N.D. Cal. July 18, 1997),
    *aff'd,* 151 F.3d 1234 (9th Cir. 1998)...............................................................15

*Low v. Trump University, LLC,*
    881 F.3d 1111 (9th Cir. 2018) ..........................................................................19

*Luna v. Marvell Tech. Grp.,*
    No. C 15-05447 WHA, 2018 WL 1900150
    (N.D. Cal. Apr. 20, 2018) .............................................................................8, 19

1441875_1

LEAD PLTF'S NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND APPROVAL OF PLAN OF ALLOCATION AND MEMO OF POINTS & AUTHS - 3:16-cv-02627-WHA          - iii -

1

2                                                                                    **Page**

3

*Mendoza v. Tucson Sch. Dist. No. 1*,
    623 F.2d 1338 (9th Cir. 1980) ...............................................................................19

*Mossberg v. IndyMac Fin., Inc.*,
    No. CV07-1635-GW(VBKx), 2013 WL 12324206
    (C.D. Cal. Jan. 28, 2013) ..........................................................................................8

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)............................................................................................18, 19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)......................................................................7, 8, 17

*Nguyen v. Radient Pharm. Corp.*,
    No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293
    (C.D. Cal. May 6, 2014) .........................................................................................18

*Norris v. Mazzola*,
    No. 15-cv-04962-JSC, 2017 WL 6493091
    (N.D. Cal. Dec. 19, 2017) .......................................................................................14

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ........................................................................... *passim*

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015)..............................................................................................7

*Retta v. Millennium Prods., Inc.*,
    No. CV15-1801 PSG AJWX, 2017 WL 5479637
    (C.D. Cal. Aug. 22, 2017) .......................................................................................17

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ...................................................................................11

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...................................................................................14

*Satchell v. Fed. Express Corp.*,
    No. C03-2878 SI, 2007 WL 1114010
    (N.D. Cal. Apr. 13, 2007) .......................................................................................15

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .....................................................................................7

28

1441875_1

LEAD PLTF'S NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND APPROVAL OF PLAN OF ALLOCATION AND MEMO OF POINTS & AUTHS - 3:16-cv-02627-WHA          - iv -

Page

*White v. NFL*,
  822 F. Supp. 1389 (D. Minn. 1993) ...................................................................18

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(7) .........................................................................................................19

Federal Rules of Civil Procedure
  Rule 23 .........................................................................................................17, 18, 20
  Rule 23(b)(3) ........................................................................................................18
  Rule 23(c)(1) .........................................................................................................11
  Rule 23(c)(2)(B) ....................................................................................................18
  Rule 23(e) .............................................................................................................1, 7
  Rule 23(e)(1) .........................................................................................................18

**SECONDARY AUTHORITIES**

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
  *Securities Class Action Settlements: 2017 Review and Analysis*,
  (Cornerstone Research 2018) ...............................................................................12

Stefan Boettrich and Svetlana Starykh,
  *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review*,
  (NERA 2018) ........................................................................................................12

1441875_1

LEAD PLTF'S NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND APPROVAL OF PLAN OF ALLOCATION AND MEMO OF POINTS & AUTHS - 3:16-cv-02627-WHA        – v –

1

## NOTICE OF MOTION

2    **TO:**    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

3            PLEASE TAKE NOTICE that on July 19, 2018, at 8:00 a.m., or as soon thereafter as counsel

4 may be heard, in the Courtroom of the Honorable William Alsup, United States District Judge, at the

5 United States District Court for the Northern District of California, 450 Golden Gate Avenue, San

6 Francisco, CA 94102, Lead Plaintiff Water and Power Employees' Retirement, Disability and Death

7 Plan of the City of Los Angeles ("Lead Plaintiff" or "WPERP") will respectfully move, pursuant to

8 Federal Rule of Civil Procedure 23(e), for entry of an order approving plan of allocation and

9 judgment.  Lead Plaintiff's motion is based on the following Memorandum in support thereof; the

10 Declaration of Jason A. Forge in Support of Lead Plaintiff's Motion for Final Approval of Class

11 Action Settlement and Approval of Plan of Allocation and Lead Counsel's Motion for an Award of

12 Attorneys' Fees and Expenses ("Forge Decl."); the Declaration of Jeremy Wolfson Filed on Behalf

13 of the Department of Water and Power Employees' Retirement Plan in Support of Motion for Final

14 Approval of the Settlement and Award of Attorneys' Fees and Expenses ("Wolfson Decl."); the

15 Declaration of Mishka Ferguson Regarding Notice Dissemination, Publication, Requests for

16 Exclusion Received to Date, Interim Claims Processing, and Estimate of Administration Fees and

17 Expenses ("Ferguson Decl."); the Stipulation of Settlement, dated February 21, 2018 ("Stipulation");

18 all other pleadings and matters of record; and such additional evidence and testimony as may be

19 presented before or at the hearing.

20

## STATEMENT OF ISSUES TO BE DECIDED

21            Whether the Court should grant final approval of the proposed class action settlement and the

22 Plan of Allocation.

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     PRELIMINARY  STATEMENT**

Lead Plaintiff requests that this Court grant final approval of the settlement of this action for $125,000,000 in cash (plus interest).  The terms of the settlement are set forth in the Stipulation,[1] which the Court preliminarily approved on March 16, 2018.  ECF 343.  The settlement is the result of hard-fought litigation and arm's-length settlement negotiations with the substantial assistance of Chief  Magistrate Judge Joseph C. Spero.  Lead Plaintiff and its counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Lead Counsel"), believe that the $125 million settlement, which represents  approximately  17%  of  estimated  recoverable  damages  at  trial,[2]  is  an  outstanding resolution of this complex litigation under any measure.  *See generally* Forge Decl.

Lead Counsel has zealously prosecuted this case from its commencement through settlement, against determined opposition.  From the outset, Defendants, who are represented by some of the most qualified defense lawyers in the country, asserted multiple defenses, adamantly denied liability, and were preparing motions and defenses that could potentially limit or altogether bar recovery for the Class.

The settlement was reached at an advanced stage of the litigation and only after Lead Plaintiff and Lead Counsel had a firm understanding of the strengths and weaknesses of Lead Plaintiff's claims.  As set forth in more detail in the Forge Declaration, the settlement was achieved only after Lead Plaintiff and/or Lead Counsel, *inter alia:* (a) demonstrated its ability to serve as a competent lead plaintiff and manage this litigation, and executed a scrupulous selection process for lead counsel; (b) filed a  detailed complaint; (c)  successfully  opposed Defendants' motions to dismiss; (d) moved to strike the majority of Defendants' affirmative defenses, which led to them withdrawing 115 of 154 of their affirmative defenses and amending the remaining defenses;

---

[1]    Capitalized terms not otherwise defined herein have the same meanings as those ascribed to them in the Stipulation (ECF 333-1).

[2]    If LendingClub proved incapable of paying for all recoverable damages, it would be very difficult to collect any judgment under the Securities Exchange Act of 1934 (the "Exchange Act"), and the remaining corporate defendants would face only approximately $140 million in damages under the Securities Act of 1933 (the "1933 Act").  In this circumstance, the $125 million settlement would represent nearly 90% of the estimated recoverable damages at trial.

1   (e) prevailed against six law firms to obtain class certification; (f) litigated multiple discovery

2   motions involving privilege and confidentiality designations, leading to the production of over

3   1 million pages of additional evidence for the Class, and, in lieu of still more documents, obtained an

4   order allowing Lead Plaintiff to argue at trial that the Underwriter Defendants could have waived the

5   attorney-client privilege as to thousands of withheld documents but chose not to, and that parts of the

6   story concealed under these privilege claims would have been unfavorable to the Underwriter

7   Defendants; (g) reviewed and analyzed the electronic equivalent of over 3.2 million pages of

8   documents from Defendants and over 500,000 pages of documents from third parties; (h) deposed

9   two defendants, and, at the time this settlement was reached, had scheduled, formed teams to

10  prepare, and was preparing to take 20 additional fact witness depositions; (i) retained numerous

11  experts, including on damages, accounting, and due diligence issues to analyze the evidence to date

12  and begin preparing its expert reports; and (j) assessed the risks of prevailing on the claims at trial

13  and on appeal.

14          Lead Plaintiff and Lead Counsel believe that the $125 million settlement represents a highly

15  favorable result for the Class and fully takes into consideration the procedural posture of the case

16  and risks of continued litigation.  This includes the substantial risks, expense, and uncertainties in

17  continuing the action through completion of fact and expert discovery, summary judgment

18  motion(s), trial, and probable appeal; the relative strengths and weaknesses of the claims and

19  defenses asserted; a thorough analysis of the evidence obtained and the legal and factual issues

20  presented; past experience in litigating securities class actions similar to the present action; and the

21  serious disputes between the parties concerning the merits of Lead Plaintiff's claims.  If not for this

22  settlement, the case would have continued to be fiercely contested with the ultimate outcome

23  uncertain.  Defendants demonstrated a commitment to defend this case and are represented by well-

24  respected and highly capable counsel.

25          While the deadline for filing objections, June 25, 2018, has not yet passed, Class Members

26  appear to agree with Lead Counsel's conclusion.  Pursuant to the Court's Order Approving Amended

27  Proposed Notices ("Notice Order") (ECF 348), to date, over 104,600 copies of the Notice of

28  Pendency and Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release

1441875_1

LEAD PLTF'S NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND APPROVAL OF PLAN OF ALLOCATION AND MEMO OF POINTS & AUTHS - 3:16-cv-02627-WHA          - 3 -

1    ("Proof of Claim" and, together with the Notice, the "Notice Package") have been sent to potential

2    Class Members and nominees.  *See* Ferguson Decl., ¶11.  A Summary Notice was also published in

3    *The Wall Street Journal* and transmitted over *BusinessWire* on April 23, 2018.  *Id.*, ¶13.  On April 9,

4    2018, copies of the Stipulation, Notice Package, and Notice Order were also placed on a case-

5    specific settlement website, identified in the Notice Package and Summary Notice.  *Id.*, ¶15.  The

6    Notice informed potential Class Members of the terms of the settlement, their right to object or opt-

7    out of the settlement and the procedure for doing so, the Plan of Allocation, and counsel's request for

8    an award of attorneys' fees and expenses.  To date, only one Class Member has objected to the

9    settlement.  This objection is addressed below, and, in accordance with the Notice Order, will be

10   addressed by Lead Counsel on or before July 2, 2018, along with any other objections.

11        For all of the reasons discussed herein and in the Forge Declaration, it is respectfully

12   submitted that the settlement is fair, adequate, and reasonable and therefore should be finally

13   approved by the Court.  Moreover, the Plan of Allocation was developed in consultation with

14   experts, reflects a rational and equitable method of allocating the Net Settlement Fund among

15   Authorized Claimants, and is tailored to account for fluctuations in the price of LendingClub

16   common stock during the Class Period.  As a result, the Plan of Allocation should be approved.

17   **II.    LITIGATION HISTORY**

18        The initial complaint in this matter was filed on May 16, 2016, in the United States District

19   Court for the Northern District of California.  On August 15, 2016, the Court ordered the

20   consolidation of two related cases and appointed WPERP as lead plaintiff.  ECF 90.  In its Order, the

21   Court instructed WPERP to hold a transparent selection process whereby it would receive

22   applications from law firms seeking to serve as lead counsel.  *Id.*  WPERP received and reviewed

23   responses from nine law firms.  ECF 97.  On October 28, 2016, following an *in camera* conference

24   with representatives from the Los Angeles City Attorney's Office (the "L.A. City Attorney") and a

25   member of the Board of WPERP, this Court approved Lead Plaintiff's selection of Robbins Geller as

26   lead counsel.  ECF 113.

27        Thereafter, Lead Plaintiff filed the Consolidated Complaint for Violation of the Federal

28   Securities Laws ("Consolidated Complaint") on December 9, 2016.  ECF 127.  The Consolidated

1    Complaint alleged violations of §§11 and 15 of the 1933 Act and of §§10(b) and 20(a) of the

2    Exchange Act. *Id.* Lead Plaintiff alleged that Defendants made materially false and misleading

3    statements and/or failed to disclose adverse information regarding LendingClub's internal controls,

4    related-party transactions, and data integrity and security. Lead Plaintiff also alleged that the

5    registration statement contained materially false and/or misleading statements concerning the same

6    topics. Lead Plaintiff further alleged that this conduct caused the price of LendingClub common

7    stock to be artificially inflated.

8           On January 20, 2017, Defendants filed three separate motions to dismiss the Consolidated

9    Complaint. ECFs 139, 142, 148. On February 10, 2017, Lead Plaintiff filed its omnibus opposition

10   brief to Defendants' motions to dismiss. ECF 156. On May 25, 2017, the Court denied Defendants'

11   motions as to all of Lead Plaintiff's claims, but granted the motions as to certain allegations, with

12   leave to amend. ECF 181. Lead Plaintiff then filed the Amended Consolidated Complaint for

13   Violation of the Federal Securities Laws ("Amended Complaint") on June 15, 2017. ECF 182.

14   Defendants filed their answers to the Amended Complaint on June 29, 2017. ECFs 185, 186, 188,

15   189. Lead Plaintiff moved to strike the majority of Defendants' affirmative defenses (ECFs 193,

16   206), which led to Defendants filing amended answers to the Amended Complaint, striking 115 of

17   the 154 affirmative defenses they had originally asserted and amending those that remained. ECFs

18   200, 201, 202, 203.

19          Thereafter, Lead Plaintiff and Defendants engaged in extensive discovery. Lead Counsel

20   sought documents from the Defendants and from third parties, resulting in the production of over

21   3.7 million pages of documents. The parties met and conferred on several occasions to determine

22   the proper scope of production and litigated various discovery disputes where an agreement could

23   not be reached. Lead Counsel defended one deposition, took two fact depositions, and was actively

24   preparing to take an additional 20 in the coming months.

25          On September 7, 2017, Lead Plaintiff filed its motion for class certification. ECF 215. On

26   September 21, 2017, the Defendants filed their opposition to class certification. ECFs 223-226.

27   Counsel for the plaintiffs in the parallel state court action also moved to intervene to oppose Lead

28

1  Plaintiff's motion for class certification.  ECF 221.  Thereafter, on October 20, 2017, the Court

2  granted the motion for class certification.  ECF 252.

3  On November 28, 2017, the parties attended a court-ordered settlement conference before

4  Chief Magistrate Judge Joseph Spero, but were ultimately unable to reach an agreement.  ECF 280.

5  The parties attended a second settlement conference on January 29, 2018, pursuant to this Court's

6  order.  ECF 311.  Preceding the conference, the parties submitted and exchanged updated settlement

7  conference statements.  Lead Plaintiff's submission was extensive and is available for the Court's

8  consideration *in camera*.[3]  The parties engaged in arm's-length negotiations during the settlement

9  conference, and reached an agreement-in-principle for $125,000,000 on the terms set forth in the

10  Stipulation, subject to Court approval.  On February 21, 2018, Lead Plaintiff filed an unopposed

11  motion for preliminary approval of the settlement.  ECF 333.  After a hearing, the Court entered an

12  order granting preliminary approval of the settlement.  ECF 343.  In the same order, the Court

13  appointed Gilardi & Co. LLC as claims administrator but requested that Lead Counsel resubmit the

14  proposed notices with certain specified revisions.  The Court approved the amended proposed

15  notices on March 26, 2018.  ECF 348.

16  **III.    THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS
        ACTION SETTLEMENTS**

17

18  It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the

19  preferred means of dispute resolution."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

20  625 (9th Cir. 1982); *see also In re ECOtality, Inc. Sec. Litig*., No. 13-cv-03791-SC, 2015 WL

21  5117618, at *2 (N.D. Cal. Aug. 28, 2015) ("Despite the importance of fairness, the Court must also

22  be mindful of the Ninth's Circuit's policy favoring settlement, particularly in class action lawsuits.").

23  To determine whether a class action settlement should be finally approved, the Court should

24  balance the continuing risks of litigation against the benefits afforded to the Class and the immediacy

25

26  _____

27  [3]    Because Lead Counsel's work product comprises portions of this document that have not been
shared with Defendants and other portions reflect information that Defendants have deemed
confidential, this document is not appropriate for filing.

28

1441875_1

LEAD PLTF'S NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND APPROVAL OF PLAN OF ALLOCATION AND MEMO OF POINTS & AUTHS - 3:16-cv-02627-WHA                - 6 -

1   and certainty of a substantial recovery.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th

2   Cir. 2000); *Officers for Justice*, 688 F.2d at 625.  In other words,

3       "[t]he Court shall consider the vagaries of litigation and compare the significance of
        immediate recovery by way of the compromise to the mere possibility of relief in the
4       future, after protracted and expensive litigation.  In this respect, 'It has been held
        proper to take the bird in hand instead of a prospective flock in the bush.'"
5
    *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).[4]
6
7       To prove liability under the 1933 Act, Lead Plaintiff must demonstrate: (1) that the

8   registration statement contained an omission or misrepresentation, and (2) that the omission or

9   misrepresentation was material.  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension*

10  *Fund*, 135 S. Ct. 1318, 1320-21 (2015).  Additionally, to prove liability under the Exchange Act,

11  Lead Plaintiff must "show that (1) Defendants were responsible for allowing materially false or

12  misleading representations to enter the market, (2) Defendants acted with scienter, (3) Plaintiffs'

13  losses were caused by Defendants' misrepresentations, and (4) Class Representative and the class

14  members suffered damages."  *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAx), 2016 WL

15  10571773, at *2 (C.D. Cal. Oct. 25, 2016) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-

16  42 (2005)).

17      In deciding whether to approve a proposed settlement of a securities class action under Rule

18  23(e), the court must first find that the proposed settlement is "fair, adequate and reasonable," and

19  "'it is the settlement taken as a whole, rather than the individual component parts, that must be

20  examined for overall fairness.'"  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting

21  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  The Ninth Circuit has provided

22  factors that may be considered in evaluating the fairness of a class action settlement:

23      (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely
        duration of further litigation; (3) the risk of maintaining class action status
24      throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery
        completed, and the stage of the proceedings; (6) the experience and views of counsel;
25      (7) the presence of a governmental participant; and (8) the reaction of the class
        members to the proposed settlement.
26

27  _____

28  [4]   Here, and throughout, citations are omitted unless otherwise noted.

*Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Luna v. Marvell Tech. Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at *2 (N.D. Cal. Apr. 20, 2018).

Courts have also considered "the role taken by the lead plaintiff in [the settlement] process, a factor somewhat unique to the PSLRA." *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007). "The relative degree of importance to be attached to any particular factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

The Court begins its analysis with a presumption of fairness if: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *Mossberg v. IndyMac Fin., Inc.*, No. CV07-1635-GW(VBKx), 2013 WL 12324206, at *2 (C.D. Cal. Jan. 28, 2013) (citing *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)); *Nat'l Rural*, 221 F.R.D. at 528.

In determining whether to grant final approval, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. "As the Ninth Circuit has noted, 'Settlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion.'" *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. MDL C-07-1841 (EMC), 2011 WL 3352460, at *4 (N.D. Cal. Aug. 2, 2011) (quoting *Hanlon*, 150 F.3d at 1026-27).

The settlement here readily satisfies the applicable standards for final approval. It results from serious, arm's-length negotiations between the parties, extensive motion practice, and thorough investigation and analysis of the documentary evidence. The settlement is fair, reasonable, and adequate given the parties' respective litigation risks and the risk of LendingClub not being able to withstand a verdict.

1441875_1

LEAD PLTF'S NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND MEMO OF POINTS & AUTHS - 3:16-cv-02627-WHA      - 8 -

1    **IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND**
2           **ADEQUATE**

3           **A.    The Strength of Lead Plaintiff's Case**

4           Lead Plaintiff believes that based on the evidence unearthed to date, including witness

5    interviews, the review of over 3.7 million pages of documents produced by Defendants and several

6    non-parties, and depositions, it had a strong case as to liability, and Lead Plaintiff would have

7    offered compelling evidence that LendingClub's offering documents contained material

8    misstatements and omissions regarding the Company's internal controls, data integrity and security,

9    and related-party transactions, that LendingClub and Laplanche made material misstatements and

10   omissions regarding LendingClub's related-party transactions, and that LendingClub, Laplanche,

11   and Dolan made material misstatements and omissions regarding LendingClub's internal controls.

12   Forge Decl., ¶9.  Lead Plaintiff believes it can show that defendants LendingClub, Laplanche, and

13   Dolan knowingly (or at least recklessly) created a misleading impression to the Company's

14   investors, and that when revealed to the market at the end of the Class Period, caused shareholders to

15   be injured.  *Id.*  Predictably, Defendants have a very different take on what the evidence shows.

16          **B.    The Risk, Expense, Complexity, and Likely Duration of Further**
                   **Litigation**

17          Lead Plaintiff recognizes, however, that it faced a number of risks if litigation were to

18   continue.  In particular, one challenge is to prove scienter, *i.e.*, that Defendants acted with knowledge

19   of or with recklessness as to the alleged falsity of their statements and omissions.  A defendant's

20   state of mind in a securities case is often the most difficult element of proof and one that is rarely

21   supported by direct evidence such as an admission.  *Amgen*, 2016 WL 10571773, at *3; *see also In*

22   *re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (noting that scienter is

23   a "complex and difficult [element] to establish at trial").  Thus, it was quite possible that Lead

24   Plaintiff would procure documentary and testimonial evidence from all Defendants and others with

25   knowledge about the relevant facts, yet not be able to adduce sufficient evidence to satisfy its burden

26   of proof on this issue at trial.

27

28

1    In addition to proving liability, Lead Plaintiff would also have to defeat Defendants'

2   affirmative defenses in order to succeed at trial. Defendants have maintained several affirmative

3   defenses throughout the litigation, which, if successfully established, could have undermined Lead

4   Plaintiff's claims entirely.  For example, the Underwriter Defendants and the Director Defendants

5   have asserted a "due diligence" defense, arguing that they had a reasonable process in place to

6   ensure that information provided to investors through the offering documents was accurate and

7   complete, and thus they reasonably believed in the truth of the representations made in the offering

8   documents.  Although it would be Defendants' burden to establish this defense, WPERP would be

9   required to put forth considerable evidence to rebut Defendants' assertion of the defense.

10    While Lead Plaintiff aggressively pursued discovery and believes that it obtained sufficient

11   evidence to support its claims, for the Class to ultimately prevail, it would have to survive

12   Defendants' inevitable motion – or even motions – for summary judgment.  Summary judgment

13   would pose a number of risks to the Class, including possibly shortening the Class Period, otherwise

14   limiting damages, or losing the entire case.  Defendants, just like Lead Plaintiff, would present their

15   strongest evidence to the Court.  Lead Plaintiff would have to demonstrate that a genuine issue of

16   material fact existed with regard to each element of its claims.

17    Assuming Lead Plaintiff survived the motion(s) for summary judgment, Defendants'

18   *Daubert* motions would pose many of the same risks.  If Lead Plaintiff passed this gauntlet,

19   presenting these complex issues to a jury posed significant risks.  Lead Plaintiff could not be certain

20   that a jury would see through the complexity of the underlying facts to the heart of the alleged fraud.

21   Moreover, the risks of establishing liability posed by complex issues with conflicting testimony,

22   including from experts, and other evidence would be exacerbated by the risks inherent in all complex

23   litigation, including the unpredictability of a lengthy jury trial, the risk that witnesses could be

24   unavailable or jurors could react to the evidence in unforeseen ways, the risk that a jury would find

25   that some or all of the alleged misrepresentations were not material, the risk that the jury could find

26   that Defendants believed in the appropriateness of their actions at the time, and the risk of a

27   compromise verdict even if the jury is convinced of liability as to some defendants on some claims.

28

1    In addition to avoiding the foregoing risks, this settlement avoids the substantial expense and

2    time of continued litigation.  Given the complex issues presented in this case, the trial would likely

3    take weeks to complete.  Defendants would certainly file post-trial motions and appeals to limit or

4    overturn any verdict in Lead Plaintiff's favor.  The post-trial motions and appeals process would

5    likely span several years, during which time the Class would receive no payment.  In addition, an

6    appeal of any verdict would carry with it the risk of reversal, or a change in law, in which case the

7    Class would receive no payment despite having prevailed on the claims at trial.  *See In re Mfrs. Life*

8    *Ins. Co. Premium Litig.*, No. 1109, 1998 WL 1993385, at *5 (S.D. Cal. Dec. 21, 1998) ("[E]ven if it

9    is assumed that a successful outcome for plaintiffs at summary judgment or trial would yield a

10   greater recovery than the Settlement – which is not at all apparent – there is easily enough

11   uncertainty in the mix to support settling the dispute rather than risking no recovery in future

12   proceedings.").

13        Lead Plaintiff faced the additional risk that had it prevailed at trial and obtained a favorable

14   verdict and prevailed on Defendants' inevitable appeal, LendingClub would be unable to pay the

15   judgment.  In reaching the settlement, Lead Plaintiff circumvented this risk.  The time, expense, and

16   uncertainty of continuing to prosecute this litigation through trial, then through post-trial motions

17   and appeals, supported the conclusion that the settlement provides a fair and reasonable outcome for

18   the Class.  The settlement will spare the litigants the significant delay, risk, and expense of continued

19   litigation.  The appellate process could deny the Class any recovery for years, which would further

20   reduce its value.

21        The $125 million Settlement Amount, at this juncture, is an immediate and substantial cash

22   recovery, without these considerable risks.  *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284

23   (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years

24   from now.").

25        **C.    The Risk of Maintaining Class Action Status Throughout the Trial**

26        Even though the Court granted class certification, Rule 23(c)(1) provides that a class

27   certification order may be altered or amended at any time before a decision on the merits.  Based on

28   further discovery completed after the Court ruled on certification, Defendants could have moved to

1441875_1

LEAD PLTF'S NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND APPROVAL OF PLAN OF ALLOCATION AND MEMO OF POINTS & AUTHS - 3:16-cv-02627-WHA        - 11 -

1    decertify the Class or to shorten the Class Period.  *See, e.g.*, *Immune Response*, 497 F. Supp. 2d at

2    1172 (finding risk that defendants would attempt to shorten the class period based on evidence

3    produced during discovery supported settlement).  This is not a purely hypothetical risk here.

4    Defendants had already staked out, and were actively developing, the argument that LendingClub's

5    admitted material weakness in internal control did not exist at the time of the IPO.  Forge Decl., ¶85;

6    *see also* ECF 139 at 21-22; ECF 162 at 17-18.

7         **D.     The Amount Offered in Settlement**

8         The proposed settlement represents a recovery of approximately 17% of estimated total

9    recoverable damages at trial of $711 million.  Federal courts regularly approve securities fraud

10   settlements securing far less recovery.  A 2018 Cornerstone Research report found that in securities

11   fraud settlements from 2008-2017 with both Rule 10b-5 and Section 11 and/or Section 12(a)(2)

12   claims, such as this one, the median recovery was $12.8 million.[5]  Similarly, a January 2018 study

13   by National Economic Research Associates, Inc., found that the median ratio of "[s]ettlement to

14   [i]nvestor [l]osses," as measured annually between 2008 and 2017, was between 1.3% and 2.7%.[6]

15   Thus, the proposed settlement is nearly 10 times the median recovery, and approximately 6 to 13

16   times the median percentage recovery.  And if LendingClub proved incapable of withstanding a

17   verdict, the $125 million settlement would represent nearly 90% of estimated recoverable damages

18   at trial against the remaining corporate defendants, or approximately 33 to 69 times the median

19   percentage recovery in securities fraud suits.  Accordingly, the Settlement Amount weighs in favor

20   of final approval.

21        Another way to put this $125 million recovery into context is to compare it to the results of

22   the SEC and DOJ investigations.  These investigations were not constrained by the Private Securities

23

24   [5]   *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements:*
     *2017 Review and Analysis*, at 9, Figure 8 (Cornerstone Research 2018), available at
25   https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2017-
     Review-and-Analysis.pdf.
26
     [6]   *See* Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2017*
27   *Full-Year Review*, at 38, Figure 29 (NERA 2018), available at http://www.nera.com/
     content/dam/nera/publications/2018/PUB_Year_End_Trends_Report_0118_final.pdf.
28

1   Litigation Reform Act of 1995's ("PSLRA") discovery stay, which gave the government about a 14-

2   month head start on Lead Plaintiff.  Forge Decl., ¶61.  Nor do SEC or DOJ attorneys have to

3   overcome motions to dismiss or file motions for class certifications.  The DOJ lawyers do not even

4   have to deal with counsel for witnesses whom they question before a grand jury, nor do they have to

5   ask for documents – they can seize them through search warrants.  Moreover, witnesses are a lot less

6   likely to turn away an SEC investigator or FBI agent who wants to speak with them than a plaintiff's

7   lawyer.  Yet, despite all these advantages, the government has not brought a single civil or criminal

8   charge in connection with these same facts.  Nor has the government recovered a single penny for

9   investors.  Relative to the government's results, a $125 million recovery is astounding.

10          **E.       The Extent of Discovery Completed and the Stage of the Proceedings**

11                 The settlement comes at a sufficiently advanced stage shortly before the end of the discovery

12   process, dispositive proceedings, and trial where Lead Plaintiff and Lead Counsel were able to make

13   an intelligent evaluation of the strengths and weaknesses of Lead Plaintiff's case and the propriety of

14   settlement.  *See Officers for Justice*, 688 F.2d at 625; *Mego Fin.*, 213 F.3d at 458.  As discussed

15   above and in the Forge Declaration, Lead Counsel conducted an extensive investigation of the facts

16   alleged; interviewed numerous witnesses; consulted with and engaged experts on a number of issues,

17   including accounting, damages, and due diligence; fully briefed Defendants' motions to dismiss; and

18   fully briefed and argued Lead Plaintiff's motion for class certification.  Forge Decl., ¶¶32-35, 70-87.

19   In addition, Lead Plaintiff demanded, obtained, and reviewed approximately 3.7 million pages of

20   documents from Defendants and non-parties, litigated multiple discovery motions, involving

21   privilege and confidentiality designations, took 2 depositions in addition to preparing for 20 more.

22   *Id.*, ¶¶39-66.  The parties also participated in extensive negotiations, including two in-person

23   settlement conferences where the parties' claims and defenses were fully vetted. *Id.*, ¶¶93-96. Prior

24   to both settlement conferences, the parties submitted to Chief Magistrate Judge Spero detailed

25   briefings that further highlighted the factual and legal issues in dispute.  *Id.*  As a result, Lead

26   Plaintiff and Lead Counsel were able to assess the strengths and weaknesses of the claims asserted

27   and resolve the litigation on a highly favorable basis for the Class.  *See Amgen*, 2016 WL 10571773,

28   at *4 ("The more discovery that has been completed, the more likely it is that the parties have 'a

1   clear view of the strengths and weaknesses of their cases.'"").  Chief Magistrate Judge Spero was also

2   able to assess these strengths and weaknesses when calculating his mediator's proposal.

3        **F.    The Settlement Enjoys a Presumption of Reasonableness Because It
             Was Vigorously Negotiated and Is Supported by Experienced, Well-
4            Informed Counsel**

5        The opinion of experienced counsel supporting a class settlement after arm's-length

6   negotiations is entitled to considerable weight.  *Norris v. Mazzola*, No. 15-cv-04962-JSC, 2017 WL

7   6493091, at *8 (N.D. Cal. Dec. 19, 2017); *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15,

8   18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the

9   settlement after hard-fought negotiations is entitled to considerable weight."), *aff'd*, 661 F.2d 939

10  (9th Cir. 1981).  This is especially so in this case, in which Lead Plaintiff undertook a scrupulous

11  selection process for lead counsel.  Lead Counsel has significant experience in securities and other

12  complex class action litigation and has negotiated numerous other substantial class action

13  settlements throughout the country.  *See* www.rgrdlaw.com.  Here, "[t]here is nothing to counter the

14  presumption that Lead Counsel's recommendation is reasonable."  *In re Omnivision Techs., Inc.*, 559

15  F. Supp. 2d 1036, 1043 (N.D. Cal. 2008); *Amgen*, 2016 WL 10571773, at *4.

16       Lead Plaintiff actively litigated this case since being appointed by this Court, defeating

17  Defendants' motions to dismiss, and obtaining class certification.  At the same time, Lead Counsel

18  aggressively pursued discovery from Defendants and numerous third parties and developed evidence

19  in support of the claims asserted in the action.  Forge Decl., ¶¶39-66.  By the time settlement

20  discussions began, Lead Counsel had a firm understanding of the strengths and weaknesses of the

21  claims, both factually and legally.  *Id.*, ¶¶93-96.  In connection with the settlement negotiations,

22  Lead Counsel consulted with sophisticated experts who assisted Lead Plaintiff in preparing for

23  settlement discussions and developing the Plan of Allocation.  *Id.*, ¶¶84-85, 87.

24       The settlement, which was extensively negotiated between the parties and carefully guided

25  by Chief Magistrate Judge Spero, provides a substantial and certain cash benefit to the Class in the

26  amount of $125 million. The Ninth Circuit "put[s] a good deal of stock in the product of an arms-

27  length, non-collusive, negotiated resolution" in approving a class action settlement.  *Rodriguez v.*

28

1    *West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  Here, the settlement enjoys a presumption of

2    fairness because it is the product of extensive arm's-length negotiations conducted by experienced

3    and capable counsel with a firm understanding of the strengths and weaknesses of their respective

4    client's positions.[7]

5        On November 28, 2017, the first settlement conference took place, which was attended by

6    counsel for all parties in the federal and state litigations.  Before the settlement conference, the

7    parties provided Judge Spero with comprehensive settlement statements and supporting exhibits

8    identifying key evidence.  Forge Decl., ¶93.  The parties did not reach an agreement during this first

9    session.  *Id.*  The parties in this action and the state court action attended a second settlement

10   conference on January 29, 2018.  *Id.*, ¶94.  Prior to this second conference, the parties submitted and

11   exchanged updated statements with supporting exhibits.  At the conclusion of an extended day of

12   arm's-length negotiations by Lead Counsel, counsel for Defendants, and State Lead Counsel, Judge

13   Spero issued the mediator's proposal of $125 million for a global resolution of all claims.  *Id.*

14       Courts have recognized that "[t]he assistance of an experienced mediator in the settlement

15   process confirms that the settlement is non-collusive."  *Satchell v. Fed. Express Corp.*, No. C03-

16   2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Harris v. Vector Mktg. Corp.*,

17   No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).  Here, Magistrate Judge

18   Spero played a very active role in bringing about this settlement.

19       Representatives of Lead Plaintiff and the L.A. City Attorney were present for both mediation

20   sessions.  In the days following the second session, representatives of Lead Plaintiff and the L.A.

21   City Attorney took time, both with and without the assistance of Lead Counsel, to consider the pros

22   and cons of the mediator's proposal, the risks and expense of continued litigation, Lead Counsel's

23   assessment of the strength and weaknesses of the case based on discovery conducted to date, and the

24   Settlement Amount in light of both best and worst case-scenarios.  Forge Decl., ¶95; Wolfson Decl.,

25   ¶5.  These discussions took place during over a dozen phone calls and several meetings and required

---

26   [7]    *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal.
27   July 18, 1997) ("the fact that the settlement agreement was reached in arm's length negotiations,
     after relevant discovery ha[s] taken place create[s] a presumption that the agreement is fair"), *aff'd*,
28   151 F.3d 1234 (9th Cir. 1998); *Ellis*, 87 F.R.D. at 18.

1  Lead Plaintiff to request that Judge Spero extend his deadline.  *Id*.  Finally, after a week of

2  deliberation, Lead Plaintiff elected to accept the mediator's proposal.  *Id*.

3       The agreement-in-principle was followed by extensive negotiations between the parties

4  regarding the detailed terms of the settlement, including the scope of the releases, the timing of the

5  funding of the settlement, and the form and content of the Notice to be sent to the Class.  Forge

6  Decl., ¶96.  These facts establish that the settlement is the result of hard-fought, arm's-length

7  negotiations and "not the product of fraud or overreaching by, or collusion between, the negotiating

8  parties."  *Officers for Justice*, 688 F.2d at 625.

9       **G.**    **Presence of a Governmental Participant**

10       WPERP is a public pension fund, and the L.A. City Attorney has assisted WPERP

11  throughout this litigation.  In other cases, lack of objection from governmental agencies involved in

12  related investigations has tipped this factor in favor of final approval.  *See, e.g.*, *In re Volkswagen*

13  *"Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 229 F. Supp. 3d 1052, 1067 (N.D. Cal.

14  2017), enforcement granted, No. 2672 CRB (JSC), 2017 WL 914066 (N.D. Cal. Mar. 6, 2017).

15  Here, where we have actual public and governmental participation throughout this litigation,

16  including the settlement discussions and the ultimate settlement decision, this factor weighs heavily

17  in favor of final approval.

18       **H.**    **Reaction of the Class Supports Approval of the Settlement**

19       In evaluating the fairness, reasonableness, and adequacy of a settlement, courts consider the

20  reaction of the class.  *Amgen*, 2016 WL 10571773, at *4.  Pursuant to this Court's Notice Order, the

21  Court-approved Notice and Proof of Claim were mailed to potential Class Members who could be

22  identified with reasonable effort.[8]  In addition, the Summary Notice was published in *The Wall Street*

23  *Journal* and transmitted over *Business Wire* on April 23, 2018 (*id.*, ¶13), and the Stipulation, Notice

24  Package, and Notice Order were posted to a website dedicated to the settlement

25  (www.LendingClubSecuritiesClassAction.com) on April 9, 2018.  *Id.*, ¶15.  The Notice advised the

26  Class of the terms of the settlement, the Plan of Allocation, and counsel's request for an award of

27  ―――――――――――――――

28  [8]   *See* Ferguson Decl., ¶¶4-11.

1   attorneys' fees and expenses, the division of fees between Federal and State Lead Counsel, and the

2   procedure and deadline for filing objections and opting out of the Class.  While the objection

3   deadline – June 25, 2018  – has not yet passed, to date, one Class Member has filed an objection to

4   the settlement, as discussed below.[9]  This number could certainly increase, but as of this filing, it

5   weighs in favor of approval.

6       "[T]he fact that the overwhelming majority of the class willingly approved the offer and

7   stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*,

8   150 F.3d at 1027; *see also Retta v. Millennium Prods., Inc.*, No. CV15-1801 PSG AJWX, 2017 WL

9   5479637, at *6 (C.D. Cal. Aug. 22, 2017) ("'It is established that the absence of a large number of

10  objections to a proposed class action settlement raises a strong presumption that the terms of a

11  proposed class action settlement are favorable to the class members.'") (quoting *Nat'l Rural*, 221

12  F.R.D. at 528-29).  Of course, "[t]he fact that some class members object to the Settlement does not

13  by itself prevent the court from approving the agreement." *Brotherton v. Cleveland*, 141 F. Supp. 2d

14  894, 906 (S.D. Ohio 2001).

15      Each of the above factors fully supports a finding that the settlement is fair, reasonable, and

16  adequate, and therefore deserves this Court's final approval.

17  **V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

18      Lead Plaintiff also seeks approval of the Plan of Allocation.  The Plan of Allocation is set

19  forth in full in the Notice mailed to potential Class Members.  Ferguson Decl., Ex. A (Notice) at 14-

20  16.

21      Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 is

22  governed by the same standards of review applicable to the settlement as a whole – the plan must be

23  fair and reasonable.  *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *Amgen*,

24  2016 WL 10571773, at *7.  District courts enjoy "broad supervisory powers over the administration

25  of class-action settlements to allocate the proceeds among the claiming class members . . .

26  equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust*

27  ---
    [9]   In accordance with the Notice Order, any objections will be addressed by Lead Counsel on or

28  before July 2, 2018.

1   *Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  An allocation formula need only have a

2   reasonable, rational basis, particularly if recommended by "experienced and competent" class

3   counsel.  *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993); *In re Gulf Oil/Cities Serv. Tender*

4   *Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992); *see also Nguyen v. Radient Pharm. Corp.*, No.

5   SACV 11-00406 DOC (MLGx), 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014).

6        The Plan of Allocation here provides an equitable basis to allocate the Net Settlement Fund

7   among all Authorized Claimants (Class Members who submit an acceptable Proof of Claim and who

8   have a recognized loss under the Plan of Allocation).  The Plan of Allocation was developed by Lead

9   Counsel in both cases with the assistance of damages experts from both cases and is "grounded in a

10  formula that will compensate class members for the losses related to their" purchases of

11  LendingClub common stock.  *Amgen*, 2016 WL 10571773, at *8.  Individual claimants' recoveries

12  will depend upon when during the Class Period they bought LendingClub stock, and whether and

13  when they sold their shares.  Authorized Claimants will recover their proportional "pro rata" amount

14  of the Net Settlement Fund based on their recognized loss, as set forth in the Plan of Allocation.  The

15  Claims Administrator will calculate claimants' recognized losses using the transactional information

16  provided by claimants in their claim forms.  As a result, the Plan of Allocation will result in a fair

17  distribution of the available proceeds among Class Members who submit valid claims and therefore

18  should be approved.  There have been no objections to the Plan of Allocation filed by Class

19  Members.  The Plan of Allocation is fair and reasonable, and it should be approved by the Court.

20  **VI.   THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE**
       **PROCESS REQUIREMENTS**

21

22       When approving a class action settlement, a district court "must direct notice in a reasonable

23  manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).

24  Generally, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the

25  best notice that is practicable under the circumstances, including individual notice to all members

26  who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

27       In addition to the requirements of Rule 23, the Constitution's Due Process Clause also

28  guarantees unnamed class members the right to notice of certification or settlement.  *Mullane v.*

1   *Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  A notice of settlement satisfies due

2   process when it is "reasonably calculated, under all the circumstances, to apprise interested parties of

3   the pendency of the action and afford them an opportunity to present their objections."  *See id.*; *see*

4   *also Low v. Trump University, LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018) ("'The yardstick against

5   which we measure the sufficiency of notices in class action proceedings is one of reasonableness.'")

6   (quoting *In re Bank of Am. Corp.*, 772 F.3d 125, 132 (2d Cir. 2014)).  The notice must also describe

7   "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate

8   and to come forward and be heard.'"  *Marvell*, 2018 WL 1900150, at *2 (quoting *Mendoza v. Tucson*

9   *Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

10      Here, the Notice, in plain, easily-understood language, advises potential Class Members of

11   the essential terms of the settlement, sets forth the procedure and deadline for submitting objections

12   to the settlement and requests for exclusion from the Class, identifies contacts for additional

13   information, and provides specifics regarding the date, time, and place of the settlement hearing.

14   The Notice also contains information regarding Federal and State Lead Counsel's fees and expenses,

15   as well as the Plan of Allocation.  Thus, the Notice provides the necessary information for Class

16   Members to make an informed decision regarding the settlement and their rights with respect to it.

17      Furthermore, the Notice, which the Court approved in the Notice Order, includes all of the

18   information required by the PSLRA:  (1) "[t]he amount of the settlement proposed to be distributed

19   to the parties to the action, determined in the aggregate and on an average per share basis"; (2) "[i]f

20   the parties do not agree on the average amount of damages per share that would be recoverable if the

21   plaintiff prevailed on each claim alleged under this title, a statement from each settling party

22   concerning the issue or issues on which the parties disagree"; (3) "a statement indicating which

23   parties or counsel intend to make . . . an application [for attorneys' fees or costs], the amount of fees

24   and costs that will be sought (including the amount of such fees and costs determined on an average

25   per share basis), and a brief explanation supporting the fees and costs sought"; (4) "[t]he name,

26   telephone number, and address of one or more representatives of counsel for the plaintiff class who

27   will be reasonably available to answer questions from class members"; and (5) "[a] brief statement

28   explaining the reasons why the parties are proposing the settlement."  15 U.S.C. §78u-4(a)(7).

1   The Notice Order also approved Lead Plaintiff's proposed notice plan. ECF 348. Lead Plaintiff

2   has satisfied all of the elements of the notice plan approved by the Court. *See generally* the Ferguson

3   Decl.  The notice program implemented in this litigation constitutes the best notice practicable under

4   the circumstances and satisfies the requirements of due process, Federal Rule of Civil Procedure 23,

5   and the PSLRA.  *See, e.g.*, *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *7

6   (N.D. Cal. Feb. 11, 2016) (finding that individual notice mailed to class members combined with

7   summary publication constituted "the best form of notice available under the circumstances").

8   **VII.    THE OBJECTION SHOULD BE OVERRULED**

9   At the time of this filing, only one Class Member (Tommy L. Swanson, Sr.) has served an

10  objection, which was filed with the Court on May 21, 2018 (ECF 350). Lead Plaintiff will explain

11  why the Court should overrule this and any other objections after the deadline for filing objections

12  has passed.

13  **VIII.   CONCLUSION**

14  For all the reasons set forth above, in the Forge Declaration, and the entire record, the

15  settlement and Plan of Allocation warrant this Court's final approval.

16  DATED:  June 11, 2018                    Respectfully submitted,

17                                          ROBBINS GELLER RUDMAN
                                              & DOWD LLP
18                                          DARREN J. ROBBINS
                                            JASON A. FORGE
19                                          SCOTT H. SAHAM
                                            RACHEL L. JENSEN
20                                          AUSTIN P. BRANE
                                            MICHAEL ALBERT
21                                          CARISSA J. DOLAN

22

23                                                    /s/ Jason A. Forge
                                            _____
24                                                 JASON A. FORGE

25                                          655 West Broadway, Suite 1900
                                            San Diego, CA  92101
26                                          Telephone:  619/231-1058
                                            619/231-7423 (fax)

27                                          Lead Counsel for Lead Plaintiff

28

1441875_1

LEAD PLTF'S NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND APPROVAL OF PLAN OF ALLOCATION AND MEMO OF POINTS & AUTHS - 3:16-cv-02627-WHA          - 20 -

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on June 11, 2018, I authorized the electronic filing of the foregoing with

3

the Clerk of the Court using the CM/ECF system.  I certify under penalty of perjury under the laws

4

of the United States of America that the foregoing is true and correct.  Executed on June 11, 2018.

5

s/ Jason A. Forge
JASON A. FORGE

6

7

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

8

9

10

E-mail:  jforge@rgrdlaw.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28