ROBBINS GELLER RUDMAN
    & DOWD LLP
DARREN J. ROBBINS (168593)
JASON A. FORGE (181542)
SCOTT H. SAHAM (188355)
RACHEL L. JENSEN (211456)
AUSTIN P. BRANE (286227)
MICHAEL ALBERT (301120)
CARISSA J. DOLAN (303887)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
jforge@rgrdlaw.com
scotts@rgrdlaw.com
rachelj@rgrdlaw.com
abrane@rgrdlaw.com
malbert@rgrdlaw.com
cdolan@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LENDINGCLUB SECURITIES LITIGATION | ) ) ) |
| | ) |
| This Document Relates To: | ) ) ) ) ) ) |
| ALL ACTIONS. | ) ) ) ) ) ) ) |

Case No. 3:16-cv-02627-WHA

CLASS ACTION

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES AND
EXPENSES AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
THEREOF

DATE:       July 19, 2018
TIME:        8:00 a.m.
CTRM:      12, 19th Floor
JUDGE:     Honorable William Alsup

1441891_2

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................................2

II.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD
      BE GRANTED ..........................................................................................................3

      A.    A Reasonable Percentage of the Fund Recovered Is the Appropriate
            Method for Awarding Attorneys' Fees in Common Fund Cases ...........................3

      B.    The Percentage Fee Negotiated and Supported by Lead Plaintiff Is Entitled
            to a Presumption of Reasonableness.....................................................................5

      C.    A Percentage Fee of 13.1% Is Reasonable in This Case .......................................6

            1.    The Results Achieved .................................................................................7

                  a.    Relative to Expectations and Other Cases ......................................7

                  b.    Relative to Lead Counsel's Adversaries .........................................8

                  c.    Relative to the Government's Achievement ....................................8

                  d.    Relative to LendingClub's Resources............................................9

                  e.    The Non-Monetary Results that Led to the Settlement ..................9

            2.    The Risks of the Litigation and the Novelty and Difficulty of the
                  Questions Presented..................................................................................10

            3.    The Skill Required and the Quality and Efficiency of the Work..............11

            4.    The Contingent Nature of the Fee and the Financial Burden
                  Carried by Lead Counsel ..........................................................................12

            5.    The Work Performed in the State Action ..................................................14

            6.    The 13.1% Total Fee Award Is Well Within the Market Rate in
                  Similar Complex, Contingent Litigation....................................................15

      D.    Reaction of the Class Supports Approval of the Attorneys' Fees Requested........16

      E.    The Requested Fee Is Reasonable Under a Lodestar Cross-Check Analysis ........17

III.  LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
      NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED .................18

IV.   CONCLUSION........................................................................................................20

1441891_2

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES
AND MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:16-cv-02627-WHA          - i -

1

**TABLE OF AUTHORITIES**

2

**Page**

3 **CASES**

4  *Behrens v. Wometco Enters., Inc.*,
5     118 F.R.D. 534 (S.D. Fla. 1988),
      *aff'd*, 899 F.2d 21 (11th Cir. 1990) ......................................................................................7

6  *Blum v. Stenson*,
7     465 U.S. 886 (1984) ...................................................................................................4, 15

8  *Booth v. Strategic Realty Trust, Inc.*,
      No. 13-cv-04921-JST, 2015 WL 6002919
9     (N.D. Cal. Oct. 15, 2015) ...............................................................................................4

10 *Brown v. Phillips Petroleum Co.*,
11    838 F.2d 451 (10th Cir. 1988) ........................................................................................4

12 *Buccellato v. AT&T Operations, Inc.*,
      No. C10-00463-LHK, 2011 WL 3348055
13    (N.D. Cal. June 30, 2011) ............................................................................................18

14 *Camden I Condo. Ass'n v. Dunkle*,
15    946 F.2d 768 (11th Cir. 1991) ........................................................................................4

16 *Cent. R.R. & Banking Co. v. Pettus*,
      113 U.S. 116 (1885) .......................................................................................................3

17 *City of Providence v. Aéropostale, Inc.*,
18    No. 11 Civ. 7132 (CM), 2014 WL 1883494
      (S.D.N.Y. May 9, 2014),
19    *aff'd sub nom. Arbuthnot v. Pierson*,
20    607 F. App'x 73 (2d Cir. 2015) ......................................................................................6

21 *de Mira v. Heartland Emp't Serv.*,
      No. 12-CV-04092 LHK, 2014 WL 1026282
22    (N.D. Cal. Mar. 13, 2014) ..............................................................................................7

23 *Destefano v. Zynga, Inc.*,
      No. 12-cv-04007-JSC, 2016 WL 537946
24    (N.D. Cal. Feb. 11, 2016) ..................................................................................... *passim*

25 *Goldberger v. Integrated Res., Inc.*,
26    209 F.3d 43 (2d Cir. 2000) ..............................................................................................4

27 *Gottlieb v. Barry*,
      43 F.3d 474 (10th Cir. 1994) ..........................................................................................4

28

1

2
                                                                         **Page**

3

4
*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) ..................................................................4

5
*Harris v. Marhoefer*,
6
   24 F.3d 16 (9th Cir. 1994) ...................................................................19

7
*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)..............................................................................7

8

9
*In re Alstom SA Sec. Litig.*,
   741 F. Supp. 2d 469 (S.D.N.Y. 2010).................................................13

10
*In re Amgen Inc. Sec. Litig.*,
11
   No. CV 7-2536 PSG, 2016 WL 10571773
   (C.D. Cal. Oct. 25, 2016) .........................................................7, 13, 16

12
*In re Brocade Sec. Litig.*,
13
   No. C 05-02042-CRB, slip op. (N.D. Cal. Jan. 26, 2009) ...................18

14
*In re Cendant Corp. Litig.*,
15
   264 F.3d 201 (3d Cir. 2001)...................................................................6

16
*In re Diamond Foods, Inc., Sec. Litig.*,
   No. C 11-05386 WHA, 2014 WL 106826
17
   (N.D. Cal. Jan. 10, 2014) ..............................................................16, 18

18
*In re ECOtality, Inc. Sec. Litig.*,
   No. 13-cv-03791-SC, 2015 WL 5117618
19
   (N.D. Cal. Aug. 28, 2015) .....................................................................4

20
*In re Global Crossing Sec. & ERISA Litig.*,
21
   225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................6

22
*In re HealthSouth Corp. Sec. Litig.*,
   No. CV-03-BE-1500-S, 2010 U.S. Dist. LEXIS 146529
23
   (N.D. Ala. July 20, 2010)......................................................................5

24
*In re Heritage Bond Litig.*,
   No. 02-ML-1475-DT, 2005 WL 1594403
25
   (C.D. Cal. June 10, 2005) ....................................................................16

26
*In re Immune Response Sec. Litig.*,
27
   497 F. Supp. 2d 1166 (S.D. Cal. 2007)................................................11

28

1441891_2

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES
AND MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:16-cv-02627-WHA    - iii -

Page

*In re JDS Uniphase Corp. Sec. Litig.*,
No. C-02-1486 CW (EDL), 2007 WL 4788556
(N.D. Cal. Nov. 27, 2007).............................................................................................................13

*In re King Res. Co. Sec. Litig.*,
420 F. Supp. 610 (D. Colo. 1976);................................................................................................10

*In re M.D.C. Holdings Sec. Litig.*,
No. CV 89-0090 E (M), 1990 WL 454747
(S.D. Cal. Aug. 30, 1990) .............................................................................................................15

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ........................................................................................................17

*In re MGM Mirage Sec. Litig.*,
No. 2:09-cv-01558-GMN-VCF, slip op. (D. Nev. Mar. 1, 2016),
*aff'd*, No. 16-15534, ECF 63-1 (9th Cir. Sept. 15, 2017) ....................................................7, 16

*In re Network Assocs. Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...........................................................................................5

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...............................................................................7, 18, 19

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ........................................................................................................18

*In re Optical Disk Drive Prods. Antitrust Litig.*,
No. 3:10-md-2143 RS, 2016 WL 7364803
(N.D. Cal. Dec. 19, 2016) .............................................................................................................19

*In re Oracle Corp. Sec. Litig.*,
No. C 01-00988 SI, 2009 WL 1709050
(N.D. Cal. June 19, 2009),
*aff'd*, 627 F.3d 376 (9th Cir. 2010)...............................................................................................13

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ............................................................................................12

*In re Veritas Software Corp. Sec. Litig.*,
No. C-03-0283 MMC, 2005 WL 3096079
(N.D. Cal. Nov. 15, 2005)..............................................................................................................18

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ................................................................................................ *passim*

1441891_2

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES
AND MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:16-cv-02627-WHA          - iv -

**Page**

*In re Xcel Energy, Inc.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) .................................................................................13

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ...............................................................................................5

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
    762 F.3d 1248 (11th Cir. 2014) ...........................................................................................5

*Luna v. Marvell Tech. Grp.*,
    No. C 15-05447 WHA, 2018 WL 1900150
    (N.D. Cal. Apr. 20, 2018) .......................................................................................7, 16, 18

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
    No. 2:10-CV-00302 MRP, slip op. (C.D. Cal. Dec. 5, 2013).............................................18

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)...............................................................................12

*Missouri v. Jenkins*,
    491 U.S. 274 (1989).............................................................................................................15

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247 (2010).............................................................................................................13

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) .......................................................................................3, 4, 6

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) .............................................................................................6

*Sierra Development Co. v. Chartwell Advisory Group, Ltd.*,
    No. 13-cv-602-BEN, 2017 WL 132843
    (D. Nev. Jan. 13, 2017).........................................................................................................5

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) .........................................................................................4, 7

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ..............................................................................................4

*Thurber v. Mattel, Inc.*,
    No. CV-99-10368-MRP, slip op.
    (C.D. Cal. Oct. 1, 2003) .....................................................................................................16

1441891_2

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES
AND MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:16-cv-02627-WHA                  - v

Page

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ............................................................................4, 6

*Trustees v. Greenough*,
    105 U.S. 527 (1882) ...........................................................................................3

*van Wingerden v. Cadiz, Inc.*,
    No. LA CV15-03080 JAK (JEMx), 2017 WL 5565263
    (C.D. Cal. Feb. 8, 2017)....................................................................................13

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977) .............................................................................3

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................................. *passim*

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(6) ......................................................................................................5

**SECONDARY AUTHORITIES**

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
    *Securities Class Action Settlements: 2017 Review and Analysis*,
    (Cornerstone Research 2018)..............................................................................9

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*,
    108 F.R.D. 237 (Oct. 8, 1985) ...........................................................................4

Stefan Boettrich & Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review*
    (NERA 2018) .....................................................................................................8

1441891_2

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES
AND MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:16-cv-02627-WHA          - vi -

**NOTICE OF MOTION**

TO:    ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

PLEASE TAKE NOTICE that on July 19, 2018, at 8:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable William Alsup, United States District Judge, at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Lead Counsel will respectfully move for an order awarding attorneys' fees and expenses.

This motion is based on the following Memorandum in support thereof; the Declaration of Jason A. Forge in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses ("Forge Decl."); the Declaration of Jason A. Forge Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."); the Declaration of Jeremy Wolfson Filed on Behalf of the Department of Water and Power Employees' Retirement Plan in Support of Motion for Final Approval of the Settlement and Award of Attorneys' Fees and Expenses ("Wolfson Decl."); the Declaration of Mishka Ferguson Regarding Notice Dissemination, Publication, Requests for Exclusion Received to Date, Interim Claims Processing, and Estimate of Administration Fees and Expenses ("Ferguson Decl."); the Stipulation of Settlement, dated February 21, 2018 (ECF 333-1) ("Stipulation")[1]; the Joint Declaration of William C. Fredericks and Mark C. Molumphy in Support of Final Approval of Settlement and for Award of Attorneys' Fees and Expenses ("State Lead Counsel Decl."); all other pleadings and matters of record; and such additional evidence or argument as may be presented before or at the hearing.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should approve Robbins Geller Rudman & Dowd LLP's ("Robbins Geller" or "Lead Counsel") motion, on behalf of itself and counsel in the State Action (collectively, with Robbins Geller, "Counsel"), for an award of attorneys' fees and expenses.

---

[1]    Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation.

1441891_2

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES
AND MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:16-cv-02627-WHA      - 1 -

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

An undeniable reality of the legal industry's evolution (or regression) is that few legal teams pose a credible threat to take large complex cases to trial on a contingent basis – and win.  The prosecution team for Lead Counsel Robbins Geller Rudman & Dowd LLP ("Lead Counsel" or "Robbins Geller") demonstrated that it was one of these few.  Defendants' counsel are experienced enough to recognize when an adversary is preparing a case for trial, and that is what Robbins Geller was doing when this case settled.  We were pursuing, and had obtained key documents from, the right third parties.  We had secured the right to argue an inference that rendered summary judgment for the Underwriter Defendants almost impossible.  We were preparing to depose the right witnesses for LendingClub's former executives.  And the Court need not look beyond our second settlement conference submission and the transcript of the deposition of Wells Fargo's engagement partner to see that Robbins Geller was preparing to try this case – and to win.  To be sure, defense counsel had the same perspective and were up to the task of defending this case at trial.  But Robbins Geller's team posed as great a threat, or greater, than any other prosecution team in the country would have. That threat undoubtedly figured into Chief Magistrate Judge Spero's determination of a $125 million mediator's proposal– a settlement that Wall Street analysts have described as "***far exceed[ing] our expectations***" and "***coming in at the high end of the historical range of settlements***." [2]

As a percentage of reasonably recoverable damages, this settlement is several times greater than the average recovery in other cases under the PSLRA.  Yet, as a percentage of the gross settlement, the requested fee (13.1% of the total recovery) – covering all attorneys' fees for all Counsel in both this action and the separate State Action which would also be resolved under the terms of the global Settlement before the Court – is far below the average award.  Lead Plaintiff, a sophisticated institutional investor, selected and negotiated with Robbins Geller for just such a result

---

[2]    *See* Susquehanna Financial Group, LLLP, *LendingClub: Litigation Continues to Weigh* (Feb. 21, 2018); Craig Hallum Capital Group LLC, *Major Step Towards Clearing the Books W/Settlement, But Near Term Impact to EV. Maintaining Buy Rating and $7 Price Target* (Feb. 21, 2018).

for the Class: a greater recovery for less money.[3]  Accordingly, Robbins Geller respectfully requests that the Court award it and state counsel attorneys' fees in the total amount of $16,384,087, as well as their expenses in the combined amount of $456,084.65.

## II.     THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE GRANTED

### A.     A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

For creating a common fund to benefit the Class, Counsel seek a reasonable percentage of this fund, net of all expenses, as attorneys' fees.  The percentage method of awarding fees is a well-tested and accepted method for awarding fees in common fund cases in this Circuit and throughout the United States.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

It has long been recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees."  *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  The purpose of this doctrine is to avoid unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").  This rule, known as the "common fund" doctrine, is firmly rooted in American case law.  *See, e.g.*, *Trustees v. Greenough*, 105 U.S. 527 (1882); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885).[4]

---

[3]    As reflected in the Notice, Lead Counsel in this action and lead counsel in the State Action agreed that a fee and expense application would be submitted only in this action – and, significantly, that the total attorneys' fees requested would still be within the applicable 13.1% "fee cap" that Lead Counsel negotiated with Lead Plaintiff in this action.  As further discussed below at §II.C.5, we also respectfully submit that an allocation of the total fees awarded on the basis of 82% of such fees to Lead Counsel in this action and 18% to counsel in the State Action is fair, reasonable and appropriate, and should be approved.  The net effect of such an allocation would result in an award of 10.75% of the recovery to Lead Counsel in this action, and an award of 2.36% of the recovery to counsel in the State Action.

[4]    In *Paul, Johnson, Alston & Hunt v. Graulty*, the Ninth Circuit explained the principle underlying percentage fee awards in common fund cases:

> Since the Supreme Court's 1885 decision in [*Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885)], it is well settled that the lawyer who creates a common fund is allowed an ***extra*** reward, beyond that which he has arranged with his client, so that

1441891_2

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES
AND MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:16-cv-02627-WHA          - 3 -

1    The Supreme Court recognized in *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), that,

2    under the common fund doctrine, a reasonable fee may be based "on a percentage of the fund

3    bestowed on the class."  While the district court has discretion to award fees in common fund cases

4    based on either the so-called lodestar/multiplier method or the percentage-of-the-fund method

5    (*WPPSS*, 19 F.3d at 1296), the Ninth Circuit has expressly and consistently approved the use of the

6    percentage method in common fund cases.  *Paul, Johnson*, 886 F.2d at 272; *Six (6) Mexican*

7    *Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Torrisi v. Tucson Elec.*

8    *Power Co.*, 8 F.3d 1370, 1376-77 (9th Cir. 1993); *Vizcaino*, 290 F.3d at 1050 ("the primary basis of

9    the fee award remains the percentage method"); *see Booth v. Strategic Realty Trust, Inc.*, No. 13-cv-

10   04921-JST, 2015 WL 6002919, at *7 (N.D. Cal. Oct. 15, 2015) ("'Because the benefit to the class is

11   easily quantified in common-fund settlements,' the Ninth Circuit permits district courts 'to award

12   attorneys a percentage of the common fund in lieu of the often more time-consuming task of

13   calculating the lodestar.'"); *In re ECOtality, Inc. Sec. Litig.*, No. 13-cv-03791-SC, 2015 WL

14   5117618, at *3-*4 (N.D. Cal. Aug. 28, 2015).  And the supporting authority for the percentage

15   method in other circuits is overwhelming.[5]

16   Since *Paul, Johnson*, district courts in the Ninth Circuit have predominantly used the

17   percentage method in awarding fees in common fund representative actions.  The rationale for

18   compensating counsel in common fund cases on a percentage basis is sound.  First, it is consistent

19   with the practice in cases in which the parties and their counsel, rather than courts, decide how to

---

20          he might share the wealth of those upon whom he has conferred a benefit.  The

21          amount of such a reward is that which is deemed "reasonable" under the
            circumstances.

22   886 F.2d 268, 271 (9th Cir. 1989) (emphasis in original).  Citations are omitted and emphasis added
     throughout unless otherwise indicated.

23

24   [5]   Courts in other circuits favor the percentage-of-recovery approach for the award of attorneys'
     fees in common fund cases.  Indeed, two circuits have mandated use of the percentage method in
     common fund cases.  *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *Camden I*

25   *Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991).   And circuit courts and
     commentators in four additional circuits have expressly approved the use of the percentage method.

26   *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454
     (10th Cir. 1988) (citing footnote 16 of *Blum* recognizing both "implicitly" and "explicitly" that a

27   percentage recovery is reasonable in common fund cases); *Harman v. Lyphomed, Inc.*, 945 F.2d 969,
     975 (7th Cir. 1991); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); Report of the

28   Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 254 (Oct. 8, 1985).

1441891_2

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES
AND MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:16-cv-02627-WHA          - 4 -

determine a contingency fee award. *See, e.g.*, *Sierra Development Co. v. Chartwell Advisory Group, Ltd.*, No. 13-cv-602-BEN, 2017 WL 132843, *3 (D. Nev. Jan. 13, 2017) (describing 40% contingency fee agreement as "a typical agreement with typical contingency fee terms based on a typical expectation of likely events"). Second, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time.[6] And third, a percentage fee is contemplated by the text of the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered. 15 U.S.C. §78u-4(a)(6).

## B.    The Percentage Fee Negotiated and Supported by Lead Plaintiff Is Entitled to a Presumption of Reasonableness

In enacting the PSLRA, Congress intended to encourage investors with substantial financial stakes in the litigation (like Lead Plaintiff here) to serve as lead plaintiffs and play an active role in supervising and directing the litigation, including selecting and monitoring class counsel. *See Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1260 (11th Cir. 2014); *see also In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999). Congress believed that institutions with significant financial stakes in the outcome of securities class actions would be in the best position to monitor the ongoing prosecution of the litigation, select counsel, and to assess the reasonableness of counsel's fee request. *See, e.g.*, *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500-S, 2010 U.S. Dist. LEXIS 146529, at *9-*10 (N.D. Ala. July 20, 2010) ("This involvement of sophisticated lead [p]laintiffs, such as those in this case, in negotiating and thus exercising control over fees represents one of the biggest reforms

---

[6]    As the court in *Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986), stated:

> The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains. . . . The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment for more hours. Contingent fees eliminate this incentive and also ensure a reasonable proportion between the recovery and the fees assessed to defendants. . . .

At the same time as it automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation.

1441891_2

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES
AND MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:16-cv-02627-WHA                - 5

1    enacted by Congress in [the] PSLRA.").[7]   It would be incongruous to accord a sophisticated

2    institutional investor deference regarding: (1) its selection of lead counsel, whose abilities and efforts

3    significantly impact the outcome of a case; (2) its supervision of lead counsel, which directly

4    concerns the prosecution of a case; and (3) its consideration and acceptance of a settlement, which

5    ends a case, yet give no deference to the fee arrangement the sophisticated institutional investor

6    negotiated *ex ante*, and also continues to stand behind with the benefit of hindsight.

7         In this case, Lead Plaintiff, a sophisticated institutional investor, negotiated a fee agreement

8    with Robbins Geller as part of the court-ordered "request for proposals" – a deliberative process

9    meant to ensure that Lead Plaintiff performed its due diligence in its selection of counsel and that it

10   conducted a proper "assessment of the strengths, weaknesses, and experience of counsel as well as

11   the financial burden– **in terms of fees and costs** – on the class."   ECF 90; *see also* Wolfson Decl.,

12   ¶¶6-8.  Lead Plaintiff supported this fee structure when it reached this agreement at the outset of this

13   case, and it supports its application at the end of this case, having carefully monitored Robbins

14   Geller's efforts and performance throughout this litigation.  *Id.*  Moreover, the combined fee and

15   expense application also covers all requested fees and expenses in the State Action, while remaining

16   within the overall fee cap structure negotiated by Lead Plaintiff.  Accordingly, the Court should

17   accord the requested fee a presumption of reasonableness.

18        **C.    A Percentage Fee of 13.1% Is Reasonable in This Case**

19        In *Paul, Johnson*, 886 F.2d at 272, the Ninth Circuit established 25% of a common fund as

20   the "benchmark" award for attorneys' fees.  *See also Torrisi*, 8 F.3d at 1376 (reaffirming 25%

21   benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (same).  The guiding principle

22   in this Circuit is that a fee award be "'reasonable under the circumstances.'"  *WPPSS*, 19 F.3d at

23

---

24   [7]   *See also City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL
     1883494, at *4 (S.D.N.Y. May 9, 2014) ("A settlement reached 'under the supervision and with the

25   endorsement of a sophisticated institutional investor . . . is entitled to an even greater presumption of
     reasonableness.'"), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).  Such a

26   presumption helps "ensure that the lead plaintiff, not the court, functions as the class's primary agent
     vis-à-vis its lawyers."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001); *In re Global

27   Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 466 (S.D.N.Y. 2004) ("[I]n class action cases under
     the PSLRA, courts presume fee requests submitted pursuant to a retainer agreement negotiated at

28   arm's length between lead plaintiff and lead counsel are reasonable.").

1441891_2

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES
AND MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:16-cv-02627-WHA        - 6 -

1296 (emphasis omitted).  The requested fee here is not only reasonable given the facts of the case, but it is also significantly less than the Ninth Circuit's 25% "benchmark" fee.  *See, e.g., Six (6) Mexican Workers*, 904 F.2d at 1311; *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAx), 2016 WL 10571773, at \*9-\*10 (C.D. Cal. Oct. 25, 2016) (awarding 25% of $95 million settlement, plus expenses); *In re MGM Mirage Sec. Litig.*, No. 2:09-cv-01558-GMN-VCF, slip op. at 1 (D. Nev. Mar. 1, 2016), *aff'd*, No. 16-15534, ECF 63-1 (9th Cir. Sept. 15, 2017) (awarding 25% of $75 million settlement, plus expenses).  It is also below what amounted to a 18.76% fee award from this Court on a $72.5 million settlement in *Luna v. Marvell Tech. Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at \*4 (N.D. Cal. Apr. 20, 2018).

"The Ninth Circuit has approved a number of factors which may be relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *de Mira v. Heartland Emp't Serv.*, No. 12-CV-04092 LHK, 2014 WL 1026282, at \*1 (N.D. Cal. Mar. 13, 2014); *accord Vizcaino*, 290 F.3d at 1048; *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).  Each of these factors supports the 13.1% fee award, which is roughly half the 25% benchmark in this Circuit.

### 1.     The Results Achieved

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at \*17 (N.D. Cal. Feb. 11, 2016) ("The overall result and benefit to the class from the litigation is the most important factor in granting a fee award."); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

#### a.     Relative to Expectations and Other Cases

Here, in the face of substantial risk and determined opposition, Counsel, led by Robbins Geller, obtained a $125 million recovery that Wall Street analysts have described as "***far exceed[ing] our expectations***," and "***coming in at the high end of the historical range of settlements***."  *See supra* n.2.

1441891_2

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES
AND MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:16-cv-02627-WHA          - 7 -

The magnitude of this recovery would place it squarely in the middle of last year's top 10 securities class action recoveries, yet the requested fee percentage here is below the fee percentages awarded in all those cases. *See* Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review* at 34 (NERA 2018), available at http:// www.nera.com/content/dam/nera/publications/2018/PUB_Year_End_Trends_Report_0118_final.pdf ("2017 NERA Study").

### b.     Relative to Lead Counsel's Adversaries

For further context, the Court should consider the number of defendants here (20), the number of law firms representing Defendants (4), and the amount of money expended in defense of the allegations at issue here (including the related state case and government investigations). Based on Defendants' insurance policy limits and what appears to be the amount remaining on their policies, it appears that the attorneys' fees and expenses for defending these allegations are well over $20 million, and possibly over $40 million. Forge Decl., ¶16. Of course, these are non-contingent fees, which means they have presumably been paid throughout this litigation irrespective of interim results or the ultimate result.

Moreover, while there is no shortage of able defense counsel in this country, one would be hard pressed to find a more formidable group than the four law firms Counsel faced in this case. Naturally such adversaries increased the risk of failure here, as well as the quantity and quality of work this case demanded. So Counsel achieved this "top 10" result that "far exceeded" analyst's expectations, despite being outnumbered and outspent by very worthy adversaries who were ***not*** working on a contingent basis.

### c.     Relative to the Government's Achievement

Another way to put this $125 million recovery into context is to compare it to the results of the SEC and DOJ investigations. These investigations were not constrained by the PSLRA's discovery stay, which gave the government about a 14-month head start on Lead Plaintiff. Forge Decl., ¶61. Nor do SEC or DOJ attorneys have to overcome motions to dismiss or file motions for class certifications. The DOJ lawyers do not even have to deal with counsel for witnesses whom they question before a grand jury, nor do they have to ask for documents – they can seize them

1    through search warrants.  Moreover, witnesses are much less likely to turn away an SEC investigator

2    or FBI agent who wants to speak with them than a plaintiff's lawyer.  Yet, despite all these

3    advantages, the government has not brought a single civil or criminal charge in connection with

4    these same facts.  Nor has the government recovered a single penny for investors.  Relative to the

5    government's results, a $125 million recovery is astounding.

### d.    Relative to LendingClub's Resources

7        LendingClub's share price has never recovered from its post-revelation decline.  In fact, since

8    the May 9, 2016 revelations, LendingClub's share price has dropped over 10%, whereas the S&P

9    500 has gained over 34.5%.  This relatively dismal share-price performance means that the

10   settlement here amounts to almost 10% of LendingClub's total market capitalization.  While Lead

11   Plaintiff's damages expert's estimate of overall recoverable damages at trial was $711 million (Forge

12   Decl., ¶7), if such a judgment rendered LendingClub insolvent, recoverable damages from the

13   remaining corporate defendants would be reduced to $140 million.  *Id.*  Accordingly, the

14   $125 million settlement represents approximately 17% of overall recoverable damages and nearly

15   90% of reduced damages.  *Id.*  In either case, the Settlement Amount far exceeds the median ratio of

16   settlement to investor losses of 1.4% for cases with investor losses between $600 and $999 million

17   settled between 1996-2017.[8]  This recovery is also nearly 10 times the $12.8 million median

18   recovery for cases with both Rule 10b-5 and Section 11 and/or 12(a)(2) claims, such as this one.[9]

19   The $125 million settlement is an outstanding result in this case.

### e.    The Non-Monetary Results that Led to the Settlement

21       The settlement was reached only after Lead Counsel's prosecution of this case yielded a

22   number of achievements in this action, including: (a) defeating Defendants' motions to dismiss as to

23   all claims and most allegations; (b) moving to strike the majority of Defendants' affirmative

24   defenses, which led to them withdrawing 115 of 154 of their affirmative defenses and amending the

---

[8]   *See* 2017 NERA Study at 37, Fig. 28.

[9]   *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2017 Review and Analysis*, at 9, Figure 8 (Cornerstone Research 2018), *available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2017-Review-and-Analysis.pdf.

1441891_2

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES
AND MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:16-cv-02627-WHA          - 9 -

1   remaining defenses; (c) prevailing against six law firms to obtain class certification; and

2   (d) productively litigating multiple discovery motions involving privilege and confidentiality

3   designations, leading to the production of over 1 million pages of additional evidence for the Class,

4   and, in lieu of still more documents, obtaining an order allowing Lead Plaintiff to argue at trial that

5   the Underwriter Defendants could have waived the attorney-client privilege as to thousands of

6   withheld documents but chose not to, and that parts of the story concealed under these privilege

7   claims would have been unfavorable to the Underwriter Defendants (an inference that rendered

8   summary judgment for the Underwriter Defendants a virtual impossibility).

9       The monetary and non-monetary results achieved here strongly support the requested 13.1%

10  fee.

11          **2.      The Risks of the Litigation and the Novelty and Difficulty of
                      the Questions Presented**

12

13      Numerous cases have recognized that risk as well as the novelty and difficulty of the issues

14  presented are important factors in determining a fee award.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1048;

15  *WPPSS*, 19 F.3d at 1299-1301.  Uncertainty that an ultimate recovery would be obtained is highly

16  relevant in determining risk.  *Id.* at 1300.  As the court aptly observed in *In re King Res. Co. Sec.*

17  *Litig.*:

18          The litigation also involved unique and substantial issues of law in the
            technical area of SEC Rule 10b-5, . . . difficult, complex and oft-disputed class action
19          questions, and difficult questions regarding computation of damages. . . .

20                              *        *        *

21          In evaluating the services rendered in this case, appropriate consideration
            must be given to the risks assumed by plaintiffs' counsel in undertaking the
22          litigation.  The prospects of success were by no means certain at the outset, and
            indeed, the chances of success were highly speculative and problematical.

23  420 F. Supp. 610, 632, 636-37 (D. Colo. 1976); *see also Zynga*, 2016 WL 537946, at *18 ("[W]hen

24  counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after

25  years of litigation justifies a significant fee award.").

26      We will not repeat here the acute risks and uncertainties outlined above, which include those

27  based on the number and quality of defense firms, and the fees with which they had to work, as well

28  as LendingClub's deteriorating financial condition.  In addition to those, based on further discovery,

1441891_2

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES
AND MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:16-cv-02627-WHA        - 10 -

1   Defendants could have moved to decertify the Class or to shorten the Class Period.  *See, e.g.*, *In re*

2   *Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (finding risk that

3   defendants would attempt to shorten the class period based on evidence produced during discovery

4   supported settlement).  This is not a purely hypothetical risk here.  Defendants had already staked

5   out, and were actively developing, the argument that LendingClub's admitted material weakness in

6   internal control did not exist at the time of the IPO.  Forge Decl., ¶85; ECF 139 at 21-22; ECF 162 at

7   17-18.  Defendants' anticipated *Daubert* and summary judgment motions also loomed as threats to

8   narrow Lead Plaintiff's claims or eliminate them entirely.

9        More broadly, the application of the PSLRA to this litigation posed significant risks to Lead

10   Plaintiff from the outset.  Since Congress passed the PSLRA, courts in this Circuit and across the

11   country have increasingly dismissed cases at the pleading stage in response to defendants' arguments

12   that the complaints do not meet the PSLRA's heightened pleading standards.  *See* 2017 NERA Study

13   at 22, Fig. 17.  Of course, it is impossible to predict how a jury would assess a complex trial

14   involving issues of specific intent or how an appellate court would view the myriad issues that arise

15   in lengthy litigations.

16        The bottom line is that Robbins Geller has invested into this litigation substantial time and

17   advanced substantial expenses, and this time and these expenses were never safe.  Tripping over any

18   of the many hurdles this case presented would have been catastrophic for the Class as well as for

19   Robbins Geller.  Therefore, this factor further supports the requested fee.

20        **3.**    **The Skill Required and the Quality and Efficiency of the Work**

21        The "'prosecution and management of a complex national class action requires unique legal

22   skills and abilities.'"  *Zynga*, 2016 WL 537946, at *17.  Robbins Geller is a nationally recognized

23   leader in the fields of securities class actions and complex litigation.  *See* Exhibit G to Robbins

24   Geller Decl.  The recovery obtained for the Class is the direct result of Lead Counsel's expertise and

25   the significant efforts of its highly skilled and specialized attorneys.  *See* www.rgrdlaw.com.  Courts

26   have regularly recognized that the efforts of plaintiffs' counsel in achieving a favorable settlement

27

28

1441891_2

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES
AND MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:16-cv-02627-WHA   - 11 -

1  should be accorded greater weight when achieved without the benefit of a completed governmental

2  investigation.[10]

3          From the outset of this litigation, Robbins Geller made a concerted effort to obtain the

4  maximum recovery for the Class.  Its prosecution team included counsel who has conducted and

5  supervised scores of trials.  Defendants' counsel also included an experienced trial lawyer, and there

6  is no doubt that her team would have been a formidable foe at trial.  Forge Decl., ¶105.  Here, Lead

7  Counsel faced opposition from very skilled and determined counsel from Quinn Emanuel Urquhart

8  & Sullivan, LLP, Simpson Thacher & Bartlett LLP, Morgan, Lewis & Bockius LLP, and Milbank,

9  Tweed, Hadley & McCloy LLP, law firms with well-deserved reputations for vigorous advocacy

10  defending complex civil cases.  This raised Lead Counsel's risk, and there is only a small pool of

11  lawyers who could credibly meet this challenge at trial.  *See, e.g.*, *Zynga*, 2016 WL 537946, at *17

12  ("The quality of opposing counsel is also relevant to the quality and skill that class counsel

13  provided.").  In the face of this formidable opposition, Robbins Geller succeeded in developing its

14  case to the point that convinced Defendants to settle for a substantial sum.  This factor supports the

15  requested fee.

16              **4.      The Contingent Nature of the Fee and the Financial Burden**
                           **Carried by Lead Counsel**

17

18          A determination of a fair fee must include consideration of the contingent nature of the fee

19  and the difficulties that were overcome in obtaining the settlement:

20              It is an established practice in the private legal market to reward attorneys for
                taking the risk of non-payment by paying them a premium over their normal hourly
                rates for winning contingency cases.  *See* Richard Posner, *Economic Analysis of Law*

21              §21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market value
                of the services if rendered on a non-contingent basis are accepted in the legal

22              profession as a legitimate way of assuring competent representation for plaintiffs
                who could not afford to pay on an hourly basis regardless whether they win or lose.

23

24  _____

    [10]    *See In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (in awarding 25%

25  of a $193 million settlement fund, the court noted the skill and efficiency of plaintiffs' counsel and
    outstanding results "in a litigation that was far ahead of public agencies like the [SEC] and the

26  United States Department of Justice, which long after the institution of this litigation awakened to
    the concerns that plaintiffs' counsel first identified"); *Maley v. Del Global Techs. Corp.*, 186

27  F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (In awarding 33-1/3% of the settlement fund, the court noted,
    "[i]n this Action, Plaintiffs' Class Counsel did not 'piggy back' on any prior governmental

28  action . . . .  Plaintiffs' Class Counsel developed, litigated and successfully negotiated this Action by
    themselves, expending substantial time and effort.").

*WPPSS*, 19 F.3d at 1299.  Indeed, "[c]ourts 'routinely' enhance multipliers to reflect the risk of non-payment in common fund cases."  *van Wingerden v. Cadiz, Inc.*, No. LA CV15-03080 JAK (JEMx), 2017 WL 5565263, at *13 (C.D. Cal. Feb. 8, 2017) (citing *Vizcaino*, 290 F.3d at 1051).

The risk of no recovery for a class and its counsel in complex cases of this type is very real.  There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.  For example, in *In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010), a case that Lead Counsel prosecuted, the court granted summary judgment to defendants after eight years of litigation, after plaintiff's counsel incurred over $7 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million.  In another PSLRA case, after a lengthy trial involving securities claims against JDS Uniphase Corporation, the jury reached a verdict in defendants' favor.  *See In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007).

Similarly, even the most promising case can be eviscerated by a sudden change in the law after years of litigation.  *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (after completing significant foreign discovery, 95% of plaintiffs' damages were eliminated by the Supreme Court's reversal of 40 years of unbroken circuit court precedents in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)).  As the court in *Xcel* recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."  *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).  Plaintiffs who defeat summary judgment and succeed at trial may even find their judgment overturned on appeal or on a post-trial motion.  "[S]ettlement eliminates the risk that the jury might award less than the amount of the settlement or nothing at all to the class."  *Amgen*, 2016 WL 10571773, at *3.

Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be realized only after considerable effort.  Nevertheless, Robbins Geller committed significant resources of both time and money to vigorously and successfully prosecute this action for the Class' benefit.  *See* Exhibits A-B

1    to Robbins Geller Decl.  The contingent nature of counsel's representation strongly favors approval

2    of the requested fee.

### 5.    The Work Performed in the State Action

4           In addition, as summarized in more detail in the accompanying State Lead Counsel

5    Declaration, counsel in the related State Action also performed a significant amount of work in that

6    Action, while also participating, at the direction of this Court, in the global settlement negotiations

7    that culminated in the excellent result obtained here.  Without repeating all the points already made

8    above, State Lead Counsel note that they faced similar litigation risk, litigating against the same

9    defense firms, and also on a fully contingent basis.  As set forth in their accompanying declaration,

10   State Lead Counsel also obtained substantial litigation success on behalf of a class of 1933 Act

11   claimants in the State Court, which included defeating Defendants' demurrers, successfully

12   preserving certain theories of liability under the 1933 Act that were dismissed in the Federal Action,

13   and obtaining a certified class of 1933 Act claimants over Defendants' vigorous objections.  *See,*

14   *e.g.*, State Lead Counsel Decl., ¶¶5-29.  As further detailed in their accompanying Declaration, State

15   Lead Counsel, whose litigation team also included experienced trial counsel (including a former

16   deputy chief of the Civil Division of the U.S. Attorneys' Office for the Southern District of New

17   York), respectfully submit that at all times they faithfully executed their fiduciary responsibilities to

18   the State Court and to the certified class of 1933 Act claimants who are part of the global certified

19   Class under the Settlement, both in their own pre-trial work and throughout the course of the global

20   settlement negotiations under the auspices of Judge Spero.  There is no impediment in such

21   circumstances to compensating State Lead Counsel in this action for the work they performed in the

22   creation of a common fund for the benefit of the global Settlement Class, particularly where

23   Defendants sought global relief but, in the interests of efficiency and minimizing of costs, State Lead

24   Counsel cooperated throughout with all parties in structuring the Settlement so that (with the

25   approvals of the State Court that State Lead Counsel have already secured) it could be finally

26   approved subject only to Notice and final review under Rule 23 by this Court.[11]

27

28   [11] *See, e.g.*, *Braun v. GT Solar Int'l, Inc.*, No. 1:08-cv-00312-JL, Order and Final Judgment (D.N.H. Sept. 27, 2011) (awarding attorneys' fees and expenses to state counsel in federal court following

As noted above, all plaintiffs' Counsel agreed to keep their combined fee request within the "cap" previously negotiated with the federal Lead Plaintiff, and have agreed upon, based on their respective contributions, an allocation of 18% of the 13.1% total fee request (or 2.36% of the recovery) to counsel in the State Action and the balance of the 13.1% fee (or 10.75% of the recovery) to Lead Counsel is fair, reasonable and appropriate.

### 6. The 13.1% Total Fee Award Is Well Within the Market Rate in Similar Complex, Contingent Litigation

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989); *see also Vizcaino*, 290 F.3d at 1050 ("[I]n most cases it may be more appropriate to examine lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size."). If this were a non-representative action, the customary fee arrangement would be contingent on a percentage basis and in the range of 30% to 40% of the recovery. *See Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring); *In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E (M), 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery.").

Courts look to fees awarded in comparable cases to determine if the requested fee is reasonable. *Vizcaino*, 290 F.3d at 1050 n.4. The total requested 13.1% fees, whether viewed in the aggregate or as the equivalent of an award of 10.75% in the Federal Action and 2.36% in the State

---

global settlement of state and federal securities actions) (attached to State Lead Counsel Decl. at Exhibit 3); *In re OSI Sys., Inc. Deriv. Litig.*, No 14-cv-2910-MWF, 2017 WL 5642304 (C.D. Cal. May 2, 2017) (awarding fees to counsel in Delaware state court action following global resolution of federal and state derivative actions) (attached to State Lead Counsel Decl. at Exhibit 4); *In re Avalanche Biotech. Shareh'r Litig.*, No. CIV536488, Notice of Entry of Judgment and Order Granting Final Approval, (Cal. Sup. Ct. San Mateo Cty., Jan. 22, 2018) (awarding fees to federal counsel in state court action following global resolution of federal and state securities class actions) (attached to State Lead Counsel Decl. at Exhibit 5); *Cuomo v. Merkin,* No. 450879/2009, Order (N.Y. Sup. Ct. N.Y. Cty. Sept. 29, 2009) (awarding fee from common fund created by New York Attorney General to counsel in related action in case involving Madoff feeder fund Ponzi scheme) (attached to State Lead Counsel Decl. at Exhibit 6).

1441891_2

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES
AND MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:16-cv-02627-WHA        - 15 -

Action, are reasonable when compared to recent fees awarded within the Ninth Circuit in other comparable complex cases:  *See, e.g.*, *Amgen*, 2016 WL 10571773, at \*9-\*10 (awarding 25% fee plus expenses in $95 million settlement); *Thurber v. Mattel, Inc.*, No. CV-99-10368-MRP (CWx), slip op. at 2 (C.D. Cal. Oct. 1, 2003) (awarding fee equal to 27% of $122 million recovery, plus expenses); *MGM*, slip op. at 1 (awarding fee of 25% of $75 million recovery, plus expenses); *Vizcaino*, 290 F.3d at 1050 (awarding 28% fee of $96.8 million settlement).

The requested fees are also decidedly less than the median fee award for securities cases based on a recent analysis of fee awards conducted by NERA.  Using data from securities class actions from 1996 through 2017, the study found that for settlements between $100 million and $500 million, the median fee award was 22% of the settlement amount.  *See* 2017 NERA Study at 42, Fig. 33.  This factor further supports the requested fees.

In *Diamond Foods*, another securities class action, this Court awarded a fee of $17.33 million which was equal to 14% of the $123.8 million primarily non-cash settlement.  *In re Diamond Foods, Inc., Sec. Litig.*, No. C 11-05386 WHA, 2014 WL 106826, at \*5 (N.D. Cal. Jan. 10, 2014).  Here, the total 13.1% fee sought (covering two actions) would actually result in an amount that is less than that awarded in *Diamond Foods*, even though (unlike *Diamond Foods*) Lead Counsel here obtained an all-cash $125 million recovery, whereas the *Diamond Foods* recovery was primarily non-cash. Because both the risk assumed in taking this difficult case to its current stage and the result obtained positively distinguish this case from *Diamond Foods*, the requested fee percentage is warranted.

This Court also recently awarded $13.6 million in attorneys' fees in *Marvell*, which amounted to 18.76% of the $72.5 million settlement.  Here, Counsel – with the express endorsement of Lead Plaintiff – respectfully request attorneys' fees well below the percentage of fees awarded in *Marvell*.

### D.    Reaction of the Class Supports Approval of the Attorneys' Fees Requested

Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee.  *In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCx), 2005 WL 1594403, at \*21 (C.D. Cal. June 10, 2005) ("The

1441891_2

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES
AND MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:16-cv-02627-WHA                - 16 -

1   existence or absence of objectors to the requested attorneys' fee is a factor in determining the

2   appropriate fee award.").

3          To date, over 104,600 copies of the Notice of Pendency and Proposed Settlement of Class

4   Action ("Notice") and Proof of Claim and Release ("Proof of Claim" and, together with the Notice, the

5   "Notice Package") have been mailed to potential Class Members and nominees.  *See* Ferguson Decl.,

6   ¶11.  The Summary Notice was published in *The Wall Street Journal* and transmitted over *Business*

7   *Wire* on April 23, 2018.  *Id.*, ¶13.  In addition, the Stipulation (ECF 333-1), the Notice Package, Order

8   Granting Preliminarily Approval of Class Settlement (ECF 343), and Order Approving Amended

9   Proposed Notices (ECF 348) ("Notice Order") were posted to a website dedicated to the settlement

10  (www.LendingClubSecuritiesClassAction.com) (*id.*, ¶15).  Class Members were informed in the

11  Notice that Federal and State Lead Counsel would move the Court for an award "estimated to amount

12  to a combined $16,265,000" in attorneys' fees (to be allocated $13,337,300 to Federal Lead Counsel

13  and $2,927,200 to State Lead Counsel), or approximately 13% of the Settlement Amount, and for

14  expenses in an amount not to exceed $650,000, plus interest thereon.  Ferguson Decl., Ex. A (Notice)

15  at 2.  Class Members were also advised of their right to object to the fee and expense request, and that

16  such objections are required to be filed with the Court no later than June 25, 2018.  As of the date of

17  this memorandum, one Class Member has objected to the settlement, but he did not object to any

18  aspect of Counsel's fee and expense request.  ECF 350.  The lack of objection is compelling evidence

19  that the requested fees and expenses are reasonable.  *See, e.g.*, *Zynga*, 2016 WL 537946, at *13 ("By

20  any standard, the lack of objection of the Class Members favors approval of the Settlement.").

21  Moreover, a small number of objections do not stand in the way of approval of a reasonable fee.  *See*

22  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).[12]

23          **E.      The Requested Fee Is Reasonable Under a Lodestar Cross-Check**
                       **Analysis**

24

25          Although Counsel seek approval of a fee based on a percentage of the recovery, "[a]s a final

26  check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a

---

27  [12]   If any additional objections are received, Lead Counsel will address them in a reply brief to be

28  filed on or before July 2, 2018, in accordance with the Court's Notice Order.

1441891_2

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES
AND MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:16-cv-02627-WHA          - 17 -

1    percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*,

2    559 F. Supp. 2d at 1048; *see also Marvell*, 2018 WL 1900150, at *4.  In *Vizcaino*, the Ninth Circuit

3    noted that an analysis of the "lodestar method is merely a cross-check on the reasonableness of a

4    percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel

5    to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee,

6    since the lodestar method does not reward early settlement."  290 F.3d at 1050 n.5.  "The lodestar

7    method requires 'multiplying the number of hours the prevailing party reasonably expended on the

8    litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and

9    for the experience of the lawyer.'"  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th

10   Cir. 2015).

11         Here, Counsel spent 24,260.25 hours of attorney and paraprofessional time prosecuting this

12   action on the Class' behalf.  Robbins Geller Decl., ¶4 & Exs. A-B; State Lead Counsel Decl., ¶¶4,

13   59-61.  The resulting lodestar is $13,152,167, representing a multiplier of 1.24 for the $16,384,087

14   requested fee.  *Id.*  Lead Counsel's fee request is certainly reasonable.  In fact, the Ninth Circuit in

15   *Vizcaino* approved a 28% fee that resulted in a 3.65 multiplier.  290 F.3d at 1051-52 (finding

16   multipliers ranged as high as 19.6 though most run from 1.0-4.0); *see also Diamond Foods*, No. C

17   11-05386 WHA, ECF 298, at 20 (noting multiplier was either 2.4 or 2.6, depending on the closing

18   share price used); *Buccellato v. AT&T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at

19   *2 (N.D. Cal. June 30, 2011) (awarding multiplier of 4.3); *Maine State Ret. Sys. v. Countrywide Fin.*

20   *Corp.*, No. 2:10-CV-00302 MRP (MANx), slip op. at 31-32 (C.D. Cal. Dec. 5, 2013) (awarding

21   $85 million fee representing 2.11 multiplier); *In re Brocade Sec. Litig.*, No. C 05-02042-CRB, slip

22   op. at 13 (N.D. Cal. Jan. 26, 2009) (3.5 multiplier); *In re Veritas Software Corp. Sec. Litig.*, No. C-

23   03-0283 MMC, 2005 WL 3096079, at *13 (N.D. Cal. Nov. 15, 2005) (4.0 multiplier); *Marvell*, 2018

24   WL 1900150, at *4 (2.0 multiplier).

25   **III.     LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE**
          **NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED**

26

27         Lead Counsel also requests $277,841.84 in litigation expenses incurred prosecuting the case.

28   These expenses are categorized in the Robbins Geller Declaration (Exhibit C) submitted to the Court

1441891_2

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES
AND MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:16-cv-02627-WHA        - 18 -

1  herewith.  In addition, State Lead Counsel requests $178,242.79 in litigation expenses incurred in

2  prosecuting the State Action.  *See* State Lead Counsel Decl., ¶¶69-72 & Exs. 1 and 2.[13]

3        The appropriate analysis to apply in deciding which expenses are compensable in a common

4  fund case of this type is whether the particular costs are of the type typically billed by attorneys to

5  paying clients in the marketplace.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may

6  recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be

7  charged to a fee paying client.'"); *see also Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may

8  recover their reasonable expenses that would typically be billed to paying clients in non-contingency

9  matters.").  Since the categories of expenses for which counsel seek payment here are the type of

10  expenses routinely charged to hourly clients and were required to prosecute this litigation, they

11  should be paid out of the common fund.  *See In re Optical Disk Drive Prods. Antitrust Litig.*, No.

12  3:10-md-2143 RS, 2016 WL 7364803, at *10 (N.D. Cal. Dec. 19, 2016) ("Attorneys who create a

13  common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses

14  incurred in creating the fund so long as the submitted expenses are reasonable, necessary and

15  directly related to the prosecution of the action.").

16        The largest component of Lead Counsel's expenses is the cost of their experts, who provided

17  valuable assistance, expert reports, and economic analyses.  *See* Robbins Geller Decl., ¶7(d).  As

18  discussed in the Forge Declaration and the Robbins Geller Declaration, these experts expended

19  significant time on the case analyzing the facts, drafting detailed reports, assisting in challenging

20  Defendants' due diligence defense, preparing for depositions, drafting appropriate discovery

21  requests, preparing for settlement discussions, and negotiating and developing the Plan of

22  Allocation.  Forge Decl., ¶¶82-87; Robbins Geller Decl., ¶7(d).  In addition, Lead Counsel incurred

23  expenses in connection with services performed by an outside investigation firm which assisted Lead

24  Counsel in locating, identifying and interviewing percipient witnesses.  Forge Decl., ¶81; Robbins

25  Geller Decl., ¶7(d)(ii).

26

27  [13]   The Notice informed Class Members that Federal and State Lead Counsel would seek expenses
in an amount not to exceed $650,000 in connection with prosecution of the litigation.  Ferguson

28  Decl., Ex. A (Notice) at 2.

1      Other expenses include the costs of computerized research.  Robbins Geller Decl.., ¶7(f).

2  These are the charges for computerized factual and legal research services, including LexisNexis

3  Products, Westlaw, Transunion Acquisition, Thomson Financial, and PACER.  It is standard practice

4  for attorneys to use these services to assist them in researching legal and factual issues.  These

5  services allowed counsel to do online legal research, access LendingClub's SEC filings, perform

6  media searches on LendingClub, and obtain analysts' reports on LendingClub.

7      Lead Counsel was also required to travel in connection with this litigation and thus incurred

8  the related costs of meals, lodging, and transportation.  This primarily included travel to San

9  Francisco and surrounding areas for court hearings, depositions, meetings, and the settlement

10  conferences with Chief Magistrate Judge Spero.  Other expenses that were necessarily incurred in

11  prosecuting this litigation include expenses for photocopying, filing fees, postage, and delivery.

12      Similarly, as set forth in their separate Declaration, State Lead Counsel also incurred the

13  same types of expenses, for the same reasons, in the State Action.  *See* State Lead Counsel Decl.,

14  ¶¶69-72 & Exs. 1 and 2.

15      As a cross-check on the reasonableness of these expenses, all requested expenses represent

16  less than 0.4% of the Settlement Amount.  This is very reasonable compared to the 1.3% median

17  expense percentage that NERA found in its 2017 study for cases that settled between 2012 and 2017

18  in the $100 million to $500 million range.  *See* 2017 NERA Study at 42, Fig. 33.

19      To date, there have been no objections by Class Members to the estimated $650,000 expense

20  request set forth in the Notice.

21  **IV.    CONCLUSION**

22      Lead Counsel's efforts on behalf of the Class resulted in an outstanding result under any

23  measure.  Based on the foregoing and upon the entire record herein, Lead Counsel respectfully

24  requests that the Court award attorneys' fees in the amount of 13.1% of the Settlement Amount, or

25

26

27

28

1441891_2

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES
AND MEMO OF POINTS & AUTHORITIES IN SUPPORT THEREOF - 3:16-cv-02627-WHA          - 20 -

1   $16,384,087, plus expenses in the amount of $456,084.63 plus interest on both amounts earned at the

2   same rate and for the same period as that earned on the Settlement Fund until paid.

3   DATED:  June 11, 2018                    Respectfully submitted,

4                                           ROBBINS GELLER RUDMAN
                                              & DOWD LLP
5                                           DARREN J. ROBBINS
                                            JASON A. FORGE
6                                           SCOTT H. SAHAM
                                            RACHEL L. JENSEN
7                                           AUSTIN P. BRANE
                                            MICHAEL ALBERT
8                                           CARISSA J. DOLAN

9

10                                                  s/ Jason A. Forge
                                            JASON A. FORGE
11
                                            655 West Broadway, Suite 1900
12                                          San Diego, CA  92101
                                            Telephone:  619/231-1058
13                                          619/231-7423 (fax)

14                                          Lead Counsel for Lead Plaintiff

15                                          SCOTT+SCOTT ATTORNEYS AT LAW LLP
                                            JOHN T. JASNOCH
16

17

18                                                  s/ John T. Jasnoch
                                            JOHN T. JASNOCH
19
                                            600 W. Broadway, Suite 3300
20                                          San Diego, CA  92101
                                            Telephone:  619-233-4565
21                                          619/233-0508 (fax)
                                            jjasnoch@scott-scott.com
22
                                            BETH A. KASWAN (*pro hac vice*)
23                                          WILLIAM C. FREDERICKS (pro hac vice)
                                            SCOTT+SCOTT ATTORNEYS AT LAW LLP
24                                          The Helmsley Building
                                            230 Park Avenue, 17th Floor
25                                          New York, NY  10169
                                            Telephone:  212-223-6444
26
                                            Co-Lead Counsel for Plaintiffs and the State
27                                          Class in the State Action

28

1   COTCHETT, PITRE & MCCARTHY, LLP
    MARK C. MOLUMPHY
2   TAMARAH B. PREVOST

3

4   _____
                    s/ Mark C. Molumphy
            MARK C. MOLUMPHY
5

6   San Francisco Airport Office Center
    840 Malcolm Road, Suite 200
7   Burlingame, CA  94010
    Telephone:  650/697-6000
8   650/697-0577 (fax)

9   Co-Lead Counsel for Plaintiffs and the State
    Class in the State Action

10

11                    **ATTESTATION**

12       I, Jason A. Forge, am the ECF User whose ID and password are being used to file this Notice

13   of Motion and Motion for an Award of Attorneys' Fees and Expenses and Memorandum of Points

14   and Authorities in Support Thereof.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest

15   that John T. Jasnoch and Mark C. Molumphy concurred in this filing.

16

17   _____
                    s/ Jason A. Forge
            JASON A. FORGE

18

19

20

21

22

23

24

25

26

27

28

1

<u>CERTIFICATE OF SERVICE</u>

2          I hereby certify that on June 11, 2018, I authorized the electronic filing of the foregoing with

3   the Clerk of the Court using the CM/ECF system.  I certify under penalty of perjury under the laws

4   of the United States of America that the foregoing is true and correct.  Executed on June 11, 2018.

5                                                              s/ Jason A. Forge
                                                             JASON A. FORGE
6
                                                             ROBBINS GELLER RUDMAN
7                                                               & DOWD LLP
                                                             655 West Broadway, Suite 1900
8                                                            San Diego, CA  92101-8498
                                                             Telephone:  619/231-1058
9                                                            619/231-7423 (fax)

10                                                           E-mail:  jforge@rgrdlaw.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28