ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (168593)
JASON A. FORGE (181542)
SCOTT H. SAHAM (188355)
RACHEL L. JENSEN (211456)
AUSTIN P. BRANE (286227)
MICHAEL ALBERT (301120)
CARISSA J. DOLAN (303887)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
jforge@rgrdlaw.com
scotts@rgrdlaw.com
rachelj@rgrdlaw.com
abrane@rgrdlaw.com
malbert@rgrdlaw.com
cdolan@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LENDINGCLUB SECURITIES LITIGATION | Case No. 3:16-cv-02627-WHA |
| | CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS. | LEAD COUNSEL'S RESPONSE TO REQUEST FOR INFORMATION RE ATTORNEY'S FEES |

1468939_1

In response to the Court's September 5, 2018 Request for Information re Attorney's Fees (ECF No. 397), Lead Counsel (Robbins Geller Rudman & Dowd LLP) states the following:

1. The lodestars for the specific tasks of opposing State Plaintiffs' motion to intervene and moving to enjoin the State Case are approximately $9,000 and $40,000, respectively. These are not exact figures only because at the same time Lead Counsel was opposing the motion to intervene and moving to enjoin, we were also performing other work related to Lead Plaintiff's motion for class certification, and some of the time entries do not break out the time for each related subtask. Based on undersigned counsel's review of these time entries and knowledge of the work performed, undersigned counsel is confident that the total lodestar attributable to these tasks would not deviate from the above figures by more than 10% in either direction, so the total lodestar for opposing State Plaintiffs' motion to intervene is $8,000-$10,000, and the total lodestar for moving to enjoin the State Case is $36,000-$44,000.

As the Court will recall, State Plaintiffs moved to intervene in this case for the sole purpose of opposing, in part, Lead Plaintiff's motion for class certification. ECF No. 222. Specifically, State Plaintiffs wanted the Court to deny class certification for Lead Plaintiff's claim under the Securities Act of 1933 and the related §15 claim. ECF No. 222-1. Among the reasons Lead Plaintiff opposed State Plaintiffs' intervention was that it was untimely and its untimeliness had prejudiced Lead Plaintiff and their proposed opposition potentially prejudiced the Class. Dkt. 235 at ECF 14. State Plaintiffs' motion to intervene was the gateway for an opposition that threatened certification of claims that amounted to tens of millions of dollars in damages and settlement value, so expending $10,000 to attempt to preempt that opposition (which ultimately failed) was worthwhile.

As Lead Plaintiff explained at the time, enjoining the State Case was the only way to minimize expenses and fees for the Class because the federal case was the only case that could pursue all damages, whereas allowing the smaller parallel State Case to proceed would require some level of duplication and thus result in increased fees and expenses. Dkt. 235 at ECF 26-28. In fact, Lead Plaintiff's motion to enjoin expressly invoked the Court's fiduciary duty to look after the interests of the absent class members. *Id.* at 27. On October 20, 2017, the Court granted Lead Plaintiff's motion for class certification, but declined to enjoin the State Case. ECF No. 252. As a

result, State Class Counsel were ethically obligated to pursue the subsumed State Claims, resulting in an additional $1,187,134.15 in lodestar for post-October 20, 2017 tasks.  Dkt. No. 362-3 at ECF 90-92, 108-109, 138-142, 157-183 and Dkt. No. 363-1 at ECF 16, 28-29, 51-55, 60-61, 85-88, 94-108.

The law regarding enjoining state cases is far from clear, and supporting Lead Plaintiff's request demanded significant legal research and factual investigation (including obtaining and reviewing multiple State Court transcripts and filings), as well as expert consultation regarding the recoverable damages in both cases.  Given this amount of work and the fact that it was undertaken in order to save the Class what turned out to be nearly $1.2 million in attorneys' fees, $45,000 in attorneys' fees was money well spent.  In its role as fiduciary to the unnamed class members, the Court presumably concluded that it was worth over $1.2 million to the Class for the additional leverage that the State Case provided.  Reasonable minds could disagree on this point, but if 5%-10% of the $125 million settlement is attributable to this additional leverage, that would amount to a $6.25 million to a $12.5 million benefit to the Class, which would mean the additional attorneys' fees was money well spent by the Class.

2. Lead Counsel expended 356 hours of attorney and paralegal time, amounting to $211,225 of lodestar pursuing discovery from the underwriter defendants.  This work spanned over three months, involved over a half-dozen attorneys and paralegals, included two Court hearings, multiple meet-and-confer sessions, five separate substantive submissions (Dkt. 353 at ECF 20-22), and led to some of the most significant accomplishments in this litigation, including the following:

- The Class obtained over 22,000 documents that had previously been withheld, including *dozens* Lead Counsel deemed after review and analysis to be "hot" documents.

- Lead Plaintiff used 34 of these documents as exhibits in the two underwriter depositions taken before the parties settled, and they provided compelling evidence in support of Lead Plaintiff's claims, including the underwriters' conflicts of interest (*e.g.*, one document talked about defendant Laplanche's pre-IPO personal interest in an entity that was critical to Lead Plaintiff's claims; another document reflected a plan to bury in the Prospectus an underwriter's pre-IPO stake in LendingClub).  *See in camera* submission, dated August 2, 2018.

- The litigation over these motions also spawned a declaration from an underwriter representative that Lead Plaintiff was able to use to significantly impeach his credibility during his deposition. *See in camera* submission, dated August 2, 2018. Indeed, the underwriter discovery motions practice extended to litigation over the underwriter defendant's extensive confidentiality designations, and this Court agreed that the same declarant submitted a subsequent declaration that "inaccurately describes Supplemental Exhibit 1, which is not a memoranda with 'detailed and sophisticated' analysis or a summary thereof but merely an email chain, much of which appears to reflect routine business operations, including – to highlight just one nonexhaustive example – coordinating schedules for group calls." ECF No. 359 at 4.

- The Class obtained a detailed offer of proof regarding the underwriters' due diligence defense that would have significantly streamlined depositions and trial preparation. ECF Nos. 301 and 310.

- The Class obtained a jury instruction that effectively foreclosed summary judgment on the due diligence defense because it enabled Lead Plaintiff to argue, and the jury to draw, a negative inference from the underwriters' privilege assertion as to hundreds of documents. ECF Nos. 329 at 5 and 353.

Lead Counsel recognizes that $211,000 is not an insignificant sum, but high-stakes litigation is extremely expensive, and this discovery litigation yielded benefits to the Class worth *far* more than $211,000: effectively cross-examining underwriter representatives; undermining the credibility of an underwriter representative and the underwriter's corresponding due diligence defense; developing a strong theme of the underwriters' conflicts of interest and corresponding lack of meaningful due diligence; and obtaining a jury instruction that effectively foreclosed summary judgment for the underwriter defendants.[1] Not only did the Class get an excellent "return" on the lodestar for this project, but to further confirm the reasonableness of these fees, Lead Counsel again invites the Court to compare *in camera* their $211,225 lodestar to the billings for the underwriters' defense counsel for this same period, the same disputes, and the production of the same documents.

3.  Lead Counsel expended 415 hours of attorney and paralegal time, amounting to $284,965 in lodestar in connection with the preliminary approval motion and the many

---

[1] Though less significant, Lead Plaintiff also rightly objected to many of the underwriter defendants' confidentiality designations, which were abundant. These objections were well taken, as demonstrated by the hundreds of designations that the underwriters changed and the Court's agreement with Lead Plaintiff regarding the impropriety of sealing a number of these documents. ECF No. 359. Though not very flashy, these were legitimate disputes that required additional filings, and they ended overwhelmingly in Lead Plaintiff's favor. It is hard to monetize the public's right of access, or even a client's right of access, but this "project" included successful battles for both.

accompanying settlement documents, notices, and agreements. This task spanned two months and involved over a dozen lawyers and paralegals from Lead Counsel, but completing this task required organizing, conferring and reaching multiple agreements with what at any given time was over a dozen additional lawyers from six additional law firms, as well as three different experts (for the Plan of Allocation), and representatives of both Lead Plaintiff and the Los Angeles City Attorney's Office. Late-night emails and weekend conference calls were common as Lead Counsel had to write, rewrite, and agree upon a stipulation of settlement that ultimately spanned 34 pages (excluding exhibits) (ECF No. 333-1); a notice of settlement (ECF No. 333-2); a plan of allocation (*id*. at ECF Nos. 28-30); a supplemental agreement; and a motion for preliminary approval (ECF No. 333), among other documents.

"Herding cats" does not begin to describe the frustrations associated with this herculean, yet tedious, undertaking, as even seemingly simple changes to one document had a cascade effect on other documents and triggered multiple calls and emails, immediate disagreements by some, belated agreements by others, or perhaps no response at all from someone else. Everyone appeared to be acting in good faith, but the simple reality is that there were many different parties and each was represented by a different group of lawyers, who each had their own conscientious approach to myriad significant issues. For example, the Plan of Allocation would have a direct impact on what individual class members would receive, so it was imperative that Lead Counsel get it right. Yet, getting it right required consideration of multiple experts' perspectives and a return to Chief Magistrate Judge Spero before an agreement could be reached and the plan finalized. The motion for preliminary approval, and the accompanying exhibits, spanned 231 pages, but even that volume does not convey the time and effort that went into it. ECF No. 333. Put bluntly, from a purely selfish perspective, and ignoring the best interests of the Class, undersigned counsel would have rather tried this case to a jury *twice* than to endure this grueling exercise. Every minute on this task was grudgingly expended, but ultimately essential. For $285,000, the Class ended up with a settlement agreement, plan of allocation, and other essential agreements, documents, and notices, that did not draw a single substantive objection from any of the thousands of Class members, and which ultimately resulted in the approval of a $125 million settlement. This was money well spent.

1     4.     The Court's final request consists of the following: "Counsel seems to have provided the Court with two different lodestars: $4,890,355.50 (Dkt. No. 379-1 at 10) and $5,452,946 (*id.* at 11). Counsel shall please explain this discrepancy." ECF No. 397 at 2.  With due respect, there is no discrepancy because it is an apples-to-oranges comparison.  On June 18, 2018, the Court ordered Lead Counsel to provide a project-by-project breakdown of the lodestar for "all ***attorney and paralegal*** time sought to be recovered."  ECF No. 358 at 2 (emphasis added).  Lead Counsel complied with this Order.  ECF No. 361-3.  On July 19, 2018, the Court instructed Lead Counsel to provide a condensed version of the "attorney and paralegal" lodestar breakdown and to add up the lodestars for all the projects set forth in this submission.  ECF No. 379.  Lead Counsel complied with this Order.  This sum (*i.e.*, the lodestar for "attorney and paralegal time") is $4,890,355.50.  Dkt. 379-1 at ECF 11.  In addition to attorneys and paralegals, Lead Counsel's prosecution team included forensic accountants, economic analysts, research analysts, an investigator, litigation support specialists, document clerks, and shareholder relations liaisons.  Lead Plaintiff presented all of this information to the Court over two months ago in multiple tables that reflected each person's name, role, hours, rate, and total lodestar and for all prosecution team members combined ($5,452,946). ECF Nos. 356-1; 356-2; 361-6.  What the Court's latest request calls a "discrepancy" is actually just the mathematical difference ($562,590.50) between the "attorney and paralegal" lodestar that the Court expressly requested ($4,890,355.50) and the total lodestar ($5,452,946), including all the non-attorneys and non-paralegals on Lead Counsel's prosecution team.

Each of the Court's requests for additional information from Lead Plaintiff regarding attorneys' fees has generated additional information that further confirms the Class received significant value for the remarkable outcome achieved by Lead Counsel in this matter.  The Ninth Circuit has held that the benchmark for fees in common-fund cases of $50-$200 million, such as this one, is 25%.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).  The appendix accompanying the *Vizcaino* decision set forth the lodestar multipliers in the same large common-fund cases that supported the 25% benchmark.  The average of these multipliers was 3.1. *Id.* at Appendix (some of these multipliers were expressed as a range, and to ensure the most conservative calculation when calculating the average, undersigned counsel used the figure at the

1 low-end of such ranges).  The requested fees here are roughly *half* of these averages (13.1% versus
2 25% benchmark, and 1.32 versus 3.1 average multiplier).  Dkt. 379-1 at ECF 11.  *Half* the fees for
3 one of the 10 largest securities settlements in the history of this District.  Moreover, this settlement
4 was achieved in a case based on facts that the DOJ has not used to bring a single charge, that the
5 SEC has not used to bring a single complaint, and that have not resulted in a single penny of
6 recovery for victims by any governmental entity.  Lead Plaintiff respectfully requests that the Court
7 grant its motion for attorneys' fees and costs in its entirety.

DATED:  September 12, 2018                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
JASON A. FORGE
SCOTT H. SAHAM
RACHEL L. JENSEN
AUSTIN P. BRANE
MICHAEL ALBERT
CARISSA J. DOLAN


                                                               s/ Jason A. Forge
                                                              JASON A. FORGE

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Lead Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 12, 2018.

                                           s/ Jason A. Forge
                                           JASON A. FORGE

                                           ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                           655 West Broadway, Suite 1900
                                           San Diego, CA  92101-8498
                                           Telephone:  619/231-1058
                                           619/231-7423 (fax)

                                           E-mail:  jforge@rgrdlaw.com

1461483_1