JOHN T. JASNOCH (281605)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
jjasnoch@scott-scott.com
          - and –
BETH A. KASWAN (*pro hac vice*)
WILLIAM C. FREDERICKS (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:  212-223-6444

MARK C. MOLUMPHY (168009)
TAMARAH P. PREVOST (313422)
COTCHETT, PITRE & MCCARTHY, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
Facsimile:  650-697-0577

*Co-Lead Counsel for State Action*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re LENDINGCLUB SECURITIES LITIGATION | No. 3:16-cv-02627-WHA <br><br> <u>CLASS ACTION</u> <br><br> **STATE LEAD COUNSEL'S RESPONSE TO REQUEST FOR INFORMATION RE ATTORNEY'S FEES** |
| This Document Relates To: <br><br> ALL ACTIONS. | |

**TABLE OF CONTENTS**

I.   JUSTIFICATION FOR THE AMOUNT OF TIME SPENT ON CLASS NOTICE (PROJECT NO. 18) .................................................................................................. 1

II.  JUSTIFICATION FOR THE AMOUNT OF TIME SPENT ON THE MOTION TO INTERVENE AND OPPOSITION TO THE MOTION TO ENJOIN AND FURTHER JUSTIFICATION FOR WHY CLASS MEMBERS SHOULD BEAR THE COST OF THE FIGHT AMONG COUNSEL AS TO WHO SHOULD LEAD THE LITIGATION (PROJECT NO. 19) ....................................................................... 3

III. JUSTIFICATION FOR THE AMOUNT OF TIME SPENT ON THE SECOND SETTLEMENT CONFERENCE (PROJECT NO. 23) .................................................. 7

IV.  SCOTT+SCOTT SHALL JUSTIFY THE AMOUNT OF TIME SPENT ON THE SECOND-LEVEL DISCOVERY TASKS (PROJECT NO. 10) .................................. 8

V.   SCOTT+SCOTT SHALL JUSTIFY THE TIME SPENT ON THE WELLS FARGO DEPOSITION, GIVEN THAT THEY DID NOT ATTEND THE DEPOSITION (PROJECT NO. 21) ................................................................................................ 10

VI.  SCOTT+SCOTT SHALL JUSTIFY THE AMOUNT OF TIME SPENT ON THE SETTLEMENT AGREEMENT AND PLAN OF ALLOCATION (PROJECT NO. 24) ................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Desmarais v. Johnson*,
  No. C 13-03668-WHA, 2013 WL 5735154 (N.D. Cal. Oct. 22, 2013) ...................................5

**Statutes, Rules, and Regulations**

California Code of Civil Procedure
  §2520.230 ................................................................................................................9, 10

In response to the Court's September 5, 2018 Request for Information re Attorney's Fees (ECF No. 397), State Lead Counsel (comprised of the firms of Scott+Scott Attorneys at Law LLP and Cotchett, Pitre & McCarthy, LLP) respectfully state the following:

## I. JUSTIFICATION FOR THE AMOUNT OF TIME SPENT ON CLASS NOTICE (PROJECT NO. 18)

State Lead Counsel spent 299.60 hours of attorney and paralegal time, amounting to $208,534.50 of lodestar,[1] related to class notice. The work was substantial as it spanned three different time periods, including the negotiation and approval of class notice by the State Court following its order granting class certification in June 2017, the negotiation and approval by both the State Court and Federal Court of a joint notice to shareholders following the Federal Court's order granting class certification in October 2017 (an effort largely driven by State Lead Counsel as the most effective and efficient manner to notify Class members in both actions), and the negotiation and approval, again by both the State Court and Federal Court in February and March 2018, of the notice of settlement, including approval of related proof of claim forms, distributed to Class members.

*Initial class notice in State Court*:   In April 2017, after resolution of demurrers and extensive fact and class discovery, the State Plaintiffs moved for class certification. On June 23, 2017, the State Court certified a 1933 Act Class consisting of investors who purchased Lending Club common shares pursuant or traceable to the Offering Materials. Pursuant to California rules governing notice, State Lead Counsel and Defendants then engaged in substantial negotiations regarding the forms of proposed Notice and Summary Notice, as well as the contours of the accompanying Notice Plan for disseminating these notices. During this process, State Lead Counsel also researched and addressed issues with LendingClub relating to modifying the proposed Class Period based on new information regarding the date when post-IPO shares entered the market (which affected the length of the period when investors could "trace" their

---

[1] Of this total, State Lead Counsel effectively seek compensation for only $89,669.84, after applying the 43% lodestar haircut that is imbedded across all aspects of State Lead Counsel's fee application.  *See* Supplemental Declaration of John T. Jasnoch in Support of Award of Attorneys' Fees, ¶42.

1
STATE LEAD COUNSEL'S RESPONSE TO
REQUEST FOR INFORMATION RE ATTORNEY'S FEES
Case No. 3:16-cv-02627-WHA

shares to the IPO as required by §11 of the 1933 Act), and the resulting need for further modifications to the forms of Notice (which, in turn, also had to be approved by the State Court). These efforts caused the process of finalizing the Notice Plan to extend to mid-September 2017, with the resulting stipulated notice plan being submitted to and adopted by the State Court on September 21, 2017.

***Joint notice in Federal and State Courts***:  In September 2017, as State Lead Counsel prepared to distribute the Notice and Summary Notice pursuant to the State Court's directions, Federal Plaintiff moved forward with its own motion for class certification in Federal Court. Given the potential overlap of claims and risk of confusing Class members, State Lead Counsel proposed a modest delay in mailing the notice pending resolution of the separate class certification proceedings in the Federal Court (and pending resolution of State Plaintiffs' limited objection to class certification in the Federal Court to the extent the proposed Federal Class did not carve out the 1933 Act claims that had already been certified by State Court).  ECF No. 221. After this Court certified a Federal Class, *see* ECF No. 252, this Court understandably directed all parties in the State and Federal Actions to jointly agree upon a revised form of notice for approval by both it and the State Court.  *Id.* at 27-28.

State Lead Counsel led the effort to prepare the "Joint Notice," which required drafting language to address the relatively novel situation of creating a clear and effective Notice that would "work" for noticing two separate actions where both Actions overlapped in part, but (a) the Federal Action was broader in some respects than the State Action, and (b) the State Action was broader in certain other respects than the Federal Action.  State Lead Counsel also drove the process of obtaining the State Court's approval of the revised "Joint Notice" and the related modifications to the Notice Plan that the State Court had already approved.  State Lead Counsel were also unable to reach agreement with the Federal Plaintiff on the latter's request to delay the issuance of the Joint Notice by a further six to eight months.  Both Courts ultimately approved State Lead Counsel's proposed joint Notice Plan with certain minor revisions, although the original deadlines for dissemination of the Notice under State Lead Counsel's plan were

ultimately deferred by mutual agreement once progress began to be made on settlement. ECF Nos. 259 and 266.

***Preparation of the further revised Notice in the wake of the global Settlement***: As noted above, the planned dissemination of the Joint Notice was deferred as settlement discussions began. Thereafter, once the global settlement was reached, it was obviously necessary to engage in yet another, and even more fundamental, restructuring and redrafting of the prior forms of notice in order to give notice not only of class certification, but of the proposed global Settlement. Once again, the objective of having a single Joint Settlement Notice – as part of all counsels' agreement to enter into a *single* Stipulation of Settlement with a single settlement administration process to be supervised by this Court (consistent with certain California state law notice requirements) – was ultimately to reduce overall administrative costs, minimize Class member confusion, and otherwise maximize opportunities for efficiency.

Accordingly, from February through March 2018, State Lead Counsel spent significant time coordinating with Federal Lead Counsel (and Defendants) regarding the drafting of new forms of notice to provide appropriate and clear disclosure of the material terms of the global Settlement and proposed Plan of Allocation, and to prepare similarly appropriate and clear forms of the Proof of Claim for Class members to fill out. This process also ultimately required State Lead Counsel to obtain its approval of the revised forms of notice.

**II.   JUSTIFICATION FOR THE AMOUNT OF TIME SPENT ON THE MOTION TO INTERVENE AND OPPOSITION TO THE MOTION TO ENJOIN AND FURTHER JUSTIFICATION FOR WHY CLASS MEMBERS SHOULD BEAR THE COST OF THE FIGHT AMONG COUNSEL AS TO WHO SHOULD LEAD THE LITIGATION (PROJECT NO. 19)**

State Lead Counsel collectively spent 509.95 hours on tasks related to the motion to intervene and the opposition to the motion to enjoin, which approximated $381,956.75 in lodestar[2].

---

[2]   Of this amount, State Lead Counsel effectively seek compensation for only $164,241.40, after applying the 43% lodestar haircut that is imbedded across all aspects of State Lead Counsel's fee application. *See* Supplemental Declaration of John T. Jasnoch in Support of Award of Attorneys' Fees, ¶42.

As previously noted, the State Court certified a broad 1933 Act class in June 2016, and appointed State Lead Counsel as Class Counsel – thereby imposing on State Lead Counsel a fiduciary duty to maximize the recovery of LendingClub shareholders with 1933 Act claims (the "1933 Act Claimants").  After reviewing the Federal Plaintiff's certification motion, State Lead Counsel were immediately concerned that the interests of the 1933 Act Claimants (whose interests have always been the exclusive concern of State Lead Counsel in accord with the State Court's class certification order) would not be capable of being as well-protected in the federal forum (compared to the State Court).  The basis for State Lead Counsel's concern was that: (1) this Court had *dismissed* – and Federal Plaintiff had thereafter chosen not to replead – certain important theories of 1933 Act liability that, by contrast, State Plaintiffs and their counsel had successfully navigated past dismissal and were thus being pursued *only* in the State Action; and that (2) as a result, the Federal Plaintiff (unlike State Plaintiffs) would not be able to obtain a judgment on behalf of 1933 Act Claimants that would recover *any* of the substantial additional losses (estimated by State Lead Plaintiffs at $200 million (ECF No. 221-2, ¶16)) that 1933 Act Claimants based on the 1933 Act theories that had been dismissed from the Federal Action (but had been sustained in the State Action).  For example, absent the additional liability theories that State Lead Counsel had preserved, a large swath of 1933 Act Claimants who sold their LendingClub shares at an already substantial loss prior to May 9, 2016 (the first corrective disclosure date alleged in the Federal Action) would have had *no* colorable theory of recovery for any of their losses prior to that date  – and those who sold later would not have had the benefit of additional damages attributable to the multiple pre-May 2016 stock declines that were only at issue in the State Action.

Similarly, assuming that the more limited 1933 Act claims in the Federal Action were certified and that the Federal Plaintiff thereafter sought to settle all Class members' potential 1933 Act claims, State Lead Counsel were very concerned that the Federal Plaintiff (compared to State Plaintiffs) would be in the sub-optimal position in any negotiations of trying settle *all* 1933 Act claims for full value, given that the Federal Plaintiff was itself unable to even threaten to

litigate a large and valuable chunk of the 1933 Act claims that had survived only in the State Action.  *See Desmarais v. Johnson*, No. C 13-03668-WHA, 2013 WL 5735154, at *5 (N.D. Cal. Oct. 22, 2013) (raising questions regarding the scope of possible class-wide releases that might be given for claims that were not actually being pursued in litigation, and noting that absent class members might be litigating "with one arm tied behind their backs" with respect to claims that they were not actually litigating, while then being asked to include a release of such claims as part of a settlement "as if no restraint had been imposed").  State Plaintiffs' motion to intervene for the limited purpose of objecting to certification of a Class in this Action that included 1933 Act claims (as opposed to only 1934 Act claims) therefore sought to protect the interests of the class of 1933 Act Claimants by ensuring that those claims would be litigated only in the State Court.

Although this Court ultimately rejected State Plaintiffs' argument that the State Court was the "superior" forum for litigating the 1933 Act claims (and declined to carve out those claims from the scope of the certified class in this Action), the Court nonetheless granted State Plaintiffs' motion to intervene and took other steps – such as directing that State Plaintiffs be included in global mediation and settlement talks – to insure that the interests of ***all*** 1933 Act Claimants would be fully protected.  As discussed below, allowing State Plaintiffs to intervene did indeed result in substantial benefits for the 1933 Act Claimants.

The amount of time State Lead Counsel spent on this litigation project was reasonable and ultimately inured to the benefit of the settlement class, and included:

- comprehensively researching the applicable law;

- working closely with their financial economist and damages consultant, Dr. Scott Hakala, Ph.D, to analyze the extent to which the value of the 1933 Act claims at issue in the State Action materially exceeded the value of the more limited 1933 Act claims that survived dismissal in the Federal Action;

- working with Dr. Hakala to prepare an expert declaration in support of the limited objection (ECF No. 221-2);

- preparing a detailed brief in support of intervention and the limited objection (ECF No. 221);

- producing documents from Dr. Hakala pursuant to a subpoena issued by the Federal Lead Plaintiff in connection with the Motion;

- conferring extensively with the Federal Lead Counsel concerning the subpoenas that Federal Plaintiff served on the State Class Representatives in connection with the Motion;

- opposing the counter-Motion to Enjoin State Proceedings filed by the Federal Plaintiff (ECF No. 240-1); and

- preparing for, and presenting argument at, the hearing on class certification and the motion to intervene before the federal Court.  (*See* ECF No. 247).

The work that State Lead Counsel performed in connection with the limited objection proved to be extremely valuable to State Lead Counsel's work later in the case to protect the interests of 1933 Act Claimants.  For example, through the limited objection, much of the expert analysis and support with respect to damages suffered by the 1933 Act Claimants (and related issues of negative loss causation) that State Lead Counsel would have had to conduct anyway (albeit later in the case in the context of settlement or litigation) was completed during the work on the motion to intervene and the limited objection.  *See* Declaration of Scott D. Hakala, Ph.D., CFA in Support of State Action Class Representatives' and [Proposed] Intervenors' Limited Objection to Lead Plaintiff's Motion for Class Certification, ECF No. 221-2, ¶¶8-18 (describing the results of the event study conducted with respect to the State Action).

Furthermore, while granting the Federal Plaintiff's class certification motion, the Court's certification Order also specifically provided for the State Class Representatives and State Lead Counsel to participate in a global settlement process under the auspices of Judge Spero.  It is respectfully submitted that the work performed by State Lead Counsel and Dr. Hakala in connection with the limited objection was instrumental to State Lead Counsel's contribution at the settlement conferences.  Based on the same analysis presented in the context of their limited objection, State Lead Counsel was able to show that there were valuable additional theories of recovery that were being pursued only in the State Action and that represented substantial added value for the Class above and beyond what was at issue in the Federal Action.  It is respectfully submitted that this work not only materially increased the value of the resulting global

settlement, but was also the basis for ensuring that *all* 1933 Act claimants would have their claims treated fairly and appropriately under the Plan of Allocation.[3]

### III. JUSTIFICATION FOR THE AMOUNT OF TIME SPENT ON THE SECOND SETTLEMENT CONFERENCE (PROJECT NO. 23)

State Lead Counsel collectively spent approximately 217.6 hours in connection with the second settlement conference, which approximated $164,137 in lodestar.[4]  From the time that the parties agreed to enter mediation in December 2017, to the service of the notification that a second settlement conference had been scheduled (December 29, 2017, ECF No. 311), and through to the parties' responses to Judge Spero's mediator's proposal on February 5, 2018, State Lead Counsel worked tirelessly to advocate for the interests of the 1933 Act class in any potential settlement or resolution.  These efforts included:

- the preparation of a detailed mediation statement pursuant to the scheduling of a private mediation and later pursuant to Judge Spero's December 29, 2018 Order;

- the review and careful consideration of Defendants' mediation statement and exhibits;

- the review and careful consideration of the Federal Lead Plaintiff's mediation statement and exhibits;

- the preparation of a detailed settlement conference reply statement, which was requested by Judge Spero on January 25, 2018 following the service of the opening settlement conference statements, and which was served on Judge Spero and on all parties on January 27, 2018;

- the review and careful consideration of the other parties' settlement conference reply statements;

- preparation of rebuttal points for arguments made by Defendants in their settlement conference statements;

---

[3]  For example, as a result of State Lead Counsel's efforts in this latter regard, under the final Plan of Allocation approved by the Court, State Lead Counsel were able to ensure that 1933 Act Claimants would be able to obtain recoveries on losses associated with multiple pre-May 2016 disclosures by LendingClub – losses that were only logically recoverable based on the 1933 Act theories of the case that were being pursued and litigated only by State Plaintiffs and their counsel.

[4]  Of this amount, State Lead Counsel effectively seek compensation for only $70,578.91, after applying the 43% lodestar multiplier that is imbedded across all aspects of State Lead Counsel's fee application.  *See* Supplemental Declaration of John T. Jasnoch in Support of Award of Attorneys' Fees, ¶42.

- review of hot documents and other discovery materials for use during the Settlement Conference should the need arise;

- conferences with Dr. Hakala concerning potential recoverable damages;

- preparation for the settlement conference;

- an all-day session with Judge Spero that lasted well into the evening on January 29, 2018;

- post-conference conferring amongst counsel regarding Judge Spero's mediator's proposal; and

- conferring with the State Representatives concerning the acceptance of the mediator's proposal for a $125 million global settlement.

State Lead Counsel respectfully submits that the approximately 217.6 hours that were spent in connection with the second settlement conference were necessary for the effective representation and maximizing the recovery of the 1933 Act class members that State Lead Counsel had a fiduciary duty to represent.

### IV.   SCOTT+SCOTT SHALL JUSTIFY THE AMOUNT OF TIME SPENT ON THE SECOND-LEVEL DISCOVERY TASKS (PROJECT NO. 10)

Scott+Scott attorneys spent approximately 882.3 hours in connection with second-level discovery tasks, which approximated $358,292.50 in lodestar.[5]

Several essential tasks that were performed in connection with this litigation were labeled as second-level discovery projects in connection with State Lead Counsel's further submissions in support of the award of attorneys' fees. Scott+Scott respectfully submits that such tasks were necessarily undertaken in order for the State Plaintiffs to effectively prepare for the close of fact discovery and expert discovery, as well as to overcome any motion for summary adjudication filed by Defendants and to win at trial.

As described in the Joint Declaration of William C. Fredericks and Mark Molumphy in Support of Final Approval of Settlement and for Award of Attorneys' Fees and Expenses (ECF

---

[5] Of this amount, State Lead Counsel effectively seek compensation for only $154,065.78, after applying the 43% lodestar multiplier that is imbedded across all aspects of State Lead Counsel's fee application. *See* Supplemental Declaration of John T. Jasnoch in Support of Award of Attorneys' Fees, ¶42.

8
STATE LEAD COUNSEL'S RESPONSE TO
REQUEST FOR INFORMATION RE ATTORNEY'S FEES
Case No. 3:16-cv-02627-WHA

No. 357), discovery in the State Action opened in the fall of 2016. In the spring of 2016, State Lead Counsel sought to commence merits depositions, but Defendants objected on the ground that it was inefficient to have the same witnesses (including the Individual Defendants) subjected to being deposed first in the State Action and then again later in the Federal Action, as all discovery was still stayed pursuant to the PSLRA. At a case management and discovery conference and following briefing on the issue, the State Court (Weiner, J.) instructed State Lead Counsel not to seek to commence merits depositions until such time as the Federal Court had determined whether and to what extent the claims asserted by the Federal Plaintiff would proceed in the Federal Action, based on the State Court's desire to avoid duplicative depositions and to avoid subjecting the same witnesses to being deposed twice.

As a result, State Lead Counsel diligently reviewed the document production and turned the work product created during the linear document review into more focused materials aimed toward opposing summary judgment and proving the Class's case at trial. Following the State Court's grant of certification of a broad 1933 Act class, Scott+Scott increased its second-level discovery efforts. These second-level discovery tasks included, *inter alia*, the following types of sub-projects:

- the compilation of hot document chronologies and issue binders for the separate theories of misrepresentation and omission that had been sustained in the State Action;

- the compilation of memoranda and binders based on key custodians and potential deponents;

- the review of Defendants' privilege log and issuing challenges to 800 entries on various grounds as outlined in a 25-page letter;

- the review of Defendants' supplemental privilege log and preparing challenges thereto;

- performing targeted searches in the document review repository;

- the preparation of additional discovery requests based on the evidence that initial discovery efforts had uncovered;

- meeting and conferring with LendingClub with regard to deposition notices issued to LendingClub pursuant to Cal. Code Civ. P. §2520.230;

- preparing witness outlines for the witnesses designated as "Persons Most Qualified" to testify on the topics articulated in the §2520.230 deposition notice; and

- conferring among counsel regarding case and discovery strategy as well as the strength of the evidence uncovered in discovery.

As noted in the Supplemental Declaration of John T. Jasnoch in Support of Award of Attorneys' Fees (ECF No. 362), State Lead Plaintiffs segregated all of its billing entries for over two years of litigation into 25 discrete projects. While the subprojects in the bullets above could have also been presented as separate litigation projects, State Lead Counsel submits that they felt that the 25 projects struck an appropriate balance of categorizing their efforts on behalf of the class for over two years. Scott+Scott in particular submits that their efforts and time spent in conducting the second-level discovery projects were necessary to adequately prepare for further proceedings, and the work product generated through these second-level discovery tasks inured to the settlement class's benefit.

**V.    SCOTT+SCOTT SHALL JUSTIFY THE TIME SPENT ON THE WELLS FARGO DEPOSITION, GIVEN THAT THEY DID NOT ATTEND THE DEPOSITION (PROJECT NO. 21)**

Scott+Scott spent approximately 19.1 hours in connection with the Wells Fargo deposition, which approximated $11,776 in lodestar.[6] Although attorneys from Scott+Scott did not personally attend the Wells Fargo deposition, Scott+Scott performed significant work in connection with the preparation for the deposition.

Prior to the deposition, Scott+Scott was involved in the meet and confer teleconferences and email correspondence on the scope of the topics that Wells Fargo would testify to. Scott+Scott also participated in the discussions concerning the mechanics and logistics of the dual federal and state deposition. In addition, Scott+Scott conducted significant review of the Wells Fargo underwriter documents, many of which were produced to State Lead Counsel in the days just prior to the deposition. Over 27,000 pages of documents were ultimately produced by

---

[6] Of this amount, State Lead Counsel effectively seek compensation for only $5,063.68, after applying the 43% lodestar multiplier that is imbedded across all aspects of State Lead Counsel's fee application. *See* Supplemental Declaration of John T. Jasnoch in Support of Award of Attorneys' Fees, ¶42.

Wells Fargo, and, given the tight timeframe between this production and the deposition, Scott+Scott assisted in the document review and substantive preparation for the deposition in the week leading up to the deposition. Scott+Scott attorney John Jasnoch performed the review for Scott+Scott, and also prepared witness outlines and drafted potential questions to use at the deposition based on the review of the documents. This work product was then shared and discussed with the CPM attorneys that conducted the deposition. Thus, while Scott+Scott did not personally attend the deposition, the work performed by Scott+Scott was necessarily undertaken in connection with the Wells Fargo deposition.

## VI. SCOTT+SCOTT SHALL JUSTIFY THE AMOUNT OF TIME SPENT ON THE SETTLEMENT AGREEMENT AND PLAN OF ALLOCATION (PROJECT NO. 24)

Scott+Scott attorneys spent approximately 275.8 hours in connection with the Settlement Agreement and the Plan of Allocation, which approximated $215,962.50 in lodestar.[7]

Scott+Scott was the first law firm in the country to file any sort of class action lawsuit alleging securities law violations by LendingClub and the other Defendants, prior to any admission of wrongdoing by LendingClub and prior to the announcements of the DOJ or SEC investigations. Then, after nearly two years of high-stakes litigation and once the mediator's proposal was accepted, Scott+Scott attorneys spent the time they felt was necessary to make sure that the 1933 Act's class was well represented at this critical litigation stage. Scott+Scott attorneys pored over all of the draft "long form" settlement documents, which was comprised of the stipulation of settlement, the proposed final judgment, the proposed preliminary approval order, as well as the proposed class notice and summary notice to be issued to class members. Scott+Scott attorneys provided substantive edits to each draft document, conferred with counsel for all parties concerning the settlement documents and proposed edits thereto, and performed other related tasks in order to effectively ensure that the 1933 Act class members were well

---

[7] Of this amount, State Lead Counsel effectively seek compensation for only $92,863.88, after applying the 43% lodestar multiplier that is imbedded across all aspects of State Lead Counsel's fee application. *See* Supplemental Declaration of John T. Jasnoch in Support of Award of Attorneys' Fees, ¶42.

represented in connection with the Settlement Agreement, an obligation they undertook on a fully contingent basis over two years prior.

In addition, as noted above, given the potential collectability issues with obtaining a full judgment at trial, there was a very real risk of an intra-class conflict between LendingClub shareholders who had 1933 Act claims on the one hand, and LendingClub shareholders that had 1934 Act claims on the other hand. With an eye toward these potential conflicts, upon all parties' acceptance of the mediator's proposal, Judge Spero directed the State and Federal Lead Counsel firms to immediately begin meeting and conferring on the allocation of settlement proceeds and the Plan of Allocation. To this end, it was imperative for State Lead Counsel to spend as much time as necessary to ensure that LendingClub shareholders with 1933 Act claims were treated fairly in the Plan of Allocation. Shortly after the acceptance of the mediator's proposal, State Lead Counsel, in consultation with Dr. Hakala, prepared a proposed allocation plan and shared it with Federal Lead Counsel, copying Judge Spero. Thereafter, State Lead Counsel reviewed allocation plans proposed by Federal Lead Counsel and considered them in consultation with Dr. Hakala. Following additional written correspondence, State and Federal Lead Counsel met in person in Judge Spero's chambers, discussed the views of their respective experts, and reached agreement on an allocation. As noted in Section II above, the final POA provided for significant additional allocations to 1933 Act Claimants that permitted recoveries based on price declines suffered before May 2016 price declines that were effectively at issue only in the State Court Action, and also resulted in a fair–allocation of the global settlement proceeds to 1933 Act claimants vis-à-vis 1934 Act Claimants. State Lead Counsel's work in this regard work thereby provided direct, significant and concrete benefits to the 1933 Act Claimants whose interests State Lead Counsel were appointed to diligently and faithfully represent under the class certification orders of the State Court.

Scott+Scott was the State Lead Counsel firm that initially retained Dr. Hakala and was the firm that worked most closely with Dr. Hakala in connection with his expert discovery work. As a result, Scott+Scott took the lead in working closely with Dr. Hakala in connection with the

1  allocation issues and in doing so spent considerable time in connection with formulating the Plan
2  of Allocation.

3              \*   \*   \*

4    In addition to the responses to the Court's specific requests, above, State Lead Counsel
5  further respectfully submit that although State Lead Counsel has accepted a steep discount on
6  their fees (agreeing to 18% of any fee award), this discount should not be interpreted to minimize
7  the benefits conferred on the Settlement Class by State Lead Counsel.  Nor should such a
8  discount minimize the efficiency or effectiveness of how State Lead Counsel litigated their
9  action on behalf of the certified class and subclass in the State Court.  Rather, the steep fee
10 discount accepted by State Lead Counsel reflected the reality of the risk faced by State Lead
11 Counsel that the United States Supreme Court would rule in the then-pending *Cyan v. Beaver*
12 *County* appeal that state courts do not have jurisdiction to hear cases brought pursuant to the
13 1933 Act.  Were the Supreme Court to agree with the petitioners and rule that there was no
14 jurisdiction in the State Court to hear 1933 Act suits, it would have surely raised novel issues
15 regarding the extent to which work performed in connection with litigating a case in a forum that
16 was later deemed improper was compensable, notwithstanding the fact that the case had been the
17 first filed, was the first in which discovery was produced, and was the first to be certified as a
18 class action.

19   As set forth herein, the existence of the State Action increased the litigation pressure and
20 risk faced by Defendants.  This is confirmed by the actions of LendingClub, which constantly
21 fought to litigate the securities law violation allegations against them solely in Federal Court.
22 LendingClub not only moved to stay the State Action in its entirety in favor of the Federal
23 Action, but also filed *amicus curie* briefs (briefs which were authored by counsel for the
24 Underwriter Defendants) with the United States Supreme Court, arguing in favor of the
25 petitioners in *Cyan* for the Supreme Court to rule that state courts do not have jurisdiction to hear
26 1933 Act claims.

27             \*   \*   \*

28

13

STATE LEAD COUNSEL'S RESPONSE TO
REQUEST FOR INFORMATION RE ATTORNEY'S FEES
Case No. 3:16-cv-02627-WHA

For the reasons set forth herein, and for the reasons set forth in their prior submissions, State Lead Counsel respectfully submits that Plaintiffs' Counsel's Motion for Attorney's Fees be granted in full.

Dated:  September 12, 2018

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

 *s/* John T. Jasnoch
JOHN T. JASNOCH (281605)
600 W. Broadway, Suite 3300
San Diego, California  92101
Telephone:  (619) 233-4565
Facsimile:   (619) 233-0508

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
BETH A. KASWAN (*pro hac vice*)
WILLIAM C. FREDERICKS (*pro hac vice*)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY  10169
Telephone:  (212) 223-6444
Facsimile:   (212) 223-6334


COTCHETT, PITRE & MCCARTHY, LLP

 *s/* Mark C. Molumphy
MARK C. MOLUMPHY (168009)
TAMARAH PREVOST (313422)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone:  (650) 697-6000
Facsimile:   (650) 697-0577

*Co-Lead Counsel for Lead Plaintiffs*

## ATTESTATION

I, John T. Jasnoch, am the ECF User whose ID and password are being used to file this State Lead Counsel's Response to Request for Information Re Attorney's Fees.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Mark C. Molumphy has concurred in this filing.

# CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                      *s/* John T. Jasnoch
                                      JOHN T. JASNOCH

STATE LEAD COUNSEL'S RESPONSE TO
REQUEST FOR INFORMATION RE ATTORNEY'S FEES
Case No. 3:16-cv-02627-WHA